# EXHIBIT 18

## ORIGINAL DECISION TO PROPOSED NOTICE OF REMOVAL

**December 20, 1999**

**Original Decision - EXHIBIT 18**

Michael O. Leavitt
Governor
Major General James M. Miller
Adjutant General

# State of Utah
## UTAH NATIONAL GUARD

12953 SOUTH MINUTEMAN DRIVE
P.O. BOX 1776
DRAPER, UTAH 84020-1776
(801) 523-4402, DSN 766-4402

151st MXS-CC 20 December 1999

MEMORANDUM FOR Ronald J. Menke

SUBJECT: Original Decision to Proposed Notice of Removal

1. On 16 November 1999, SMS Chapman proposed that you be removed from your technician position as Aircraft Engine Mechanic, WG-8602-10. This proposed action was based upon the following charges:

a. Creating a disturbance by threatening to inflict bodily harm resulting in an adverse effect on morale, production and maintenance of proper discipline. (TPR 752, Table A-5, Rule 9).

b. Use of insulting, abusive, offensive, or obscene language. (TPR 752, Table A-5, Rule 10b).

2. I have decided that you should be removed from your position as Aircraft Engine Mechanic, WG-8602-10. Your removal is for just cause and would promote the efficiency of the service. This decision is based on the following specifications and considerations:

a. On 17 September 1999 at approximately 2240 hours, you were at the NCO Club, Building #1624, when TSG Robert Teinert approached you and asked if you would like him to call you a cab. After several verbal interactions with TSG Teinert, SRA Jensen, SSG Morstad, SSG Bradshaw and Mr. Darren Lindsey, Mr. Lindsey drove you and your wife home from the club.

b. On 18 September 1999 at approximately 0030 hours, you called TSG Teinert on his cellular phone. During this telephone conversation it is alleged that you verbally threatened his life.

c. While you dispute the details of the telephone conversation between you and TSG Teinert regarding the alleged death threat, I have given due weight to the fact that in an effort to communicate your death threat message to him, you called him three separate times.

151st MXS-CC
SUBJECT: Original Decision to Proposed Notice of Removal

d. I have also carefully considered and given due weight to the fact that TSG Teinert contemporaneously reported the death threat telephone conversation to SRA Jensen immediately after the phone conversation took place, as well as immediately calling Central Security Control and reporting the death threat phone call.

e. Furthermore, it is important for you to understand that in reaching my decision, I did not consider any conduct other than the alleged events that took place on 17 – 18 September 1999. Specifically, I did not consider any of the activities that took place on 16 March 1996 while you were deployed to Marina DiPisa, Italy, or the physical confrontation with Mr. Clay Zimmerman. Rather, I have based my decision solely on the egregious and totally unacceptable behavior and events that occurred on 17 – 18 September 1999.

f. After a careful review of your written response to the proposed notice of removal, and the oral response by your attorney, Mr. Frank Call on 9 December 1999, together with the statements submitted by TSG Teinert, SSG Morstad, TSG Freemont, and SRA Jensen, I have determined that you did place a death threat phone call to TSG Teinert in violation of the Adjutant General's ZERO TOLERANCE policy on Violence in the Workplace.

3. In reaching my decision, I also took into account the fact that when we met on 9 December 1999 with Mr. Call, you refused to acknowledge either (1), that the events outlined in the Proposed Notice of Removal even took place and/or (2), that you were willing to assume any responsibility, show any remorse or take any positive steps to constructively deal with your actions and behavior.

4. I have also carefully considered the guidance outlined in the Adjutant General's Policy Letter 99-31, Violence in the Workplace. I made particular note of the fact that MG Miller states that "threats….in the workplace will not be tolerated" and that, "verified threats….will result in immediate disciplinary action, to include termination".

5. In an effort to determine an appropriate penalty as provided for in the Adjutant General's ZERO TOLERANCE policy on Violence in the Workplace, I also considered your current job level and years of experience. I also reviewed your past work record and the adverse affect this action has had on the morale and maintenance of proper discipline in the Utah Air National Guard. I took particular note of the notoriety and impact your actions have had on the reputation of the Engine Shop, the Logistic Directorate and the Utah National Guard.

6. I also considered the agency's past record regarding penalties imposed on other employees for the same or similar offenses and the consistency of the recommended penalty with the Table Of Penalties outlined on pages 21 – 26, TPR 752, Discipline and Adverse Action.

151st MXS-CC
SUBJECT: Original Decision to Proposed Notice of Removal

7. In arriving at my decision, I have considered the recommended range of punishments as specified in TPR 752. I recognize and understand that normally a verbal threat would not constitute a basis for removal on a first offense. Nevertheless, based on the seriousness of the threat that you made in your telephone call to TSG Teinert, i.e., "You're dead Bob, you're dead. I can do this", I have determined that consistent with the Adjutant General's policy on Violence in the Workplace, removal from your technician position is the only appropriate penalty.

8. In upholding this proposal, I have determined your termination will be effective 21 December 1999. I have also determined that it is in your best interest and the best interest of the Utah National Guard that you remain in an excused non-duty pay status through 21 December 1999. The authority to place you in this status is Technician Personnel Regulation (TPR) 752, para 2-6. During the normal work day/work week, you are again directed not to enter the premises of the Utah National Guard without prior approval from the Human Resources Officer or his designee, who will then make arrangements for proper escort.

9. You have the right to request an appellate review by the Adjutant General of Utah or an administrative hearing, but not both. You should contact Carol Elkins at 523-4235 or CW5 Ralph J. Haws, 523-4227, who will provide access to applicable regulations and will answer questions relative to your technician rights.

[signature]
PAUL B. REUTLINGER
LTC, UTANG
151st Maintenance Squadron Commander

I acknowledge receipt of this memorandum:

[signature] December 20 1999
Ronald J. Menke
Date
1333

# EXHIBIT 19

## FINDINGS AND RECOMMENDATIONS IN THE ADVERSE ACTION APPEAL OF RONALD J. MENKE

**May 8, 2000**

# FINDINGS AND RECOMMENDATIONS IN THE ADVERSE ACTION APPEAL OF RONALD J. MENKE

## PART I
## CASE SUMMARY

1. The Utah Air National Guard (UTANG) employed the Appellant, RONALD J. MENKE, as an Aircraft Engine Mechanic, WG-8602-10. Mr. Menke worked at the UTANG Facility, Salt Lake City, Utah Airport. He has been a technician since December 3, 1985.

2. RONALD J. MENKE no longer occupies his technician position. He was terminated effective 21 December 1999. Mr. MENKE was in an excused non-duty pay status from 17 November 1999 until the date he was terminated.

3. On 16 November 1999, SMSGT Allen E. Chapman, 151st Component Repair Chief, UTANG, issued a memorandum directed to RONALD J. MENKE, SUBJECT: Proposed Notice of Removal.

> "2. *In accordance with Technician Personnel Regulation (TPR) 752, Table A-5, you are being charged with:*
>
> a. *Creating a disturbance by threatening to inflict bodily harm resulting in an adverse effect on morale, production and maintenance of proper discipline. (TPR 752, A-5, Rule9).*
>
> b. *Use of insulting, abusive, offensive or obscene language. (TPR 752, A-5, Rule 10b).*
>
> 3. *The agency bases these charges on the following specifications:*
>
> a. *On 17 September 1999, at approximately 2240 hours, you were in the NCO Club Building #1624. TSG Robert Teinert informed the Security Forces Flight Sergeant (SSG Bradshaw C-flight) that you (Robert J. Menke) appeared to be very intoxicated and that you indicated that you were going to drive home.*
>
> b. *At approximately 2240 hours, SSG Teinert approached you and asked you if you would like him to call you a cab. You responded by saying, "Fuck you, Bob." After SRA Jensen called Central Security Control (CSC) and reported your behavior, you once again yelled at TSG Teinert, "Fuck you."*
>
> c. *SSG Morstad escorted you to the lounge area of Building # 1624 and informed you that you were not to drive home and provided you with three alternative choices:*
>
> *(1) You could call a cab.*
>
> *(2) You could call a sober friend to drive you home.*

*(3) SSG Morstad and SSG Bradshaw would make a military apprehension and call your First Sergeant and Flight Commander.*

*d. Subsequent to your conversation with SSG Morstad, Mr. Darren Lindsey, a bartender at the NCO Club, also volunteered to take you home.*

*e. At approximately 2320 hours, 18 September 1999 Mr. Lindsey stopped at the Security Gate and informed SSO Bloomfield that he would be driving you home.*

*f. At approximately 0030 hours, 18 September 1999, you called TSG Teinert on his cellular phone and verbally threatened him by saying, "You're dead, Bob, you're dead. I can do this."*

*g. At approximately 0030 hours, 18 September 1999, TSG Teinert called CSC and reported that you (SSG Menke) had called TSG Teinert on his cellular phone and threatened him with bodily harm."*

4. The recommended penalty was the removal of the appellant, RONALD J. MENKE, from his Technician position.

5. Mr. Menke was given the opportunity to respond. Assisted by legal counsel, he did so in a letter dated December 8, 1999.

6. On 20 December 1999, LTC Paul B. Reutlinger, 151st Maintenance Squadron Commander, UTANG, issued an original decision letter. Reference Exhibit 3, Volume 2. The document states:

*"2. I have decided that you should be removed from your position as Aircraft Engine Mechanic, WG-8620-10. Your removal is for just cause and would promote the efficiency of the service. This decision is based on the following specifications and considerations:*

*a. On 17 September 1999, at approximately 2240 hours, you were at the NCO Club, Building #1624, when TSG Robert Teinert approached you and asked if you would like him to call a cab. After several verbal interactions with TSG Teinert, SRA Jensen, SSG Morstad, SSG Bradshaw and Mr. Darren Lindsey, Mr. Lindsey drove you and your wife home from the club.*

*b. On 18 September 1999 at approximately 0030 hours, you called TSG Teinert on his cellular phone. During this telephone conversation it is alleged that you verbally threatened his life.*

*c. While you dispute the details of the telephone conversation between you and TSG Teinert regarding the alleged death threat, I have given due weight to the fact that in an effort to communicate your death threat message to him, you called him three separate times.*

*d. I have also carefully considered and given due weight to the facts that TSG Teinert contemporaneously reported the death threat telephone conversation to SRA Jensen immediately after the telephone conversation took place, as well as immediately calling Central Security Control and reporting the death threat phone call.*

*e. Furthermore, it is important for you to understand that in reaching my decision, I did not consider any conduct other than the alleged incidents that took place on 17-18 September 1999. Specifically, I did not consider any of the activities that took place on 16 March 1996, while you were deployed to Marina DiPisa, Italy, or the physical confrontation with Mr. Clay Zimmerman. Rather, I have based my decision solely on the egregious and totally unacceptable behavior and events that occurred on 17-18 September 1999.*

*f. After a careful review of your written response to the proposed notice of removal, and the oral response by your attorney, Mr. Frank Call on 9 December 1999, together with the statements submitted by TSG Teinert, SSG Morstad, TSG Freemont, and SRA Jensen, I have determined that you did place a death threat call to TSG Teinert in violation of the Adjutant General's ZERO TOLERANCE policy on Violence in the Workplace.*

*3. In reaching my decision, I also took into account the fact that when we met on 9 December 1999 with Mr. Call, you refused to acknowledge either (1), that the events outlines in the Proposed Notice of Removal even took place and/or (2), that you were willing to assume any responsibility, show any remorse or take any positive steps to constructively deal with your actions and behavior.*

. . . .

*7. In arriving at my decision, I have considered the recommended range of punishments as specified in TPR 752. I recognize and understand that normally a verbal threat would not constitute a basis for removal on a first offense. Nevertheless, based on the seriousness of the threat that you made in your telephone call to TSG Teinert, i.e., "You're dead, Bob, you're dead. I can do this", I have determined that consistent with the Adjutant General's policy on violence in the Workplace, removal from your technician position is the only appropriate penalty."*

7. Mr. Menke appealed the Original Decision, requesting that a hearing examiner consider the matter and submit a report to the final authority, the Adjutant General for the State of Utah. In attendance at the hearing were:

Hearing Examiner: Michael T. McCabe

For the Agency: COL Paul M. Warner
CW5 Ralph J. Haws, LRS,

For the Appellant: Appellant RONALD J. MENKE
Frank N. Call
Attorney at Law
Suite 701
McIntyre Building
68 South Main Street
Salt Lake City, UT 84101

8. Witnesses who appeared and testified are listed in the index to Volumes I and II of the transcript. The two-day hearing concluded on 3 February 2000.

9. Following the conclusion of the hearing both sides were given the opportunity to submit written final statements. Both sides availed themselves of this opportunity.

10. The case to be decided by the Adjutant General is threefold:

a. whether the technician did what was alleged in the 16 November 1999 Notice of Proposed Adverse Action;

b. whether some discipline, will promote the efficiency of the service; and,

c. whether the recommended penalty is appropriate.

PART II
COMPLIANCE WITH PROCEDURAL REQUIREMENTS

11. Review of the appeal file does not evidence any substantive departure from the due process as outlined in the National Guard Bureau Technician Personnel Regulation (TPR) 752. The authority a hearing examiner has stems from the enabling authority which is Technician Personnel Regulation (TPR) 752. As stated in para 3-3 a.;

> *"The purpose of the administrative hearing is to develop fully all the facts surrounding the issues of the case. The administrative hearing is not a court of law . . . ."*

12. In examining a record looking for procedural errors, it is the hearing examiner's responsibility to determine whether "harmful error" has been committed. As discussed in para 2-9 a. of TPR 752:

> *"a. Harmful error is an error committed by management in the application of its procedures which, if it had not occurred, might have caused management to reach a conclusion different from the one reached. The harmful error standard avoids reversal of actions because of technical procedural oversights that have not substantially prejudiced or impaired the technician's rights. The burden is upon the technician to show that based upon the record as a whole the error was harmful; not upon management to prove the error harmless. The technician is not entitled to a reversal of the action without showing that the procedural error substantially prejudiced his/her rights. If the technician can show that harmful error occurred, this action cannot be sustained. When events do not clearly show whether the error was actually harmful, the probable effect of the error is determined in light of all of the evidence. Mere theoretical possibility of the harm cannot form the basis for inferring actual harm."*

No harmful error has been alleged nor has any been found in reviewing the record.

PART III
EXHIBITS

13. Exhibits offered during the hearing were marked numerically and are found at the back of Volume II, hearing transcript.

PART IV
EMPLOYER'S POSITION

14. The Employer contends that: Mr. Menke engaged in the conduct charged; some discipline will promote the efficiency of the federal service; and, the "only" appropriate penalty was the removal of Mr. RONALD J. MENKE from his federal technician position.

PART V
APPELLANT'S POSITION

15. To summarize Appellant's position: The only charge pending against Mr. Menke is that he created a disturbance by threatening to inflict bodily harm resulting in an adverse effect on morale, production and maintenance of proper discipline in violation of *TPR 752, A-5*, Rule 9(b). *Hearing Transcript, Vol. I, p17-19.* The alleged offense did not actually occur as Mr. Menke did not make any threat of death or harm. No disturbance was caused by the alleged threat. There has been no adverse effect on morale, production or the maintenance of proper discipline as a result of the alleged threat. The Guard has failed to overcome the presumptions and heightened requirement to prove a clear nexus between the threat and its alleged impact on the efficiency of the Guard. The termination of Mr. Menke's employment would harm, not promote, the efficiency of the Guard. The selection of penalty was inappropriate in light of mitigating factors: the excellent employment performance history; no harm was caused by Mr. Menke's off-duty conduct; Mr. Menke's longstanding efforts to improve the public image of the Guard; and, no history of prior threats;

## PART VI
## ISSUES CONSIDERED

16. The following issues were considered in accordance with the standard of review established by the National Guard Bureau:

a. Whether the September – December 1999 investigation and available information supports the conclusion that RONALD J. MENKE engaged in conduct that "On 18 September 1999 at approximately 0030 hours, you called TSG Teinert on his cellular phone. During this telephone conversation it is alleged that you verbally threatened his life."

b. Will some discipline, based upon the proven conduct, promote the efficiency of the Federal service? This is a conclusion based on the record.

c. Is the penalty appropriate? The Employer's choice of penalty will not be disturbed unless the record indicates that choice to be arbitrary, capricious, or otherwise unreasonable in light of proven conduct.

## PART VII

## BACKGROUND - BASIC FACTS

17. The following facts are established and relate to the issues considered under TPR 752.

a. Relating to RONALD J. MENKE:

(1) He was employed by the UTANG as an Aircraft Engine Mechanic, WG 8602-10. RONALD J. MENKE has been a technician since December 3, 1985.

(2) The record presented for consideration did not reflect anything adverse as to the performance or conduct of Mr. MENKE prior to September 17, 19999. The testimony of witnesses reflected that Mr. MENKE 's performance was excellent if not an outstanding when it came to performing the duties of his many military assignments.

b. Relating to whether this was the "first offense" for consideration under TPR 752: The Original Decision notes other conduct but then indicates that it has not been considered. Consequently, the conduct charged would constitutes Mr. Menke's first offense if substantiated.

c. The existence of a Violence in the Work Place policy. The Adjutant General for the State of Utah issued a ZERO TOLERANCE policy on Violence in the Workplace dated 23 March 1999. It reads, in part:

*"2. The Utah National Guard is committed to the health and safety of its employees. Threats and violence in the workplace will not be tolerated. To ensure a professional workplace, all employees must work together as a team toward that goal. The Utah National Guard's position on threats and violence in the work place is "ZERO TOLERANCE".*

*3. Violence is defined as a physical or verbal aggression toward others or directed at the property and/or equipment of the Utah National Guard. Any behavior that is threatening to another employee's physical or emotional safety will not be tolerated. Verified threats or violent acts will result in immediate disciplinary action, to include termination. Any employee who makes a threat or completes a violent act cannot excepect[sic] to maintain privacy in those areas that need to be investigated to ensure a safe work environment.*

*4. Every employee is obligated to immediately report any threat by co-worker or supervisor. In addition, management at all levels must immediately investigate any actions that may be perceived as a threat. Upon investigation, managers and/or supervisors will take whatever appropriate action necessary to resolve the issue . . . ".*

d. There is no dispute that the UTNG had properly published its Violence in the policy dated 23 March 1999 or that Appellant Menke knew the policy.

e. All other facts are disputed.

**<u>FIRST ISSUE</u>**
**<u>FINDINGS AND CONCLUSIONS:</u>**

**<u>WHETHER THE TECHNICIAN DID WHAT WAS ALLEGED IN THE 16 NOVEMBER 1999 PROPOSED NOTICE OF REMOVAL</u>**

18. **FIRST CLAIM:** Did RONALD J. MENKE engage in the conduct described in the 16 November 1999 Notice of Removal: "On 18 September 1999 at approximately 0030 hours, you called TSG Teinert on his cellular phone. During this telephone conversation it is alleged that you verbally threatened his life."

a. <u>Findings</u>:

(1) Tech Sergeant (TSG) Robert Teinert is a 16 years member of the Utah Air National Guard (UTANG) full-time technician workforce working at the UTANG facility located at the Salt Lake City, Utah airport.

(2) On September 17-18, 1999, Appellant Ronald Menke was a member of the Utah Air National Guard (UTANG) full-time technician workforce working at the UTANG facility located at the Salt Lake City, Utah airport.

(3) TSG Teinert and Appellant Menke has known each other for 10-11 years and worked together with activities being centered around "the shop". TR, Vol.I, p.37

(4) TSG Teinert did not work on 17 September 1999 but went to the NCO Club around 3:30 p.m. to maintain an aquarium. The NCO Club is located on the UTANG installation and is a facility to be used by enlisted members of the UTANG. TSG Teinert remained at the NCO Club for the remainder of the evening. TR, Vol.I, pp. 38-39. Teinert was drinking alcohol, estimating that he consumed "roughly ten drinks in six hours." TR. Vol.I, p.40. TSG Teinert recalls that Appellant Menke arrived "around 7:00, 7:30" p.m. and left "about 11:00, 11:30 p.m. TR, Vol.I, p.37

(5) At some time around 11:00 –11:30 p.m., TSG Teinert stated that he approached Appellant Menke: "*he was leaning on the end of the bar to leave, and it was evident that he was intoxicated; and I walked up and, friendly advice, put my hand on his shoulder and says, 'Ron, you shouldn't be driving, you should get a cab. If need be, I'll even buy it*". TR, Vol.I, p.41. TSG Teinert described Appellant Menke's response as "*Very belligerent. He stood up and turned, facing me and pointing his finger and he said, 'Fuck you, Bob. It's none of your goddam business.*" TR, Vol.I, p.43.

(6) *SRA Matthew D. Jensen was present at the NCO Club and witnessed the incident and substantially verifies TSG Teinert's version.* Reference Exhibit 6.

(7) E-5 Terry D. Morstad was a security police force member who responded to a phone call from SRA Jensen. Morstad went to the UTANG NCO Club. His report notes: "*...SSG Menke in my opinion was very intoxicated by the way he slurred his words and staggered when he walked. I informed SSG Menke that he was not to drive. SSG Menke stated it is that G_D Dammed Teinert who called you isn't it. . . . At approx 0030 18 Sept. TSG Teinert called CSC and talked to TSG Freemont and stated that SSG Menke had called him (TSG Teinert) on his cell phone and threatened him with bodily harm*"...Reference Exhibit 7.

(8) The Incident/Complaint Report prepared by E-6 Kevin L. Freemont, Security Controller states: "*At 2340 hrs, 17 Sept 99 Kilo #1 (CSC) was informed by Robert W. Teinert from the NCO Club (Building #1624). That he was receiving threatening calls on his cell phone from Ronald L. Menke. At 2343 hrs Kilo's #4/4a (SSG Morstad/SRA Davis were dispatched to the NCO Club for statements. . . .*"

(9) SRA Jensen's testimony lays out his recollection of a phone call received by TSG Teinert. Refer to TR, Vol. I, pages 112-115: "*He [Teinert] took the phone away from his ear, closed the flap and proceeded to tell me as he sat it down on the bar . . . "That was Ron. He just said, 'You're dead. You're going down.*" *Reference TR, Vol. I, pp. 114-115.*

(10) The home phone number for Appellant Menke is 801-573-4016. Appellant Menke does not deny making phone calls to TASG Teinert's cell phone but disputes the threatening nature or content of the phone calls. Appellant Menke admits he made phone calls, but denies making any threats. He admitted being "agitated" and was calling "Bob Teinert because he was very concerned about him driving off base. *Reference TR, Vol.II, pp. 616-618.*

(11) Exhibit 10 is a copy of the Airtouch Cellular phone record for TSG Teinert's cell phone. The document reflects that on 17 September 1999, TSG Teinert's cell phone received incoming calls from a number 801/573/4016 at: 11:36; 11:38; 11:41; 11:48; and 11:48.

(12) During his direct testimony, Appellant Menke displayed a disposition that was very strong, assertive, positive as to the rightness of his position and certain in his views.

(13) Under cross-examination, Appellant Menke's responses, displayed an attitude reflected in his physical body tension and voice tone in response that appeared even more assertive. To the hearing examiner, Mr. Menke appeared to be argumentative bordering on barely controlled hostility. Reference the exchange beginning at page 592 and continuing through page 600. In response to questions concerning an incident in Italy involving the "stealing" of a statue. Appellant Menke 's responses, tone and physical appearance surpassed being "agitated" to controlled anger verging on hostile. This display is very consistent with what SRA Jensen and E-5 Morstad testified to concerning Appellant Menke's behavior the evening of 17 September 1999.

(14) The testimony of witnesses concerning Appellant Menke's behavior the evening of 17 September 1999 are inconsistent with Mr. Menke's statement that later calls to TSG Teinert via Teinert's cell phone were made out of concern for "Bob". Mr. Menke's position is not credible.

(15) If this was a case where my findings depended solely upon weighing the credibility of TSG Teinert versus that of Appellant Menke, my finding would be that neither could be given enough credibility to sustain any burden of proof. The testimony of two intoxicated technicians who have grown to dislike each other because of incidents occurring at work is difficult to evaluate. While at an NCO Club located on the UTANG installation, these two technicians both chose to drink to excess, both admitting a level of intoxication, and then engage in further verbal altercation that resulted in the calling of ANG security police.

(16) In this case, there is other evidence supporting the finding that Appellant Menke did threaten TSG Teinert with physical violence. In making this finding, I rely upon: the testimony of SRA Jensen and E-5 Morstad; the availability of the phone records to support that the phone calls were made; the displayed assertive behavior of

Appellant Menke during the hearing; the knowledge that alcohol usually does not create a caring concerned attitude, more commonly leading to loss of control, anger and hostility; and, the record as a whole..

(17) The phone calls made by Appellant Menke, a UTANG technician, the evening of 17 September 1999 to TSG Teinert, also a UTANG technician, amount to "*verbal aggression toward others*" thereby being in violation of the UTNG's Adjutant General's stated policy on Violence in the Workplace.

(18) As a hearing examiner, I have been asked by Appellant Menke to determine whether there was sufficient nexus between the off duty conduct and the UTANG. I do not make this determination as a matter of law. That is a matter for a court of competent jurisdiction. But, as a fact finder, I do find there is sufficient nexus and am not impressed by the cite to *Phillips v. Bergland, 586 F.2d 1007, 1011 (4th Cir. 1978)*. The offense occurred on the UTANG base in a building that was available to use to Menke and Teinert because they were technicians and members of the UTANG. The reason these two were even in proximity to each other is because they work on a daily basis near each other and have watched friendship sour. Citing a case decided 22 years ago carries little persuasive weight. The case pre-dates the heightened awareness and concern society has to prevent workplace violence. This is evidenced by the UTANG policy, a letter you would not find in existence in 1978. Employees now want and expect to work in an "professional environment" free from verbal or physical violence. Any employee of the UTNG who violated the UTRNG Workplace Violence Policy letter has breached his or her covenant with co-workers to provide a "professional environment". The occurrence of workplace violence does carry prejudice to the organization where the violence occurred. The public is all too ready to ask why the employer did not do more to prevent the event or to question the work environment.

**FIRST CLAIM CONCLUSION:** A preponderance of the evidence supports the conclusion that RONALD J. MENKE engaged in the conduct described in the 16 November 1999 Notice of Removal: "On 18 September 1999 at approximately 0030 hours, you called TSG Teinert on his cellular phone and verbally threatened his life."

## SECOND ISSUE
## WILL SOME DISCIPLINE PROMOTE THE EFFICIENCY OF THE FEDERAL SERVICE?

19. Will some discipline promote the efficiency of the federal service? This is a conclusion based on the record. It is my conclusion that some discipline will promote the efficiency of the service and support the UTNG Violence in the Work Place policy.

a. The UTNG policy seeks to create a "professional environment" free from violence or threats of violence that affect employee's physical or emotional wellbeing. The "ZERO

TOLERANCE" policy seeks to eliminate both verbal threats of violence and actual violence.

b. For such a policy to be effective, the policy must create an atmosphere where threats of violence and/or physical violence are stopped and don't happen. The policy exists to achieve this goal and is more difficult to achieve than addressing a wrong once it occurs. The goal objective is prevention, of which deterrence plays a crucial role. There will still be those employees who might consider threatening violence even though they know it is against an employer's policy. But, these employees may not act on their desire to engage in work place violence if they know the result will be serious corrective action or punishment. In this case, documented examples of punishment provide an example of how such workplace violence will not tolerated. Discipline/ punishment is the tool available that is applied "after the fact" or violent incident occurs.

c. Against the background of the UTNG's Violence in the Work Place policy and the facts present in this case, discipline will promote the efficiency of the service.

**THIRD ISSUE**
**IS THE PENALTY APPROPRIATE?**

20. In making this determination, I rely upon the Douglas factors, after noting:

> *"Determining the appropriateness of a penalty relies not only on establishing factual circumstances but also on application of judgment and discretion. In other words, the issue should be not whether the penalty is within the permissible range, but rather, why the particular penalty was chosen."* (Emphasis supplied.)

a. The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;

DISCUSSION: The Adjutant General of the Utah National Guard established a policy that making violence in the workplace a serious offense:

*"3. Any behavior that is threatening to another employee's physical or emotional safety will not be tolerated. Verified threats or violent acts will result in immediate disciplinary action, to include termination. Any employee who makes a threat or completes a violent act cannot excepect[sic] to maintain privacy in those areas that need to be investigated to ensure a safe work environment.*

*"4. Every employee is obligated to immediately report any threat by co-worker or supervisor. In addition, management at all levels must immediately investigate any actions that may be perceived as a threat. Upon investigation, managers and/or supervisors will take whatever appropriate action necessary to resolve the issue .... ".*

Under the circumstances and evidence available in this case, Appellant Menke's action in making 4 calls to TSG Teinert in order to make a statement that must be considered life threatening is intentional behavior.

b. The employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;

DISCUSSION: Appellant Menke had been employed as an Aircraft Engine Mechanic, WG-8602-10. There are no special supervisory or fiduciary responsibilities. However, the UTNG, through its Adjutant General's policy on Violence in the Work Place created a responsibility of each and every UTNG member to "*work together as a team toward that goal.. . . To ensure a professional workplace, all employees must The Utah National Guard's position on threats and violence in the work place is "ZERO TOLERANCE."*". The UTNG considered each employee as sharing the responsibility to provide a work environment free from violence or threats of violence. The evidence presented during the hearing supports the conclusion that Appellant Menke breached that responsibility.

c. The employee's past disciplinary record.

DISCUSSION: As noted, this offense would constitute a first offense. It is notable that the technician record (904-1) is devoid of any information that would be considered derogatory to Ronald Menke.

d. The employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;

DISCUSSION: The Appellant, RONALD J. MENKE, had been employed as an Aircraft Engine Mechanic, WG-8602-10. He had been a technician since December 3, 1985. Mr. McDaniel is Mr. Menke's first line supervisor and responded affirmatively to a question "*And isn't it true that you rate Mr. Menke as a good employee, and when I asked you on a scale, you said on a scale of one to ten you rated him an eight out of ten, correct?*"

e. The effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties;

DISCUSSION: Mr. McDaniel, Mr. Menke's first line supervisor testified in response to questions from Appellant's attorney as follows:

*A: (McDaniel)* *Yes, sir.*
*Q:* *Do you recall me telling you that I spoke with Chief Haws and he had said that I could contact you and talk to you about the case?*
*A:* *Yes, sir.*

Q: *And in both of those conversations, you had indicated to me that the alleged event had had no visible effect on Ron's performance, correct?*
A: *That's correct, sir.*
Q: *And you also indicate to me that the alleged event had had no visible-effect on Bob's performance, didn't you?*
A: *Yes, sir.*

Reference TR Vol.I., P.211. The conclusion must be that there was no adverse effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties.

f. Consistency of the penalty with those imposed upon other employees for the same or similar offenses:

DISCUSSION: In Utah, this appears to be a case of first impression dealing with a verbal death threat. Examples of other cases talked about physical violence where penalties imposed were less than termination. The definition of violence provided in the UTNG policy is: "*Violence is defined as a physical or verbal aggression toward others or directed at the property and/or equipment of the Utah National Guard. Any behavior that is threatening to another employee's physical or emotional safety will not be tolerated.* Using this definition, there is a question of which would be more serious, physical violence or verbal death threats? Appellant would conclude that physical violence is more serious. The determination is actually dependent on the facts of each case.

(1) One example discussed in the hearing involved an incident that followed the September 17, 1999 Menke incident: this is the Wesemann -Lock "horseplay". TSG James Lock described it as "horseplay". No bruises or injuries were sustained Reference TR, Vol. II., P.405. TSG Lock received a letter of reprimand. Reference TR, Vol. II., P.409. Edward John Wesemann, an aircraft crew chief for a KC-135, described the event as "I'd call it nothing more than horseplay." Wesemann received a one-day suspension. The incident, as described by the technicians, was merely "horseplay" that got out of hand.

(2) The Wesemann- Lock incident is clearly distinguishable and does not bear on this factor to display any inconsistency. There is an obvious and unmistakable difference between "horseplay" and a death threat.

Under the circumstances present in this case when compared to the Wesemann -Lock "horseplay", I find the death threat to be more serious offense.

g. Consistency of the penalty with the applicable agency table of penalties:

DISCUSSION: This is a first offense. Recommending removal for a first offense would not be consistent with the table of penalties for Technician Personnel Regulation

(TPR) 752, "Discipline and Adverse Action", Rule 9b: Fighting; Creating a disturbance by threatening or a attempting to inflict bodily harm.

| First Offense | Second Offense | Third Offense |
|---|---|---|
| Written reprimand to 15-day suspension | 15-day suspension to removal | 30-day suspension to removal |

h. The notoriety of the offense or is impact upon the reputation of the agency;

DISCUSSION: The notoriety of the offense is well known in the UTANG. Its impact on the reputation of the UTANG or UTNG does not appear to be great.

i. The clarity with which the employee was on notice of any rules that were violated in committing the offense; or had been warned about the conduct in question;

DISCUSSION: This fact that the UTNG had a clearly established policy on violence in the Work Place is established.

j. Potential for employee's rehabilitation;

DISCUSSION: Mr. Menke did not display in his attitude or statements those of an employee who is easily influenced even when it is in his best interests to consider a different view or to change. I am struck by the statement of LTC Paul B. Reutlinger, the 151st Maintenance Squadron Commander, contained in the 20 December 1999 original decision letter: "*In reaching my decision, I also took into account the fact that when we met on 9 December 1999 with Mr. Call, you refused to acknowledge either (1), that the events outlines in the Proposed Notice of Removal even took place and/or (2), that you were willing to assume any responsibility, show any remorse or take any positive steps to constructively deal with your actions and behavior.*"

I, too, was struck with Appellant Menke's sense that he had done nothing wrong or to take responsibility for his actions. Rehabilitation if it means constructive change is questionable.

k. Mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter;

DISCUSSION; The record does not support finding the presence of "unusual job tensions, personality problems, mental impairment, harassment bad faith, or malice. Voluntary intoxication on the part of Appellant Menke does little to mitigate the circumstances, especially in light of Mr. Menke's stated belief that alcohol does not create problems for him. Reference TR/ V. II, pp. 592-600. There is some reason to look on TSG Teinert's suggestion that Appellant Menke take a cab home from the NCO Club as a type of provocation, if you were to accept

Appellant's view/ However, the credible testimony of SRA Jensen does not evidence anything "provocative" about how TSG Teinert made this suggestion to Appellant Menke.

l. The adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

DISCUSSION: Alternate sanctions such as a suspension might provide the requisite deterrent effect on other employees. However, it is doubtful a reduced sanction would have any deterring effect on Appellant Menke. Based on what I saw and heard from Appellant Menke during his direct testimony and cross-examination, this hearing examiner does not believe that the imposed penalty of removal has impressed Mr. Menke that his conduct was unacceptable. Consequently, there is reason to wonder whether the penalty of removal influences Mr. Menke or his behavior.

**CONCLUSION:** The Employer's choice of penalty is not arbitrary, capricious, or otherwise unreasonable in light of proven conduct. It is clear to me why the particular penalty was chosen.

RECOMMENDATION

21. **Recommendation:** It is my recommendation that the appeal be denied and the penalty imposed remain in effect.

Respectfully submitted this 8 day of May, 2000.

MICHAEL T. McCABE
Hearing Examiner

# EXHIBIT 20

## FINAL DECISION
## REGARDING THE ADVERSE ACTION APPEAL
## OF RONALD J. MENKE

**May 17, 2000**

# State of Utah

UTAH NATIONAL GUARD

Michael O. Leavitt
Governor
Major General James M. Miller
Adjutant General

12953 SOUTH MINUTEMAN DRIVE
P.O. BOX 1776
DRAPER, UTAH 84020-1776
(801) 523-4402, DSN 766-4402

UT-AG

17 May 2000

MEMORANDUM FOR Mr. Frank N. Call, Attorney at Law, Suite 701 McIntyre Building, 68 South Main Street, Salt Lake City, Utah 84101

SUBJECT: Final Decision Regarding the Adverse Action Appeal of Ronald J. Menke

1. I am in receipt of the Hearing Examiner's Report, *Findings and Recommendations in the Adverse Action Appeal of Ronald J. Menke* dated 8 May 2000.

2. After a careful review of the *Report*, together with the supporting documents and exhibits, I am in agreement with the finding, conclusions and recommendation submitted by the Hearing Examiner.

3. As provided for in the Technician Personnel Regulation No. 752, my final decision is that Mr. Menke's appeal is denied and the penalty imposed remain in effect.

4. In accordance with 32 U.S.C. 709e(5), *"there is no further administrative review of The Adjutant General's final decision"*.

JAMES M. MILLER
Major General, Utah NG
The Adjutant General

CF:
COL Michael T. McCabe
COL Paul M. Warner
COL S. Craig Widen
LTC Paul B. Reutlinger

# EXHIBIT 21

## NOTICE OF INTENT TO DISCHARGE

**September 14, 2000**

UTAH AIR NATIONAL GUARD
151ST Logistics Support Flight
765 North 2200 West, Salt Lake City, UT 84116-2999

MEMORANDUM FOR SSGT RONALD J. MENKE 14 September, 2000
612 Navajo Street
Salt Lake City, UT 84104-2612

FROM: CC

SUBJECT: Notification of Intent to Discharge

1. You are hereby advised that I am recommending your discharge from the Air National Guard of the United States and as a Reserve of the Air Force, in accordance with AFI 36-3209, paragraph 3.21., Misconduct; paragraph 3.18., Substandard (Unsatisfactory) Performance. This action is in consonance with my previous letter sent to you, Notification of Decision to Deny Enlistment Extension and Reenlistment, dated 31 July 2000. It is being pursued with the intent of involuntary discharge action to be effected before expiration of your current Expiration Term of Service, 9 January 2001.

2. My reasons for this action focus around your failure to meet Air Force standards of performance and to demonstrate the qualities of leadership required as a Non-commissioned Officer. You have been formally counseled and afforded opportunity for surmount your substandard performance, however, your pattern of misconduct and recent acts of disorder reflect your neglect towards self-discipline and are prejudicial to the good order, discipline, and morale within the Air National Guard. These actions directly disobey lawful orders, regulations reflecting Air Force Standards of Conduct, in addition to the specific Policy Letter 99-31, Violence in the Workplace, dated 23 March 1999, from the Adjutant General of Utah; and Policy Letter 00-02, Human Relations, dated 1 January 2000, from the Logistics Group Commander. Copies of the documents that support this action are available, upon your request.

3. This action could result in your receiving a General discharge - Under Other than Honorable Conditions, service characterization. You will further be identified as 'Ineligible for Reenlistment in the Air National Guard of the United States'. The Adjutant General of Utah is the discharge authority for this action.

4. You are entitled to do the following:

a. Consult with military legal counsel.
LTC Craig S. Cook, Headquarters Utah ANG, has been designated as your military legal counsel. He can be contacted at 801/485-8123. You may consult civilian counsel at your own expense or request military counsel of your choice if such counsel is serving in an active duty status in any branch of the armed forces of the U.S. and is reasonably available in accordance with AFI 51-201.

b. Submit statements or documents in your own behalf, at any time, for consideration in the disposition of this case.

c. Request an Administrative Discharge Board to hear and adjudicate this case.

d. Waive the above rights after having had the opportunity to consult counsel. You must contact the unit orderly room or me if you are unable to contact military counsel.

5. You have 15 days from receipt of this letter to respond by returning the attached "Airman's Statement", showing your decision on the exercise of your rights enumerated above.

6. You may request an extension of time to reply if additional time is needed by you or your counsel. Such a request must be in writing, stating the reason for the request and how much time is needed. The decision to grant any extension is at the discretion of the appropriate authority.

7. You will continue to be responsible for premiums to your Serviceman's Group Life Insurance (SGLI) policy, which you voluntarily chose, until you personally cancel this coverage, in writing, or are discharged.

8. Failure to acknowledge receipt or respond, regarding election of rights, within 15 days after receipt of this notification constitutes a waiver of all rights, with the result that the case will be processed on the information available. A copy of AFI 36-3209 is available for your use at the 151st Military Personnel Flight or through the military publications system at any Air Force military installation.

9. Execute the attached endorsement of receipt and return it to me within 24 hours.

Paul V. Erickson

PAUL V. ERICKSON, MAJ, UTANG
Commander

# EXHIBIT 22

## NOTICE OF INTENT TO NOT EXTEND CURRENT ENLISTMENT CONTRACT

**July 26, 2000**

**UTAH AIR NATIONAL GUARD**
151ST LOGISTIC SUPPROT FLIGHT

MEMORANDUM FOR: SSG RONALD J. MENKE 26 JUL 2000

**FROM: 151ST LSF/CC**
765 North 2200 West, SLC, Utah 84116-2999

Subject: Notice of Intent to Not Extend Current Enlistment Contract

1. This letter is to inform you of my intention to 'not' renew your current military enlistment contract, which expires 09 Jan 2001, as a member of the 151st Logistic Support Flight. This action is in accordance with the unit commander prerogatives as outlined in ANGI 36-2002, Enlistment and Reenlistment in the ANG.

2. My reasoning for this action focuses on your pattern of misconduct, acts of disorder and neglect prejudicing the good order and discipline in the National Guard and failure to obey an order or regulation. After evaluating your overall performance, I have decided that your further retention, as a member of the 151st Logistic Support Flight, would not be in the best interests of the unit.

3. Effective with your Expiration Term of Service (ETS) date, 09 Jan 2001, you will be discharged concurrently as a member of the Air National Guard and as a Reserve of the Air Force. My recommendation, as to your characterization of military service, is undetermined and will be subject to adjudication of the administrative misconduct action, which is currently pending against you. You will receive future notification of my recommendations, to higher headquarters, in this area.

4. I am giving you as much advance notice as possible to allow you the ability to plan for your future. Please address any questions to the Director of Personnel, Superintendent or Separation work centers, 151st Military Personnel Flight.

Paul V. Erickson

PAUL V. ERICKSON, CPT, UTANG
Commander

# EXHIBIT 23

## REQUEST FOR APPOINTMENT OF MILITARY COUNSEL AND ADMINISTRATIVE DISCHARGE BOARD

**October 4, 2000**

# DANNY QUINTANA & ASSOCIATES

ATTORNEYS AT LAW

DANNY QUINTANA
SCOTT H. YORK

68 SOUTH MAIN STREET
MCINTYRE BUILDING SUITE 600
SALT LAKE CITY, UTAH 84101

(801) 363-7726 TEL
(801) 521-4625 FAX
quintana@xmission.com

CIVIL RIGHTS — CRIMINAL DEFENSE — PERSONAL INJURY — CLASS ACTIONS — CIVIL LITIGATION


October 4, 2000

Paul V. Erickson, MAJ, UTANG
Commander
UTAH AIR NATIONAL GUARD
765 North 2200 West
Salt Lake City, Utah, 84116-2999

Re: Ronald J. Menke, SSGT, UTANG

Dear Major Erickson,

I am in receipt of, and responding to, your memorandum dated September 17, 2000. Despite the date of the memorandum and the time-sensitive nature of its contents, it was actually postmarked October 2, 2000, and received by Staff Sergeant Menke on October 4, 2000.

Mr. Menke has retained our offices to assist him in addressing his matters involving both his civil employment and military service with the Utah National Guard. I have been in contact with numerous individuals regarding this matter; most notably Paul Warner, of the Attorney General's Office and Major Lawrence Schmidt, of the State Judge Advocate.

The major difficulty that I have had is locating any sort of official 'final determination' in this matter. The closest thing that I have found to a final determination is the "Findings and Recommendations" made by Michael T. McCabe, who was the hearing officer on administrative appeal. This document was sent to me by Major Schmidt labeled as the "final determination", and despite being titled as merely a 'Recommendation', it is apparently from this document that we are to appeal in the federal court.

Conversely, it is rather the actual conduct of the National Guard rather than any specific ruling that has lead to the conclusion that a final determination has been made. As you are aware, Staff Sergeant Menke is a Title 32 employee; both enlisted in the National Guard and working for the Guard as a civilian employee. Since the time that the allegations were leveled against Staff Sergeant Menke last year, he has been banned from entering the Base for any reason. Unable to enter the base, Staff Sergeant Menke could not participate in his National Guard drills as required. Despite the "Recommendation" made by Mr. McCabe on May 8, 2000, Staff Sergeant Menke was received "drill pay" until July. Now you have indicated that the Guard also intends to involuntarily discharge him on January 9, 2001, for "Misconduct" and "Substandard Performance", presumably because he is not showing up to drills. Staff Sergeant Menke is caught in a catch 22 here: the Guard has not truly rendered an appeal-able final

00111

decision regarding his civilian employment; if they have, he still will not be able to be vindicated in federal court or resume drills on the Base before he is discharged from the National Guard; and even if he is vindicated, he will not be able to return to his civilian job because in order to do so, he must be a member of the National Guard.

Paragraph (4) of your memorandum indicates that Staff Sergeant Menke has several rights regarding this matter. First, he may consult with military legal counsel. Let this letter serve as a formal request to do so. I am forwarding a copy of the same to LTC Craig S. Cook, and requesting that he arrange a time when both Staff Sergeant Menke and I may meet with him.

Second, Staff Sergeant Menke may submit documents on his own behalf for consideration. This memorandum will be the first of (I am sure) many that shall be submitted for consideration. Staff Sergeant Menke adamantly opposes discharge from service in the National Guard; he has made a lifetime investment in military service and heretofore expected to be a 'career man'. He firmly denies the allegations against him in the civilian matter and objects to the procedures that lead to his termination, but now he is faced with the further injustice of a perpetual 'blackball' in his career field that comes from being discharge from military service "Under Other Than Honorable Conditions".

Third, Staff Sergeant Menke has the right to request an Administrative Discharge Board hearing. Let this Memorandum serve as such a request. I would request however that this hearing now be scheduled until we have had an opportunity to meet with LTC Cook.

Finally, Staff Sergeant Menke does not intend to waive any rights at this time and will do so expressly if at some future date he so chooses.

I have attached hereto the single page of your memorandum that Staff Sergeant Menke was to sign and return to you. Staff Sergeant Menke has authorized me to sign it on his behalf and include it in this letter to you. You will note that there are certain alterations that I have made to the document in order to make it accurate. You will also note that Staff Sergeant Menke has reserved the right to choose his military counsel pending our meeting with LTC Cook.

I thank you for your careful consideration and assistance in this matter. Please feel free to contact my offices with any questions or comments.

Sincerely,

Scott H. York
Attorney at Law

00112

1[st] Ind.
SSgt Ronald J. Menke

TO: 151[st] LSF/CC

Postmarked October 2, 2000

1. IAW AFI 36-3209, this responds to your letter, ~~dated 2 August 2000,~~ notifying me of this action.

2. ~~Having~~ Not Having had the opportunity ~~to~~ consult with military counsel, I ~~(have)~~ (have not) consulted with counsel and I ~~(do)~~ (do not) waive my right to counsel. I (do) ~~(do not)~~ want to be represented appointed military counsel. I (do) ~~(do not)~~ want to be represented by military counsel of my choosing whose name, address, and phone number is: Right Reserved for Determination Pending Meeting with LTC Cook.

3. I (do) ~~(do not)~~ request an Administrative Discharge Board.

4. I (am) ~~(am not)~~ submitting statements or documents on my behalf.

5. I understand that if the approval authority approves the recommendation for my discharge, he/she will also determine the type of discharge issued to me. I further understand that regardless of my commander's recommendation, I may be discharged under the conditions authorized.

6. If I fail to respond within 15 calendar days, you may interpret such failure to respond as concurrence with the discharge action.

6. I have voluntarily signed this statement and kept a copy of it.

RONALD J. MENKE, SSGT, UTANG
151[ST] Logistics Squadron

# EXHIBIT 24

## SUPERVISOR'S RECORD OF TECHNICIAN EMPLOYMENT

**Ronald Joseph Menke**

# SUPERVISOR'S RECORD OF TECHNICIAN EMPLOYMENT

| 1. NAME (Last, First, MI) | 2. DATE OF BIRTH | 3. SOCIAL SECURITY NUMBER | 4. SERVICE COMP DATE |
|---|---|---|---|
| MENKE, RONALD J. | 10-21-56 | 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 | 12-03-85 |

*5. HOME ADDRESS: 612 So. Navajo St. SLC, Ut. 84104
Telephone No. 595-1766

*6. EMERGENCY INFORMATION
Name: Roberta E. Menke
Address: SAME
Relationship: SPOUSE
Telephone No. 595-1766

*7. CURRENT MILITARY ASSIGNMENT (Unit, MOS/AFSC and Title, Security Clearance and Date)

*7a. ☐ IS COMPATIBLE ☐ IS NOT COMPATIBLE ☐ COMPATIBILITY WAIVER IN EFFECT

*7b. NAME OF MILITARY SUPERVISOR:

*8. PERFORMANCE RATING:

| POINTS | ADJECTIVE |
|---|---|
| 0-10 | UNACCEPTABLE |
| 11-39 | MARGIN ACCEPTABLE |
| 40-69 | FULLY ACCEPTABLE |
| 70-89 | EXCELLENT |
| 90-100 | OUTSTANDING |

| POINTS | PERIOD ENDING |
|---|---|
| 67 | 17 DEC 91 |
| 74 | 31 DEC 92 |
| 78 | 21 Oct 93 |
| 80 | 31 Aug 94 |
| 81 | 21 Oct 95 |
| | |

9. TRAINING (OPM/Military/Civilian received during technician employment)

| DATE | COURSE OR SUBJECT | DATE | COURSE OR SUBJECT | DATE | COURSE OR SUBJECT |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

10. INCENTIVE AWARDS, COMMENDATION, SUGGESTION AWARDS, AND OTHER SPECIAL RECOGNITION

| DATE | TYPE AND AMOUNT | DATE | TYPE AND AMOUNT | DATE | TYPE AND AMOUNT |
|---|---|---|---|---|---|
| 3 May 94 | Time-off Award 27 HRS | 1 Aug 99 | Time off Award 30 Hrs | | |
| 5 Aug 95 | " " " 30 " | | | | |
| 9 May 99 | Time off Award 10 Hrs. | | | | |
| 8 Jul 99 | " " " 10 Hrs | | | | |

11. POSITION AND PERSONNEL DATA (Promotion, WGI, Detail, Position Chg, Reassignment, etc)

| EFFECTIVE DATE | NATURE OF ACTION | POSITION TITLE AND NUMBER | PAY PLAN & OCC CODE | GRADE & STEP | SALARY | ORG/ LOCATION |
|---|---|---|---|---|---|---|
| 02-11-90 | Exc Appt | Aircraft Engine Mechanic F4352100 | WG-8602 | 10/01 | $11.82ph | ANG |
| 08-12-90 | in-grade inc. | " " " | " " | 10/02 | $12.32ph | " |
| 02-10-91 | Chg in Tenure | " " " | " " | " | " | " |
| 12-15-91 | Pay Adj | " " " | " " | " | 13.28PH | " |
| 02-09-92 | in-grade inc. | " " " | " " | 10/03 | 13.83ph | " |
| 12-21-92 | Pay ADJ | " " " | " " | 10/03 | 14.41 | " |
| 12-26-93 | " " | " " " | " " | " | 14.94 | " |
| 02-06-94 | IN-GRADE INC. | " " " | " " | 10/04 | 15.49 | " |
| 09-18-94 | Pay Adj. | " " " | " " | " | 15.66 | " |
| 09-03-95 | Reassignment | " " " WD90112005 | " " | " | " | " |
| 09-18-95 | Pay Adj | " " " " | " " | " | 16.19/ph | " |
| 02-04-96 | WGI | " " " " | " " | 10/05 | 16.79/ph | " |
| 09-15-96 | Pay Adj | " " " " | " " | " " | 16.[illegible]ph | " |
| 09-14-97 | Pay Adj. | " " " " | " " | 10/05 | 17.69 PH | " |
| 09-27-98 | " " | " " " " | " " | 10/05 | 18.19 PH | " |
| 09-26-99 | Pay Adj | " " " | " " | " | 18.85 PH | " |
| | | | | | | |
| | | | | | | |
| | | | | | | |

NGB FORM 904-1, 1 FEB 83 (Replaces NGB Form 904-1, dated 1 Sep 76, which may be used until supply is exhausted) *(Pencil entries) PAGE 1 OF

12. COMMENTS AND REMARKS *(Record discussions/counseling sessions on all matters relative to employment, i.e., performance standards/critical job elements, safety briefings, etc.)*

| DATE | PURPOSE, RECOMMENDED ACTION, ETC. |
| --- | --- |

Maintenance: Supervisors are to maintain a record on each technician and should post employment data as soon as possible. (This will eliminate the need to retain a copy of the SF 50.) Clerical personnel will not be delegated the responsibility for filing or maintenance of this form.

Continuation Sheets: When additional space is required to record additional data, a new form may be prepared by completing blocks 1 thru 4 and the additional data or the use of supplemental sheets is authorized. The continuation form or sheets of paper will be attached to the basic form. The basic form must reflect the number of pages in existence at all times.

Disposition: This form will be disposed of IAW with TPR 293-31.

PAGE 2 OF

# EXHIBIT 25

## MILITARY OUTSTANDING VOLUNTEER SERVICE MEDAL

**January 25, 1999**

# MILITARY OUTSTANDING VOLUNTEER SERVICE MEDAL

| NAME | RANK | SSAN | UNIT |
|---|---|---|---|
| Menke, Ronald J. | SSGT | 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 | 151 MXS |

Period for which nominated:

**DESCRIPTION OF COMMUNITY SERVICE**
(Provide data for each community activity supported. No more than one activity is required)
(To list service with additional activities continue on plain bond paper and attach)

| Community Activity Name | Address | Phone | Point of Contact |
|---|---|---|---|
| | | | |

Period of Service: 1988 to present

Brief description of service rendered; impact/results achieved; approximate hours contributed:

SSGT Ronald J. Menke is recommended for the MOSVM. During the period of 1988 through the present SSGT Menke has volunteered his services to several community projects for the betterment of the community that he lives in.

They include programs such as "Paint Your Heart Out"; a program designed to improve the quality of a neighborhood by painting homes for families that would otherwise be unable to make the improvement. For several years he was instrumental in organizing groups of individuals to paint 1-2 houses per year. Through his efforts the community has an improved appearance and atmosphere.

He has been instrumental in organizing and implementing activities for troubled youths. He organized basketball tournaments and graffiti cleanup programs, giving these troubled youths a sense of belonging, aiding in alleviating the growing gang problem in the area. He has assisted the Alzheimer's Organization of Salt Lake City in park maintenance and cleanup and has recently participated in "Earth Day" environmental cleanup programs.

All of these actions have left a lasting, positive impression on the Salt Lake community that will be of benefit for years to come. His actions are commendable and much deserving of this award!

| Community Activity Name | Address | Phone | Point of Contact |
|---|---|---|---|
| | | | |

| SUPERVISOR'S NAME | RANK | SIGNATURE | DATE |
|---|---|---|---|
| Michael R. McCowen | SMS | Michael R. McCowen | 12-Jan-99 |

COMMANDER'S COMMENT'S:

COMMANDER'S CERTIFICATION: This individual performed outstanding volunteer service to the community of a sustained, direct and consequential nature and is recommended for award of the Military Outstanding Volunteer Service Medal. Their service throughout this period was honorable.

| COMMANDER'S NAME | RANK | SIGNATURE | DATE |
|---|---|---|---|
| Paul B. Reutlinger | LTC | PBR | 19 Jan 99 |

MILITARY SERVICE AWARD APPROVAL AUTHORITY

☒ APPROVED ☐ DISAPPROVED

| AWARD AUTHORITY | RANK | DUTY TITLE | SIGNATURE | DATE |
|---|---|---|---|---|
| JON C. HEATON | B-G | State ANG Commander | [signature] | 25 Jan 99 |



# EXHIBIT 26

## EMPLOYEE PERFORMANCE PLAN AND EVALUATIONS

### 1991 - 1999

# E``LOYEE PERFORMANCE PLAN

Employee's Name: MENKE, RONALD J. | SSAN: 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
Title/Series/Grade: AIRCRAFT ENGINE MECHANIC WG-10
Duty Location: 151st MXS UTANG | Rating Period 15 JAN 99 thru 31 MAY 99

## PART I. PERFOMANCE

| `ICAL ELEMENTS (List at least three) | CHECK APPROPRIATE LEVEL |
|---|---|
| .NGINE MAINTENANCE:<br>- Performs all aspects of maintenance on engines brought into shop I/A/W applicable Technical Data and Work Cards<br>- Performs engine changes and unscheduled maintenance of engines installed on Aircraft and all applicable operational checks I/A/W Technical Data | ☐ OUTSTANDING<br>☐ EXCELLENT<br>☒ SUCCESSFUL<br>☐ UNACCEPTABLE |
| B. PHASE/ HOME STATION INSPECTIONS:<br>- Completes engine and APU portions of aircraft inspections I/A/W applicable Technical Data and Work Cards<br>- Inspections are completed in a timely manner with a maximum of 3 minor discrepancies and no major discrepancies per inspection | ☐ OUTSTANDING<br>☐ EXCELLENT<br>☒ SUCCESSFUL<br>☐ UNACCEPTABLE |
| C. SAFETY:<br>- Complies with all established Safety Regulations, Policies and all Shop Safety Policies<br>- Demonstrates concern for Safety of others as well as himself/ herself | ☐ OUTSTANDING<br>☐ EXCELLENT<br>☒ SUCCESSFUL<br>☐ UNACCEPTABLE |
| D. SUPPORT EQUIPMENT/ TOOL MAINTENANCE AND CONTROL:<br>- Inspects and maintains all shop support equipment; ie: engine change & transportation trailers, special tools, ect. in serviceable condition.<br>- CTK inventories are completed and documentation is annotated on 151 LG Form 1 | ☐ OUTSTANDING<br>☐ EXCELLENT<br>☒ SUCCESSFUL<br>☐ UNACCEPTABLE |
| E. MAINTENANCE DOCUMENTATION AND FORMS PREPARATION:<br>- Documents all maintenance actions in A/C forms, makes required CAMS entries in computers I/A/W ıpplicable Technical Data in a timely manner | ☐ OUTSTANDING<br>☐ EXCELLENT<br>☒ SUCCESSFUL<br>☐ UNACCEPTABLE |

›ERFORMANCE INDICATORS: Check the applicable critical element letter(s)

| QUALITY | All | N/A | A | B | C | D | E |
|---|---|---|---|---|---|---|---|
| .. Knowledge of Field or Profession: Maintains and demonstrates technical competence and/or expertise n areas of assigned responsibility. | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| :. Accuracy and Thoroughness of Work: Plans, organizes, executes work logically. Anticipates and .nalyzes problems clearly and determines appropriate solutions. Work is correct and complete. | ☐ | ☐ | ☒ | ☒ | ☐ | ☒ | ☒ |
| :. Soundness of Judgement and Decisions: Assesses tasks objectively, researches and documents ssignments carefully. Weighs alternative courses of actions, considering long and short-term nplications. Makes and executes timely decisions. | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| . Effectiveness of Written Documents: Written work is clear, relevant, concise well-organized,, rammatically correct, and appropriate to audience. | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| . Effectiveness of Communications: Presentation meets objectives, is persuasive, tactful, and ppropriate to audience. | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| . Timeliness in Meeting Deadlines: Completes in accordance with established deadlines. | ☐ | ☐ | ☒ | ☒ | ☐ | ☒ | ☒ |
| . Effectiveness of Supervision: Directs and coordinates activities of unit, assuring deadlines are met. oac`` counsels, develops, and utilizes staff effectively, demonstrating a commitment to the work force. | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| O (specify): | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Otner (specify): | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

| 'EAMWORK | Check indicators which apply To Critical Elements: |
|---|---|
| . Participation: Willingly participates in-group activities. Performing in a thorough and complete ıshion. Seeks team consensus. | All ☒ N/A ☐ A ☐ B ☐ C ☐ D ☐ E ☐ |
| . Leadership: Provides encouragement, guidance, and direction to team members as needed. Adjust yle to fit situation. | All ☒ N/A ☐ A ☐ B ☐ C ☐ D ☐ E |
| . Cooperation: Supports team initiatives, Demonstrates respect for team members, accepts the views of :hers, and actively supports team decisions. | All ☒ N/A ☐ A ☐ B ☐ C ☐ D ☐ ☐ |
| Other (specify): | All ☐ N/A ☐ A ☐ B ☐ C ☐ D ☐ E ☐ |

| USTOMER SERVICE | Check indicators which apply To Critical Elements |
|---|---|
| Quality of Service: Delivers high quality products and service to both external and internal Customers. itiates and responds to suggestions for improving service | All ☒ N/A ☐ A ☐ B ☐ C ☐ D ☐ E ☐ |
| Timeliness of Service: Delivers quality products and services in accordance with time schedules agreed ·on with customers. | All ☒ N/A ☐ A ☐ B ☐ C ☐ D ☐ E ☐ |
| Courtesy: Treats external and internal customers with courtesy and respect. Customer satisfaction is a ;h priority. | All ☒ N/A ☐ A ☐ B ☐ C ☐ D ☐ E ☐ |
| Other (specify): | All ☐ N/A ☐ A ☐ B ☐ C ☐ D ☐ E ☐ |

ıRT II. PROGRESSIVE REVIEW

ɔ be used for unacceptable ratings only)

te of review and signature of employee and Rating Official (R.O.)(Quarterly Reviews and Performance Improvement Plan required)
ıis does not replace the requirement to record on NGB 904-1

Date

ting Official Signature: Employee Signature:

RT IIA. PROBATION REPORT

☐ Recommend Retention ☐ Recommend Non-Retention

ing Official Signature:______ Employee Signature:______

Date Signed:______ Date Signed:______

RT III SUMMARY RATING

OUTSTANDING (Requires a summarized explanation, in the space provided below, of the basis for the rating.)
EXCELLENT
SUCCESSFUL
UNACCEPTABLE (Requires a summarized explanation, in the space provided below of the basis for the rating.)

ce is provided to summarize the basis for rating given (required for Outstanding or Unacceptable ratings only.)

ore space is needed, provide additional comments and attachment.

RT IV. CERTIFICAITON

ɔloyee's signature certifies review and discussion with the Rating Official. It does not necessarily indicate concurrence with the mation on this form.)

| ormance Plan: (Sign when plan is established/updated. | | Summary Plan: (Sign when rating is completed) | |
|---|---|---|---|
| ıg Official | Date | [signature] Rating Official | 21 July 99 Date |
| oyee | Date | Approving Official (Required for summary of Outstanding or Unacceptable) | Date |
| | | [signature] Employee | Date July 21, 99 |

Form 430, 5 Oct 98 (computerized)

# PERFORMANCE APPRAISAL FORM

1. NAME: MENKE, RONALD J. 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
2. TITLE AND GRADE: AIRCRAFT ENGINE MECHANIC, WG-10
3. ORGANIZATION: 151 MXS
4. TECHNICIAN STATUS: ☐ MERIT PAY ☒ NON-MERIT PAY
5. TYPE OF APPRAISAL: ☒ OFFICIAL ☐ DETAIL
6. APPRAISAL PERIOD: 22 OCT 97 TO: 21 OCT 98

| 7. JOB ELEMENT NO. | 8. HOW TECHNICIAN ACHIEVED OR EXCEEDED PERFORMANCE STANDARDS | 9. PLC (.0 TO 1.0) | 10. ELEMENT VALUE | 11. ELEMENT RATING |
|---|---|---|---|---|
| *1 | **IN-SHOP ENGINE MAINTENANCE:** MR. MENKE CONTINUES TO BE A RELIABLE ASSET TO THE ENGINE SHOP IN PREFORMING MAINTENANCE ON ENGINES. HE CONTINUES TO FOLLOW ALL APPLICABLE TECH. DATA AND FINISHES ALL TASKS ASSIGNED IN A TIMELY MANNER. HE HAS NOT HAD ANY MAJOR FOLLOW UP DISCREPANCIES DURING THIS APPRAISAL PERIOD. | 0.90 | 25.00 | 22.50 |
| *2 | **PHASE/HOME STATION INSPECTIONS:** DURING THIS PERIOD RON COMPLETED ALL ENGINE CHANGES AND PHASE INSPECTIONS WITHOUT ANY DAMAGE TO EQUIPMENT AND NO DISCREPANCY TREND WAS NOTED DURING FOLLOW UP INSPECTIONS. TASK WERE COMPLETED IN ACCORDANCE WITH ALL APPLICABLE TECH. DATA AND WITHIN ACCEPTABLE TIME FRAMES. | 0.90 | 20.00 | 18.00 |
| *3 | **SAFETY:** RON CONTINUES TO MAINTAIN A PROFESSIONAL ATTITUDE TOWARD SAFETY AND SECURITY. DURING THIS APPRAISAL PERIOD NO SAFETY VIOLATIONS HAVE BEEN NOTED. RON IS ALSO AWARE OF ENVIRONMENTAL ISSUES FOR THE SHOP AND HELPS IN ANY WAY TO MAINTAIN COMPLIANCE. | 0.80 | 20.00 | 16.00 |
| *4 | **UNSCHEDULED ENGINE MAINTENANCE AND ENGINE CHANGES:** MR. MENKE CONTINUES TO IMPROVE IN THIS AREA OF PERFORMANCE. HE HAS COMPLETED ALL TASKS WITHIN EXPECTED TIME FRAMES, WITH NO DISCREPANCY TREND, AND HAS DONE THIS WITH LITTLE OR NO SUPERVISION. RON CAN BE COUNTED ON TO WORK ANY TASK, AND ANY WHERE. | 0.90 | 20.00 | 18.00 |
| 5 | **SUPPORT EQUIPMENT/TOOL MAINTENANCE AND CONTROL:** RON HAS A VERY PROFESSIONAL ATTITUDE TOWARDS MAINTAINING SHOP SUPPORT EQUIPMENT IN SERVICEABLE CONDITION. RON CONTINUES TO MAINTAIN TOOLS IN HIS CARE, AND HAS HAD NO MAJOR DISCREPANCIES NOTED DURING THIS PERIOD. | 0.80 | 10.00 | 8.00 |
| 6 | **TECHNICAL ORDERS, MAINTENANCE DOCUMENTATION AND FORMS PREPARATION:** MR. MENKE COMPLIES WITH ALL APPLICABLE TECH. DATA IN THE PERFORMANCE OF HIS WORK. HIS ASSISTANCE WITH THE COMPUTER CONTINUES TO BE OF GREAT VALUE TO THE PROPULSION ELEMENT, AND TO THE UNIT. | 0.90 | 5.00 | 4.50 |

NGB FORM 1 OCT 80 430-1 *(EF-V2)(FormFlo*

*CONTINU W REVERSE*

| 7. JOB ELEMENT NO. | 8. HOW TECHNICIAN ACHIEVED OR EXCEEDED PERFORMANCE STANDARDS | 9. PLC (.0 TO 1.0) | 10. ELEMENT VALUE | 11. ELEMENT RATING |
|---|---|---|---|---|
| | I UNDERSTAND THE REQUIREMENTS SET FORTH IN THE STANDARDS OF CONDUCT FOR NATION GUARD TECHNICIANS [signature] | | | |

12. TRIAL / PROBATIONARY PERIOD APPRAISAL ☐ RECOMMEND RETENTION ☐ DO NOT RECOMMEND RETENTION

13. TOTAL FROM BLOCK 11: 87.00

14. ADJECTIVE APPRAISAL: ☐ UNACCEPTABLE ☐ MARGINALLY ACCEPTABLE ☐ FULLY ACCEPTABLE ☒ EXCELLENT ☐ OUTSTANDING

| 15. SIGNATURES | 16. TITLE | 17. DATE |
|---|---|---|
| A. APPRAISER [signature] | LEE D. McDANIEL, AIRCRAFT ENGINE MECH. FOREMAN | 27 Oct 98 |
| B. TECHNICIAN [signature] | RONALD J. MENKE, AIRCRAFT ENGINE MECHANIC | 27 Oct 98 |
| C. REVIEWER [signature] | MICHAEL R. McCOWEN, AIRCRAFT ENG.MECH. FOREMAN | 27-Oct-98 |
| D. APPROVING OFFICIAL [signature] | HAROLD B. AND[illegible]N, ACCESSORY SUPERINTENDENT | 27 Oct 98 |

NGR FORM 430-[illegible] OCT 80

# PERFORMANCE A... RAISAL FORM

| 1. NAME | 2. TITLE AND GRADE | 3. ORGANIZATION |
|---|---|---|
| Menke, Ronald J. | Aircraft Engine Mechanic WG-10 | 151 MXS |

| 4. SSN | 5. | 6. | 7. |
|---|---|---|---|
| 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 | TECHNICIAN ( X ) AGR ( ) | NUMERIC FINAL SCORE 86.5 | DATE OF BIRTH: 21-Oct.-56 |

| 8. TECHNICIAN STATUS | 9. TYPE OF APPRAISAL | 10. APPRAISAL PERIOD |
|---|---|---|
| MERIT PAY ( ) NON MERIT PAY ( X ) | OFFICIAL ( X ) PROBATIONARY ( ) DETAIL ( ) | 22-Oct-96 TO 21-Oct-97 |

| 11. JOB ELEMENT STATUS | 12. HOW TECHNICIAN ACHIEVED OR EXCEEDED PERFORMANCE STANDARDS | 13. PLC .0 to 1.0 | 14. ELEMENT VALUE | 15. ELEMENT RATING |
|---|---|---|---|---|
| *1. | IN-SHOP ENGINE MAINTENANCE: Mr. Menke continues to be a reliable asset to the engine shop in preforming maintenance on engines. He continues to follow all applicable Tech. Data and finishes all tasks assigned in a timely manner. He has not had any major follow up discrepancies during this appraisal period. | .9 | 25 | 22.5 |
| *2. | PHASE/HOME STATION INSPECTIONS: During this appraisal period Ron completed all engine changes and phase inspections without any damage to equipment and no discrepancy trend was noted during follow up inspections. Tasks were completed in accordance with all applicable Tech. Data and within acceptable time frames. | .9 | 20 | 18 |
| *3. | SAFETY: Ron continues to maintain a professional attitude toward safety and security. During this appraisal period no safety or security policy violations have been noted. Ron is also very aware of environmental issues for the shop and helps in any way possible to maintain compliance. | .8 | 20 | 16 |
| *4. | UNSCHEDULED ENGINE MAINTENANCE AND ENGINE CHANGES: Mr. Menke continues to improve in this area of performance. He has completed all tasks within expected time frames, with no discrepancy trend, and has done this with little or no supervision. Ron can be counted on to work any task, and any where. | .9 | 20 | 18 |
| 5. | SUPPORT EQUIPMENT/TOOL MAINTENANCE AND CONTROL: Ron has a very professional attitude towards maintaining shop support equipment in serviceable condition. Ron continues to maintain tools in his care, and has had no major discrepancies noted this appraisal period. | .8 | 10 | 8 |
| 6. | TECHNICAL ORDERS,MAINTENANCE DOCUMENTATION, AND FORMS PREPARATION: Mr. Menke complies with all applicable Tech. Data in the performance of his work. His assistance with the computer continues to be of great value to the Propulsion Element, and to the unit. | .8 | 5 | 4 |

NGB Form 430-1(T)

| 11. JOB ELEMENT STATUS | HOW TECHNICIAN ACHIEVED OR EXCEEDED PERFORMANCE STANDARDS | 13. PLC .0 to 1.0 | 14. ELEMENT VALUE | 15. ELEMENT RATING |
|---|---|---|---|---|
| | I understand the requirements set forth in the Standards of Conduct for National Guard Technicians. [signature] | | | |

18. TRIAL/PROBATIONARY APPRAISAL RECOMMEND RETENTION ( ) DO NOT RECOMMEND RETENTION ( )

17. ADJECTIVE APPRAISAL UNACCEPTABLE ( ) MARGINALLY ACCEPTABLE ( ) FULLY ACCEPTABLE ( ) EXCELLENT (X) OUTSTANDING ( )

| 19. SIGNATURES | TYPED NAME AND TITLE | 20. DATE |
|---|---|---|
| A. APPRAISER [signature] | Lee D. McDaniel, Aircraft Engine Mechanic Foreman | 10-30-97 |
| B. TECHNICIAN [signature] | Ronald J. Menke, Aircraft Engine Mechanic | 10-30-97 |
| C. REVIEWER [signature] | Michael R. McCowen, Aircraft Engine Mechanic Foreman | 10-30-97 |
| D. APPROVING OFFICIAL [signature] | Jon M. Axtman, Component Repair Foreman | 10-30-97 |

# PERFORMANCE APPRAISAL FORM

| | | |
|---|---|---|
| 1. NAME<br>Menke, Ronald J. | 2. TITLE AND GRADE<br>Aircraft Engine Mechanic WG-10 | 3. ORGANIZATION<br>151 MXS |

| | | | |
|---|---|---|---|
| 4. SSN<br>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 | 5.<br>TECH. ( XX ) AGR ( ) | 6. NUMERIC FINAL SCORE<br>81 | 7. DATE OF BIRTH<br>21-Oct-56 |

| | | |
|---|---|---|
| 8. TECHNICIAN STATUS<br>MERIT ( ) NON MERIT PAY (XX ) | 9. TYPE OF APPRAISAL<br>OFFICIAL(XX )PROB.( )DETAIL( ) | 10. APPRAISAL PERIOD<br>22-Oct-95 TO 21-Oct-96 |

| 11. JOB (ELE)MENT | 12. HOW TECHNICIAN ACHIEVED OR EXCEEDED PERFORMANCE STANDARDS | 13. PLC .0 - 1.0 | 14. VALUE | 15. RATIN(G) |
|---|---|---|---|---|
| *1. | Aircraft Engine Maintenance and Flightline Dispatching: Mr. Menke continues to display excellent abilities in this area of his performance. He has completed all tasks within expected time frames. No discrepancy trend has been noted during this appraisal period and he has completed all tasks with very little supervisory assistance. | .8 | 25 | 20 |
| *2. | Phase Dock and Intermediate Shop Maintenance, Inspections, Removal and Installation of Aircraft Engines: During this appraisal period Ron completed all engine changes and phase inspections without any damage to equipment and no discrepancy trend was noted during follow on inspections. Tasks were completed in accordance with all applicable technical data and within acceptable time frames. | .8 | 25 | 20 |
| *3. | Safety and Security: Ron continues to maintain a professional attitude toward safety and security. During this appraisal period he did not have any violations of safety or security policies. He is observant of safety practices and was instrumental in preventing a potential accident when he questioned the running of an aircraft with open fuel system write-ups. | .9 | 20 | 18 |
| 4. | Technical Orders, Maintenance Documentation and Forms Preparation: Mr. Menke complies with all applicable technical data in the performance of his work. His assistance with the computer continues to be of great value to the Propulsion Element. | .8 | 10 | 8 |
| 5. | Shop and Wing Support Equipment Maintenance: All observations made during this appraisal period indicate that no discrepancy trend has developed in Ron's maintenance of shop and wing support equipment. | .8 | 10 | 8 |
| 6. | Tool Control: Ron has maintained his professional attitude toward | .7 | 10 | 7 |

| 11. JOB ELEMENT | 12. HOW TECHNICIAN ACHIEVED OR EXCEEDED PERFORMANCE STANDARDS | 13. PLC .0 - 1.0 | 14. VALUE | 15. RATING |
|---|---|---|---|---|
| | tool control. During this appraisal period he has not had any lost tool incidents.<br><br>I understand the requirements set forth in the Standards of Conduct for National Guard Technicians. Initials [initials] | | | |

16. TRIAL/PROBATIONARY APPRAISAL RECOMMEND RETENTION( ) DO NOT RECOMMEND RETENTION ( )

17. ADJECTIVE APPRAISAL UNACCEPTABLE( ) MARGINALLY ACCEPTABLE( ) FULLY ACCEPTABLE( ) EXCELLENT(X ) OUTSTANDING( )

| 18. SIGNATURES | 19. TITLE AND GRADE | 20. DATE |
|---|---|---|
| A. APPRAISER [signature] | Aircraft Engine Mechanic Foreman WS-09 | 25 March 97 |
| B. TECHNICIAN [signature] | Aircraft Engine Mechanic WG-10 | 25 March 97 |
| C. REVIEWER [signature] | Aircraft Engine Mechanic Foreman WS-10 | 20 Mar 97 |
| D. APPROVING OFFICIAL [signature] | Aircraft Mechanic Supervisor WS-14 | 20 March 1997 |

# PERFORMANCE APPRAISAL FORM

1. NAME: Menke, Ronald J.
2. TITLE AND GRADE: Aircraft Engine Mechanic
3. ORGANIZATION: 151 MXS
4. SSN: 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
5. TECHNICIAN ( X ) AGR ( )
6. NUMERIC FINAL SCORE: 81
7. DATE OF BIRTH: 21-Oct-56
8. TECHNICIAN STATUS: MERIT PAY ( ) NON MERIT PAY ( X )
9. TYPE OF APPRAISAL: OFFICIAL ( X ) PROBATIONARY ( ) DETAIL ( )
10. APPRAISAL PERIOD: 1-Sep-94 TO 21-Oct-95

| 11. JOB ELEMENT STATUS | 12. HOW TECHNICIAN ACHIEVED OR EXCEEDED PERFORMANCE STANDARDS | 13. PLC .0 to 1.0 | 14. ELEMENT VALUE | 15. ELEMENT RATING |
|---|---|---|---|---|
| *1. | **Aircraft Engine Maintenance and Flightline Dispatching:** Mr. Menke's maintenance abilities are excellent. He completes all tasks well within expected time frames. He coordinates maintenance actions and delays with supervision as required. He is capable of performing all maintenance functions without supervisory assistance. | .8 | 25 | 20 |
| *2. | **Phase Dock and Intermediate Shop Maintenance, Inspections, Removal and Installation of Aircraft Engines:** During this appraisal period all maintenance actions in this area were complied with well within required time frames. Follow up inspections were accomplished with no discrepancies being noted. | .8 | 20 | 16 |
| *3 | **Safety and Security:** Ron meets all requirements established by local and Air National Guard policies. He insures that his work area is clean and safe at all times. During this appraisal period he has not been involved in any incidents that might endanger himself, others or unit assets. Ron is very aware of the importance of a safe work area and does everything possible to insure that that is the atmosphere in the shop and on the flight line. | .8 | 20 | 16 |
| 4. | **Technical Orders, Maintenance Documentation and Forms Preparation:** In the performance of his duties Ron follows all pertinent technical data that is required. He clears all computer generated discrepancies as soon as possible and is exceptionally well versed in computer language which gives us a local source of information and expertise that is counted on frequently to take care of computer problems. He has also been assigned as the shop's Engine Condition Monitoring NCOIC and has been performing exceptionally well in this area. | .9 | 10 | 9 |
| 5. | **Shop and Group Support Equipment Maintenance:** Mr. Menke always insures that the equipment in his use is serviceable and in good condition. He will put forth the effort required to correct any problems that he identifies. Ron takes the initiative to make improvements that are of benefit to the entire shop. | .8 | 10 | 8 |
| 6. | **Tool Control:** During this appraisal period Mr. Menke has not had any lost tool incidents. He complies with all policies regarding tool control. | .7 | 10 | 7 |

NGB Form 430-1(T)

| 11. JOB ELEMENT STATUS | 12. HOW TECHNICIAN ACHIEVED OR EXCEEDED PERFORMAN[CE STAN]DARDS | 13. PL[...] .0 to 1.0 | [14.] ELEMENT VALUE | 15. ELEMENT RATING |
|---|---|---|---|---|
| 7. | **Manner of performance:** Policy guidance precluded evaluation in this area. Performance Standards will be changed to reflect this change.<br><br>I understand the requirements set forth in the Standards of Conduct for National Guard Technicians [signature] | 1.0 | 5 | 5 |

16. TRIAL/PROBATIONARY APPRAISAL RECOMMEND RETENTION ( ) DO NOT RECOMMEND RETENTION ( )

17. ADJECTIVE APPRAISAL UNACCEPTABLE ( ) MARGINALLY ACCEPTABLE ( ) FULLY ACCEPTABLE ( ) EXCELLENT (X) OUTSTANDING ( )

| 18. SIGNATURES | 19. TYPED NAME AND TITLE | 20. DATE |
|---|---|---|
| A. APPRAISER [signature] | Michael R. McCowen, Airaft Engine Mechanic Foreman | 06-18-6 |
| B. TECHNICIAN [signature] | Ronald J. Menke, Aircraft Engine Mechanic | 06-19-96 |
| C. REVIEWER [signature] | Jon M. Axtman, Component Repair Foreman | 6-18-96 |
| D. APPROVING OFFICIAL [signature] | Scot W. Johnson, Logistics Maintenance Officer | 18 Jun 96 |

PERFORMANCE APPRAISAL FORM

| 1. NAME | 2. TITLE AND GRADE | 3. ORGANIZATION |
|---|---|---|
| MENKE, Ronald J. | Aircraft Engine Mechanic WG-8602-10 | 191 AGU |

| 4. SSN | 5. | 6. | 7. |
|---|---|---|---|
| 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 | TECHNICIAN (XXX) NTR ( ) | NUMERIC FINAL SCORE 80 | DATE OF BIRTH: 21 Oct 56 |

| 8. TECHNICIAN STATUS | 9. TYPE OF APPRAISAL | 10. APPRAISAL PERIOD |
|---|---|---|
| MERIT PAY ( ) NON MERIT PAY (XXX) | OFFICIAL (XX) INTERMEDIARY ( ) DETAIL ( ) | 10-22-93 TO 08-31-94 |

| 11. JOB ELEMENT STATUS | 12. HOW TECHNICIAN ACHIEVED OR EXCEEDED PERFORMANCE STANDARDS | 13. PLC .0 to 1.0 | 14. ELEMENT VALUE | 15. ELEMENT RATING |
|---|---|---|---|---|
| *1. | AIRCRAFT ENGINE MAINTENANCE AND FLIGHT LINE DISPATCHING: Ronald J. Menke performs his on-equipment duties in an excellent manner. While accomplishing aircraft engine maintenance, he ensures that the Production Supervisor is constantly updated regarding engine status and on-equipment E.T.O.C. Using applicable technical data and proper tools Ron is able to complete his on-equipment duties promptly. | .8 | 25 | 20 |
| *2. | PHASE DOCK, INTERMEDIATE AND SHOP MAINTENANCE, INSPECTIONS, AND R & R OF AIRCRAFT ENGINES: Ron is a self-starter, seeing a job needing to be done and doing it. His engine inspection techniques have resulted in better overall engine performance. Removal and replacement of aircraft engines occur well within established time limits. Upon completion of his duties he ensures that his work area and all equipment is cleaned up and secured. | .8 | 20 | 16 |
| *3. | SAFETY AND SECURITY: Ron is very conscientious in safety and security matters. He is well aware of the need for good safe work habits in order to prevent injury to personnel and/or damage to equipment. He ensures that tools and equipment and his work area are clean and secured on a daily basis. He properly cares for, uses, and disposes of chemical and cleaning agents used in his work area. | .8 | 20 | 16 |
| 4. | TECHNICAL ORDERS, MAINTENANCE DOCUMENTATION AND FORMS PREPARATION: Ron performs the administrative function of his duties efficiently and effectively. He uses applicable technical data and ensures they are brought up to date as required; he ensures components are properly tagged as to their disposition; he documents his work and makes entries into CAMS as necessary. | .8 | 10 | 8 |
| 5. | SHOP AND GROUP SUPPORT EQUIPMENT MAINTENANCE: Ron's performance of test equipment inspections has been excellent. Using work cards and applicable technical data he has performed his inspections with no discrepancies during this appraisal period. | .8 | 10 | 8 |
| 6. | TOOL CONTROL: Ron is extremely conscientious where the care of hand tools are concerned. He ensures that they are cared for and inventoried properly. Damaged or lost tools are promptly accounted for and taken care of. CTKs are secured daily. | .8 | 10 | 8 |

NGB Form 430-1(T)
1 Oct 1980

| 11. ELEMENT NO. | 12. HOW TECHNICIAN ACHIEVED OR EXCEEDED PERFORMANCE STANDARDS | 13. PLC 0 to 1.0 | 14. ELEMENT VALUE | 15. ELEMENT RATING |
|---|---|---|---|---|
| 7. | MANNER OF PERFORMANCE: Ron's appearance is excellent. He conducts himself in a very professional manner. He maintains a very positive can-do attitude and has an excellent working relation with his fellow workers. Ron is an asset to this section and to the Utah Air National Guard.<br><br>"I understand the requirements set forth in The Standards of Conduct for Air National Guard Technicians."<br><br>[signature]<br>SIGNATURE | .8 | 5 | 4 |

16. TRIAL/PROBATIONARY APPRAISAL RECOMMEND RETENTION ( ) DO NOT RECOMMEND RETENTION ( )

17. ADJECTIVE APPRAISAL UNACCEPTABLE ( ) MARGINALLY ACCEPTABLE ( ) FULLY ACCEPTABLE ( ) EXCELLENT (XXX) OUTSTANDING ( )

| 18. SIGNATURES | 19. TYPED NAME AND TITLE | 20. DATE |
|---|---|---|
| A. APPRAISER [signature] | Michael L. Allison, AGU Specialists Supervisor | 6 Sept 94 |
| B. TECHNICIAN [signature] | Ronald J. Menke, Aircraft Engine Mechanic | September 6, 94 |
| C. REVIEWER [signature] | Larry L. Widerburg, Production Supervisor | 7 Sept 94 |
| D. APPROVING OFFICIAL [signature] | Paul B. Reutlinger, AGU Maintenance Officer | 20 Sept 94 |

# PERFORMANCE APPRAISAL FORM

| | | |
|---|---|---|
| 1. NAME<br>Ronald J Menke | 2. TITLE AND GRADE WG-8602-10<br>Aircraft Engine Mechanic | 3. ORGANIZATION<br>191 St AGU |
| 4. TECHNICIAN STATUS<br>☐ MERIT PAY ☒ NON-MERIT PAY | 5. TYPE OF APPRAISAL<br>☒ OFFICIAL ☐ DETAIL | 6 APPRAISAL PERIOD<br>31 Dec 92 TO 21 Oct 93 |

| 7. JOB ELEMENT NO. | 8. HOW TECHNICIAN ACHIEVED OR EXCEEDED PERFORMANCE STANDARDS | 9. PLC 1.0 TO 1.01 | 10 ELEMENT VALUE | 11. ELEMENT RATING |
|---|---|---|---|---|
| 1. * | Aircraft Engine Maintenance And Flight Line Dispatching:<br>Mr. Menke uses appropriate Technical Data when working on Aircraft Engines and APU's. He is quick to report to the jobs he is dispatched to and reports progress and completions in a timely manner.<br>He has a fine attitude and is positive about completing his work quickly and efficiently. He works well with others and is knowledgeable in his job assignment. He likes to work in a clean and clutter free environment. | .8 | 25 | 20 |
| 2. * | Phase Dock and Intermediate Shop Maintenance: Inspections, Removal and Installation of Aircraft Engines:<br>Mr. Menke is fully qualified and follows directives during maintenance, removal and installation of Aircraft Engines. He takes proper care of kits and equipment used in these actions.<br>He works hard to complete all assignments safely and within guidelines. He takes time to insure work areas, parts and equipment are maintained and secured. | .8 | 20 | 16 |
| 3 * | Safety And Security:<br>Mr. Menke is knowledgeable of established standards and procedures in these areas. He insures a safe and secure work area is maintained and insures that subordinates are trained in these areas. Mr. Menke is very concerned with maintaining a clean and FOD free work area and environment. | .8 | 20 | 16 |
| 4. | Technical Orders , Maintenance Documentation, and Forms Preparation:<br>Mr Menke is knowledgeable of applicable T.O.'s and uses appropriate forms in all areas of documentation. Requsitions, turnins and tagging are done in a professional manner. | .7 | 10 | 7 |
| 5. | Shop and Group Support Equipment Maintenance:<br>Mr. Menke is knowledgeable of needed Support Equ. .ment maintenance and follows | .7 | 10 | 7 |

| 7. JOB ELEMENT NO. | 8. HOW TECHNICIAN ACHIEVED OR EXCEEDED PERFORMANCE STANDARDS | 9. PLC (.0 TO 1.0) | 10. ELEMENT VALUE | 11. ELEMENT RATING |
|---|---|---|---|---|
| | Tech Data, work cards and Directives in this area of his assignment. All actions are properly documented and appropriate forms are used. | | | |
| 6. | Tool Control: Mr. Menke is concerned with control and upkeep of tools and equipment. He is very instrumental in his shops tool program and has helped procure needed tools and equipment. He helps insure inventory, control and upkeep of these items is accomplished properly. | .8 | 10 | 8 |
| 7. | Manner Of Performance: Mr. Menke is a team player and accomplishes his job well. His conduct and appearance are very good and he takes care of business in a professional manner. His attitude and good work contribute greatly to the success of the AGU organization. | .8 | 5 | 4 |
| | I understand the requirements set forth in the Standards Of Conduct For National Guaed Technicians: Technicians Signature: [signature] | | | |

12 TRIAL/PROBATIONARY PERIOD APPRAISAL ☐ RECOMMEND RETENTION ☐ DO NOT RECOMMEND RETENTION

13 TOTAL FROM BLOCK 11: 78

14 ADJECTIVE APPRAISAL: ☐ UNACCEPTABLE ☐ MARGINALLY ACCEPTABLE ☐ FULLY ACCEPTABLE ☒ EXCELLENT ☐ OUTSTANDING

| 15 | SIGNATURES | 16 TITLE | 17. DATE |
|---|---|---|---|
| A. APPRAISER | [signature] | AGU Superintendant. | 26 OCT 93 |
| B. TECHNICIAN | [signature] | Aircraft Engine Mechanic. | 4 NOV 93 |
| C. REVIEWER | [signature] | AGU Maintenance Officer. | 26 OCT 93 |
| D. APPROVING OFFICIAL | [signature] | Director Operations. | 30 Oct 93 |

PERFORMANCE AP...ISAL FORM

1. NAME Menke, Ronald J | 2. TITLE AND GRADE AC ENGINE MECH. WG-8602-10 | 3. ORGANIZATION 151 CAMS UTAH ANG

4. SSN 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 | 5. TECHNICIAN (XX) AGR ( ) | 6. FINAL NUMERIC SCORE: 74 | 7. DATE OF BIRTH: 21-Oct-56

8. TECHNICIAN STATUS: MERIT PAY ( ) NON MERIT PAY (XX) | 9. TYPE OF APPRAISAL: OFFICIAL (XX) PROBATIONARY ( ) DETAIL ( ) | 10. APPRAISAL PERIOD FROM: 17-Dec-91 TO: 31-Dec-92

| 11. JOB ELEMENT NO. | 12. HOW TECHNICIAN ACHIEVED OR EXCEEDED PERFORMANCE STANDARDS | 13. PLC (.0 TO 1.0) | 14. ELEMENT VALUE | 15. ELEMENT RATING |
|---|---|---|---|---|
| * 1. | When performing engine and APU maintenance Mr. Menke always uses appropriate Technical Data. He tackles assigned tasks aggressively, completing them within required time frames. He works well without supervision and no follow-up discrepancies have been noted during this appraisal period. He has attended Engine Run School during this appraisal period and eagerly seeks additional training when possible. He has proven to be a valuable asset to the Engine Shop. | .8 | 25 | 20 |
| * 2. | Mr. Menke removes and installs aircraft engines in accordance with all applicable Technical Data. Ron takes his profession seriously and it is evident in his maintenance habits. His knowledge of engine maintenance and JEIM practices has improved during this appraisal period. | .7 | 20 | 14 |
| * 3. | Mr. Menke follows all safety Regulations and established policies. He ensures a safe work area is maintained and never performs in a manner that would jeopardize the safety of himself or others. | .7 | 20 | 14 |
| 4. | Mr. Menke properly documents all maintenance actions in accordance with 00-20 series Technical Orders. As T.O. Custodian he has gained a lot of knowledge and has improved the Engine Shop files to the best condition ever. | .7 | 10 | 7 |
| 5. | Mr. Menke ensures that shop support equipment in his use is clean and serviceable. When performing inspections on support equipment he is thorough. No discrepancies have been noted during follow-up inspections. | .7 | 10 | 7 |
| 6. | Mr. Menke exhibits a great deal of pride in caring for hand tools. He properly documents SAC Form 167, Tool Control Log, and ensures the tools in his care are clean and serviceable. | .8 | 10 | 8 |
| 7. | Mr. Menke tackles assigned tasks aggressively. He is self motivated and always displays a positive attitude, accepting assignments willingly and carrying them to completion with little or no supervisory assistance. He frequently takes the initiative to accomplish objectives that might otherwise be abandoned. When | .8 | 5 | 4 |

NGB FORM 43 (T) (MACHINE FACSIMILE)

PERFORMANCE AP..AISAL FORM

1. NAME Menke, Ronald J | 2. TITLE AND GRADE AC ENGINE MECH. WG-8602-10 | 3. ORGANIZATION 151 CAMS UTAH ANG

4. SSN 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 | 5. TECHNICIAN (XX) AGR ( ) | 6. FINAL NUMERIC SCORE: 67 | 7. DATE OF BIRTH: 21-Oct-56

8. TECHNICIAN STATUS: MERIT PAY ( ) NON MERIT PAY (XX) | 9. TYPE OF APPRAISAL: OFFICIAL (XX) PROBATIONARY ( ) DETAIL ( ) | 10. APPRAISAL PERIOD FROM: 21-Oct-90 TO: 17-Dec-91

| 11. JOB ELEMENT NO. | 12. HOW TECHNICIAN ACHIEVED OR EXCEEDED PERFORMANCE STANDARDS | 13. PLC (.0 TO 1.0) | 14. ELEMENT VALUE | 15. ELEMENT RATING |
|---|---|---|---|---|
| * 1. | When performing engine and APU maintenance Mr. Menke always uses appropriate Technical Data. He tackles assigned tasks aggressively, completing them within required time frames. He works well without supervision and no follow-up discrepancies have been noted during this appraisal period. He has proven to be a valuable asset to the Engine Shop. | .7 | 25 | 17.5 |
| * 2. | Mr. Menke removes and installs aircraft engines in accordance with all applicable Technical Data. He has become proficient at QEC kit installation, removal and maintenance. Ron takes his profession seriously and it becomes evident in his maintenance practices. | .6 | 20 | 12 |
| * 3. | Mr. Menke follows all safety Regulations and established policies. He ensures a safe work area is maintained and never performs in a manner that would jeopardize the safety of himself or others. | .6 | 20 | 12 |
| 4. | Mr. Menke properly documents all maintenance actions in accordance with 00-20 series Technical Orders. Using proper Technical Orders and good judgment Ron has proven to be a valuable asset to the Engine Shop. | .7 | 10 | 7 |
| 5. | Mr. Menke ensures that shop support equipment in his use is clean and serviceable. When performing inspections on support equipment he is thorough. No discrepancies have been noted during follow-up inspections. | .7 | 10 | |
| 6. | Mr. Menke exhibits a great deal of pride in caring for hand tools. He properly documents SAC Form 167, Tool Control Log, and ensures the tools in his care are clean and serviceable. | .8 | 10 | 8 |
| 7. | Mr. Menke tackles assigned tasks aggressively. He is self motivated and always displays a positive attitude, accepting assignments willingly and carrying them to completion with little or no supervisory assistance. | .7 | 5 | 3.5 |

NGB FORM 430-1(T) (MACHINE FACSIMILE)

| 1. JOB ELEMENT #. | 12. HOW TECHNICIAN ACHIEVED OR EXCEEDED PERFORMANCE STANDARDS | 13. PLC (.0 TO 1.0) | 14. ELEMENT VALUE | 15. ELEMENT RATING |
|---|---|---|---|---|
| | "I understand the requirements set forth in the standards of conduct for the National Guard Technicians." [signature] | | | |

TRAIL/PROBATIONARY APPRAISAL: RECOMMEND RETENTION ( ) DO NOT RECOMMEND RETENTION ( )

ADJECTIVE APPRAISAL: UNACCEPTABLE ( ) MARGINALLY ACCEPTABLE ( ) FULLY ACCEPTABLE (XX) EXCELLENT ( ) OUTSTANDING ( )

| | SIGNATURES | 19. TYPED NAME AND TITLE | 20. DATE |
|---|---|---|---|
| APPRAISER | [signature] | Michael R. McCowen, AC Eng. Mech. Fmn. | 7 Jan 92 |
| TECHNICIAN | [signature] | Ronald J. Menke, AC Engine Mechanic | 13 January 92 |
| REVIEWER | [signature] | Don L. Mattonen, AC Mech. Gen. Fmn. | 7 Jan 92 |
| APPROVING OFFICIAL | [signature] | For Craig G Anderson. LTC .DCM | 8 JAN 92 |

# EXHIBIT 27

## APPLICATION FOR IMMEDIATE EMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION

**US District Court - Utah**

**January 5, 2001**

**Injunction & Restraining Order - EXHIBIT 27**

Scott H. York, Bar No. 8120
Danny Quintana, Bar No. 4121
DANNY QUINTANA & ASSOCIATES, PC
68 South Main Street, Suite 600
Salt Lake City, Utah 84101
(801) 363-7726 Telephone
(801) 521-4625 Facsimile
quintana@xmission.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF UTAH – CENTRAL DIVISION

| | |
|---|---|
| RONALD J. MENKE,<br><br>Plaintiff,<br><br>vs.<br><br>UTAH AIR NATIONAL GUARD, U.S. DEPT. OF DEFENSE, and ROBERT TEINERT,<br><br>Defendants. | APPLICATION FOR IMMEDIATE TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION PURSUANT TO RULE 65<br><br>Civil No. 2:00-CV-0978 ST<br><br>Judge ______________ |

COMES NOW plaintiff Ronald J. Menke, by and through counsel Scott H. York, DANNY QUINTANA & ASSOCIATES, PC, who hereby respectfully applies to the Court for an Order temporarily restraining defendants Utah Air National Guard and U.S. Department of Defense from discharging, or otherwise refusing to reinstate, Plaintiff from enlistment in the Utah Air National Guard. Plaintiff further moves the Court for hearing and order on the issue of

making the Court's temporary order a Permanent Preliminary Injunction on Defendants pending the outcome and resolution of this case. Plaintiff supports this application as follows:

1. Federal Rule of Civil Procedure 65 provides in pertinent part:

> "A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from the specific facts shown by affidavit or by the verified complaint that immediate irreparable injury, loss, or damage will result to applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required." F.R.Civ.P. 65(b).

2. On or about December 19, 2000, Plaintiff filed Summons and Complaint against defendants Utah Air National Guard and U.S. Department of Defense, among others.

3. Within the Complaint, Plaintiff alleged, among other things, that Defendants wrongfully terminated Plaintiff from his position of employment as a Title 32 jet engine mechanic for the Utah Air National Guard. A Title 32 employee, as defined in 32 U.S.C.A. § 709, must hold military enlistment in order to retain civilian employment with defendant Utah Air National Guard.

4. Defendant's wrongful termination lead to Plaintiff being denied entry to the premises of Hill Air Force Base.

5. Plaintiff's exclusion from the Base in turn prevented him from participating in and completing the practice drills and military training exercises as required by his military enlistment contract with the Utah Air National Guard.

6. In a memorandum dated September 14, 2000, Plaintiff received "Notification of Intent to Discharge" from defendant Utah Air National Guard. (*See* Attachment "A", Memorandum of Maj. Paul V. Erickson, UTANG; 9/14/2000). This Notification stated that Plaintiff was to be subjected to "involuntary discharge action to be effected before expiration of your current Expiration Term of Service, 9 January 2001." (*Id.*). The "reasons for this action focus around [Plaintiff's] failure to meet Air Force standards of performance and to demonstrate the qualities of leadership required as a Non-commissioned Officer." (*Id.*). And further, that Plaintiff will be "receiving a general discharge – Under Other than Honorable Conditions, service characterization." (*Id.*). Plaintiff will also be "identified as 'Ineligible for Reenlistment in the Air National Guard of the United States'." (*Id.*).

7. Finally, the Notification states that Plaintiff is entitled to appointment of military legal counsel and a hearing before the Administrative Discharge Board.

8. On or about October 4, 2000, Plaintiff specifically requested appointment of military counsel and a hearing before the Administrative Discharge Board. (*See* Attachment "B", Memorandum of Scott H. York; 10/4/2000). As of the date of this application, Defendants have failed to provide Plaintiff with either military counsel or hearing to which he is entitled.

9. If defendants are not enjoined from discharging Plaintiff prior to January 9, 2001, Plaintiff will suffer immediate irreparable injury, loss, or damage, as follows:

a. As of January 9, 2001, Plaintiff will have completed the equivalent of 18 years of service in the Air National Guard. This 18-year mark is the point where plaintiff becomes vested in and entitled to his military retirement benefits from the Defendants.

Defendants' intentional discharge of Plaintiff one day before these benefits vest wrongfully deprives Plaintiff of an implicit and explicit condition of his 18 years of service to the United States. Plaintiff will be damaged by the loss of the total value of his retirement entitlement.

b. For at least 18 years, Plaintiff has made a career out of being a jet engine mechanic. Plaintiff has a vested interest in the knowledge and expertise accumulated over the course of his service with the Air National Guard. Plaintiff's knowledge and expertise are valuable and marketable commodities, the destruction of which will impact Plaintiff's future employment and economic relations. Defendants' wrongful discharge of Plaintiff "Under Other than Honorable Conditions" will cause immediate irreparable injury, loss, or damage to Plaintiff's reputation and the marketability of his knowledge and expertise as a jet engine mechanic. The exacerbation of Defendants' wrongful discharge with the caveat of "Under Other than Honorable Conditions" practically insures that Plaintiff will not be able to obtain employment as a jet engine mechanic in the limited and highly competitive private sector. In other words, Defendants are barring Plaintiff from ever working in his career field in the private sector.

c. As noted in paragraphs 9(a) & (b) *supra*, Defendants are discharging Plaintiff "Under Other than Honorable Conditions" without counsel and hearing, and one day before he becomes vested in his retirement. In doing so, Defendants are wrongfully depriving Plaintiff of his retirement benefits and his ability to obtain alternate employment in the private sector, and his ability to meaningfully mitigate the damages

from discharging Plaintiff from military enlistment, they will be successful in permanently terminating Plaintiff from his civilian employment even if their termination is later found to be wrongful, and no order of reinstatement will be enforceable.

10. The need for immediate injunctive relief with or without notice to Defendants, or Defendants' attorneys, is created by Defendants' own acts and intensions to discharge Plaintiff from the Air National Guard before January 9, 2001. Plaintiff has made repeated attempts to comply with the notice and service requirements of the Procedural Rules throughout the prosecution of Plaintiff's claims. Plaintiff served its Notice of Claim (in accord with State and Federal Governmental Immunity Acts) on Brigadier General Lunt, Commander of the Utah Air National Guard, the Utah Attorney General and the U.S. Attorney for the District of Utah, on or about November 29, 2000. Neither the Utah Attorney General nor the U.S. Attorney have yet to enter an appearance on behalf of defendants Utah Air National Guard or U.S. Department of Defense. (*See* Memorandum of Assistant U.S. Attorney, dated 12/4/2000; Memorandum of Utah Attorney General Claims Specialist, dated 12/20/2000). However, on or about January 5, 2001, the Utah Attorney General's office did make telephone contact with Plaintiff's counsel to indicated that it would be representing the Defendants Utah Air National Guard and/or U.S. Department of Defense, but that it was not authorized to represent said Defendants in this Application for Immediate Temporary Injunctive Relief.

11. Nevertheless, Plaintiff has insured that this Application was served on said Defendant Utah Air National Guard and/or U.S. Department of Defense (via B.G. Lunt), the Utah Attorney General, and the U.S. Attorney. Plaintiff's counsel, by the verification of this Application *below*,

hereby certifies to the Court that a true and correct copy of this Application was served on defendants Utah Air National Guard and/or U.S. Department of Defense, the Utah Attorney General, and the U.S. Attorney by means of their respective facsimile capabilities and by certified, postage pre-paid U.S. Mail, on or about January 5, 2001.

12. Because the injury, loss, and damage to Plaintiff sought to be avoided by this Application will materialize at 11:59:59 p.m., on January 8, 2001, there is little or no time for Defendants and/or Defendants' attorney(s) to be briefed and heard in opposition. Plaintiff welcomes a full hearing within 10 days of the issuance of the Temporary Order to allow Defendants to make full comment and opposition on the Plaintiff's Motion to convert this Temporary Order into a Permanent Preliminary Injunction. Plaintiff notified B.G. Lunt directly of the need for the Utah National Guard to obtain legal counsel on or about December 26, 2000 (See Memorandum of Scott H. York, dated 12/26/2000); however, Plaintiff knows that neither the Utah Attorney General nor the U.S. Attorney has as yet offered to represent defendants Utah Air National Guard and/or U.S. Department of Defense regarding this Application for Temporarily Restraining Order, and he does not expect these Defendants to be prepared to oppose this Application without counsel in the time available.

13. This Application for Temporary Restraining Order should be granted with or without further notice to Defendants because; (1) the threat of irreparable injury, loss, or damage to Plaintiff is immanent (to occur within three days of the filing of this application), (2) the injury, loss, or damage to Plaintiff is severe and irreparable (being discharged "Under Other than Honorable Conditions" and identified as "Ineligible for Reenlistment", Plaintiff stands to loose

DATED this 5th day of January, 2001.

DANNY QUINTANA & ASSOCIATES, PC

Scott H. York
Attorney for Plaintiff

STATE OF UTAH )
(: ss
COUNTY OF SALT LAKE )

Appeared before me SCOTT H. YORK, on 1/5, 2001, who after first being duly sworn on oath, states that all of the information contained in this document is true and correct to the best of his knowledge.

1/6/02
My Commission Expires
(Seal)

Notary Public residing in
Salt Lake County, Utah

LETA L. JENSEN
NOTARY PUBLIC • STATE OF UTAH
235 BILTMORE AVE.
MURRAY, UTAH 84107
COMM. EXP. JAN. 6, 2002

# EXHIBIT 28

## MEMORANDUM OF AGREEMENT

### Between State of Utah and Ronald Joseph Menke

**January 8, 2001**

STATE OF UTAH
OFFICE OF THE ATTORNEY GENERAL

MARK L. SHURTLEFF
ATTORNEY GENERAL

RAY HINTZE
CHIEF DEPUTY-CIVIL

RYAN MECHAM
CHIEF OF STAFF

KIRK TORGENSEN
CHIEF DEPUTY-CRIMINAL

January 8, 2001

**BY FACSIMILE & FIRST CLASS MAIL**

Scott H. York
DANNY QUINTANA & ASSOCIATES, P.C.
68 South Main Street, Suite 600
Salt Lake City, Utah 84101
Fax # 521-4625

Re: Menke v. Utah Air National Guard, filed in the U.S. District Court for the District of Utah (Central Division), Civil No. 2:00CV00973

Dear Scott:

This letter confirms our telephone conversation today at approximately 5 p.m. As I advised you in person immediately after this afternoon's hearing and during our telephone conversation, the Utah Air National Guard has informed me that if it takes no further action as represented to the Court, Mr. Menke's enlistment contract will expire at midnight, and that upon the expiration of the contract Mr. Menke will automatically receive a General Discharge under Honorable Conditions, which will make him fully eligible for re-enlistment. You advised me that your client has no objection to being so discharged, and that therefore it was unnecessary to attempt to reach Judge Jenkins for further guidance this evening.

Sincerely,

Debra J. Moore
Debra J. Moore
Assistant Attorney General

cc: Honorable Bruce S. Jenkins (by mail only)

160 EAST 300 SOUTH - P.O. BOX 140856 - SALT LAKE CITY, UTAH 84114-0856
TELEPHONE: (801) 366-0100 FAX: (801) 366-0101

# EXHIBIT 29

## SPECIAL ORDER AW-124

### Notice of Discharge

### January 9, 2001

STATE OF UTAH, MILITARY DEPARTMENT
HEADQUARTERS UT NG - OTAG
765 NORTH 2200 WEST
SALT LAKE CITY, UTAH 84116-2999

Personnel Data-Privacy Act of 1974 (5 USC 552a)

SPECIAL ORDER
AW - 124

09 JAN 01

SSG RONALD J MENKE, 528641477, (Mailing Address: 612 NAVAJO STREET SALT LAKE CITY, UT 84104-2612) is relieved from assignment with the 151 LOG SUP FLT (M21LFN5T), UTANG, 765 NORTH 2200 WEST, SALT LAKE CITY, UTAH 84116-2999 and honorably discharged from the UTANG and as a Reserve of the Air Force effective 09 JAN 01. Airman will be furnished NGB Form 438. Authority: AFI 36-3209.

BY ORDER OF THE GOVERNOR

/S/OFFICIAL/S/

MITCHELL J. CATOE, COL, UTANG
CHIEF OF STAFF FOR AIR

DISTRIBUTION : C

SO AW - 124

00165

# EXHIBIT 30

## MEMORANDUM REQUESTING CORRECTION OF NGB FORM 22

**January 19, 2001**

**DANNY QUINTANA & ASSOCIATES**
ATTORNEYS AT LAW

DANNY QUINTANA
SCOTT H. YORK

68 SOUTH MAIN STREET
MCINTYRE BUILDING SUITE 600
SALT LAKE CITY, UTAH 84101

(801) 363-7726 TEL
(801) 521-4625 FAX
quintana@xmission.com

CIVIL RIGHTS — CRIMINAL DEFENSE — PERSONAL INJURY — CLASS ACTIONS — CIVIL LITIGATION

January 19, 2001

MSG. Karen Williams
UTAH AIR NATIONAL GUARD
765 North 2200 West
Salt Lake City, Utah 84116-2999

Re: Ronald J. Menke; Report of Separation and Record of Service

Dear MSG. Williams,

I am attorney for SSgt. Menke. He has provided me with a copy of the "Report of Separation and Record of Service" recently issued to him by your office. I am writing to your regarding some corrections that need to be made regarding this Report.

First, in box 26 of the Report, SSgt. Menke's 'Reenlistment Eligibility' is indicated as "Ineligible". As you may be aware, SSgt. Menke is currently in the course of litigation with the Utah Air National Guard. On or about January 8, 2001, an agreement between SSgt. Menke and the Utah Air National Guard regarding SSgt. Menke's enlistment was reached in Federal Court. The Assistant Utah Attorney General in the attached memorandum memorialized the parts of that agreement that are relevant here. As you will note, the memorandum clearly states that pursuant to the agreement, SSgt. Menke is to be "fully eligible for re-enlistment". Therefore the Report is in contradiction with this agreement with regard to SSgt. Menke's reenlistment status. SSgt. Menke respectfully requests that box 26 of the Report be corrected in this regard.

Second, in box 5b of the Report, SSgt. Menke's pay grade at the time of his discharge is indicated as "E-5". In 1995, SSgt. Menke was disciplined for an incident that occurred in Italy. As a result of this action, SSgt. Menke received a temporary reduction in pay grade that has been gradually restored over time. On information and belief this disciplinary action was to have terminated, and SSgt. Menke was to have been fully restored to grade 'E-6' status, on or about December 2, 2000. SSgt. Menke is currently gathering the information regarding this issue, and I will forward it to you as soon as I receive it. In the interim, would you please look into the matter and see if you can determine whether SSgt. Menke was indeed supposed to have an E-6 pay grade status at the time of the expiration of his enlistment. If so, box 5b of the Report will also need to be corrected.

Thank you for your assistance and careful consideration of this matter. Please feel free to contact my offices with any questions or comments.

Sincerely,

Scott H. York
Attorney at Law

# EXHIBIT 31

## DENIAL OF REENLISTMENT ELIGIBILITY

**February 8, 2001**

**UTAH AIR NATIONAL GUARD**
**151st Military Personnel Flight**

Lieutenant Colonel Burnell H. Burgon
Director of Personnel
765 North 2200 West, Utah ANG Base
Salt Lake City, UT 84116-2999

8 February 2001

Mr. Scott H. York, Attorney
Danny Quintana & Associates
68 South Main Street
McIntyre Bldg Suite 600
Salt Lake City, UT 84101

Thank you for your letter of 19 January 2001, referencing your questions concerning the discharge package, effective 9 January 2001, for SSgt Ronald J. Menke, 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. I welcome the opportunity to assist in clarification of the issues you presented and will answer for MSgt Karen Williams, my staff member who processed the discharge action at my direction.

In reference to your first issue:
To my knowledge the 'Reenlistment Eligibility' for SSgt Menke has correctly been indicated on the NGB Form 22, Report of Separation and Record of Service, as "Ineligible" for reenlistment in the Air National Guard of the United States. In accordance with Air Force Instruction 36-3209, Separation and Retirement Procedures for Air National Guard and Air Force Reserve Members, it is the prerogative of the unit Commander, recommending discharge action, to take into account the overall military service record of the discharging member and to make determination as to whether the eligibility for reenlistment, of that member, would be in the best interests of the military and specifically the Air National Guard. This was the recommendation of the unit Commander and the discharging authority upheld it.

I personally spoke with Lt Col Bruce Evans, Headquarters, Utah Air National Guard Judge Advocate, and we mutually confirmed the effective date and that SSgt Menke's discharge and military service characterization was to be defined as General Under Honorable Conditions. There was not specific mention of an agreement for Reenlistment Eligibility. With all due respect, the letter from the Assistant Attorney General implies assumption that such discharge automatically entitles the member to full eligibility for reenlistment; however, this is not necessarily the case and not normally the practice of this organization, especially under the conditions of a General vs. Honorable discharge. Your attached copy of the Assistant Attorney General's letter was the first I have seen of it and I would have questioned its implication and direction, before authorizing discharge action.

Please note to your client that the Commander's indication of the Reenlistment Eligibility is to be viewed as his/her recommendation towards reenlistment of the member into future military service, specifically the Air National Guard of the United States. Granted, it does tend to raise a 'flag' to the service branch considering SSgt Menke's enlistment, as to the losing Commander's evaluation of the member's prior service, but it is entirely waiverable based on the acceptance of the gaining Commander and that branch of service (including the Air National Guard of the United States) wishing to reenlist SSgt Menke. As with any enlistment, the particular branch of service has it's own criteria and prerogative to pursue or not pursue enlistment of any individual. Based on the circumstances surrounding SSgt Menke's separation from the Utah Air National Guard, it is my opinion that this recommendation is fair and in the best interests of the military service. The burden of justification for SSgt Menke to seek future military service will be required by him to explain this recommendation if applying for reenlistment, at any future time.

If this indication of Reenlistment Ineligibility is of continued concern, please contact Lt Col Bruce Evans, Headquarters Utah ANG Judge Advocate, and he can pursue reconsideration of this issue with the State discharge authority.

In reference to your second issue:
To my knowledge, SSgt Menke's rank of Staff Sergeant (E-5) was correct at the time of discharge. Regardless of the reasons for SSgt Menke's previous military demotion, a subsequent re-promotion is not automatic after any length of time and is fully predicated on the recommendation and prerogative of the of the unit commander, when he/she determines that the member is prepared for increased opportunity, responsibility, and meets all promotion criteria for the rank being considered. To my knowledge, as of SSgt Menke's effective discharge date from the Utah Air National Guard, my organization had not received any such recommendation for SSgt Menke to be promoted or re-promoted to the rank of Technical Sergeant (E-6).

I hope this information has served in clarifying you and your client's concerns. Questions or follow-up action can be pursued with Lt Col Bruce Evans, Judge Advocate, Utah Air National Guard, at 801/777-2847.

Regards,

BURNELL H. BURGON, Lt Col, UTANG
Director of Personnel

# EXHIBIT 32

## CORRECTION TO NGB FORM 22

**May 9, 2001**

**Correction of NGB Form 22 - EXHIBIT 32**

DEPARTMENTS OF THE ARMY AND THE AIR FORCE
NATIONAL GUARD BUREAU

CORRECTION TO NGB FORM 22

REPORT OF SEPARATION AND RECORD OF SERVICE IN THE [1] AIR NATIONAL GUARD OF UTAH

AND AS A RESERVE OF THE [2] AIR FORCE

DATE OF CORRECTION 9 May 2001

IDENTIFICATION DATA

| NAME (Last, First, Middle Initial) | SERVICE NUMBER | DATE AND PLACE OF DISCHARGE |
|---|---|---|
| MENKE RONALD JOSEPH | 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 | 9 January 2001<br>Utah Air National Guard |

| ORGANIZATION AND HOME STATION | PERMANENT ADDRESS FOR MAILING PURPOSES |
|---|---|
| 151st Logistics Support Flight<br>765 North 2200 West, Salt Lake City Utah 84116-2999 | 612 Navajo Street<br>Salt Lake City, Utah 84104-2612 |

CORRECTIONS

THE ORIGINAL REPORT OF SEPARATION AND RECORD OF SERVICE (NGB FORM 22) FOR THE ABOVE NAMED INDIVIDUAL IS CORRECTED AS INDICATED BELOW:

| ITEM NBR | CORRECTED TO READ |
|---|---|
| 26 | REENLISTMENT ELIGIBILITY: ELIGIBLE |

| TYPED NAME, GRADE OF OFFICER AUTHORIZED TO SIGN | SIGNATURE |
|---|---|
| BRUCE LYNN PETERSON, CMS, UTANG<br>Superintendent Military Personnel Flight | [signature] |

DISTRIBUTION:

NGB FORM 22A
10 MAR 58

[1] *Insert either Army or Air*
[2] *Insert either Army or Air Force*

00179

## NGB FORM 22 CONTINUATION SHEET

1. **Name:** MENKE, RONALD JOSEPH
2. **Department, component, and branch:** AIR FORCE – ANGUS
3. **Social Security Account Number:** 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
4a. **Grade, Rate, or Rank:** SSGT
4b. **Pay Grade:** E-5

**Blocks continued:**

18. Remarks: Prior Service:

| Grade | Periods of Service | Branch/Component | Type of Discharge |
|---|---|---|---|
| E-1 | 11 Jan 77 – 28 Feb 77 | USNR | Honorable |
| E-3 | 01 May 77 – 08 May 81 | USN | Honorable |
| E-3 | 09 May 81 – 10 Jan 83 | USNR | Honorable |
| E-5 | 10 Jan 89 – 09 Jan 95 | UT ANG | Honorable |

////////////////////////////////////////////////// "NOTHING FOLLOWS" \\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\\

(Signature of separating member)

Mary J. Bateman
(Signature of official authorized)

RONALD JOSEPH MENKE
(Typed name of member)

MARY J. BATEMAN, MSG, UTANG
Chief Relocations & Employment
(Typed name, grade, title)

00180

# EXHIBIT 33

## ORDER OF DISMISSAL

### US District Court - Utah

### February 12, 2002

FILED
U.S. DISTRICT COURT
12 FEB 02 AM 11:35
DISTRICT OF UTAH
BY: DEPUTY CLERK

2002 FEB -8 P 5:09
U.S. DISTRICT COURT
DISTRICT OF UTAH RECEIVED

OFFICE OF U.S. DISTRICT JUDGE
BRUCE S. JENKINS

STEPHEN J. SORENSON, Acting United States Attorney (#3049)
MAGGIE H. ABUHAIDAR, Assistant United States Attorney (#9203)
Attorneys for the United States of America
185 South State Street, #400
Salt Lake City, Utah 84111-1506
Telephone: (801) 524-5682
Facsimile: (801) 524-6924

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| RONALD J. MENKE, Plaintiff, | : | Case No.: 2:00 CV 973J<br>Hon. Bruce S. Jenkins |
| vs. | : | **ORDER** |
| UTAH AIR NATIONAL GUARD, U.S. DEPARTMENT OF DEFENSE, and ROBERT TEINERT, Defendants. | : | |

This matter having come before the Court on Defendant United States Department of Defense's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56; and the Court having carefully considered the parties' written submissions; and the Court having heard oral argument from both parties on the Motion on January 28, 2002; and for good cause shown,

IT IS ORDERED that Plaintiff's First Cause of Action for Breach of Contract is dismissed for lack of subject matter jurisdiction because because the Little Tucker Act limits this Court's jurisdiction over any contract claim to $10,000, 28 U.S.C. §§ 1346(a)(2), 1491(a), and Plaintiff is claiming in excess of $10,000; and

23

IT IS FURTHER ORDERED that Plaintiff's Second Cause of Action for Wrongful Termination pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., is dismissed for failure to file an administrative claim as required by 28 U.S.C. § 2675(a), which deprives this Court of subject matter jurisdiction; and

IT IS FURTHER ORDERED that Plaintiff's Second Cause of Action for Wrongful Termination pursuant to 42 U.S.C. § 1983 is dismissed for lack of subject matter jurisdiction; and

IT IS FURTHER ORDERED that Plaintiff's Third Cause of Action for violation of the Whistleblower Protection Act of 1989, Pub.L. No. 101-12, 103 Stat. 16 (1989), is dismissed for failure to exhaust administrative remedies as required by 5 U.S.C. § 1214, which deprives this Court of subject matter jurisdiction; and

IT IS FURTHER ORDERED that judgment is granted in favor of Defendant United States Department of Defense and against Plaintiff Ronald J. Menke on all claims; and

IT IS FURTHER ORDERED that this case is closed.

DATED this 12th day of February 2002

Hon. BRUCE S. JENKINS
United States District Judge

# EXHIBIT 34

## COMPLAINT
## US OFFICE OF SPECIAL COUNSEL

**March 25, 2002**

**Complaint - MSPB – EXHIBIT 34**

U.S. OFFICE OF SPECIAL COUNSEL (202) 653-7188 / (800) 872-9855

**COMPLAINT OF POSSIBLE PROHIBITED PERSONNEL PRACTICE**
**OR**
**OTHER PROHIBITED ACTIVITY**

*(Please print legibly or type and complete all pertinent items. Enter "N/A" (Not Applicable) or "Unknown" where appropriate. Use Continuation Sheet on page 12 if more room is needed.)*

**PART 1: PROHIBITED PERSONNEL PRACTICES / OTHER PROHIBITED ACTIVITY (GENERAL)**

1. Name of person seeking OSC action ("Complainant"): Mr. (✔) Ms. ( ) Mrs. ( ) Miss ( )
Ronald J. Menke

2. Position, title, series, and grade: Aerospce Propulsion Technician, WG10 step 5

3. Agency name: Utah Air National Guard

4. Agency address: 765 N. 2200 W.

5. Home or mailing address: 612 South Navajo Street, Salt Lake City, UT 84104-2612

6. Contact information: Telephone number(s): ( 801 ) 599-0469 (Home)
( 801 ) 595-1766 (Office) Ext. ______
Fax number: ( ) ______
E-mail address: Rockle1876@aol.com

7. If you are filing this complaint as a legal or other representative of the Complainant, please supply the following information:

Name and title of filer: Mr. (✔) Ms. ( ) Mrs. ( ) Miss ( )
Scott York

Address: 3341 South 700 East, Salt Lake City, UT 84106

Telephone number(s): ( 801 ) 363-7726 (Home)
( ) ______ (Office) Ext. ______
Fax number: ( 801 ) 521-4625
E-mail address: scotthyork@hotmail.com

8. Are you (or is the Complainant, if you are filing as a representative) covered by a collective bargaining agreement? *(Check one.)*
( ) Yes ( ) No (✔) I don't know

9. How did you first become aware that you could file a complaint with OSC?

(✔) OSC Web site ( ) OSC speaker ( ) OSC brochure ( ) OSC poster
( ) news story ( ) agency personnel office ( ) union ( ) co-worker
( ) other *(please describe)*: ______
Date *(approximate)*: March 25, 2002

10. What is the employment status of the person affected by the suspected prohibited personnel practice or other prohibited activity? (*Check all applicable items — more than one item may apply.*)

a. ( ) Applicant for Federal employment

b. ( ) Competitive Service
- ( ) temporary appointment
- ( ) term appointment
- ( ) career or career-conditional appointment
- ( ) probationary employee

c. (✔) Excepted Service
- ( ) Schedule A
- ( ) Schedule B
- ( ) Schedule C
- (✔) National Guard Technician
- ( ) nonappropriated fund
- ( ) Postal Service
- ( ) Tennessee Valley Authority
- ( ) VA Dept. of Medicine and Surgery
- ( ) Veterans Readjustment Act (VRA)
- ( ) other (*specify*): ____________

d. ( ) Senior Executive Service (SES), Supergrade, or Executive Level
- ( ) career SES
- ( ) noncareer SES
- ( ) career GS-16, 17, or 18
- ( ) noncareer GS-16, 17, or 18
- ( ) Executive Level V or above (career) fund
- ( ) Executive Level V or above (noncareer)
- ( ) Presidential appointee (Senate-confirmed)

e. ( ) Other
- ( ) civil service annuitant
- ( ) former civil service employee
- ( ) competitive service
- ( ) excepted service
- ( ) military officer or enlisted person
- ( ) contract employee
- ( ) other (*specify*): ____________
- ( ) unknown

11. What other action(s), if any, have you taken to appeal, grieve, or report this matter under any other procedure? (*Check all that apply.*)

( ) No, or not applicable — Date: ____________
(✔) Appeal filed with Merit Systems Protection Board (MSPB) — Date: March 25, 2002
( ) Petition for reconsideration of initial decision filed with MSPB — Date: ____________
Initial Decision No. ____________
(✔) Grievance filed under agency grievance procedure — Date: December 21, 1999
( ) Grievance filed under negotiated grievance procedure — Date: ____________
(✔) Matter heard by arbitrator under grievance procedure — Date: February 3, 2000
( ) Matter is pending in arbitration
( ) Discrimination complaint filed with agency — Date: ____________
( ) Agency or AJ decision on discrimination complaint appealed to the Equal Employment Opportunity Commission — Date: ____________
( ) Appeal filed with the Office of Personnel Management — Date: ____________
( ) Unfair Labor Practice (ULP) complaint filed with the Federal Labor Relations Authority General Counsel — Date: ____________
(✔) Lawsuit filed in Federal Court — Date: November 18, 2000
Court name: Utah Federal Court, 10th District
( ) Reported matter to agency Inspector General — Date: ____________
( ) Reported matter to Member of Congress — Date: ____________
Name of Senator or Representative: ____________
(✔) Other (*specify*): Chief National Guard Bureau, Lt. General R. Davis, November 15, 2000

12. What official is responsible for the violation(s) that you are reporting, and what is his/her employment status? *(If more than one official, continue on page 12. See item 10 for appropriate description of employment status.)*

Name: ____________________

Position/Title: ____________________

Employment status: ____________________

13. What are the actions or events that you are reporting to OSC? *(To the extent known, specifically list: (a) any suspected prohibited personnel practices or other prohibited activity, other than reprisal for whistleblowing; and (b) any personnel actions involved.* ***IF YOU ARE ALLEGING REPRISAL FOR WHISTLEBLOWING, SKIP TO PART 2 OF THIS FORM ON THE NEXT PAGE. PART 2 REQUESTS DETAILS OF WHISTLEBLOWER REPRISAL ALLEGATIONS.)***

14. What facts support the statement(s) made in Question 13? *(Be as specific as possible about dates, locations, and the identities and positions of all persons mentioned. In particular, identify actual and potential witnesses, giving work locations and telephone numbers when possible. Also, attach any pertinent documents that you may have. Please provide, if possible, a copy of the notification of the agency's proposal and/or decision about the personnel action(s) covered by your request for OSC action. If more space is needed, continue on page 12.)*

15. What action would you like OSC to take in this matter (*i.e.*, what remedy are you asking for?)

## PART 2: REPRISAL FOR WHISTLEBLOWING

***THIS SECTION OF THE COMPLAINT FORM IS <u>SOLELY</u> FOR USE BY PERSONS WHO ARE ALLEGING <u>REPRISAL FOR WHISTLEBLOWING</u> — <u>I.E.,</u> THOSE PERSONS WHO BELIEVE THAT PERSONNEL ACTIONS WERE TAKEN, NOT TAKEN, OR THREATENED BECAUSE OF A WHISTLEBLOWER DISCLOSURE. PLEASE READ THE INTRODUCTORY MATERIAL BEFORE ANSWERING THE QUESTIONS THAT BEGIN ON THE NEXT PAGE. USE CONTINUATION SHEET ON PAGE 12 IF MORE ROOM IS NEEDED.***

***COMPLAINANTS <u>NOT</u> ALLEGING REPRISAL FOR WHISTLEBLOWING SHOULD PROCEED TO PART 3 (CONSENT TO CERTAIN DISCLOSURES OF INFORMATION) AT PAGE 9.***

***<u>Reprisal for Whistleblowing Allegations:</u>*** As a general rule, it is a prohibited personnel practice to *take or fail to take, or threaten to take or fail to take, a personnel action* because of a protected disclosure of certain types of information by a Federal employee, former employee, or applicant for Federal employment. 5 U.S.C. § 2302(b)(8).

***<u>Legal Elements of a Violation:</u>*** By law, certain elements must be present before OSC can establish that a legal violation has occurred. Two of the required elements that must be established are (1) that a whistleblower disclosure was made, and (2) that an agency took, failed to take, or threatened to take or fail to take a personnel action because of the whistleblower disclosure. Your description of these elements will facilitate OSC's investigation of your allegation(s).

***<u>Protected Disclosures:</u>*** A disclosure of information is a protected whistleblower disclosure if a Federal employee, former employee, or applicant for Federal employment discloses information which he or she reasonably believes evidences —

- *a violation of any law, rule, or regulation;*
- *gross mismanagement;*
- *a gross waste of funds;*
- *an abuse of authority; or*
- *a substantial and specific danger to public health or safety.*

***<u>Covered Personnel Actions:</u>*** The law prohibiting reprisal for whistleblowing requires proof that one or more of the following personnel actions occurred because of a protected disclosure:

(1) appointment;
(2) promotion;
(3) action under chapter 75 of title 5 of the U.S. Code, or other disciplinary or corrective action;
(4) detail, transfer, or reassignment;
(5) reinstatement;

(6) restoration;
(7) reemployment;
(8) performance evaluation under chapter 43 of title 5;
(9) decision concerning pay, benefits, or awards, or concerning education or training reasonably expected to lead to appointment, promotion, performance evaluation, or other personnel action; or
(10) decision to order psychiatric testing or examination; or any other significant change in duties, responsibilities, or working conditions.

***Appeal to the Merit Systems Protection Board (MSPB):*** If OSC fails to complete its review of your whistleblower reprisal allegation within 120 days after it receives your complaint, or if it closes your complaint at any time without seeking corrective action on your behalf, you have the right to file an Individual Right of Action (IRA) appeal with the MSPB. To establish its jurisdiction over your appeal, the MSPB will require you to show that the appeal relates to the same whistleblower disclosure(s) and personnel action(s) that you raised in your complaint to OSC. *By law, your failure to satisfy the MSPB that your appeal relates to the same allegations that you made to OSC will result in dismissal of the appeal.*

***Reporting Your Allegation(s):*** In the section that starts below, provide the information requested about all disclosures that you believe led to reprisal by the agency involved. **If any of the disclosures were in writing, please provide a copy of the disclosure with your complaint.** If you will need more space, please use the Continuation Sheet on page 12, or make extra copies of the page needed (in blank).

**IT IS IMPORTANT THAT YOU LIST ALL DISCLOSURES AND PERSONNEL ACTIONS INVOLVED IN YOUR COMPLAINT.** This is because (1) failure to list any disclosure or personnel action may delay the processing of your complaint by OSC; and (2) a comprehensive listing will avoid disputes in any IRA about the MSPB's jurisdiction to hear your appeal.

**IT IS ALSO IMPORTANT THAT YOU KEEP A COPY OF THE NEXT THREE PAGES OF YOUR COMPLAINT (AND THE CONTINUATION SHEET, IF IT CONTAINS ANSWERS TO ANY QUESTIONS IN THE NEXT THREE PAGES).** They will serve as proof required by the MSPB (if you file an IRA) of the disclosures and personnel actions that you reported to OSC. 5 C.F.R. § 1209.6(a)(6), as amended.

---

1. This complaint alleges that reprisal(s) occurred because of a disclosure of information that evidenced *(check all that apply)* —

( ✓ ) a violation of any law, rule, or regulation;
(   ) gross mismanagement;
(   ) gross waste of funds;
( ✓ ) abuse of authority;
( ✓ ) a substantial and specific danger to public health or safety; or
(   ) none of the above.

**MUST BE COMPLETED FOR ALL DISCLOSURES INCLUDED IN THIS COMPLAINT**

2.

| A. WHAT INFORMATION WAS DISCLOSED? (DESCRIBE WHISTLEBLOWER DISCLOSURE.) | |
|---|---|
| On numerous occassions, Mr. Menke disclosed the fact that a co-worker was performing job related duties while under the influence of intoxicants (alcohol).<br><br>No action was taken in response to the reports even though the reported party was previously reprimanded for drinking on the job.<br><br>Four days later, in an effort to put a stop to the Menke's repeated disclosures, and to protect the confidence of the supervising authority, the allegations against Mr. Menke were fabricated and he was unjustifiably terminated within 60 days. | WHEN WAS THE DISCLOSURE MADE? (MO/DA/YR)<br>September 14, 1999<br><br>TO WHOM (NAME AND TITLE) WAS THE DISCLOSURE MADE?<br>McCowen/ Aerospace Propulsion Supervisor<br><br>WHAT PERSONNEL ACTION(S) OCCURRED (OR WAS/WERE THREATENED) BECAUSE OF THE DISCLOSURE? (LIST PERSONNEL ACTION NUMBERS FROM PP. 4-5.)<br>Termination<br><br>WHEN DID PERSONNEL ACTION(S) OR THREAT(S) OCCUR? (MO/DA/YR)<br>September 17, 1999/November 16, 1999 |

| B. WHAT INFORMATION WAS DISCLOSED? (DESCRIBE NEXT WHISTLEBLOWER DISCLOSURE.) | |
|---|---|
| | WHEN WAS THE DISCLOSURE MADE? (MO/DA/YR)<br><br>TO WHOM (NAME AND TITLE) WAS THE DISCLOSURE MADE?<br><br>WHAT PERSONNEL ACTION(S) OCCURRED (OR WAS/WERE THREATENED) BECAUSE OF THE DISCLOSURE? (LIST PERSONNEL ACTION NUMBERS FROM PP. 4-5.)<br><br>WHEN DID PERSONNEL ACTION(S) OR THREAT(S) OCCUR? (MO/DA/YR) |

| C. WHAT INFORMATION WAS DISCLOSED? (DESCRIBE NEXT WHISTLEBLOWER DISCLOSURE.) | |
|---|---|
| | WHEN WAS THE DISCLOSURE MADE? (MO/DA/YR)<br><br>TO WHOM (NAME AND TITLE) WAS THE DISCLOSURE MADE?<br><br>WHAT PERSONNEL ACTION(S) OCCURRED (OR WAS/WERE THREATENED) BECAUSE OF THE DISCLOSURE? (LIST PERSONNEL ACTION NUMBERS FROM PP. 4-5.)<br><br>WHEN DID PERSONNEL ACTION(S) OR THREAT(S) OCCUR? (MO/DA/YR) |

**KEEP A COPY OF THIS PAGE FOR YOUR RECORDS**

**MUST BE COMPLETED FOR ALL DISCLOSURES INCLUDED IN THIS COMPLAINT**

2. *(cont'd)*

| D. WHAT INFORMATION WAS DISCLOSED? *(DESCRIBE NEXT WHISTLEBLOWER DISCLOSURE.)* | |
|---|---|
| | WHEN WAS THE DISCLOSURE MADE? (MO/DA/YR) |
| | TO WHOM (NAME AND TITLE) WAS THE DISCLOSURE MADE? |
| | WHAT PERSONNEL ACTION(S) OCCURRED (OR WAS/WERE THREATENED) BECAUSE OF THE DISCLOSURE? (LIST PERSONNEL ACTION NUMBERS FROM PP. 4-5.) |
| | WHEN DID PERSONNEL ACTION(S) OR THREAT(S) OCCUR? (MO/DA/YR) |

| E. WHAT INFORMATION WAS DISCLOSED? *(DESCRIBE NEXT WHISTLEBLOWER DISCLOSURE.)* | |
|---|---|
| | WHEN WAS THE DISCLOSURE MADE? (MO/DA/YR) |
| | TO WHOM (NAME AND TITLE) WAS THE DISCLOSURE MADE? |
| | WHAT PERSONNEL ACTION(S) OCCURRED (OR WAS/WERE THREATENED) BECAUSE OF THE DISCLOSURE? (LIST PERSONNEL ACTION NUMBERS FROM PP. 4-5.) |
| | WHEN DID PERSONNEL ACTION(S) OR THREAT(S) OCCUR? (MO/DA/YR) |

| F. WHAT INFORMATION WAS DISCLOSED? *(DESCRIBE NEXT WHISTLEBLOWER DISCLOSURE.)* | |
|---|---|
| | WHEN WAS THE DISCLOSURE MADE? (MO/DA/YR) |
| | TO WHOM (NAME AND TITLE) WAS THE DISCLOSURE MADE? |
| | WHAT PERSONNEL ACTION(S) OCCURRED (OR WAS/WERE THREATENED) BECAUSE OF THE DISCLOSURE? (LIST PERSONNEL ACTION NUMBERS FROM PP. 4-5.) |
| | WHEN DID PERSONNEL ACTION(S) OR THREAT(S) OCCUR? (MO/DA/YR) |

**KEEP A COPY OF THIS PAGE FOR YOUR RECORDS**

**MUST BE COMPLETED FOR ALL DISCLOSURES INCLUDED IN THIS COMPLAINT**

3. If you are **not** the person who actually made a disclosure listed above, please identify the disclosure involved, and provide the name, address, and telephone number of the person who made the disclosure, if known. *(Use Continuation Sheet on page 12 if room is needed for identification of more than one person.)*

Disclosure: 2A ( ) 2B ( ) 2C ( ) 2D ( ) 2E ( ) 2F ( )

Name: ______________________

Address: ______________________

______________________

Telephone number: ( ) ______ Ext. ____

4. Explain why you believe that the personnel action(s) listed above occurred because of the disclosure(s) that you described. *(Be as specific as possible about any dates, locations, names, and positions of all persons mentioned in your explanation. In particular, identify actual and potential witnesses, giving work locations and telephone numbers, if known. Attach a copy of any documents that support your statements.* *__Please provide, if possible, a copy of the notification of the agency's proposal and/or decision about the personnel action(s) covered by your complaint.__* *If more space is needed, continue on page 12.)*

5. Mr. Menke was terminated after 18 years of service. He was terminated for allegedly making a a threatening phone call, after hours, to a co-worker whom he was regularly reporting as being under the influence of alcohol while on the job. Notwithstanding a complete lack of substantive evidence corroborating the accusations made against Menke, or the fact that Menke and his accuser worked together without incident after the alleged incident, Menke was terminated without the benefit of standard disciplinary procedures.

In our subsequent investigation we were made aware of the facts indicating that Mr. Menke's accuser has damaging information regarding those individuals who made the decision to terminate his employment after 18 years of service.

A more detailed explanation will be available at a later date if so required.

6. What action would you like OSC to take in this matter (*i.e.*, what remedy are you asking for)?

Mr. Menke would like to be re-instated as a Aerospace Propulsion technician and be fully compensated for the damages he has incurred as a result of the unlawful termination. Specifically, lost wages, attorneys fees etc.

Additional, Mr. Menke would like an investigation into the management and practices of the Utah Air National Guard, regarding the administration of the Technician Personnel Regulation 752.

**KEEP A COPY OF THIS PAGE FOR YOUR RECORDS**

**PART 3: CONSENT TO CERTAIN DISCLOSURES OF INFORMATION**

OSC asks everyone who files a complaint alleging a possible prohibited personnel practice or other prohibited activity to select one of three Consent Statements shown below. **If we do not receive a signed Consent Statement, we will assume that you have agreed to Consent Statement 1.** Please return the original signed Consent Statement to OSC. Also, please keep a copy of the signed Consent Statement and all documents that you send to OSC for your own records.

If you initially choose a Consent Statement that contains restrictions on OSC's use of information, you may later select a less restrictive Consent Statement. If your selection of Consent Statement 2 or 3 prevents OSC from being able to conduct an investigation, an OSC representative will contact you, explain the circumstances, and provide you with an opportunity to select a less restrictive Consent Statement.

You should be aware that the Privacy Act allows the information contained in OSC's files to be used or disclosed for certain purposes, regardless of which Consent Statement you sign. Information about the circumstances under which OSC can use or disclose information pursuant to the Privacy Act appears on the next page.

***(Please sign one)***

***Consent Statement 1***

I consent to communications between OSC and the involved agency as deemed necessary by OSC. I *agree* to allow OSC to disclose my identity as the complainant to the agency involved and information from or about me if OSC decides this is necessary to elicit information from the agency involved, take further action, or obtain corrective or disciplinary action. I understand that regardless of the Consent Statement I choose, OSC may disclose information as allowed by the Privacy Act.

[signature] March 28, 2002

Complainant's Signature for Consent Statement 1 Date Signed

***Consent Statement 2***

I consent to communications between OSC and the involved agency as deemed necessary by OSC, but I *do not agree* to allow OSC to disclose my identity as the complainant to the agency involved. I *agree* to allow OSC to disclose only that information from or about me, without disclosing my name or other individual identifying information, if OSC decides it is necessary to elicit information from the agency involved, take further action, or obtain corrective or disciplinary action. I understand that in some circumstances (for example, if I am complaining about my nonpromotion), it would not be possible for OSC to maintain my anonymity while communicating with the agency involved about a specific personnel action. In such circumstances, I understand that my request for anonymity may preclude OSC from taking further action on my complaint. I understand that regardless of the Consent Statement I choose, OSC may disclose information as allowed by the Privacy Act.

Complainant's Signature for Consent Statement 2 Date Signed

***Consent Statement 3***

I *do not consent* to communications between OSC and the agency involved even if OSC decides it is necessary to elicit information from the agency, take further action, or obtain corrective or disciplinary action. I understand that if OSC decides that it is not possible to take further action on my complaint without obtaining additional information from the agency involved, my lack of consent will preclude OSC from taking further action on my complaint. I understand that regardless of the Consent Statement I choose, OSC may disclose information as allowed by the Privacy Act.

Complainant's Signature for Consent Statement 3 Date Signed

**PART 4: CERTIFICATION AND SIGNATURE**

***I certify that all of the statements made in this complaint (including any continuation pages) are true, complete, and correct to the best of my knowledge and belief. I understand that a false statement or concealment of a material fact is a criminal offense punishable by a fine of up to $10,000, imprisonment for up to five years, or both. 18 U.S.C. § 1001.***

Signature | March 28, 2002
Date Signed

**PART 5: PRIVACY ACT / PAPERWORK REDUCTION ACT STATEMENTS**

Routine Uses. Limited disclosure of information from OSC files is needed to fulfill OSC's investigative, prosecutorial, and related responsibilities. OSC has described 18 routine uses for information in its files in the *Federal Register* (F.R.), at 66 F.R. 36611 (July 12, 2001), and 66 F.R. 51095 (October 5, 2001). A copy of the routine uses is available from OSC upon request. A summary of the routine uses appears below.

OSC may disclose information from its files in the following circumstances:

1. to disclose that an allegation of prohibited personnel practices or other prohibited activity has been filed;

2. to disclose information needed by the Office of Personnel Management (OPM) for inquiries involving civil service laws, rules or regulations, or to obtain an advisory opinion;

3. to disclose information about allegations or complaints of discrimination to entities concerned with enforcement of antidiscrimination laws;

4. to the MSPB or the President, when seeking disciplinary action;

5. to the involved agency, MSPB, OPM, or the President when OSC has reason to believe that a prohibited personnel practice has occurred, exists, or is to be taken;

6. to disclose Information to Congress in OSC's annual report;

7. to disclose information to third parties (without identifying the complainant unless OSC has the complainant's consent) as needed to conduct an investigation; obtain an agency investigation and report on information disclosed to OSC's whistleblower disclosure channel; or to give notice of the status or outcome of an investigation;

8. to disclose Information as needed to obtain information about hiring or retention of an employee; issuance of a security clearance; conduct of a security or suitability investigation; award of a contract; or issuance of a license, grant, or other benefit;

9. to the Office of Management and Budget (OMB) for certain legislative coordination and clearance purposes;

10. to provide information from an individual's record to a congressional office acting pursuant to the individual's request;

11. to furnish information to the National Archives and Records Administration for records management purposes;

12. to produce summary statistics and work force or other studies;

13. to provide information needed by the Department of Justice for certain litigation purposes;

14. to provide information needed by courts or adjudicative bodies for certain litigation purposes;

15. to disclose information to the MSPB as needed in special studies authorized by law;

16. for coordination with an agency's Office of Inspector General or comparable entity, to facilitate the coordination and conduct of investigations and review of allegations;

17. to news media or the public in certain circumstances (except when the Special Counsel determines that disclosure in a particular case would be an unwarranted invasion of personal privacy); and

18. to the Department of Labor and others as needed to implement the Uniformed Services Employment and Reemployment Rights Act of 1994, and the Veterans' Employment Opportunities Act of 1998.

If OSC officials believe that disclosure may be appropriate in a situation not covered by one of OSC's routine uses, or one of the 11 other exceptions to the Privacy Act's general prohibition on disclosure, OSC will seek written authorization from the complainant permitting the disclosure.

*Purposes, Burdens, and Other Information*. An agency may not conduct or sponsor a collection of information, and persons may not be required to respond to a collection of information, unless it (a) has been approved by OMB, and (b) displays a currently valid OMB control number. The information in this form is collected pursuant to OSC's legal responsibility to investigate: (a) allegations of prohibited personnel practices, to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken (5 U.S.C. § 1214); and (b) other allegations of prohibited activity (5 U.S.C. § 1216). The information will be reviewed by OSC to determine whether the facts establish its jurisdiction over the subject of the complaint, and whether further investigation and corrective or disciplinary action is warranted. The reporting burden for this collection of information is estimated to be an average of one hour and 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering the data needed, and completing and reviewing the form. Please send any comments about this burden estimate, and suggestions for reducing the burden, to the U.S. Office of Special Counsel, Planning and Advice Division, 1730 M Street, N.W. (Suite 201), Washington, DC 20036-4505. Use of this form to file a complaint alleging a prohibited personnel practice or other prohibited activity is required; use of this to file a complaint alleging only a Hatch Act violation is *not* required. 5 C.F.R. § 1800.1(d), as amended. As indicated in Part 3 of this form, complainants may request that OSC maintain their name, and information provided by them, in confidence.

COMPLAINT OF PROHIBITED PERSONNEL PRACTICE / OTHER PROHIBITED ACTIVITY
Page 12 of 12

**CONTINUATION SHEET**

| *Part No.* | *Item/Question No.* | *Response Continuation* |
|---|---|---|
| 1 | 12 | LtC Paul Reutlinger / Maintenance commander/Execpted service/N.G.technicia |
| 1 | 12 | Gen.James Miller/Adjutant General/ Execpted Service/National Guard Tech |
| 1 | 12 | Col.McCabe/ X.O. Mont. N.G./ Execpted Service /National Guard Technician |

KEEP A COPY OF THIS PAGE FOR YOUR RECORDS IF YOU ARE ALLEGING REPRISAL FOR WHISTLEBLOWING

# EXHIBIT 35

## OFFICE OF THE SPECIAL COUNSEL
## FILE NO. MA-02-1117

**April 12, 2002**

U.S. OFFICE OF SPECIAL COUNSEL
1730 M Street, N.W., Suite 201
Washington, D.C. 20036-4505

April 12, 2002

Scott York, Esquire
Quintana & York P.C.
3341 South 700 East
Salt Lake City, UT 84106

Re: OSC File No. MA-02-1117

Dear Mr. York:

This responds to your complaint on behalf of Mr. Ronald Menke that his appointment to the Utah Air National Guard was wrongly terminated in November 1999. You allege that management officials within the Utah Air National Guard retaliated against Mr. Menke because he disclosed that a co-worker was performing job related duties while under the influence of alcohol. Mr. Menke believed that this involved a violation of law, rule and regulation, an abuse of the authority of a supervisor, and a substantial and specific danger to public health or safety.

It is a prohibited personnel practice under 5 U.S.C. § 2302(b)(8) to take a personnel action against an employee because of a protected disclosure. Generally, if OSC determines that reasonable grounds exist to believe that a prohibited personnel practice has occurred, we may file a complaint for corrective action and/or disciplinary action with the Merit Systems Protection Board (the Board). The Board and Federal Circuit have held, however, that the Board lacks the authority to enforce an order against the National Guard. Singleton v. Merit Systems Protection Board, 244 F. 3d 1331 (Fed. Cir.2001). Because Mr. Menke's allegation of retaliation is against the Utah Air National Guard, we would be unable to pursue a complaint for corrective and/or disciplinary action before the Board. Consequently, we have made a preliminary determination to close our investigation into this matter.

As indicated above, we have made a preliminary determination to close our inquiry into this complaint Before we actually close the file, you may submit comments concerning our determination. Your response must be in **writing** and should address each of the reasons we cited in reaching our preliminary determination to close your complaint. You have **16 days** from the date of this letter to submit your written response. If you also wish to discuss this matter with me by phone, please let me know in your written comments that you wish to have such a discussion. We will then establish a mutually agreeable time for a phone call to be held soon thereafter. If we do not receive any comments by the end of the sixteen-day period, we anticipate

closing this file, and will send you a letter terminating the investigation and advising you of any additional rights you may have.

Sincerely,

Ellen M. Oskoui

Ellen M. Oskoui
Complaints Examiner
Complaints Examining Unit

U.S. OFFICE OF SPECIAL COUNSEL
1730 M Street, N.W., Suite 201
Washington, D.C. 20036-4505

April 30, 2002

Scott York, Esquire
Quintana & York P.C.
3341 South 700 East
Salt Lake City, UT 84106

Re: OSC File No. MA-02-1117 (Mr. Ronald Menke)

Dear Mr. York:

Thank you for your letter of comment about our preliminary determination on Mr. Menke's complaint. I have considered it, however, the information that you sent does not provide a basis for a change of our preliminary determination. We are, therefore, now closing this matter for the reasons stated in our letter of April 12, 2002.

Because Mr. Menke alleged reprisal for whistleblowing, he may have a right to seek corrective action from the Merit Systems Protection Board under the provisions of 5 U.S.C. sections 1214(a)(3) and 1221. You may file a request for corrective action with the Board within 65 days after the date of this letter. The Merit Systems Protection Board regulations concerning rights to file a corrective action case with the Board can be found at 5 C.F.R. Parts 1201-1206 and 1209. A letter explaining Mr. Menke's rights in more detail is enclosed. This letter should not be construed as an adjudication of any matter he has pending or plans to file under any administrative appeals procedure.

Sincerely,

Ellen M. Oskoui

Ellen M. Oskoui
Complaints Examiner
Complaints Examining Unit

U.S. OFFICE OF SPECIAL COUNSEL
1730 M Street, N.W., Suite 300
Washington, D.C. 20036-4505

April 30, 2002

Mr. Ronald Menke
c/o Scott York, Esquire
Quintana & York P.C.
3341 South 700 East
Salt Lake City, UT 84106

Re: <u>OSC File No. MA-02-1117</u>

Dear Mr. Menke:

The purpose of this letter is to notify you that you have a right to seek corrective action from the Merit Systems Protection Board (MSPB). As we informed you in our closure letter of this date, we have terminated our inquiry into your allegations. Because you alleged that you have been a victim of the prohibited personnel practice described in 5 U.S.C. § 2302(b)(8), commonly called reprisal for whistleblowing, you may have the following rights.

You may seek corrective action from the MSPB under the provisions of 5 U.S.C. §§ 1214(a)(3) and 1221 (individual right of action) for any personnel action taken or proposed to be taken against you because of a protected disclosure that was the subject of your complaint to this office. You may file a request for corrective action with the MSPB within 65 days after the date of this letter.

The Merit Systems Protection Board regulations concerning rights to file an individual right of action with the Board can be found at 5 C.F.R., parts 1201-1206 and 1209. If you choose to file such an appeal you should submit this letter to the Board as part of your appeal.

Sincerely,

Ellen M. Oskoui
Complaints Examiner
Complaints Examining Unit

# EXHIBIT 36

## STATEMENT OF TIMELINESS AND JURISDICTION OF THE MERIT SYSTEMS PROTECTION BOARD

**April 18, 2002**