4/18/02

Scott H. York, Bar No. 8120
Tyler B. Ayres, Bar No. 9200
Danny Quintana, Bar No. 4121
QUINTANA & YORK, PC
3341South 700 East
Salt Lake City, Utah 84106
(801) 363-7726 Telephone
(801) 521-4625 Facsimile
scotthyork@hotmail.com

**BEFORE THE UNITED STATES OF AMERICAN**
**MERIT SYSTEMS PROTECTION BOARD, DENVER FIELD OFFICE**

| | |
|---|---|
| RONALD J. MENKE,<br><br>Appellant,<br><br>vs.<br><br>AIR NATIONAL GUARD,<br><br>Agency. | **STATEMENT OF TIMELINESS AND JURISDICTION**<br><br>Docket No. DE-3443-02-0213-I-1<br><br>Judge Patricia M. Miller<br><br>Date: April ___, 2002 |

COMES NOW appellant, Ronald J. Menke, by and through counsel, Scott H. York, QUINTANA & YORK, PC, hereby responds to the Board's April 3, 2002 order, as follows:

1. On or about April 3, 2002, the Merit Systems Protection Board ordered Appellant to "file evidence and argument showing that your appeal was timely filed or that good cause existed for the delay," and to "file evidence and argument to prove that this action is within the Board's jurisdiction."

## PROCEDURAL HISTORY

2. This matter comes on appeal before the Board from the Adjutant General's "Final Decision Regarding the Adverse Action Appeal of Ronald J. Menke," issued May 17, 2000. [*See* Attachment "A"].

3. On or about October 4, 2000, Appellant received notice of the Agency's intent to dishonorably discharge Appellant from military service due to 'the Adjutant General's final decision'. Appellant took this first opportunity to challenge both his military discharge, and the 'final decision' vaguely referred to in the Agency's notice. [*See* Attachment "B", Oct. 4, 2000 memo of Scott H. York; and Attachment "C", Request for Military Counsel and Administrative Discharge Board]. Neither military counsel nor an Administrative Discharge Board was provided to Appellant despite his request.

4. Appellant sought out and finally obtained a copy of the Adjutant General's final decision on or about November 15, 2000.

5. Paragraph 4. of the Final Decision states; "In accordance with 32 U.S.C. 709e(5), '*there is no further administrative review of The* [sic] *Adjutant General's final decision*'." (*Internal quotes and emphasis in original*). [*See* Attachment "A"; para. 4].

6. On or about November 29, 2000, Appellant filed Notice of Claim with the State of Utah and the United States Department of Defense; pursuant to UCA § 63-30-1, *et. seq*. and 28 USCS § 2671, *et seq*. [*See* Attachment "D", Notice of Claim].

7. On or about December 20, 2000, Appellant filed summons and complaint in the US District Court, and served the same on the Agency and the US Department of Defense.

8. On or about January 5, 2001, Appellant filed an application for Immediate Temporary Restraining Order & Motion for Preliminary Injunction, pursuant to Fed.R.Civ.P. 65. Hearing on Appellant's motion was held January 9, 2001. The hearing resulted in a stipulated agreement on the record between the Appellant, the Agency, and the US Dept. of Defense that eliminated the need for injunctive relief.

9. It was established that Appellant's civilian employment as a federal Title 32 employee was separate and distinct from is military enlistment as a Utah Air National Guardsman. For the purposes of Appellant's civilian employment, the Utah Air National Guard supervised and directed Appellant on behalf of the Secretary of the US Air Force (Dept. of Defense). It was further determined that only the Agency's proposed immediate, dishonorable discharge (1/8/01) from military service and nomination of the Appellant as "ineligible for reenlistment" merited injunctive relief. Questions related the Dept. of Defense's liability for Appellant's termination from his civilian employment were properly reserved for trial on the merits.

10. To avoid injunction, the Agency stipulated to: allow Appellant's current term of enlistment to naturally expire and for his retirement benefits to vest (1/9/01); to provide him with and honorable discharge; and, to endow him with "re-enlistable" status. The Agency finally lived up to this stipulation several months later and Appellant's complaint was duly amended to dismiss those portions of the complaint dealing with Appellant's discharge from military service, on June 15, 2001.

11. The remaining causes in Appellant's complaint seek to appeal the decision of the Adjutant General and allege that Appellant was wrongfully terminated from his position as a

Title 32 civilian technician, and that the termination violated the contract and terms of employment established by 32 USCA § 709 and Technician Personnel Regulation No. 752, the state and federal Whistleblowers statutes (UCA § 67-21-1, 28 USCA § 1343, 5 USCA § 1221 and 29 USCA § 660).

12. On motion from the US Dept. of Defense on or about February 12, 2002, all three of Appellant's claims were dismissed without prejudice by the US District Court. [*See* Attachment "E", Order].

13. At the direction to the Office of the Adjutant General on or about March 23, 2002, Appellant filed this action with the Merit Systems Protection Board.

STATEMENT OF TIMELINESS

14. The final determination appealed from was allegedly rendered May 17, 2000. [*See* Attachment "A"].

15. Appellant did not receive notice of the Adjutant General's final decision to terminate Appellant's civilian employment, but rather surmised that the Adjutant General had rendered a judgment from the Agency's October 2, 2000 notice of termination of Appellant's military enlistment; which cited to the AG's "final determination" for grounds for dishonorable discharge of Appellant from the military. [*See* Attachment "B"].

16. Appellant immediately objected both to the vaguely referred to 'final determination' of the Adjutant General, and objected to the Agency's notice of dishonorable discharge from military enlistment. The Agency's notice was accompanied with a form letter response, which Appellant promptly corrected and completed and returned to the Agency. [see Attachment "C"].

Therein Appellant demanded as of right access to military counsel and the opportunity to hearing before an Administrative Discharge Board. To date, Appellant has received neither.

17. It required the combined efforts of the Agency and the Appellant, and more than 5 weeks, to locate a copy of the Adjutant General's May 17, 2000 'final determination'. Appellant was finally able to obtain an actual, physical copy of the 'final determination' document on or about November 15, 2000.

18. Since the 'final determination' document states in pertinent part; "In accordance with 32 U.S.C. 709e(5), '*there is no further administrative review of The* [sic] *Adjutant General's final decision*'.", Appellant prepared a summons and complaint to obtain judicial review of the Adjutant General's final decision.

19. In accordance with federal and state Governmental Immunities Acts, Notice of Claim was served on both the Agency and the US Dept. of Defense on or about November 29, 2000. Both Defendants were served because of uncertainty as to which was responsible for Appellant's Title 32 federal, civilian employee status.

20. Summons and complaint were served on both Defendants on or about December 20, 2000; after no response from either to Appellant's Notice of Claim.

21. Meanwhile, the Agency continued to ignore Appellant's request for military counsel and an Administrative Discharge, and prepared to dishonorably discharge Appellant from military service on January 8, 2001; just hours before Appellant's 18 years of military service vested, the next day on January 9th. This vicious act was intended to injure Appellant and deprive him of

valuable military benefits, earned through years of dedicated service. To make the damage permanent, the Agency also determined to dub the Appellant "non-reenlistable".

22. On or about January 5, 2001, Appellant applied for an immediate temporary injunction against the Agency proposed adverse discharge action on January 8th. The injunction was in place overnight and a hearing was held on January 9, 2001. Therein the Agency was persuaded to voluntarily allow Appellant's current term of enlistment to naturally expire, to provide him with an honorable discharge, and to endow him with "reenlistable" status.

23. Through the course of this hearing the Defendants represented and the US District Court found that the Appellant was a federal civilian employee whose employment status was determined by Title 32 Section 709. As such, the United States acts through the Department of Defense which in turn acts through the Utah Air National Guard to supervise Appellant's civilian employment. By comparison, Appellant's military enlistment is a purely local matter under the jurisdiction of state law.

24. Once the Agency lived up to its January 9, 2001 agreement regarding Appellant's military enlistment (on or about June 15th), Appellant amended his complaint to dismiss the enlistment-related claims against the Agency, and re-served the same on defendant US Dept. of Defense.

25. On motion for summary judgment by the United States, a hearing was held on January 28, 2002. On or about February 14, 2002, rather than summary judgment the Court determined to dismiss all of Appellant's claims without prejudice, relying in large part on the opinion that Appellant had not exhausted his administrative remedies. .

26. Thereafter, Appellant contacted the Office of the Adjutant General to discuss the apparent contradiction between the ruling of the District Court and the Adjutant General's 'final determination' that '*there is no further administrative review of the Adjutant General's final decision*'. Appellant was instructed to file a claim before the Merit Systems Protection Board.

27. On or about March 23, 2002, Appellant filed this action with the Merit Systems Protection Board seeking remedy to his wrongful termination as a federal civilian employee.

28. The Board has indicated that 'generally [Appellant] must file within 30 days after the effective date or the date he received the Agency's decision.' Here, Appellant has good cause for the delay between the effective date, or the notice date, and the filing of this appeal before the Board.

29. First, Appellant reasonably relied on the plain language of the Adjutant General's 'final determination'; "*there is no further administrative review of the Adjutant General's final decision*". [*See* Attachment "A", para. 4]. No further administrative review means, no further administrative review.

30. This lead to a year of the United States arguing that the Appellant should not be allowed to appeal the Adjutant General's 'final determination' because it was erroneous and Appellant had failed to exhaust '*further administrative review of the Adjutant General's final decision*'. The District Court apparently agreed, ruling to dismiss without prejudice so that Appellant could re-file his claims should '*further administrative review*' prove unfruitful. Exactly what these alleged avenues of "further administrative review" are supposed to be was never defined by the United States or the District Court.

31. Since the Court ruled that the Adjutant General's 'final decision' was not really final, Appellant contacted his offices. Now the Adjutant General apparently agrees with the Court and the United States that there is '*further administrative review*' through the Merit Services Protection Board, because Appellant was instructed to file the appeal at bar.

32. At no time throughout this gauntlet has Appellant been dilatory or 'sat on his rights'; no more than 30 days passing at any juncture. At every instance, Appellant has been diligent in his attempts to appeal the Adjutant General's 'final determination' once made aware of its existence. At every turn, the United States has misdirected and misinformed Appellant as to his civilian employee appellate rights, and never has the Agency provided the military counsel and grievance procedures admitted to be due to Appellant.

33. In *Lourie v. U.S. Postal Service*, M.S.P.B.1999, 82 M.S.P.R. 119, the Board found that a federal employee showed good cause for untimely filing of appeal, based on confusing language in agency's decision letter as to his appeal rights; notice language in the decision letter caused employee to believe that he could appeal to the Board after his grievance was appealed to arbitration.

34. In the present case, none of the delay in filing this appeal is attributable to a knowing or negligent waiver to Applicant's appellate rights. He has been attempting to exercise them from the moment of inception and has continued to diligently champion them to the present appeal. The Appellant should not be penalized and the United States wrongly rewarded by the jurisdictional ambiguities surrounding Title 32 federal civilian employees.

35. Appellant therefore prays the Board to find that good cause exists for the delay beyond the usual 30 days in the filing of this appeal.

STATEMENT OF JURISDICTION

36. The Board indicates that "definition [as] an 'employee' under 5 U.S.C. § 7511" is a prerequisite to the Board's jurisdiction over Appellant's appeal. Section 7511(b) states in pertinent part; "This chapter does not apply to an employee, . . . (5) who is described in section 8337(h)(1), relating to technicians in the National Guard." (5 USCA §7511(b)(5)).

37. Section 8337(h)(1) states in pertinent part; "As used in this subsection, the term "technician" means an individual employed under section 709(a) of title 32 or section 10216 of title 10 who, as a condition of the employment, is required under section 709(b) of title 32 or section 10216 of title 10, respectively, to be a member of the Selected Reserve. (5 USCA § 8337(h)(1)).

38. Section 709(a) states in pertinent part; "Under regulations prescribed by the Secretary of the Army or the Secretary of the Air Force, as the case may be, and subject to subsections (b) and (c), persons may be employed as technicians in, . . . (2) the maintenance and repair of supplies issued to the National Guard or the armed forces." (32 USCA § 709(a)(2)).

39. Since Appellant is appealing his termination as a Section 709(a) technician in the Utah Air National Guard, it appears that Section 8337(h)(1), and therefore Section 7511, does not apply to the Appellant. The Board would therefore presumably be without jurisdiction and barred from adjudicating the Appellant's claim.

40. However the District Court, the United States, and now the Adjutant General are adamant that Appellant exhaust his administrative remedies before the Board. Federal caselaw appears to support this proposition. In *Leistiko v. Stone*, 134 F.3d 817, C.A.6 (Ohio) 1998, the Court of Appeals found that federal courts were precluded by Civil Service Reform Act (CSRA) from adjudicating terminated National Guard technician's claim that his termination deprived him of property interest in violation of due process clause. This is identical to one of the claims that Appellant is making; and the exact result that he received in the District Court.

41. In *Ayrault v. Pena*, 60 F.3d 346, C.A.7 (Ill.) 1995, the Court of appeals held that regardless of whether student trainee in Federal Aviation Administration's (FAA) cooperative education program qualified as "employee" under Civil Service Reform Act (CSRA), district court lacked jurisdiction over trainee's wrongful termination claim; if she was "employee," her remedies under CRSA were appeal to Merit Systems Protection Board (MSPB) with judicial review by Federal Circuit, and, if she was not "employee," she had no remedy under CRSA.

42. Again, the US District Court has already denied Appellant an opportunity to appeal the Adjutant General's final decision and a remedy for his wrongful termination. Further, the District Court is potentially without the power to provide Appellant with the remedy sought; which is reinstatement to his original position of employment.

43. If there is no *"further administrative review"* before the Merit Services Protection Board and no judicial review in the courts, then Appellant and all other National Guard technicians are without remedy to arbitrary and capricious abuses of discretion.

## CONCLUSION

The Applicant's termination from civilian employment and narrowly adverted dishonorable discharge from military service stem from allegations of a threatening cell phone call. Allegations made by a co-worker who Appellant had repeatedly reported for being intoxicated while working on C-130 jet aircraft owned by the United States and occupied by US soldiers. For these whistle-blowing activities, the Agency violated Section 709 and Regulation 752 to remove Appellant from his technician position. The Agency then took action to remove from him the benefits and privileges of 18 years of service in the United States military, and to discredit and disgrace him.

Aside from the District Court mitigating the impact of the Agency's attempts to dishonorably discharge Appellant from military service, no adjudicative body has heard Appellant's claims. Appellant appeals to the Merit Systems Protection Board in the search for a forum that will protect the merit that his years of dutiful service to the United States deserve.

DATED this 18th day of April, 2002.

Scott H. York
Attorney for Appellant Ronald J. Menke

# EXHIBIT 37

## MERIT SYSTEMS PROTECTION BOARD INITIAL DECISION

**July 18, 2002**

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**DENVER FIELD OFFICE**

| | |
|---|---|
| RONALD J. MENKE,<br>Appellant, | DOCKET NUMBER<br>DE-3443-02-0213-I-1 |
| v. | |
| UTAH AIR NATIONAL GUARD,<br>Agency. | DATE: July 18, 2002 |

Scott H. York, Esquire, Salt Lake City, Utah, for the appellant.

Utah Air National Guard, Salt Lake City, Utah, for the agency.

**BEFORE**
Patricia M. Miller
Administrative Judge

## INITIAL DECISION

The appellant petitioned for appeal of the agency's decision to terminate him from his position of aircraft engine mechanic with the Utah Air National Guard. For the reasons discussed below, I DISMISS this appeal for lack of appellate jurisdiction.

## ANALYSIS AND FINDINGS

On March 22, 2002, the appellant filed an appeal challenging his December 20, 1999, separation from his position of Aircraft Engine Mechanic, WG-8602-10, under the National Guard Technician program. *See* Appeal File (AF), Tab 1 and Tab 6. Because the appellant appeared to be seeking untimely review of an action not appealable to the Board, an Acknowledgment Order was issued on

April 3, 2002, directing the appellant to file evidence and argument showing that his appeal was both timely and within the jurisdiction of the Board. *See* AF, Tab 2. A status conference concerning the jurisdictional and timeliness issues was held on April 11, 2002. *See* AF, Tab 4. The appellant filed a jurisdictional submission on April 22, 2002, and the agency moved for dismissal of the appeal for lack of jurisdiction on April 24, 2002. *See* AF, Tab 5 and Tab 6. The record closed on April 28, 2002. *See* AF, Tab 4.

I find that the Board does not have jurisdiction over the appellant's appeal because he is not an employee with Board appeal rights under 5 U.S.C. § 7511(a)(1) and § 7512(1). As an initial matter, the Board's jurisdiction is limited to those areas specifically granted by law. It is undisputed by the parties that the agency appointed the appellant to his aircraft engine mechanic position pursuant to the National Guard Technicians Act, section 709(a) of Title 32. *See* AF, Tab 5 (para. 23) and Tab 6 (para. 8). The National Guard Technicians Act excludes employees appointed under its provisions from those classes of employees entitled to appeal adverse actions to the Board, explicitly stating that "(g) sections 2108, 3502, 7511, and 7512 of title 5 do not apply to a person employed under this section." 32 U.S.C. § 709(g). In addition, section 7511 and section 7512 of title 5 describe the classes of employees entitled to appeal rights to the Board for terminations and specifically excludes an employee "who is described in section 8337(h)(1), relating to technicians in the National Guard." 5 U.S.C. § 7511(b)(5). In turn, section 8337(h)(1) of title 5 specifically includes individuals employed under section 709(a) of title 32, national guard technicians. *See* *Singleton v. Merit Systems Protection Board*, 244 F.3d 1331 (2001) (even though a national guard technician is a federal employee for purposes of fringe and retirement benefits but the National Guard Technicians Act by its clear terms bars a technician from federal appeal rights under Title 5 when the adverse action taken is one of those enumerated in the statute.)

The appellant, through this appeal, also claims his separation was taken in reprisal for whistleblowing activities. Since the appellant does not have an otherwise appealable action before the Board, the Board does not have jurisdiction over his whistleblower claim under 5 U.S.C. § 1221(b). In addition, although 32 U.S.C. § 709 does not preclude the Board from reviewing an individual right of action appeal brought by a National Guard technician, the Board must dismiss such appeals for failure to state a claim upon which relief can be granted because a Board order is not enforceable against the National Guard. *McVay v. Arkansas National Guard*, 80 M.S.P.R. 120, 123-25 (1998); *Singleton v. Merit Systems Protection Board*, 244 F.3d 1331 (2001) (a national guard technician has no right to pursue an individual right of action under 5 U.S.C. § 1221 in the event he is removed or subjected to any of the other severe adverse actions for which appeal rights lie only to the adjutant general).

In conclusion, I find that the appellant is not an employee within the meaning of 5 U.S.C. 7511(a)(1) and is not included in the class of employees who have been granted the right to appeal a termination action to the Board. Accordingly, I grant the agency's motion and dismiss this appeal for lack of Board jurisdiction.

## DECISION

The appeal is DISMISSED.

FOR THE BOARD:

Patricia M. Miller
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **August 22, 2002**, unless a petition for review is filed by that date or the Board reopens the case on its own

motion. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if this initial decision is received by you more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. The date on which the initial decision becomes final also controls when you can file a petition for review with the Court of Appeals for the Federal Circuit. The paragraphs that follow tell you how and when to file with the Board or the federal court. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review. Your petition, with supporting evidence and argument, must be filed with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.,
Washington, DC 20419

If you file a petition for review, the Board will obtain the record in your case from the administrative judge and you should not submit anything to the Board that is already part of the record. Your petition must be postmarked, faxed, or hand-delivered no later than the date this initial decision becomes final, or if this initial decision is received by you more than 5 days after the date of issuance, 30 days after the date you actually receive the initial decision. If you fail to provide a statement with your petition that you have either mailed, faxed, or hand-delivered a copy of your petition to the agency, your petition will be rejected and returned to you.

## JUDICIAL REVIEW

If you are dissatisfied with the Board's final decision, you may file a petition with:

The United States Court of Appeals
for the Federal Circuit
717 Madison Place, NW.
Washington, DC 20439

You may not file your petition with the court before this decision becomes final. To be timely, your petition must be received by the court no later than 60 calendar days after the date this initial decision becomes final.

## NOTICE TO AGENCY/INTERVENOR

The agency or intervenor may file a petition for review of this initial decision in accordance with the Board's regulations.

# EXHIBIT 38

## RECEIPT OF CLAIM

**October 27, 2002**

DEPARTMENT OF THE AIR FORCE
AIR FORCE LEGAL SERVICES AGENCY (AFLSA)

(by facsimile)

AFLSA/JACT
1501 Wilson Blvd, Ste 837
Arlington, VA 22209-2403

Scott H. York
Quintana & York, PC
3341 South 7000 East
Salt lake City, UT 84106

Dear Mr. York,

The claim of Ronald Menke has been received at our office, and it will be processed as soon as practicable.

If you have any questions, you may contact me at the above address, or at (703) 696-9055.

Sincerely,

JEFFREY R. OSBORNE, Major, USAF
General Torts Branch
Tort Claims and Litigation Division
Air Force Legal Services Agency

# EXHIBIT 39

## Standard Form 95
## Claim for Damage, Injury, or Death

**November 18, 2002**

**CLAIM FOR DAMAGE, INJURY, OR DEATH**

INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROROVED OMB NO. 1105-0008 EXPIRES 5-31-05

1. Submit To Appropriate Federal Agency:

U.S. Secretary of the Air Force
1670 Air Force Pentagon
Washington DC 20330-1670
Adjutant General of Utah - Brian Tabbot
PO Box 1776, Draper, UT 84020-1776

2. Name, Address of claimant and claimant's personal representative, if any. *(See instructions on reverse.) (Number, street, city, State and Zip Code)*

Ronald J. Menke
c/o Quintana & York
3341 S. 700 E.
Salt Lake City, UT 84106

| 3. TYPE OF EMPLOYMENT (MILITARY / CIVILIAN) | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF Injury | 7. TIME *(A.M. OR P.M.)* |
|---|---|---|---|---|
| | 10/21/56 | married | 11-20-2000 | 12:00 p.m. |

8. Basis of Claim *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)*

See Attached

9. **PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and Zip Code)*

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See instructions on reverse side)*

See attached: paragraphs 42 & 60

10. **PERSONAL INJURY/WRONGFUL DEATH**

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT

N/A

11. **WITNESSES**

| NAME | ADDRESS *(Number, street, city, State, and Zip Code)* |
|---|---|
| Ronald J. Menke | 612 Navajo Street<br>Salt Lake City, UT 84104 |

12. *(See instructions on reverse)* **AMOUNT OF CLAIM** *(in dollars)*

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL *(Failure to specify may cause forfeiture of your rights.)* |
|---|---|---|---|
| Retroactive Reinstatement and Compensation | N/A | N/A | Retroactive Reinstatement and Compensation |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT *(See instructions on reverse side.)* | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| [signature] | 801-599-0469 | 11/18/02 |

**CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM**

The claimant shall forfeit and pay to the United States the sum of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. *(See 31 U.S.C. 3729.)*

**CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS**

Imprisonment for not more than five years and shall be subject to a fine of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. *(See 18 U.S.C.A. 287.)*

95-108
Previous editions not usable

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## INSTRUCTIONS

Complete all items – Insert the word NONE where applicable

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in item #12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

**Failure to specify a sum certain will result in invalid presentation of your claim And may result in forfeiture of your rights.**

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or other aspect of this collection of information, including suggestions for reducing this burden,

to Director, Torts Branch
Civil Division
U.S. Department of Justice
Washington, DC 20530

and to the
Office of Management and Budget
Paperwork Reduction Project (1105-0008)
Washington, DC 20503

## INSURANCE COVERAGE

In order that subrogation claims be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? Yes, if yes give name and address of insurance company (*Number, street, city, State, and Zip Code*) and policy number. No

N/A

16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?

No

17. If deductible, state amount

N/A

18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? (*It is necessary that you ascertain these facts*)

No

19. Do you carry public liability and property damage insurance? Yes, If yes, give name and address of insurance carrier (*Number, street, city, State, and Zip Code*) No

N/A

SF 95 (Rev. 7-85) BACK

* U.S. GOVERNMENT PRINTING OFFICE: 1989--241-175

# CLAIM FOR DAMAGE, INJURY, OR DEATH

INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROVED OMB NO. 1105-0008 EXPIRES 5-31-05

1. Submit To Appropriate Federal Agency:

U.S. Secretary of the Air Force
1670 Air Force Pentagon
Washington DC 20330-1670
Office of the Judge Advocate - Claims Dept
6026 Cedar Lane, Hill AFB, UT 84056

2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code)

Ronald J. Menke
c/o Quintana & York
3341 S. 700 E.
Salt Lake City, UT 84106

3. TYPE OF EMPLOYMENT: MILITARY CIVILIAN

4. DATE OF BIRTH: 10/21/56

5. MARITAL STATUS: married

6. DATE AND DAY OF Injury: 11-20-2000

7. TIME (A.M. OR P.M.): 12:00 p.m.

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)

See Attached

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side)

See attached: paragraphs 42 & 60

10. PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT

N/A

11. WITNESSES

| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
|---|---|
| Ronald J. Menke | 612 Navajo Street<br>Salt Lake City, UT 84104 |

12. (See instructions on reverse) AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
|---|---|---|---|
| Retroactive Reinstatement and Compensation | N/A | N/A | Retroactive Reinstatement and Compensation |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) [signature]

13b. Phone number of signatory: 801-599-0469

14. DATE OF CLAIM: 11/18/02

**CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM**

The claimant shall forfeit and pay to the United States the sum of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. (See 31 U.S.C. 3729.)

**CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS**

Imprisonment for not more than five years and shall be subject to a fine of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. (See 18 U.S.C.A. 287.)

95-108
Previous editions not usable

NSN 7540-00-634-4046

STANDARD FORM 95 (Rev. 7-85)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## 8. BASIS OF CLAIM

1. On or about September 17, 1999, and at all times relevant here, Plaintiff was an enlisted member of the Utah Air National Guard.

2. On or about September 17, 1999, and at all times relevant here, Plaintiff was employed by defendant United States Department of Defense [DOD], under the supervision and control of the Utah Air National Guard [UTANG], as a Title 32 Aircraft Engine Mechanic, WG-8602-10.

3. A Title 32 employee is technically a civilian position, but requires military enlistment to obtain and hold. (*See* 32 USCA § 709).

4. The Utah Air National Guard is an agent of the U.S. Department of Defense [DOD], and its policies and procedures are ultimately promulgated, reviewed and approved by the DOD pursuant to 32 U.S.C.A. § 709.

5. The regional Adjutant General, in this case Major General James M. Miller, is an agent of defendant United States, for the purposes of terminating Plaintiff from civilian employment as an Air National Guard technician. *See* 32 U.S.C.A. § 709.

6. On or about September 17, 1999, the allegation was made that Plaintiff threatened co-worker S.Sgt. Robert Teinert [Teinert] during off-duty hours. This allegation was leveled at Plaintiff by Teinert after Plaintiff made several reports to his superiors about Teinert's 'drinking and/or intoxication on the job'.

7. Defendant, through the UTANG, charged Plaintiff with: "(a) Creating a disturbance by threatening to inflict bodily harm resulting in an adverse effect on morale, production and maintenance of proper discipline. (TPR 752, Table A-5, Rule 9), [and] (b) Use of insulting, abusive, offensive, or obscene language. (TPR 752, Table A-2, Rule 10b)."

8. On or about May 17, 2000, M.G. James M. Miller affirmed the recommended action of terminating Plaintiff's employment with UTANG, stating; "In accordance with 32 U.S.C. § 709e(5), 'there is no further administrative review of the Adjutant General's final decision'."

9. Plaintiff did not receive notice of defendant UTANG's final determination to terminate his civilian employment until approximately November 20, 2000.

10. Plaintiff did not receive notice of his termination directly but was prompted to seek out this final determination after receiving a Notification of Intent to Discharge from military service with defendant UTANG on or about October 4, 2000. The cited reasons for discharging and labeling Plaintiff as "Ineligible for Reenlistment" are stated as; "Failure to meet Air Force standards of performance and to demonstrate the qualities of leadership required as a Non-commissioned Officer."

11. UTANG prohibited Plaintiff from entering the premises of the Utah Air National Guard Base following the aforementioned, alleged charges of threats against a co-worker. Due to Plaintiff's inability to enter the Base and due to the dispute stemming from his civilian employment, Plaintiff was prohibited from completing the 'drills' required by his military enlistment. Failure to complete these drills resulted in UTANG's finding that Plaintiff had 'failed to meet Air Force standards of performance'.

12. UTANG further cited Plaintiff's alleged refusal to follow orders and regulations, specifically the Adjutant General's "Policy Letter 99-31, Violence in the Workplace", to justify Plaintiff's "General Discharge – Under Other than Honorable Conditions."

13. On or about October 6, 2000, Plaintiff returned the 'Request for Administrative Discharge Board' hearing form attached to Defendant's Notification of Intent to Discharge and provided by Defendant.

14. Defendant never provided Plaintiff with the benefit of the requested Administrative Discharge Board, and made no justification for the refusal.

15. Defendant's express intent was to discharge Plaintiff after 17 years, 364 days of faithful and distinguished service to the United States of America. This is one day short of the 18 years necessary for Plaintiff to become vested in any of his retirement benefits.

16. Pursuant to US Air Force Administrative Instruction 36-3209 (2/1/98), § 1.13, Plaintiff upon achieving 18 years of service could not be "discharged or transferred from active status without his [] consent" until he had been given the opportunity to be credited with 20 years of service computed under 10 U.S.C. § 12732, or on the third anniversary of the date on which he would otherwise discharged or transferred from active status.

17. Plaintiff filed a motion for Immediate Temporary Injunctive Relief in the US District Court Utah Central Division on or about January 5, 2001, in an effort to resist his less than honorable discharge and "non-reenlistable" designation.

18. Hearing on the Motion was held on or about January 7, 2001, and a stipulated agreement was entered into between then UTANG and Plaintiff on the same date. Pursuant to this agreement, UTANG promised to grant Plaintiff an honorable discharge and 're-enlistable' status, and to refrain from discharging him prior to the vesting of his retirement benefits. In return, Plaintiff agreed to amend his complaint in the above-entitled action to withdraw his claims against then defendants UTANG and Teinert. On or about April 23, 2001, UTANG finally lived up to its stipulated agreement.

19. On or about January 28, 2002, a hearing was held and an order dismissing Plaintiff's amended complaint without prejudice was entered February 14, 2002.

20. Plaintiff's complaint stated three causes of action. First, that Defendant lacked sufficient cause as required by 32 USCA § 709 to terminate Plaintiff from civilian employment; and also that, even if the allegations asserted against Plaintiff were true, Defendant's treatment of Plaintiff exceeded its own disciplinary guidelines as evidenced by USAF Technician Personnel Regulation 752. Plaintiff asserted that the combination of these two laws created a contract of employment and that Defendant had breached its duties under the contract by failing to comply with either.

21. The US District Court found that it was without jurisdiction over Plaintiff's claim because it exceed the bounds of the Little-Tucker Act 28 USCA §§ 1346(a)(2) and 1491(a) in amount.

22. Plaintiff's second cause of action for wrongful termination hinged on the same facts as the contract claim and asserted a primarily due process and equal protection claim for Defendant's failure to comply with federal law, namely Section 709 and TPR 752. Here the District Court determined that Plaintiff had failed to exhaust his administrative remedies and therefore 28 USCA § 2675(a) deprived the Court of jurisdiction. The Court also dismissed Plaintiff's second cause for a lack of subject matter jurisdiction, although there is no specific statement as to why. Defendant asserted that governmental violations of federal law are within the purview of the District Court, but for the purposes of dispelling Defendant's objections Plaintiff has filed this matter in the Court of Federal Claims to remove all doubt.

23. Finally, Plaintiffs third cause of action for violation of the 'Whistleblower Protection Act', Pub.L. No. 101-12, 103 Stat. 16 (1989), was similarly "dismissed for failure to exhaust administrative remedies as required by 5 USC § 1214." While the District Court's ruling would tend to infer that Plaintiff may have some administrative and ultimately judicial remedy, further investigation reveals that Title 32 employees may suffer retaliatory termination for whistleblowing activities and there is no protection or recourse to state or federal law. Therefore, Plaintiff withdraws his "whistleblower" claim, but not for the reasons propounded by the District Court, which Plaintiff holds to be erroneous.

24. Responding to Defendant's assertions to the District Court that Plaintiff had failed to exhaust his administrative remedies, Plaintiff filed and attempted to pursue claims with both the US Office of the Special Counsel and the US Merit Systems Protection Board. The determination of both agencies was that Plaintiff had indeed exhausted his administrative remedies and Plaintiff was redirected back to the District Court. These findings reinforced the original position argued by Plaintiff to the District Court. Defendant's assertions to the contrary

and the District Court's reliance on those representations cost Plaintiff almost a year of further deprivation of employment and enlistment.

25. Federal Statutes 42 U.S.C.A. §§ 1981 & 1983, 28 U.S.C.A. §§ 1343 & 2412, 5 U.S.C.A. § 1221, 29 U.S.C.A. § 660, and common law provide the basis for the award of reasonable attorney fees and costs, in addition to other damages, if Plaintiff is successful in this action.

**FIRST CLAIM**
**(Breach of Contract)**

26. Plaintiff reiterates the allegations made in paragraphs 1 through 25 and incorporates them herein by this reference.

27. Plaintiff is a Title 32 employee of Defendant; meaning that Plaintiff's civilian employment is contingent on his military enlistment in UTANG.

28. As a Title 32 employee, Plaintiff is employed under contract and can only be terminated from employment pursuant to 32 U.S.C.A. 709(f), to wit: "(1)(A) is separated from the National Guard or ceases to hold the military grade specified by the Secretary . . .; (B) fails to meet the military security standards established by the Secretary . . .; [or] (2) a technician may, at any time, be separated from his technician employment *for cause* by the adjutant general of the jurisdiction concerned." 32 U.S.C.A. 709(f) (*emphasis added*).

29. Defendant, by and through the Adjutant General, determined to terminate Plaintiff's civilian employment pursuant to Technician Personnel Regulation No. 752 and 32 U.S.C. § 709.

30. The Adjutant General failed to adhere to the mandatory requirements of TPR 752 or 32 U.S.C. § 709.

31. Primarily, but not exclusively, the Adjutant General relied upon the 'Findings and Recommendations' in support of the adverse action recommended against Plaintiff's civilian employment. The basis of that recommendation was the allegation that Plaintiff made a threatening telephone call to co-worker TSG Robert Teinert. Plaintiff continues to deny making such threats.

32. Plaintiff also continues to assert that Teinert was motivated to level allegations against Plaintiff because of Plaintiff's repeated reporting of Teinert for intoxication on the job as an Air National Guard technician. UTANG's recommendation to terminate Plaintiff's civilian employment was merely the last in a series of capricious acts including the failure to discipline or otherwise take action against Teinert in response to Plaintiff's reports. Defendant's agents protected Teinert and took the adverse action, reaffirmed by the Adjutant General, in retaliation for Plaintiff's reportings of Teinert's inebriation.

33. For the purposes of effecting Plaintiff's termination of civilian employment, UTANG and the Adjutant General are agents of Defendant.

34. UTANG has effected Plaintiff's termination without a showing that Plaintiff was separated from the National Guard or ceased to hold the appropriate military grade; that he failed to meet the necessary security standards; or, that there was sufficient 'cause' to justify Plaintiff's termination.

35. Defendant cites a 'zero tolerance' policy to violence in the workplace as the justification for finding 'cause' to support Plaintiff's termination. However, Defendant's findings that the alleged threat did occur and that such a threat, if made, would constitute "violence in the workplace" is unsupported by the law or the record made below.

36. The administrative hearing officer improperly based his determination on the opinion that "Appellant Menke displayed a disposition [at the hearing] that was very strong, assertive, positive as to the rightness of his position and certain in his views", rather than appropriately restricting his investigation into determining whether a threat did in fact occur that was in violation of UTANG's 'violence in the workplace policy.' Plaintiff's 'disposition' on the day of the hearing is not dispositive of events alleged to have occurred more than 6 months before.

37. The administrative hearing officer placed further emphasis on a series of telephone calls purportedly made by Plaintiff, at least one of which allegedly contained threatening content. The Adjutant General's reliance on this evidence is plain error since in fact "The home phone number

for Appellant Menke is 801-573-4016" is a false statement. (Findings and Recommendations, p. 9). Compounding the erroneous association of this telephone number with Plaintiff, the Adjutant General further imputed Plaintiff's "disposition" at the hearing to infer or presume that Plaintiff both made a series of calls and that a threat of death had indeed been made.

38. Even if there were support to find that Plaintiff had committed the offense as charged, the Adjutant General unjustifiably departed from established regulations to impose a penalty not available under Technician Personnel Regulation No. 752, and therefore exceeded his authority, and abused his discretion. The Adjutant General does not have the authority to disregard federal law or the regulations promulgated therefrom.

39. Technician Personnel Regulation No. 752 provides for a "15 day suspension" for Plaintiff's alleged 'first offense' violation. Ignoring this regulation the hearing officer determined that; "*[T]he issue should be not whether the penalty is within the permissible range, but rather, why the particular penalty was chosen.*" Findings and Recommendations, p. 11 (*emphasis in original*). The Adjutant General affirmed the imposition of a penalty that was admittedly not "within the permissible range" and terminated Plaintiff.

40. By improperly terminating Plaintiff in violation of its own policies and procedures, and federal law, Defendant is in breach of Plaintiff's employment contract under 32 U.S.C. § 709 and the policies and procedures promulgated therefrom.

41. Plaintiff's grievance with Defendant's conduct constituting a breach of employment contract is not limited to the foregoing enumerated acts, but they are indicative of Defendant's breach.

42. Defendant's breach of contact has resulted in the loss of more than two years worth of wages (less the amount Plaintiff has been able to mitigate), in the loss of his career and continued employment in a unique and highly specialized field, in the loss of his reputation and future earning capacity, in the loss of enhanced military retirement benefits, in the loss of the attorney

fees and costs in the prosecution of this action, and in the pain, suffering and emotional distress suffered by the Plaintiff.

**SECOND CLAIM**
**(Wrongful Termination)**

43. Plaintiff reiterates the allegations made in paragraphs 1 through 42 and incorporates them herein by this reference.

44. Plaintiff is a Title 32 employee of Defendant; meaning that Plaintiff's civilian employment is contingent on his military enlistment in UTANG.

45. For the purposes of effecting Plaintiff's termination of civilian employment, UTANG and the Adjutant General are agents of Defendant.

46. Defendant has intentionally and/or recklessly failed to comply with the restrictions, policies, and procedures required by Technician Personnel Regulation No. 752 and 32 U.S.C. § 709.

47. Defendant failed to provide Plaintiff with the due process guarantees incorporated in Technician Personnel Regulation No. 752 and 32 U.S.C. § 709.

48. Defendant violated Plaintiff's right to equal protection of the laws by disparately and discriminatorily applying Technician Personnel Regulation No. 752 and 32 U.S.C. § 709 to Plaintiff.

49. Plaintiff's allegations are based on substantially the same facts enumerated in paragraphs 33 through 43 above.

50. On several occasions, Plaintiff reported to the appropriate superiors that Teinert was drinking and/or intoxicated on the job. Both Plaintiff and Teinert were employed as jet engine mechanics assigned primarily to maintain KC 135 Stratotanker aircraft. Teinert's conduct threatened the safety and well being of Plaintiff and other ground crew personnel, the air crews operation the KC 135s, and the public at large.

51. Teinert concocted and leveled false allegations of 'death threats' made by Plaintiff in retaliation for Plaintiff's reports and to divert attention away from those reports. On information

and belief, Defendant has taken no action against Teinert or otherwise made efforts to guard against his presumably continuing conduct; instead, Defendant took the retaliatory action complained of here. Plaintiff was terminated for 'rocking the boat'.

52. Defendant failed to properly investigate and verify the alleged threat made by Plaintiff, especially in light of the high probability and motivation for Teinert to make false and retaliatory allegations against Plaintiff.

53. Defendant's failure to ground Plaintiff's termination on a sound factual basis violated its duty to the Plaintiff to terminate only "for cause"; and incidentally breaches its duty of care to the pilots, fight crews, and the public by chilling the reporting of Teinert's potentially lethal conduct.

54. Defendant's further failure to adhere and apply its own policies and procedures when dealing with and sanctioning Plaintiff merely consummated the wrongful termination of the Plaintiff; and aided and abetted Teinert's efforts to subvert and 'get even' with Plaintiff. Without proof of Plaintiff's guilt and in violation of its own procedures, Defendant, through the Adjutant General, determined to terminate Plaintiff rather than impose the '15 day suspension' as provided by Technician Personnel Regulation No. 752.

55. Defendant wrongfully found 'cause' to terminate Plaintiff on the basis his "disposition" at the administrative hearing, rather than on a legitimate finding that Plaintiff did indeed make a death threat as a matter of fact 6 months earlier. Thereafter, the Adjutant General reaffirmed the imposition of a penalty which admittedly exceeded those provided by Defendant's own regulations. These acts constitute a violation of Technician Personnel Regulation No. 752 and 32 U.S.C. § 709, and a deprivation of Plaintiff's equal protection and due process rights.

56. One foreseeable consequence of Defendant's wrongful termination of Plaintiff on the charge of 'violence in the workplace' was that Defendant excluded Plaintiff from entering the military reserve for the purposes of performing his military duties as a National Guardsman. This in turn was relied upon by Defendant as the basis for discharging Plaintiff from military

service "Under Other than Honorable Conditions" and further identifying Plaintiff as "Ineligible for Reenlistment in the Air National Guard of the United States."

57. In response to this action, Plaintiff requested an Administrative Discharge Board hearing as of right and the appointment of military counsel. Defendant denied Plaintiff of both, again, in violation of Plaintiff's due process and equal protection rights.

58. Only the imminent prospect of a federal injunction prevented Defendant's disparagement of Plaintiff's otherwise distinguished military record one day short of 18 years of service to the United States. Air Force Instruction 36-3209 § 1.13 applies to Plaintiff and provides that upon completion of those 18 years, he be afforded the opportunity to retain his position until he reaches the point where he can be credited with 20 years of service, or has reached the third anniversary of his regular discharge date. Defendant's military discharge actions were a conscientious attempt to avoid running afoul of the requirements of Section 1.13.

59. But for Defendant's wrongful termination of Plaintiff from civilian employment "for cause", Defendant had no other basis to prematurely discharge Plaintiff from military service under dishonorable conditions, to label Plaintiff as 'ineligible for reenlistment', or to deprive him of the right to continued enlistment under Air Force Instruction 36-3209 § 1.13. While the 'for cause' termination remains on Plaintiff's civilian employment record, Defendant continues to deny Plaintiff's right to continued military service and the ultimate retirement benefits to which he will be entitled upon 20 years of service and has already gained a partially vested interest in.

60. Defendant's wrongful termination has resulted in the loss of more than two years worth of wages (less the amount Plaintiff has been able to mitigate), in the loss of his career and continued employment in a unique and highly specialized field, in the loss of his reputation and future earning capacity, in the loss of enhanced military retirement, in the loss of the attorney fees and costs in the prosecution of this action, and in the pain, suffering and emotional distress suffered by the Plaintiff.

END

# EXHIBIT 40

## ADJUTANT GENERAL'S FINAL DETERMINATION

**November 21, 2003**

**DEPARTMENT OF THE AIR FORCE**
**AIR FORCE LEGAL SERVICES AGENCY (AFLSA)**

AFLSA/JACT
1501 Wilson Blvd., Suite 837
Arlington, VA 22209-2403

21 NOV 2003

Scott H. York, Esq.
Quintana & York, PC
3341 South 700 East
Salt Lake City, UT 84106

Re: Claim of Ronald J. Menke for Wrongful Termination and Breach of Contract
AF Claim No.: Hill AFB 03-198

Dear Mr. York,

I have considered the claim of Ronald Menke under the provisions of the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680, for breach of contract and wrongful termination of his employment with the Utah Air National Guard. After a careful review of the facts and applicable law, I must deny the claim.

Your client's tort claim is denied for several reasons. First, under the FTCA, for the government to be liable there must be some evidence that the damages claimed were caused by the negligence of a government employee acting within the scope of employment. The FTCA specifies that negligence is determined by applying the law of the state where the incident occurs. Ronald Menke's claim does not arise under state law. Rather, he is apparently alleging wrongful termination and breach of contract arising under federal law. Such allegations are not cognizable under the FTCA.

Also, the claim is barred by the statute of limitations. Under the FTCA, claims must be presented to the agency within two years from the date the claim accrues. *28 U.S.C. § 2672.* The alleged wrongful termination took place on December 20, 1999, and was upheld by the Adjutant General on May 17, 2000. Per your submission on the Standard Form 95, it was not until November 20, 2000 that your client actually received a copy of the ruling by the Adjutant General. Interpreting the statute most favorably to your client, the statute of limitations for purposes of this claim began to run on November 20, 2000, which is when he became aware of a possible loss claim. The earliest claim submission on behalf of your client was December 2, 2002, which was several weeks past the two-year statute of limitations period. This two-year statute of limitations cannot be waived.

Although I regret the loss your client suffered, given the facts of this case and the applicable law, I have no choice but to deny this claim.

This is the final denial of your client's claim. Although it does not appear that your client has a cause of action under the FTCA, I am required by regulation to inform your client that if he is dissatisfied with this decision, he may now file suit in an appropriate United States District Court not later than six months after the date of mailing of this letter.

Sincerely,

JOHN F. McCUNE, Lt Col, USAF
Chief, General Torts Branch
Tort Claims and Litigation Division

# EXHIBIT 41

## STIPULATED MOTION TO STAY
## Utah - US District Court No. 2:04 CV 00472 DB

**January 7, 2005**

STEPHEN J. SORENSON , Acting United States Attorney (USB #3049)
SCOTT BATES, Assistant United States Attorney (USB # 8517)
185 South State Street, #400
Salt Lake City, Utah 84111-1538
Telephone: (801) 524-5682
Facsimile: (801) 524-6924

**Attorneys for the United States of America and Federal Defendants**

---

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

---

RONALD J. MENKE,

Plaintiff,

vs.

UNITED STATES, DEPARTMENT OF DEFENSE,

Defendants.

Civil No. 2:04CV00472 DB

STIPULATED MOTION FOR STAY

Honorable Dee Benson

---

The Defendants United States, Department of Defense, by and through counsel, Scott Bates, Assistant United States Attorney, and Plaintiff, Ronald J. Menke, by and through his counsel, Scott H. York (the "parties") have agreed to a proposed stay of the proceedings pending the outcome of an administrative appeal. Accordingly, the parties hereby move this Court for an order staying the proceedings in this case. The parties agree that at least some of Plaintiff's claims may be resolved if an appeal is taken before the Air Force Board For Correction of Military Records (AFBCMR) pursuant to 10 U.S.C. § 1552 and Department of Defense

Instruction 1332.41. Plaintiff intends to pursue his appeal immediately. A decision is anticipated in nine months.

WHEREFORE, the parties respectfully request that the proceedings be stayed and the filing date for Defendants to respond to Plaintiff's Complaint be extended until thirty days after the decision of the AFBCMR.

DATED this 7th day of January, 2005.

STEPHEN J. SORENSON
Acting United States Attorney

SCOTT BATES
Assistant United States Attorney

SCOTT H. YORK, Esq.
Attorney for Plaintiff

OF COUNSEL
MAJOR H. MARK PATTERSON, ESQ.
AFLSA/JACL, Employment Litigation Branch
1501 Wilson Blvd., 7th Floor
Arlington, VA 22209-2403

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am an employee of the United States Attorney's Office, and that a copy of the foregoing STIPULATED MOTION FOR STAY and PROPOSED ORDER, were mailed to the following on this 7th day of January, 2005.

Scott H. York, Esq.
Quintana & York, PC
3341 South 700 East
Salt Lake City, Utah 84106

Cindy L. Dobyns

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

RONALD J. MENKE,

Plaintiff,

vs.

UNITED STATES, DEPARTMENT OF DEFENSE
Defendants,

Civil No. 2:04CV00472 DB

[PROPOSED] ORDER GRANTING STIPULATED STAY

Honorable Dee Benson

Based upon the parties' agreement and stipulation to stay the proceedings in this case and good cause appearing therefore,

IT IS HEREBY ORDERED that all proceedings be stayed pending a decision from the Air Force Board For Correction of Military Records, and Defendants may have thirty days after that decision to respond to Plaintiff's Complaint.

DATED this ______ day of ________________, 2005.

_______________________________
Honorable Dee Benson
United States District Judge

# EXHIBIT 42

## NOTIFICATION OF PERSONNEL ACTION

**December 21, 1999**

Standard Form 50-B
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| MENKE RONALD J | 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 | 10-21-56 | 12-21-99 |

**FIRST ACTION**

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 357 | TERMINATION |
| 5-C. Code | 5-D. Legal Authority |
| V8K | 32 U.S.C. 709(B) |
| 5-E. Code | 5-F. Legal Authority |
| | |

**SECOND ACTION**

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |
| 6-C. Code | 6-D. Legal Authority |
| | |
| 6-E. Code | 6-F. Legal Authority |
| | |

**7. FROM: Position Title and Number**
AIRCRAFT ENGINE MECHANIC
WD80112005

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| WG | 8602 | 10 | 05 | $18.85 | PH |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| $18.85 | $ 0 | $18.85 | $ 0 |

14. Name and Location of Position's Organization
THE ADJUTANT GENERAL OF UTAH
P O BOX 1776
DRAPER, UTAH 84020-1776

**15. TO: Position Title and Number**

| 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| | | | | | |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| | | | |

22. Name and Location of Position's Organization

**EMPLOYEE DATA**

23. Veterans Preference: N/A (1 - None; 2 - 5-Point; 3 - 10-Point/Disability; 4 - 10-Point/Compensable; 5 - 10-Point/Other; 6 - 10-Point/Compensable/30%)

24. Tenure: 1 (0 - None; 1 - Permanent; 2 - Conditional; 3 - Indefinite)

25. Agency Use:

26. Veterans Preference for RIF: YES / NO

27. FEGLI: Y1 BASIC + OPTION B (5X) + OPTION C (1X)

28. Annuitant Indicator: 9 NOT APPLICABLE

29. Pay Rate Determinant: 0

30. Retirement Plan: N FERS AND FICA-RESERVE TECH

31. Service Comp. Date (Leave): 12-03-85

32. Work Schedule: F FULL TIME

33. Part-Time Hours Per Biweekly Pay Period:

**POSITION DATA**

34. Position Occupied: 2 (1 - Competitive Service; 2 - Excepted Service; 3 - SES General; 4 - SES Career Reserved)

35. FLSA Category: E (E - Exempt; N - Nonexempt)

36. Appropriation Code: 23C100

37. Bargaining Unit Status: 7777

38. Duty Station Code: 49-1700-035

39. Duty Station (City - County - State or Overseas Location): SALT LAKE CITY SALT LAKE COUNTY UT

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | | 51411G | | DENVER CO |

45. Remarks

AGENCY FINDING: TERMINATED AFTER RECEIVING WRITTEN NOTICE ON 12-20-99 OF DECISION TO SEPARATE FOR THREATENING BODILY HARM RESULTING IN ADVERSE EFFECT ON MORALE AND MAINTENANCE OF PROPER DISCIPLINE
LUMP-SUM PAYMENT TO BE MADE FOR ANY UNUSED ANNUAL LEAVE.
FORWARDING ADDRESS: 612 NAVAJO STREET, SLC, UT 84104

46. Employing Department or Agency: DEPARTMENT OF THE AIR FORCE

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |
|---|---|---|
| AFNG | 3380 | 01-04-00 |

50. Signature/Authentication and Title of Approving Official
Kenna D. White
KENNA D WHITE, CMS, UTNG
PERSONNEL MANAGEMENT SPEC

TURN OVER FOR IMPORTANT INFORMATION
5-Part 50-316

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

1 - Employee Copy - Keep for Future Reference

# EXHIBIT 43

## TECHNICIAN PERSONNEL REGULATION NO. 752

**February 23, 1987**

*TPR 752

TECHNICIAN PERSONNEL REGULATION
No. 752

HEADQUARTERS
DEPARTMENTS OF THE ARMY AND THE AIR FORCE
WASHINGTON, DC 20310-2500 23 February 1987

# DISCIPLINE AND ADVERSE ACTION

This regulation covers disciplinary actions, adverse actions, appeal rights, administrative hearings and the NGB Administrative Hearing Examiner System. FPM chapter 752 does not apply to National Guard technicians; it is replaced in its entirety by this TPR. The provisions of this regulation apply to both military and competitive technicians.


| | | Paragraph | Page |
|---|---|---|---|
| Chapter 1. | DISCIPLINARY ACTION | | |
| | General | 1-1 | 1 |
| | Oral admonishment | 1-2 | 1 |
| | Letter of reprimand | 1-3 | 1 |
| Chapter 2. | ADVERSE ACTION | | |
| | Types of adverse action | 2-1 | 3 |
| | Role of the SPMO | 2-2 | 4 |
| | Cause for adverse action | 2-3 | 4 |
| | Preponderance of the evidence | 2-4 | 4 |
| | Investigations | 2-5 | 4 |
| | Technician's status | 2-6 | 5 |
| | Representation | 2-7 | 5 |
| | Collective bargaining agreement | 2-8 | 5 |
| | Harmful error | 2-9 | 5 |
| | Allegation of discrimination | 2-10 | 6 |
| | Alcohol or drug problems | 2-11 | 6 |
| | Arrest, indictment, or conviction for criminal offense | 2-12 | 6 |
| | Method of delivery | 2-13 | 7 |
| | Five basic steps | 2-14 | 7 |
| | Proposed adverse action notice (Step 1) | 2-15 | 7 |
| | Technician's reply (Step 2) | 2-16 | 9 |
| | Original decision letter (Step 3) | 2-17 | 10 |
| | Process administrative appeal (Step 4) | 2-18 | 12 |
| | The final decision (Step 5) | 2-19 | 12 |
| | Attorney fees | 2-20 | 13 |
| | Adverse action file | 2-21 | 14 |
| Chapter 3. | ADMINISTRATIVE HEARING | | |
| | Preparation for the hearing | 3-1 | 15 |
| | Pre-hearing conference | 3-2 | 15 |
| | Conduct of the hearing | 3-3 | 15 |
| | Report of findings and recommendations | 3-4 | 17 |


151st Camsq. —
1. O MASTER FILE

RECEIVED 18 MAY 1987



*Supersedes TPR 752, 16 August 1982

| | | Paragraph | Page |
|---|---|---|---|
| Chapter 4. | NGB ADMINISTRATIVE HEARING EXAMINER SYSTEM | | |
| | Purpose | 4-1 | 18 |
| | Qualifications | 4-2 | 18 |
| | Requesting an examiner | 4-3 | 18 |
| | Grievance hearing | 4-4 | 18 |
| Appendix A. | PENALTY SELECTION | | 19 |

# CHAPTER 1. DISCIPLINARY ACTION

## 1-1. GENERAL

a. Counseling a technician can normally resolve a problem without the nee for disciplinary or adverse action. Counseling is a friendly business-like exchange of information guided by the supervisor. It is a private matter between the technician and his/her supervisor and has the specific purpose of improving the technician's conduct or knowledge of a particular subject; it i not a disciplinary action. A problem can also be resolved by warning a technician. This too is a private matter between the technician and his/her supervisor and is not a disciplinary action. Unlike counseling, a warning ha a more serious intent because along with a business-like exchange of information is a warning that disciplinary or adverse action may result if th problem is not corrected.

b. A counseling or warning should be annotated in pencil (date and subject on the NGB Form 904-1 (Supervisor's Record of Technician Employment). The technician should be told the annotation will remain until the supervisor determines it is no longer needed or relevant to a continuing or recurring problem. Supervisors may counsel or warn a technician without consulting the SPMO. Collective bargaining agreements and/or State supplements to this TPR may contain additional procedures/requirements (e.g., representation rights) and should be reviewed before counseling or warning a technician..

## 1-2. ORAL ADMONISHMENT

a. Oral admonishment is a disciplinary action that notifies a technician t desist from a certain course of action. Oral admonishments should take place in as private an environment as possible and be in the form of the most appropriate criticism necessary to correct the technician. If there has been no previous counseling or warning, the supervisor must first ensure that all relevant facts have been raised. This can best be done by discussing the facts with the technician and giving him/her an opportunity to express views or provide explanations. The supervisor takes whatever time is needed to decide whether or not an oral admonishment is appropriate. If warranted, the technician is then orally admonished. If an oral admonishment is not warranted, the supervisor tells the technician the issue has been resolved without the need for disciplinary action.

b. An oral admonishment should be annotated in pencil (date and subject) o the NGB Form 904-1. The technician should be told the annotation will remain until the supervisor determines it is no longer needed or relevant to a continuing or recurring problem. Supervisors may orally admonish a technicia without consulting the SPMO. Collective bargaining agreements and/or State supplements to this TPR may contain additional procedures/requirements (e.g., representation rights) and should be reviewed before orally admonishing a technician.

## 1-3. LETTER OF REPRIMAND

a. A letter of reprimand is a disciplinary action which makes a technician aware of a violation (e.g., improper attitude, violation of agency rules). I can be issued when counseling, warning, and orally admonishing prove ineffective. It can also be used when the nature of the violation warrants more than counseling, warning, or an oral admonishment but does not warrant adverse action. The letter of reprimand is normally issued by the first line supervisor. If someone else in the technician's supervisory chain issues a reprimand, it should be endorsed through the first line supervisor to the technician. For example, the second line supervisor issues a letter of reprimand to a technician for being insubordinate while the immediate supervisor was TDY.

b. A supervisor must ensure all relevant facts are raised before issuing a letter of reprimand. This can best be done by discussing the facts with the technician and giving him/her an opportunity to express views or provide explanations. The supervisor takes whatever time is needed to decide whether a letter of reprimand is appropriate. If it is not warranted, the supervisor tells the technician the problem is resolved without the need for disciplinary action. If action is needed but a letter of reprimand is too severe, the supervisor can resolve the problem by orally admonishing the technician. If a letter of reprimand is warranted, the technician is told a reprimand will be issued as soon as possible. A letter of reprimand must, as a minimum:

(1) describe the violation in sufficient detail to enable the technician to understand why the reprimand is being given. If the violation relates to a continuing problem, the supervisor should include a summary of past violations and the attempts made by management to correct those violations;

(2) tell the technician how long (provide actual date) the reprimand will be filed as a temporary document in the Official Personnel Folder (OPF);

(3) tell the technician the reprimand may be grievable through the State or negotiated grievance system, whichever is applicable (except as outlined in paragraph 2-19c(2) of this regulation);

(4) include a warning that further offenses could result in suspension, change to lower grade, or removal.

c. A letter of reprimand must be cleared for procedural accuracy by the SPMO before issuance. Collective bargaining agreements and/or State supplements to this TPR may contain additional procedures/requirements (e.g., representation rights) and should be reviewed before issuing a letter of reprimand. Once a letter of reprimand is removed from the OPF, it is as if it never happened and may not be referenced as past discipline. The letter of reprimand and related annotations on NGB Form 904-1 must be removed from the supervisor's file when the reprimand is removed from the OPF.

## CHAPTER 2. ADVERSE ACTION

### 2-1. TYPES OF ADVERSE ACTION

a. There are only three types of adverse action which may be taken against a technician: (1) suspension (includes indefinite suspension); (2) change to lower grade, and (3) removal. The procedures and protections provided in this chapter must be followed when management initiates any one or combination[1] of these three adverse actions.

b. The following actions do not constitute an adverse action, and the procedures and protection provided in this chapter will not be applied to these actions:

(1) Actions addressed in chapter 1 and actions addressed in TPR 715. Note: Appeal rights established in this chapter are afforded technicians as outlined in chapter 1, TPR 715.

(2) Actions taken for performance reasons.

(3) Actions based on classification or job grading determinations.

(4) Reduction-in-force and furlough actions covered by TPR 300(351).

(5) Discharge of trial/probationary technicians. (Adverse action procedures would apply when suspending trial/probationary technicians).

(6) Mandatory retirements.

(7) Denial of within-grade increases.

(8) Actions excluded by law (e.g. political activity cases).

(9) Alleged loss or lessening of promotion potential.

(10) Reduction of technician rates of pay from rates that are contrary to law or regulation.

(11) Recording absences as AWOL (AWOL can become the basis for initiating adverse action).

(12) Termination or reduction of entitlements that affect technician pay but do not involve any loss of base pay (e.g. night shift differential, HDP, EDP).

(13) Actions which entitle technicians to grade or pay retention or actions to terminate such entitlements.

(14) Termination of temporary or indefinite type appointments or termination of temporary promotions, details, etc. (Adverse action procedures would apply when suspending temporary or indefinite technicians.)

(15) Placement of technicians serving on an intermittent or part-time basis in a nonduty status in accordance with conditions established at time of appointment.

(16) Details to lower-graded positions without a change in official position assignment or loss of pay.

---

[1] For example, management may propose a suspension of 5 days and a change to lower grade as penalty for the offense.

## 2-2. ROLE OF THE SPMO

Responsibility for advising and assisting managers and supervisors is vested primarily in the SPMO staff, which is ultimately responsible for conclusive processing of adverse actions. In view of the complex body of laws, regulations and case precedents that govern adverse action and the negative consequences that can occur, it is essential that all actions be meticulously documented, researched, prepared, executed and defended. The SPMO obtains advice and assistance from the legal officer in those cases adjudged necessary by the SPMO. SPMO clearance on the procedural aspects of the action must be obtained before issuance of a proposed adverse action notice, original decision, or final decision.

## 2-3. CAUSE FOR ADVERSE ACTION

a. There must be a reason for taking adverse action; that reason is commonly referred to as a "cause" and is defined as "an offense against the employer-employee relationship." What constitutes a "cause" is a decision that must be made on the merits of each situation.. Having a "cause" is not sufficient to warrant adverse action. Management must also conclude that taking adverse action will promote the efficiency of the service. This is done by establishing a relationship between the "cause" and its impact or effect upon the efficiency of the service. For example, the efficiency of the service requires technicians be present to perform the duties of their positions as scheduled. Therefore, tardiness, AWOL, or failure to request prior approval for leave has an adverse effect on the efficiency of the service.

b. When a "cause" involves off-duty misconduct, management must establish an adequate relationship between the grounds for the adverse action and the efficiency of the service (i.e., the technician's ability to perform his/her duties; the agency's ability to fullfill its mission).

## 2-4. PREPONDERANCE OF THE EVIDENCE

Management must support its reasons for the adverse action by a preponderance of the evidence. This means that considering the record as a whole, the evidence is more convincing to the trier of facts (i.e., deciding official, NGB administrative hearing examiner, or State Adjutant General) than the opposing evidence.

## 2-5. INVESTIGATIONS

a. Management has a responsibility to investigate the charges against the technician and/or any defense raised by the technician. The procedures contained in AR 20-1, AFR 120-3, and AFR 120-4 can be used as a framework for conducting such investigations. Collective bargaining agreements and/or State supplements to this TPR may contain additional procedures/requirements (e.g., representation rights) and should be reviewed. Whenever any criminal misconduct is suspected, consultation with local, State, or Federal law enforcement officials is required. If those officials decide that the conduct warrants criminal investigation, management's investigation must cease. If they conclude that there will be no criminal prosecution, management may proceed with its investigation.

b. Technicians (including the technician against whom action may be taken) being interviewed as part of an investigation need to be advised that failure to disclose material facts during the inquiry may result in disciplinary or adverse action. Additionally, technicians need to be advised that failure to answer an investigator's questions may be grounds for removal. The fact that management is not able to advise a technician of specific charges does not justify his/her refusal to answer questions. Since the purpose of the investigation is to discover facts, management may not be able to formulate

the precise charge until completing the investigation. The 5th amendment protection against self-incrimination is not infringed by orders to answer questions in an investigation where there is no likelihood of criminal prosecution. When dealing with waivers of 5th amendment rights, the investigator, in conjunction with the SPMO, should obtain advice and assistance from the legal officer.

## 2-6. TECHNICIAN'S STATUS

The fact that an adverse action is being processed does not in itself mean that the technician should not be allowed to continue performing his/her normal duties. If, however, there is reason to keep the technician away from his/her normal duties, management may detail the technician to other duties or, if necessary, indefinitely suspend the technician. NOTE: There must be some event that will bring an indefinite suspension to an end, and that event must be explained in the proposed adverse action notice. When management determines that the technician's presence at the worksite may not be in the Government's best interest, the technician may be placed in a nonduty pay status for all or part of the time it takes to process the action.

## 2-7. REPRESENTATION

a. Technicians are permitted to be represented by a representative of their choice unless otherwise provided by a collective bargaining agreement (reference paragraph 2-8). A technician can request in writing that all communication be made with or sent to his/her representative. When this happens, management proceeds under the premise that all communication with the representative reaches the technician.

b. The State Adjutant General will decide any attempt to disqualify a representative except when the challenge arises after election of an administrative hearing. In that situation, the NGB administrative hearing examiner will make the decision. If there is an attempt to disqualify an examiner, the State Adjutant General will make the decision. The person seeking the disqualification has the burden of proving his/her challenge. Conflict of interest or position, conflict with the needs of the organization, and unreasonable cost to the Government are some of the reasons that can be raised in attempting to disqualify the person.

c. Management officials may consider granting a reasonable amount of excused absence to a technician who has agreed to prepare and present a case for a fellow technician.

## 2-8. COLLECTIVE BARGAINING AGREEMENT

Provisions of a collective bargaining agreement establish requirements under which the State operates. SPMOs must ensure compliance. Violation of the applicable collective bargaining agreement could be prejudicial to the case.

## 2-9. HARMFUL ERROR

a. Harmful error is an error committed by management in the application of its procedures which, if it had not occurred, might have caused management to reach a conclusion different than the one reached. The harmful error standard avoids reversal of actions because of technical procedural oversights that have not substantially prejudiced or impaired the technician's rights. The burden is upon the technician to show that based upon the record as a whole the error was harmful; not upon management to prove the error harmless. The technician is not entitled to reversal of the action without showing that the procedural error substantially prejudiced his/her rights. If the technician can show that harmful error occurred, the action cannot be sustained. When events do not clearly show whether the error was actually harmful,

the probable effect of the error is determined in light of all the evidence. Mere theoretical possibility of harm cannot form the basis for inferring actual harm.

b. Ordinarily, when a procedural error is not alleged as harmful, it will be assumed not to have been harmful since the technician has the burden to show harmful error. However, it would be appropriate for a deciding official, NGB administrative hearing examiner, or State Adjutant General to address an error on their own initiative in order to prevent manifest injustice. Even greater leeway is justified when the technician is unassisted by a representative and unlikely to recognize the procedural error and its harmful effect.

2-10. ALLEGATION OF DISCRIMINATION

A technician who alleges that discrimination is involved in the adverse action will be advised by the SPMO of the appropriate channels for processing such allegations. The adverse action proceeds with the discrimination allegation given due weight. The fact that the allegation is considered in the adverse action does not prohibit the processing of charges through EEO channels.

2-11. ALCOHOL OR DRUG PROBLEMS

a. In the case of alcohol or drug problems, management is required to offer rehabilitative assistance as "reasonable accommodation" of a technician's known handicap. If the technician agrees to participate in a rehabilitative program and then does not keep his/her appointments or the rehabilitative efforts do not result in improved conduct, management may proceed with appropriate action.

b. When a technician's reply to a proposed adverse action establishes for the first time a handicapping condition of alcoholism or drugs, management proceeds by issuing the original decision as outlined in paragraph 2-17. However, the original decision must place the penalty decided upon in abeyance for a specified period (usually 6 months to 1 year) to provide the technician reasonable time to participate in a rehabilitative program. If within the specified period the technician fails to successfully participate or the participation does not result in improved conduct, the adverse action is effected; SPMO clearance is required before effecting the action. If the penalty is not effected within the specified period, management must treat it as if it never happened.

c. When a technician's appeal alleges for the first time that management should have known of his/her handicapping condition of alcoholism or drugs, the NGB administrative hearing examiner and/or State Adjutant General determines whether or not management failed to provide reasonable accommodation (should have inferred from the circumstances of the case that the technician was handicapped by alcohol or drugs).

2-12. ARREST, INDICTMENT, OR CONVICTION FOR CRIMINAL OFFENSE

a. The fact that a technician is arrested or criminally indicted should not normally be used as a cause for adverse action except as outlined in b below. If it is relied on, later acquittal or dismissal of the charge would vacate the cause for management's administrative action. Rather, management should rely on the technician's wrong doing. Generally this would not be affected by later legal action.

b. When management finds it undesirable to have a technician remain in a pay and duty status because of an arrest or criminal indictment, management may indefinitely suspend the technician. The technician may be placed in a nonduty pay status for all or part of the time it takes to process an

indefinite suspension. NOTE: There must be some event that will bring an indefinite suspension to an end, and that event must be explained in the proposed adverse action notice.

## 2-13. METHOD OF DELIVERY

To avoid questions over receipt, a notice or decision should be given directly to the technician with the technician acknowledging receipt by signing and dating a copy. When the U.S. mail is used, management should use certified mail with return receipt requested. Registered mail can be used (proves that the mail reached the technician's last known home address). Ordinary first-class mail should be used only as a backup to certified or registered mail.

## 2-14. FIVE BASIC STEPS

There are five basic steps in processing an adverse action:

STEP 1. Issue proposed adverse action notice.
STEP 2. Technician replies to proposed notice.
STEP 3. Issue original decision.
STEP 4. Process administrative appeal.
STEP 5. Issue final decision.

Each of the five steps are addressed in this chapter. However, not all of them have to occur. For example step two would not occur if a technician did not reply; or steps four and five would not occur if the technician did not appeal the original decision.

## 2-15. PROPOSED ADVERSE ACTION NOTICE (STEP 1)

The adverse action process begins with the technician's supervisor and the SPMO representative reviewing the information gathered about the misconduct along with the factors listed in appendix A to decide what if any adverse action should be imposed. When adverse action is decided upon, the technician's immediate supervisor initiates a proposed adverse action notice to inform the technician of the reasons for the adverse action and provide information on procedural rights. Circumstances may require others in the technician's supervisory chain to initiate such notices (e.g., the immediate supervisor may be personally involved in the misconduct). Whenever the State Adjutant General is the technician's immediate supervisor, other staff members may be designated to process the action thereby eliminating any question of impartiality if a final decision becomes necessary. SPMO clearance on the procedural aspects of the proposed adverse action notice must be obtained before issuance. The proposed adverse action must contain the following eight elements:

ELEMENT 1. STATE WHAT ACTION IS BEING PROPOSED. The proposed adverse action notice tells the technician what type of adverse action is being proposed (suspension, change to lower grade, or removal). If it is a suspension, include the number of days involved (day means calendar day). If change to lower grade is proposed, provide the title, pay plan, series, grade, and organization/location of the lower-graded position. Examples:

(a) This is notice that I propose to suspend you for 3 days from your position as warehouse worker, WG-6907-06.

(b) This is notice that I propose to change you from electronic mechanic foreman, WS-2614-10, to instrument mechanic, WG-3359-11, located at ____________________. This action constitutes a change to lower grade.

(c) This is notice that I propose to remove you from your position as aircraft mechanic, WG-8852-11.

ELEMENT 2. STATE THE REASONS FOR THE PROPOSED ACTION.

(a) The proposed adverse action notice tells the technician the reasons why management is proposing to take adverse action. The reasons must be specific and in sufficient detail (who, what, where, when, etc.) so the technician knows exactly what allegations to refute or which acts to justify. Without such details, the technician may not be able to formulate a meaningful reply. For example, reasons like "failure to display a high degree of professionalism, poor working relationships, and unprofessional attitudes" provide no underlying facts for the technician to respond to. If there are regulations or operating procedures that have been violated, reference them. Although not required, such references offer those involved in the case a better understanding of what occurred. Always doublecheck references for currency and applicability.

(b) Reasons can be better understood by "labeling" the offense _if_ that label is relevant. Labeling is not mandatory; however, it is imperative that the label fit the facts since it establishes what management must prove and what the technician will respond to. Examples of labeling are: tardiness in reporting for duty; absence without leave (AWOL); refusal to perform assigned duties; and violation of shop safety regulations. The following examples illustrate pitfalls to avoid when labeling:

(1) Not including all the offenses in the label. Management's proposed adverse action notice to a unit administrator labeled the offense "converting armory funds to your own use" and went on to explain how the unit administrator violated National Guard accounting procedures in the process. The technician's response was directed solely at disproving the label. The deciding official found that management's charge was not supported by the evidence but did find a clear violation of accounting procedures. At that point, the technician could not be penalized for accounting violations since it was not included in the label. Had it been included, the technician may have been able to raise and prove a defense.

(2) Mislabeling. On several occasions a technician failed to call before taking leave. After hearing the technician's explanation the supervisor charged the absences to annual leave. The next time it happened, the supervisor charged the technician AWOL for the 8 hours and proposed an adverse action labeling the offense "repeated instances of AWOL". The label should have been "AWOL and repeated failure to obtain advance approval of leave."

(3) Misuse of legal terms. Using the label "theft of Government property" when all that can be proven is "unauthorized removal of property" or using "assault and battery on a supervisor" when all that can be proven is "striking a supervisor."

(c) On appeal, the NGB administrative hearing examiner and/or State Adjutant General will determine if the technician did what he/she was charged with. The burden rests with management to prove the charge by a preponderance of the evidence.

ELEMENT 3. PROVIDE RATIONALE FOR PENALTY SELECTION. The proposed adverse action notice explains the appropriateness of the penalty, including any facts that the supervisor relied on for imposing a penalty more severe than would normally be imposed. This information gives the technician a fair opportunity to respond to the supervisor's rationale when making a reply to the deciding official. It will also assist management in meeting its burden of proving it considered all relevant circumstances and reached a responsible conclusion. Appendix A contains information on penalty selection.

ELEMENT 4. PROVIDE A RIGHT TO REVIEW MATERIAL RELIED ON. Evidence must be disclosed to the technician so that he/she has an opportunity to learn what management's case is based on. Therefore, the proposed adverse action notice advises the technician of the right to review material relied on and where that material is located. If the proposed adverse action notice includes copies of the material relied on, it should tell the technician that all relevant material is attached. Unless there are compelling reasons not to, the technician should be provided copies of relevant material for his/her personal use. Management may not support its action with restricted material (e.g., certain medical information) unless it can be provided in a form that can be made available to the technician for review. If prior disciplinary or adverse action records are relied on, copies need not be provided to the technician if they were provided in the past. The proposed adverse action notice advises the technician that the records are available for review in the SPMO if his/her personal copies are not available.

ELEMENT 5. GIVE RIGHT TO REPLY. The proposed adverse action notice advises the technician of his/her right to reply, who to make that reply to, time limits involved, and how to request an extension of time. The right to reply provides an opportunity for the technician to discuss the case with an official who is knowledgeable about the incident and has the authority to decide whether or not the proposed action should be sustained. This official is normally the next level supervisor or management official and is referred to as the "deciding official". His/her name, telephone number, and business address is included in the notice. Requests for extension should be in writing and include justification for the additional time. The deciding official's decision to grant or deny the extension should also be in writing and include justification if the extension is partially or completely denied. NOTE: To save time, extension requests and decisions may be verbal and followed up in writing.

ELEMENT 6. PROVIDE RIGHT TO EXCUSED ABSENCE TO PREPARE REPLY. The proposed adverse action notice advises the technician that he/she will receive excused absence to prepare reply and who to see to arrange the use of such time. It is not necessary to include the number of hours in the notice. In a typical, noncomplex case, 4 to 8 hours is normally sufficient to review material, secure statements, prepare a written reply, etc. Scheduling the excused absence is management's responsibility. So as not to interfere with the organization's mission, this excused absence can be given in consecutive or nonconsecutive blocks of time.

ELEMENT 7. GIVE SPMO ASSISTANCE INFORMATION. The proposed adverse action notice gives the name, telephone number, and address of the SPMO staff member who can be contacted for procedural assistance. This SPMO staff member provides access to applicable regulations and answers questions relative to the technician's rights. The SPMO contact does not represent the technician.

ELEMENT 8. ADVISE TECHNICIAN ABOUT THE NEXT STEP. The proposed adverse action notice tells the technician that the deciding official will issue an original decision at the earliest practical date after receipt of replies or after the reply period has ended. It also advises the technician that if the proposed action is upheld by the deciding official, it will be effected on the date established in the original decision.

## 2-16. TECHNICIAN'S REPLY (STEP 2)

a. When a technician makes an oral reply, he/she has the right to expect the deciding official to give the reply due consideration and not treat the

time as an empty formality. The technician may bring up factors that might benefit his/her response (e.g. marital problems, financial obligations, number of dependents, and alleged bias of immediate supervisor). The deciding official should make a written summary of the oral reply for the record. Such summary will help establish that bona fide consideration was given to all of the technician's reasons and arguments.

b. A technician is not entitled to call witnesses during the oral reply since he/she will later be entitled to an administrative hearing or appellate review on the merits of the adverse action. However, this does not preclude the deciding official from choosing to interview persons suggested by the technician or to take necessary steps to resolve any questions that arise.

## 2-17. ORIGINAL DECISION LETTER (STEP 3)

The deciding official issues an original decision letter to tell the technician what action has been decided on. It should be issued as soon as possible (normally within 15 work days) after receipt of replies or after the reply period has ended. SPMO clearance on the procedural aspects of the original decision letter must be obtained before issuance. The original decision letter must contain the following six elements:

ELEMENT 1. STATE WHAT ACTION WAS DECIDED UPON. The deciding official may uphold the proposed action, change the proposed action to something less severe, or take no action at all. An action more severe than proposed can never be taken. In reaching his/her decision, the deciding official cannot consider reasons for taking adverse action other than those specified in the proposed adverse action notice. This does not stop the deciding official from considering matters not charged in the proposed notice that are brought to his/her attention, which would assist in determining if charges are true or if the penalty should be reduced. Examples:

(a) On 3 February 1986, Major John Smith proposed that you be removed from National Guard technician employment. I have decided that your removal is for just cause and will promote the efficiency of the service.

(b) On 3 February 1986, Major John Smith proposed that you be removed from National Guard technician employment. Although there is just cause to warrant the taking of adverse action, I have concluded that removal would not promote the efficiency of the service. Therefore, I have reduced the proposed action to a 30-calendar-day suspension.

(c) On 3 February 1986, Major John Smith proposed that you be removed from National Guard technician employment. I have found insufficient cause to warrant your removal. Therefore, I have decided that no action be taken against you.

(d) On 3 February 1986, Major John Smith proposed that you be suspended from your technician position for 3 calendar days. Although I have found sufficient cause, I have concluded that a suspension would not promote the efficiency of the service. Therefore, I have reduced the proposed action to a letter of reprimand and have directed Major Smith to issue such reprimand. NOTE: The letter of reprimand would be not grievable.

ELEMENT 2. INCLUDE DATE ACTION WILL BE AFFECTED.

(a) The original decision letter tells the technician when the action will take place/start. An action cannot start earlier than the date of the original decision. There is no prohibition against starting an adverse action during the period 15 December through 3 January.

(b) The National Guard Technicians Act requires technicians be given at least 30 days advance notice when removal from employment is involved (32 U.S.C. 709(e)(6)). The following rules apply when computing the 30-day notice: (1) day means calendar day, (2) calendar day is the 24-hour-period between 12 midnight and 12 midnight, (3) the 30-day period begins the day after the proposed adverse action notice is given directly to the technician or if mailed, 5-days after the date mailed as shown on the certified mail return receipt, and (4) the last day of the 30-day period may not be a nonwork day.

ELEMENT 3. REFERENCE THE TECHNICIAN'S REPLIES.

(a) The original decision letter explains that the technician's replies were considered in arriving at the decision. For example, I have given full consideration to your oral reply of 10 February and your written reply of 13 February. When no replies are received, the original decision letter should document that fact. A decision to take an adverse action cannot be made solely on the basis that the technician failed to refute the charges. When a technician's oral/written reply disputes reasons included in the proposed notice, the original decision letter must include a response to that dispute to show that there does in fact exist a basis for the reason.

(b) In cases where the deciding official receives a reply after the time allowed but before issuance of the original decision letter, it is permissible, but not required, to consider the late reply.

ELEMENT 4. PROVIDE REASONS FOR THE DECISION. The original decision includes reasons for the decision. This is done by explaining which reasons in the proposed notice were sustained. For example, I find all reasons outlined by Major Smith sustained; or I find the reasons outlined in paragraph 2a and c of Major Smith's proposed notice sustained. It is not necessary to repeat the charges and specific reasons that are contained in the proposed adverse action notice. When the deciding official sustains some of the reasons but decides not to reduce the penalty, the original decision letter must explain why. When the deciding official sustains all of the reasons but decides to take a less severe action, the original decision must explain why.

ELEMENT 5. GIVE SPMO ASSISTANCE INFORMATION. The original decision gives the name, telephone number, and address of the SPMO staff member who the technician can contact for procedural assistance. Normally, this will be the same staff member listed in the proposed adverse action notice (see element 7, paragraph 2-15).

ELEMENT 6. PROVIDE APPEAL RIGHTS.

(a) The original decision letter explains the appeal rights available, how to appeal, and time limits involved. This information is not included if the deciding official decides to take no action.

(b) A technician can appeal the original decision by requesting an appellate review or an administrative hearing, but not both. The appellate review is accomplished by the State Adjutant General without the involvement of an NGB administrative hearing examiner. It involves a review by the State Adjutant General of all pertinent records including material submitted by the technician with his/her appeal. The administrative hearing means that an examiner from another State will gather all available facts though an administrative hearing process and then issue a report of findings and recommendations to the State Adjutant General (copy is also sent to the technician). Regardless of the appeal method selected, a final decision on the appeal is issued by the State Adjutant General.

(c) A technician appeals by sending a written notice to the SPMO stating whether he/she wants an appellate review or an administrative hearing. This appeal must be postmarked no later than 20 calendar days after receipt of the original decision. If an appellate review is selected, the technician can submit any information or material he/she deems relevant to the State Adjutant General's review. If the technician selects an administrative hearing, no further information is required. Requests for extensions should be in writing and include justification for additional time. Although such requests are sent to the SPMO, the State Adjutant General is the person who decides to grant or deny the extension. The SPMO is responsible for notifying the technician in writing of the State Adjutant General's decision including rationale if the extension is partially or completely denied. NOTE: To save time, extension requests and decisions may be verbal and followed up in writing.

## 2-18. PROCESS ADMINISTRATIVE APPEAL (STEP 4)

How the SPMO processes an appeal depends on the appeal method selected by the technician. If an appellate review is selected, the SPMO provides the State Adjutant General with all relevant material and assists in resolving any questions that may arise. An appellate review may result in a discussion between the State Adjutant General and the technician concerned, and, if requested by the technician, his/her representative. If this occurs, an SPMO staff member should be present as an observer. If the technician requests an administrative hearing, the SPMO processes the appeal in accordance with chapter 3.

## 2-19. THE FINAL DECISION (STEP 5)

a. The issuance of the final decision is the method by which the technician is notified of the State Adjutant General's decision on his/her appeal. The final decision must be provided in writing and must be signed by the State Adjutant General. It is issued at the earliest practical date after completion of the appellate review or after receipt of the examiner's report of findings and recommendations. SPMO clearance on the procedural aspects of the final decision letter must be obtained before issuance. In addition to the technician concerned, a copy of the final decision is sent to NGB-TN. If an examiner was appointed, he/she should also be provided a copy of the final decision.

b. In making the final decision, the State Adjutant General must address three issues:

(1) Did the technician do what he/she was charged with? This is a factual determination using the preponderance of the evidence standard.

(2) Will some discipline, based on the proven conduct, promote the efficiency of the service? This is a judgmental determination based on the record.

(3) Is the penalty appropriate?

If an administrative hearing was held, the examiner's report will address these three issues for the State Adjutant General's consideration. If the State Adjutant General is in total agreement with the findings and recommendations (including how they were reached), the final decision need only state agreement with the report. When an examiner's findings and/or recommendation are not accepted, the final decision must provide rationale for the State Adjutant General's position. When only an appellate review is made, the State Adjutant General must address these issues without benefit of an examiner's report.

c. In addition to the three issues outlined in b above, the final decision must -

(1) Include, if appropriate, information on corrective actions. A statement that the SPMO has been directed to take corrective action is enough, unless the State Adjutant General has decided to limit the amount of corrective action to be taken.

(2) State that in accordance with 32 U.S.C. 709e(5) there is no further administrative review of the State Adjutant General's final decision. NOTE: If the State Adjutant General's final decision reduces the penalty to a letter of reprimand, that letter of reprimand is not grievable.

2-20. ATTORNEY FEES

a. The State Adjutant General has authority to award reasonable attorney fees under 5 U.S.C. 5596.[2] OPM has issued implementing regulations for payment of attorney fees in 5 CFR 550. The requirements for payment of attorney fees are: (1) the technician must be the prevailing party, (2) the attorney fee must be reasonable as determined by the State Adjutant General, and (3) a determination must be made by the State Adjutant General that payment is warranted in the interest of justice. Attorney fees are not automatically granted; the burden of establishing entitlement and reasonableness rests with the technician. Each case must be examined on its own merits.

b. Requests for attorney fees must be sent to the State Adjutant General. Once received, such requests are provided to the SPMO and legal officer for review and recommendation as to whether or not payment is warranted. In addition, the legal officer provides recommendation on the reasonableness of the fee request. If an administrative hearing was held, the State Adjutant General may also request the examiner's review and recommendation. (The examiner will not address the reasonableness of the fee request.) All of these recommendations must provide articulated, rational reasons for or against the award.

c. The State Adjutant General is bound by the findings on the merits of the case and may not recharacterize them when evaluating a request for attorney fees. The State Adjutant General's decision on the attorney fees request is issued as an addendum to the final decision.. If fees are awarded, it must set forth the reasons why such payment is "in the interest of justice." If fees are not awarded, the addendum must provide rationale for such decision. There are no administrative appeals for attorney fee requests.

---

[2] 5 U.S.C 5596. Back pay due to unjustified personnel action. (b) (1) An employee of an agency who, on the basis of a timely appeal or an administrative determination (including a decision relating to an unfair labor practice or a grievance) is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of the pay, allowances, or differentials of the employee--

(A) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was in effect --

(i) an amount equal to all or part of the pay... which the employee normally would have earned, or received during the period if the personnel action had not occurred...

(ii) reasonable attorney fees related to the personnel action....

## 2-21. ADVERSE ACTION FILE

The SPMO is responsible for maintaining the official adverse action file. It should include all documents relevant to the processing of the adverse action. For example: supporting documentation, the proposed adverse action notice, requests for extension and approval/denial responses, written reply, summary of oral reply, original decision, memos for the record, the appeal, request for examiner, administrative letters involving hearing arrangements, hearing transcript, examiner's report of findings and recommendation, and final decision addendums relating to attorney fee requests.

# CHAPTER 3. ADMINISTRATIVE HEARING

## 3-1. PREPARATION FOR THE HEARING

The SPMO requests an NGB administrative hearing examiner IAW procedures outlined in chapter 4. Other responsibilities of the SPMO include

(1) Providing written notification to the technician of an examiner's selection (information copy must be sent to the examiner).

(2) Establishing, with all parties, a mutually acceptable date, time, and place for the pre-hearing conference and the hearing. The examiner resolves any disagreements which may arise. The location should be as close to the work site as possible, accessible by all parties, relatively quiet, and neutral to both parties.

(3) Notifying the technician and or representative in writing of the mutually acceptable date, time, and location of the pre-hearing conference and hearing. (Information copy must be sent to the examiners.)

(4) Providing a case file to the examiner and the technician or his/her representative at least 3 weeks in advance of the hearing. File must be indexed and include as a minimum the proposed adverse action notice and all material relied on; technician's written reply; summary of oral reply; and the original decision.

(5) Arranging for a court reporter (verbatim transcript).

(6) Honoring the examiner's instructions for supplies, equipment, and hearing room lay-out.

(7) Arranging for examiner lodging, transportation, and travel order fund cite.

(8) Arranging for the appearance of agency witnesses being called by management or the technician. A technician has the right to secure the attendance of agency witnesses; problems relative to agency witness availability will be resolved by the examiner.

## 3-2. PRE-HEARING CONFERENCE

A pre-hearing conference is an informal meeting of the parties involved and is normally held the day before the hearing. During the pre-hearing conference, the examiner explains the hearing process, helps to identify problems, discusses responsibilities and rights, reviews case file, identifies documents, obtains stipulations, and assists in settlement offers. Normally, the pre-hearing conference is not recorded verbatim. When there is no transcript, the results of the conference are summarized by the examiner and read into the record when the actual hearing begins.

## 3-3. CONDUCT OF THE HEARING

a. The purpose of the administrative hearing is to develop fully all the facts surrounding the issues of the case. The administrative hearing is not a court of law. It is not subject to the procedural and substantive rules which govern conduct of trials because its purpose is not to find the technician guilty or innocent. The hearing is conducted in order to determine three issues:

(1) Did the technician do what he/she was charged with? This is a factual determination using the preponderence of the evidence standard.

(2) Will some discipline, based on the proven conduct, promote the efficiency of the service? This is a judgmental determination based on the record.

(3) Is the penalty appropriate? The choice of penalty will not be disturbed unless the record indicates the choice to be arbitrary, capricious, or otherwise unreasonable in light of the proven conduct.

b. The hearing will be closed to the public unless the technician and management agree to hold a public hearing. Normally, only the examiner, management's representative (with technical advisors), technician, technician's representative (with technical advisors), and the individual recording the proceedings will be present at a closed hearing. However, local labor agreements may require others to be included. At a public hearing, the examiner decides the number of people allowed. Disputes over attendance will be resolved by the examiner. A hearing must be recorded verbatim with a copy of the transcript provided free of charge to the technician.

c. The examiner directs the hearing proceedings and has authority to take whatever action is necessary to ensure an equitable, orderly, and expeditious hearing. The order of business is -

(1) Examiner calls the hearing to order, identifies the nature of the hearing, names the participants, and makes other statements needed for the record.

(2) Management's representative makes opening statement.

(3) Technician's representative makes opening statement or may defer until after management's representative presents witnesses and evidence. (A technician may represent himself/herself, though it is recommended in the interest of the individual and to facilitate the hearing that a representative be selected.)

(4) Management's representative presents witnesses and evidence.[3]

(5) Technician's representative presents witnesses and evidence.[3]

(6) Closing statement by management's representative.[4]

(7) Closing statement by technician's representative.[4]

(8) Examiner prepares to close hearing.

(9) Examiner closes and adjourns hearing.

---

[3]Both sides have the right to cross-examine witnesses.

[4]Either side may request the opportunity to submit post hearing briefs in lieu of closing arguments. This is usually done when there has been a lengthy hearing, when the issues are numerous or complexed, or when questions of law or regulation are involved. Requests from the technician's representative are automatically granted. Requests from management must be reviewed carefully by the examiner with due weight given to the effects such delay will have on the technician.

3-4. REPORT OF FINDINGS AND RECOMMENDATIONS

Once the examiner receives the transcript, the report is prepared and finalized within 45 calendar days. The examiner goes through six processes in preparing the report. First, the charges are reviewed and evidence that supports each charge is identified and given appropriate weight. Second, conflicts in testimony are resolved. Third, credibility of witnesses is determined. Fourth, a check for procedural compliance is made. Fifth, conclusions are drawn on each charge. Sixth, the appropriateness of the penalty is determined. The report is formatted in nine sections. They are-

- I Introduction
- II Case Summary
- III Compliance with Procedural Requirements
- IV Management's Position
- V Technician's Position
- VI Issues Considered
- VII Conclusions
- VIII Discussion (Optional)
- IX Recommendations

The original copy of the report is addressed to the State Adjutant General but mailed to the SPMO along with the case file and transcript. A copy of the report is also sent to the technician and to NGB-TN. A final decision is then issued as outlined in paragraph 2-19.

# CHAPTER 4. NGB ADMINISTRATIVE HEARING EXAMINER SYSTEM

## 4-1. PURPOSE

The NGB administrative hearing examiner system was established to provide a cadre of qualified individuals to conduct administrative hearings and prepare reports of findings and recommendations for State adjutants general.

## 4-2. QUALIFICATIONS

When the need exists to add new examiners to the system, NGB-TN will request the State adjutants general to nominate individuals for attendance at the NGB administrative hearing examiner course. Those nominated should meet the following criteria:

a. Be currently employed as a technician in grade GS-11 or above (WG equivalent) or full-time support personnel with rank of captain or above.

b. Possess 4 years of progressively responsible experience in administrative, managerial, professional, investigative, or technical work.

c. Possess the personal attributes essential to the effective performance of an examiner (integrity, discretion, impartiality, reliability, resourcefulness and emotional stability).

d. Demonstrate abilities to: analyze, evaluate, and make logical determinations of pertinent facts; develop practical recommendation; interpret regulations and other complex written material, effectively communicate, orally and in writing; prepare clear and concise reports; and deal effectively with individuals and groups.

e. Understand the relationship between personnel administration and overall management concerns as well as the principles, systems, and methods for accomplishing the work of an organization.

## 4-3. REQUESTING AN EXAMINER

When an administrative hearing has been selected, the SPMO sends NGB-TN a written request for an examiner list (normally within 5 workdays after receipt of the appeal). Included in the request is the technician's name, position title, grade, service, charge, and penalty. A list of six examiners will be sent to the SPMO. Telephonic contact with those on the list is made by an SPMO staff member to determine availability. Additional names will be provided by NGB-TN if those referred are unable to conduct the hearing. It is the examiner's responsibility to get appropriate supervisory clearances before accepting a case. The SPMO will send written notification to the technician when an NGB administrative hearing examiner is selected (information copy will be sent to examiner).

## 4-4. GRIEVANCE HEARING

a. An examiner referral list may be requested when a State grievance system requires a hearing on a grievance. Examiners from the same State as the grievant may be used if the criteria established in FPM chapter 771 is met. The procedures in paragraph 4-3, apply when requesting an examiner. (The information sent to NGB-TN should be changed to fit the grievance situation.) Examiners may also be requested if a negotiated labor agreement provides for their involvement in lieu of arbitration.

b. The grievance hearing is conducted as outlined in paragraph 3-3c, except management and technician representative's roles are reversed in presentation (e.g., technician's representative makes opening statement, then management's representative makes opening statement).

# APPENDIX A. PENALTY SELECTION

## A-1. GENERAL

Determining the appropriateness of a penalty relies not only on establishing factual circumstances but also on application of judgment and discretion. In other words, the issue should be not whether the penalty is within the permissable range, but rather, why that particular penalty was chosen.

## A-2. RELEVANT FACTORS

Selection of an appropriate penalty results from a responsible balancing of relevant factors. Some may be in the technician's favor while others may not. The factors listed below are generally recognized as being relevant considerations in determining the appropriateness of a penalty. The list is intended as a guide and should not be applied in a mechanical fashion.

(1) The nature and seriousness of the offense and its relation to the technician's duties, position, and responsibilities, including whether the offense was intentional, technical, inadvertent, or was committed maliciously or for gain or was frequently repeated.

(2) The technician's job level and type of employment, including supervisory role, and position of trust such as those involved in handling funds, contacts with the public, and prominence of the position.

(3) The technician's past disciplinary or adverse action record and the time period between these past offenses (see paragraph A-3).

(4) The technician's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability.

(5) The effect of the offense upon the technician's ability to perform at an acceptable level and its effect upon the supervisor's confidence in the technician's ability to perform assigned duties.

(6) Consistency of the penalty with those imposed upon other technicians for the same or similar offenses.

(7) Consistency of the penalty with the guide provided in paragraph A-5.

(8) The notoriety of the offense or its impact upon the reputation of the National Guard.

(9) The clarity with which the technician has been made aware of the rule(s) violated in committing the offense, or has been warned about the conduct in question.

(10) Potential for technician's rehabilitation.

(11) Mitigating circumstances surrounding the offense, such as unusual job tensions, personality problems, mental impairment, harassment; or bad faith, malice, or provocation on the part of others involved in the matters.

(12) The adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the technician or others.

## A-3. PAST DISCIPLINE OR ADVERSE ACTION

a. When a technician's past disciplinary or adverse action record is referenced, management must ensure that it is in fact a past action at the time the most recent misconduct occurred. Otherwise, the State Adjutant

General an/or the examiner will have to find consideration of it improper and not rely on it.

b. When a technician's past record is considered by the supervisor as a relevant factor in selecting the penalty, the proposed adverse action notice should list each past record. For example: The following elements of your past record were considered in selecting the penalty to be imposed: Letter of Reprimand dated 1 February 1986 for AWOL and Letter of Reprimand dated 10 February 1986 for tardiness. Unrelated offenses may be used collectively to justify an enhanced penalty.

c. If a technician challenges prior desciplinary or adverse action records, the review of that challenge will depend on whether or not the prior action meets three criteria. First, the technician was informed of the action in writing (annotation of NGB Form 904-1 satisfies this criteria); second, the technician was given an opportunity to dispute the action by having it reviewed on the merits; and third, the action was a matter of record. Where the three criteria are met, review will be limited to the record, and no new evidence or argument can be accepted. Where the three criteria are not met, the technician will be allowed to submit new evidence or arguments concerning the merits of the discipline or adverse action.

## A-4. PENALTY REVIEW

If on appeal a technician challenges the appropriateness of the penalty, the burden rests with management to show that the penalty was appropriate (see element 3, paragraph 2-15). When the penalty is unchallenged by the technician, management must still establish that it gave necessary considerations to the relevant factors and that the penalty did not exceed the limit of reasonableness. This penalty review is not meant to displace management's responsibilities, but to assure that managerial judgment and discretion has been properly exercised in the selection of the penalty.

## A-5. TABLE OF PENALTIES

The table of penalties provided below is a guide; it is not all inclusive. It will aid managers and supervisors in carrying out the principle of "like penalties for like offenses" in genuinely similar cases. The table provides suggested penalties and should not be applied so inflexibly as to impair consideration of factors relevant to the individual case. Throughout the table, the word "day" means "calendar days".

| Nature of Offense | | First Offense | Second Offense | Third Offense | Remark |
|---|---|---|---|---|---|
| 1. Attendance related offenses | a. Unexcused tardiness | Oral admonishment to written reprimand | Written reprimand to 1-day suspension | 2-day to 5-day suspension | 1 |
| | b. Failure to follow established leave procedures | Written reprimand to 5-day suspension | 1-day to 5-day suspension | 5-day suspension to removal | |
| | c. Absence without leave (AWOL) | Written reprimand to 5-day suspension | 1-day to 15-day suspension | 5-day suspension to removal | 2 |
| 2. Failure to observe written regulations, rules | a. Violation where safety to persons or property is not involved | Written reprimand to 1-day suspension | 1-day to 15-day suspension | 2-day suspension to removal | 3 |
| | b. Violation where safety to persons or property is involved | Written reprimand to removal | 30-day suspension to removal | Removal | 3 |
| 3. Breach of security regulations or practices | a. Where classified information is not compromised and breach is unintentional | Written reprimand to 5-day suspension | 1-day to 15-day suspension | 5-day suspension to removal | |
| | b. Where classified information is compromised and breach is intentional | Written reprimand to removal | 30-day suspension to removal | Removal | |
| | c. Where classified information is compromised and it is a deliberate violation | 30-day suspension to removal | Removal | | |
| 4. Alcohol-related offenses | a. Unauthorized use of alcoholic beverages while on Government premises or in duty status | Written reprimand to 15-day suspension | 15-day to 30-day suspension | 30-day suspension to removal | 4 |
| | b. Sale or transfer of an alcoholic beverage while on Government premises or in a duty status or while any person involved is in a duty status | Written reprimand to 15-day suspension | 15-day suspension to removal | Removal | 4 |

| Nature of Offense | | First Offense | Second Offense | Third Offense | Remarks |
|---|---|---|---|---|---|
| | c. Reporting to or being on duty while under the influence of alcohol to a degree which would in any way interfere with proper performance of duty, would be a menace to safety, or would be prejudicial to the maintenance of discipline | Written reprimand to 30-day suspension | 15-day suspension to removal | Removal | 4 |
| 5. Drug-related offenses | a. Unauthorized possession of a drug or controlled substance while on Government premises or in a duty status | Removal | | | 4 |
| | b. Unauthorized use of a drug or controlled substance while on Government premises or in a duty status | Removal | | | 4 |
| | c. Reporting to or being on duty while under the influence of a drug or controlled substance to a degree which would in any way interfere with proper performance of duty, would be a menace to safety, or would be prejudicial to the maintenance of discipline | Removal | | | 4 |
| | d. Unauthorized sale or distribution of a drug or controlled substance on government premises or in a duty status or while any person involved is in a duty status | Removal | | | 4 |
| 6. False statements | a. Deliberate misrepresentation, exaggeration, falsification, concealment or withholding of a material fact | Written reprimand to removal | 1-day suspension to removal | 15-day suspension to removal | 7 |
| | b. Making false, malicious or unfounded statements against coworkers, supervisors, subordinates, or Government officials which tend to damage the reputation, or undermine the authority of those concerned | Written reprimand to removal | 30-day suspension to removal | Removal | |

| Nature of Offense | | First Offense | Second Offense | Third Offense | Remarks |
|---|---|---|---|---|---|
| | c. False statements, misrepresentation, or fraud in entitlements | Written reprimand to removal | 30-day suspension to removal | Removal | 5 |
| | d. False statement or misrepresentation, on an SF 171, or other documents pertaining to qualifications, or other official record | Written reprimand to removal | Removal | | 6 |
| 7. Refusal to testify; interference or obstruction | a. Refusal or willful failure to testify or cooperate in a properly authorized inquiry or investigation | 3-day suspension to removal | 5-day suspension to removal | Removal | |
| | b. Interference with or attempting to influence, or attempting to alter testimony of witnesses or participants | 5-day suspension to removal | 30-day suspension to removal | Removal | |
| | c. Attempting to impede inquiry or investigation or to influence investigating officials | 10-day suspension to removal | 30-day suspension to removal | Removal | |
| 8. Insubordination | Refusal to obey orders, defiance of authority | Written reprimand to removal | 5-day suspension to removal | Removal | |
| 9. Fighting; creating a disturbance | a. Creating a disturbance resulting in an adverse effect on morale, production, or maintenance of proper discipline | Written reprimand to 5-day suspension | 5-day to 10-day suspension | Removal | 9 |
| | b. Threatening or attempting to inflict bodily harm | Written reprimand to 15-day suspension | 15-day suspension to removal | 30-day suspension to removal | 8 |
| | c. Hitting pushing or other acts against another without causing injury | Written reprimand to 30-day suspension | 30-day suspension to removal | Removal | 8 |
| | d. Hitting, pushing or other acts against another causing injury | 30-day suspension to removal | Removal | | 8 |
| 10. Discourtesy | a. Rude, unmannerly, impolite acts or remarks (non-discriminatory) | Oral admonishment to 1-day suspension | Written reprimand to 5-day suspension | 1-day to 10-day suspension | 10 & 11 |
| | b. Use of insulting, abusive, offensive, or obscene language, gestures or similar conduct (non-discriminatory) | Written reprimand to 10-day suspension | 5-day suspension to removal | 30-day suspension to removal | 10 |

| Nature of Offense | | First Offense | Second Offense | Third Offense | Remarks |
|---|---|---|---|---|---|
| 11. Stealing or wrongful appropriation | a. Stealing/wrongfully appropriating, actual or attempted, unauthorized possession of government property or property of others | Written reprimand to removal | Removal | | |
| 12. Misuse or abuse of government property or personnel | a. Negligent loss, destruction, or damage to government property | Written reprimand to 5-day suspension | Written reprimand to removal | 15-day suspension to removal | |
| | b. Loss of or damage to government property, records or information when a technician is entrusted in safeguarding government property as a requirement of the job (i.e. warehouse worker, supply technician) | Written reprimand to 15-day suspension | Written reprimand to removal | 15-day suspension to removal | |
| | c. Using government property or technician personnel in duty status for other than official purposes | Written reprimand to removal | 1-day suspension to removal | 15-day suspension to removal | 12 |
| | d. Misuse of government credentials | Written reprimand to removal | 5-day suspension to removal | 15-day suspension to removal | |
| | e. Willfully using or authorizing the use of a government passenger motor vehicle or aircraft for other than official purposes | 30-day suspension to removal | Removal | | 13 |
| | f. Intentionally mutilating or destroying a public record | Removal | | | 14 |
| 13. Sleeping on duty | a. Where no danger to persons or property is involved | Oral admonishment to 1-day suspension | Written reprimand to 5-day suspension | 5-day suspension to removal | |
| | b. Where danger to persons or property is involved | Written reprimand to removal | 15-day suspension to removal | 30-day suspension to removal | |
| 14. Loafing; delay in carrying out instructions; dereliction of duty | a. Idleness or failure to work on assigned duties | Oral admonishment to 3-day suspension | Written reprimand to 5-day suspension | 5-day suspension to removal | |
| | b. Delay in carrying out or failure to carry out instructions within the time required | Written reprimand to 15-day suspension | 3-day suspension to removal | 5-day suspension to removal | |
| | c. Dereliction of duty | Written reprimand to removal | 5-day suspension to removal | Removal | |

| Nature of Offense | | First Offense | Second Offense | Third Offense | Remarks |
|---|---|---|---|---|---|
| 15. Gambling | a. Participating in an unauthorized gambling activity while on government premises or in a duty status | Oral admonishment to written reprimand | 1-day to 5-day suspension | 5-day to 30-day suspension | |
| | b. Operating, assisting, or promoting an unauthorized gambling activity while on government premises or in a duty status or while others involved are in a duty status | 15-day suspension to removal | Removal | | |
| 16. Prohibited job actions | Participating in or promoting a strike, work stoppage, slow down, sick out or other prohibited job action | Removal | | | |
| 17. Indebtedness | Failure to honor just financial obligations in a proper and timely manner | Written reprimand | Written reprimand | Written reprimand | 15 |
| 18. Sexual harassment | a. Not involving a subordinate | Written reprimand to 5-day suspension | 5-day suspension to removal | 10-day suspension to removal | 16 |
| | b. Involving a subordinate | 3-day suspension to removal | 10-day suspension to removal | 30-day suspension to removal | 16 |
| 19. Discrimination because of race, color, religion, age, sex, national origin, political affiliation, handicap or marital status | a. Use of critical, demeaning, slanderous, inflammatory, defamatory, ignominious, or degrading remarks, comments, observations or statements not directed at a subordinate | Written reprimand to 5-day suspension | 1-day to 5-day suspension | 5-day suspension to removal | 17 |
| | b. Prohibited discriminatory practice in any aspect of employment (e.g. employment, appraisal development, advancement or treatment of technicians) | Written reprimand to removal | | | 18 |
| 20. Reprisal | a. Intentional interference with a technician's exercise of, or reprisal against a technician for exercising a right to grieve, appeal or file a complaint through established procedures | Written reprimand to removal | 5-day suspension to removal | | |

| Nature of Offense | | First Offense | Second Offense | Third Offense | Remarks |
|---|---|---|---|---|---|
| | b. Intentional interference with a technician's exercise of, or reprisal against a technician for exercising a right under 5 U.S.C. 7101 (governing Federal labor-management relations) | Written reprimand to removal | 5-day suspension to removal | | |
| | c. Intentional reprisal against a technician for providing information to an Inspector General, EEOC investigator, NGB investigator, or for testifying in an official proceeding | 30-day suspension to removal | Removal | | |
| 21. Constitutional violation | Violation of a technician's constitutional rights, (i.e., freedom of speech/association/religion) | Written reprimand to removal | 5-day suspension to removal | 30-day suspension to removal | |
| 22. Conduct unbecoming a National Guard technician | a. Immoral, indecent, or disgraceful conduct | 1-day suspension to removal | Removal | | |
| | b. Solicitation of or accepting anything of monetary value from person who is seeking contracts or other business or financial gain | 10-day suspension to removal | Removal | | 19 |

REMARKS

1. This includes delay in reporting at the scheduled starting time, returning from lunch or break periods, and returning after leaving work station on official business.
Penalty depends on length and frequency of tardiness.
Fourth offense typically may warrant 5-day suspension to removal.

2. These penalties generally do not apply to AWOL charged for tardiness of 1/2 hour or less.
If a technician is absent without leave having been approved, it is appropriate that the time be recorded as AWOL and later changed to an approved leave category only when the approving authority determines that extenuating circumstances were such that the absence is improperly charged to AWOL.
This offense includes leaving the work station without permission.
Penalty depends or length and frequency of absences.
Removal may be appropriate for a first or second offense if the absence is prolonged.

3. "Persons" includes "self".
Penalty depends on seriousness of injury or potential injury and extent or potential extent of damages to property.

4. Actions involving this offense must be reviewed to insure the requirements of the Technician Assistance Program are met.

5. This offense includes falsifying information on a time card, leave form, travel voucher, or other document pertaining to entitlement.

6. Removal is warranted when selection was based on falsified SF 171 where falsification was intentional or where the technician occupies a position involved in money matters..

7. This offense includes perjury, making false sworn statements, and lying to supervisor.

8. In deciding whether statements are threats, consider the reactions and apprehensions of listeners, the wording of the statements, the speaker's intent and the attendant circumstances.
In selecting penalty, consider such factors as provocation, extent of injuries, whether actions were defensive or offensive in nature, or whether actions where directed at a supervisor.

9. In selecting penalty, consider how severely work is disrupted.

10. Penalty should be exceeded if conduct was directed to a supervisor.

11. Penalty for fourth offense within 1-year may be 15-day suspension to removal.

12. In selecting the penalty consider the value of the property or amounts of technician time involved and the nature of the position held by the offending technician which may dictate a higher standard of conduct.

13. In accordance with 31 U.S.C. 638a(c)(2), penalty can not be less than 30 day suspension.

14. Penalty dictated by 18 U.S.C. 2071.

15. A "just financial obligation" is one acknowledged by the technician, reduced to judgement by a court, or imposed by law. In a "proper and timely manner" means in a way that shows good faith and a real effort to meet the obligation.
Action should not be taken unless management can establish a clear link between the efficiency of the service and the technician's debt.
Suspension is not recommended.

16. Sexual Harassment - Influencing, offering to influence, or threatening the career, pay, job, or work assignment of another person in exchange for sexual favors; or deliberate or repeated offensive comments, gestures, or physical contact of a sexual nature.
Appropriate penalty depends on the facts in a given case weighed against National Guard policy that sexual harassment will not be tolerated.
Where conduct created a hostile or offensive work environment removal is warranted for a first offense.

17. If a subordinate is involved see Offense #19 b.
If a superior is involved see Offense #8 (Insubordination).

18. Includes failure to prevent or curtail discrimination of a subordinate when the supervisor knew or should have known of the discrimination.
Appropriate penalty depends on the facts in a given case weighed against National Guard policy that discrimination is prohibited.

19. DOD Directive 5500.7 contain exceptions to this general prohibition of accepting gratuities.

| |
|---|
| Users of this publication are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) to NGB-TN, 5600 Columbia Pike, Falls Church, VA 22041-5125 |

BY ORDER OF THE SECRETARIES OF THE ARMY AND AIR FORCE:

HERBERT R. TEMPLE, Jr.
Lieutenant General, USA
Chief, National Guard Bureau

OFFICIAL

HARRY M. LESLEY
Lieutenant Colonel, USAF
Executive, National Guard Bureau

DISTRIBUTION: Special
Each AG (1)
Each SPMO (1 per FPM)
Each supervisor of technician personnel (1)

☆U.S. GOVERNMENT PRINTING OFFICE: 1987-700-840