# EXHIBIT 44

## VIOLENCE IN THE WORKPLACE

### Zero Tolerance Policy

### Policy Letter 99-31, March 23 1999

# State of Utah
## UTAH NATIONAL GUARD

Michael O. Leavitt
Governor
Major General James M. Miller
Adjutant General

12953 SOUTH MINUTEMAN DRIVE
P.O. BOX 1776
DRAPER, UTAH 84020-1776
(801) 523-4402, DSN 766-4402

UT-HRO (690)

23 March 1999

MEMORANDUM FOR SEE DISTRIBUTION

SUBJECT: Policy Letter 99-31, Violence in the Workplace

1. This policy letter supersedes Policy Letter 98-10, dated 10 November 1997, and is applicable to all AGR, Excepted and Competitive technicians, and State employees of the Utah National Guard.

2. The Utah National Guard is committed to the health and safety of its employees. Threats and violence in the workplace will not be tolerated. To ensure a professional workplace, all employees must work together as a team toward that goal. The Utah National Guard's position on threats and violence in the work place is "ZERO TOLERANCE."

3. Violence is defined as physical or verbal aggresion toward others or directed at the property and/or equipment of the Utah Natinal Guard. Any behavior that is threatening to another employee's physical or emotional safety will not be tolerated. Verified threats or violent acts will result in immediate disciplinary action, to include termination. Any employee who makes a threat or completes a violent act cannot excepect to maintain privacy in those areas that need to be investigated to ensure a safe work environment.

4. Every employee is obligated to immediately report any threat by co-worker or supervisor. In addition, management at all levels must immediately investigate any actions that may be perceived as a threat. Upon investigation, managers and/or superviors will take whatever appropriate action necessary to resolve the issue.

5. The Human Resources Office will develop a program and procedures to enforce and support the "ZERO TOLERANCE" policy on threats and violence in the workplace. It will include a procedure to file and investigate complaints, train all of our employees on workplace violence awareness and organize a Workplace Response Team.

JAMES M. MILLER
Major General, Utah NG
The Adjutant General

DISTRIBUTION:
A & E

# EXHIBIT 45

## AIR FORCE INSTRUCTION 36-3209

## (Except Chapter 2)

*BY ORDER OF THE*
*SECRETARY OF THE AIR FORCE*

*AIR FORCE INSTRUCTION 36-3209*
*1 FEBRUARY 1998*

*Personnel*

# *SEPARATION AND RETIREMENT PROCEDURES FOR AIR NATIONAL GUARD AND AIR FORCE RESERVE MEMBERS*

**COMPLIANCE WITH THIS PUBLICATION IS MANDATORY**

---

**NOTICE:** This publication is available digitally on the SAF/AAD WWW site at: http://afpubs.hq.af.mil. If you lack access, contact your Publishing Distribution Office (PDO).

---

OPR: HQ ARPC/XPX (Ms Ella L. McDonald)
HQ USAF/RE (Brig Gen John A. Bradley)
Certified by: NGB/CF (Brig Gen Paul A. Weaver)
Supersedes AFI 36-3209, 1 October 1995
Pages: 177
Distribution: F

---

This instruction applies to all officer and enlisted members not serving on active duty with the Regular Air Force. Chapter 5 applies to members assigned to the Retired Reserve not receiving retired pay. Recalled members are subject to this instruction if they are removed from retired status and returned to an active status. This instruction implements AFPD 36-32, *Military Retirements and Separations*, 28 May 1993, and establishes procedures for administrative separation or discharge of Air National Guard (ANG) and Air Force Reserve members under those conditions and reasons outlined herein.

**Privacy Act Statement.** This instruction directs collecting and maintaining information protected by the Privacy Act of 1974 authorized by 10 U.S.C., Sections 10204 and 8013. System of records F036 ARPC G, Request for Discharge from the ANG and Air Force Reserve, apply.

## *SUMMARY OF REVISIONS*

This is a complete revision of this AFI, which also includes procedures implementing the Reserve Officer Personnel Management Act (ROPMA) and a new Chapter 5, Retirement.

**Chapter 1— ADMINISTRATIVE SEPARATION OF ANG AND AIR FORCE RESERVE MEMBERS NOT ON EXTENDED ACTIVE DUTY (EAD)** 10

Section 1A General Instructions 10

1.1. General Instructions. ........ 10
1.2. Applicability and Scope. ........ 10
1.3. Explanation of References, Abbreviations, Acronyms, and Terms. ........ 10
1.4. Authority for Discharge. ........ 10

1.5. Authority for Discharges and Notice of Discharge. .......... 11
1.6. Disposition of Cases Pending. .......... 12
1.7. Disposition of Correspondence .......... 12
1.8. Guidelines for Separation and Service Characterization .......... 12
1.9. Type of Separation and Their Effects on the Individual and Their Benefits. .......... 12
1.10. Access to Sensitive Compartmented Information (SCI). .......... 12
1.11. Reports Requiring Special Handling. .......... 12
1.12. Aliens Seeking Naturalization. .......... 13
1.13. Retention To Qualify for Retired Pay. .......... 13
1.14. Entrance or Service in an Armed Force of a Foreign Country. .......... 13
1.15. Policy Concerning Homosexuality .......... 14
1.16. Drug Abuse. .......... 15
1.17. Physical Disqualification. .......... 16

Section 1B Initiating Separation or Discharge Actions .......... 16

1.18. Recoupment of Educational Assistance, Special Pay, or Bonuses. .......... 16
1.19. Member Identified as Missing. .......... 17
1.20. Cases Involving Mandatory Separation or Discharge. .......... 17
1.21. Involuntary Separation or Discharge. .......... 17
1.22. Unit Commander's (or Equivalent) Responsibilities. .......... 17
1.23. Discharge Authority's Responsibilities. .......... 18
1.24. Death. .......... 18
1.25. Board of Officers .......... 18

**Chapter 2— TERMINATION OF APPOINTMENT, INVOLUNTARY DISCHARGE, AND DROPPING COMMISSIONED OFFICERS FROM THE ROLLS OF THE AIR FORCE** 19

Section 2A General Information 19

2.1. General Instructions. .......... 19

Table 2.1. Voluntary or Involuntary Discharge and Dropping Commissioned and Warrant Officers From the Rolls of the Air Force. .......... 19

2.2. Discharge Under Sections 2B and 2C. .......... 25

Section 2B Termination or Vacation of Appointment 26

2.3. General Instructions. .......... 26

Section 2C Involuntary Discharge 26

2.4. General Instructions. .......... 26

2.5. Initiation of Action .......... 26

2.6. Probationary Officer .......... 27

2.7. Discharge for Age. .......... 27

Table 2.2. Discharge for Position/Grade and Age. .......... 27

2.8. General Officers Who Cease To Occupy General Officer Positions. .......... 28

2.9. Second Lieutenants Not Qualified for Promotion (NQP). .......... 29

2.10. Effect of Failure of Selection for Promotion (Twice Deferred). .......... 29

2.11. Elimination for Length of Service. .......... 30

Table 2.3. Elimination for Length of Service. .......... 30

2.12. Selective Early Removal from the RASL .......... 31

2.13. Failure To Reply to Official Correspondence. .......... 31

2.14. Inability To Locate .......... 31

2.15. Elimination from ISLRS. .......... 31

2.16. Physical Disqualification. .......... 32

2.17. Failure To Comply with Requirements for a Medical Examination. .......... 32

2.18. Accepting Civil Employment or Military Service with a Foreign Government or Concern .......... 32

2.19. Loss of Nationality. .......... 33

2.20. Chaplain/Chaplain Candidates. .......... 33

2.21. Withdrawal from Military Medical Educational Assistance Programs. .......... 33

2.22. Officers Declining Voluntary EAD. .......... 34

2.23. Accelerated Appointments. .......... 34

2.24. Unsatisfactory Participation. .......... 34

2.25. ANG Unique Separations. .......... 34

Section 2D Discharge of Officers for Misconduct, Moral or Professional Dereliction, Substandard Performance of Duty, Homosexual Conduct, or in the Interest of National Security 35

2.26. General Instructions. .......... 35

2.27. Reinitiation of Action. .......... 35

2.28. Characterization of Service. .......... 35

2.29. Misconduct or Moral or Professional Dereliction. .......... 36

2.30. Homosexual Conduct. .......... 37
2.31. Member Burden of Proof. .......... 39
2.32. Determination of Actions. .......... 39
2.33. Guidelines for Fact Finding. .......... 39
2.34. Substandard Performance of Duty. .......... 39
2.35. Drug or Alcohol Abuse Rehabilitation Failure. .......... 40
2.36. Conviction by Civil Authorities. .......... 41
2.37. Recommending and Initiating Discharge Actions Under Section C and/or Section D. 44
2.38. The Higher Commander's Responsibilities. .......... 44
2.39. Secretary of the Air Force (SAF). .......... 44

Section 2E Officer Resignations 46

2.40. General Instructions. .......... 46
2.41. Approving or Disapproving Applications. .......... 46
2.42. Preparing and Forwarding Resignations. .......... 46
2.43. Withdrawing a Resignation. .......... 47
2.44. Resubmitting a TOR. .......... 47
2.45. Final Approval Authority. .......... 47
2.46. Permissible Reasons for Resignation. .......... 47

Section 2F Transfer of Non-EAD Members to a National Guard or Reserve Component of Another Uniformed Service or Public Health Service (PHS) 50

2.47. Applying for Conditional Release. .......... 50
2.48. Approval and Disapproval Actions. .......... 51
2.49. Transfer to the USAF Reserve Retired List (ANG only). .......... 51
2.50. Attainment of Age 60 (ANG only). .......... 51

**Chapter 3— ADMINISTRATIVE SEPARATION OR DISCHARGE OF ANG OR USAFR ENLISTED MEMBERS** 52

Section 3A General Information 52

3.1. General Instructions For Required Separations. .......... 52

Table 3.1. Voluntary and Involuntary Discharge or Separation of Enlisted Personnel (Administrative Discharge Boards). .......... 52

Section 3B Preprocessing Considerations 57

3.2. Initiation of Action. .......... 57

3.3. Enlisted Sanctuary. .......... 57
3.4. Discharge Obtained by Fraud. .......... 58
3.5. Serious Misconduct While Separation Is Pending. .......... 58
3.6. Extension of Enlistment When Separation for Cause Is Pending. .......... 58
3.7. Extension of Enlistment When Separation for Cause or Physical Disqualification Is Pending. .......... 58
3.8. Choosing a Course of Action. .......... 59
3.9. Determining the Basis of the Action. .......... 59
3.10. Limitations on Separation Action. .......... 59
3.11. Enlisted Personnel in Temporary Duty (TDY) Status. .......... 60

Section 3C Voluntary Separations 60

3.12. Basis for Separation. .......... 60

Section 3D Involuntary Separations 66

3.13. Reasons for Separation. .......... 66
3.14. Physical Disqualification. .......... 70
3.15. Minority, Erroneous, Defective and Fraudulent Entry. .......... 71
3.16. Entry Level Performance and Conduct. .......... 75
3.17. Excess or Overgrade Assigned Members. .......... 75
3.18. Substandard (Unsatisfactory) Performance. .......... 75
3.19. Drug or Alcohol Abuse Rehabilitation Failure. .......... 77
3.20. Homosexual Conduct. .......... 77
3.21. Misconduct. .......... 79
3.22. Discharge in the Interest of National Security. .......... 83
3.23. Secretarial Plenary Authority. .......... 83
3.24. Secretary of the Air Force (SAF). .......... 83
3.25. Probation and Rehabilitation (P&R). .......... 84
3.26. Dropping Enlisted Members from the Rolls of the Air Force. .......... 85

**Chapter 4— NOTIFICATION PROCEDURES AND ADMINISTRATIVE DISCHARGE BOARDS** 87

Section 4A General Information 87

4.1. General Instructions. .......... 87
4.2. Action in Lieu of Administrative Discharge Board. .......... 87

4.3. Waiver or Conditional Waiver (Enlisted Cases Only) ........ 88
4.4. Multiple Reasons for Separation. ........ 89
4.5. Delivery of the Letter of Notification (LON). ........ 89
4.6. Failure or Declination To Respond. ........ 89
4.7. Processing Time Goals. ........ 90

Section 4B Rights of Enlisted Personnel in Separation Cases 90
4.8. General Instructions. ........ 90
4.9. LON for Enlisted Personnel, Non-Board Eligible. ........ 90
4.10. LON for Enlisted Personnel - Board Eligible. ........ 91

Section 4C Rights of Officers in Separation Cases 93
4.11. LON - Probationary Officer. ........ 93
4.12. LON for Officers - Board Eligible. ........ 94

Section 4D Administrative Discharge Boards 97
4.13. Special Provisions. ........ 97
4.14. Administrative Discharge Boards. ........ 98
4.15. Functions and Duties. ........ 100
4.16. Attendance of Witnesses. ........ 102
4.17. Findings and Recommendations. ........ 104
4.18. Reporting of Administrative Discharge Board Proceedings. ........ 105
4.19. Legal Review. ........ 106
4.20. Directing a New Administrative Discharge Board. ........ 106
4.21. Commander's Actions. ........ 107
4.22. Disposition of Chapter 2 Cases. ........ 107
4.23. Disposition of Chapter 3 Cases. ........ 108
4.24. Reporting Separation for More Than One Reason. ........ 109
4.25. Dual Processing ........ 109

**Chapter 5— RETIREMENT** **110**

Section 5A Recognition of Members Being Retired 110
5.1. General Instructions. ........ 110
5.2. DD Form 363AF ........ 111
5.3. AF Form 951, Certificate of Transfer to the Retired Reserve. ........ 112

| | | |
|---|---|---|
| 5.4. | AF Form 423. | 112 |
| 5.5. | Presidential Recognition on Retirement from Military Service. | 112 |
| Section 5B | Transfer or Assignment to or From the Retired Reserve | 113 |
| 5.6. | General Instructions. | 113 |
| 5.7. | Former Members. | 114 |
| 5.8. | Categories of Personnel Who Are Eligible for Transfer to the Retired Reserve. | 114 |
| 5.9. | Categories of Personnel Who Are Not Eligible for Transfer to the Retired Reserve. | 115 |
| 5.10. | AF Form 131. | 115 |
| 5.11. | Forwarding Application. | 116 |
| 5.12. | Approval and Disapproval Authority. | 116 |
| 5.13. | Unit Members Transferred to the Retired Reserve | 116 |
| 5.14. | Grade in the Retired Reserve | 116 |
| 5.15. | Entitlements and Benefits. | 117 |
| 5.16. | Assignment from the Retired Reserve. | 118 |
| Table 5.1. | Forwarding AF Form 131, Application for Transfer to the Retired Reserve. | 119 |
| Table 5.2. | Approval/Disapproval Authority for Transfer or Assignment to the Retired Reserve. | 119 |
| Table 5.3. | HQ ARPC Action on Application for Transfer to the Retired Reserve. | 120 |
| Section 5C | Determining Retired Pay for Non-Regular Service at Age 60 | 120 |
| 5.17. | General Instructions. | 120 |
| 5.18. | Age, Grade, and Service Requirements. | 120 |
| 5.19. | Retention Beyond Entitlement to Reserve Retired Pay. | 121 |
| 5.20. | Proof of Eligibility. | 122 |
| 5.21. | How to Apply for Age 60 Retirement. | 122 |
| 5.22. | Approval Authority. | 122 |
| 5.23. | Date Retired Pay Begins. | 123 |
| 5.24. | Retirement Order. | 123 |
| 5.25. | Entitlements and Benefits At Age 60 under 10 U.S.C., Section 12731. | 123 |
| 5.26. | Recoupment of Separation or Readjustment Pay. | 124 |
| Table 5.4. | Regular, Guard, and Reserve Retired Pay Formula. | 125 |
| Table 5.5. | Preparing and Forwarding Application for Retired Pay Benefits. | 125 |

Section 5D Procedures Associated with AGR or other ANG and Reserve Active Duty Retirements 126

5.27. General Instruction ........ 126

5.28. Submission of AF Form 1160, Military Retirement Actions. ........ 126

5.29. How to Apply. ........ 126

5.30. Commissioned Service and Time-In-Grade Requirements. ........ 127

5.31. ANG Active Duty Service Commitment. ........ 128

5.32. Physical Examination. ........ 128

5.33. Recognition on Retirement. ........ 128

5.34. Entitlements and Benefits. ........ 128

**Attachment 1—GLOSSARY OF REFERENCES, ABBREVIATIONS, ACRONYMS, AND TERMS** **129**

**Attachment 2—GUIDELINES FOR SEPARATION AND SERVICE CHARACTERIZATION** **138**

**Attachment 3—FORMAT FOR LETTER OF RECOMMENDATION FOR ACTION UNDER AFI-36-3209, CHAPTER 2** **142**

**Attachment 4—FORMAT FOR VOLUNTARY LETTER OF TENDER OF RESIGNATION** **144**

**Attachment 5—FORMAT FOR COMMANDER'S ENDORSEMENT TO THE RESIGNATION** **146**

**Attachment 6—FORMAT FOR LETTER OF RECOMMENDATION FOR ACTION UNDER AFI 36-3209, Chapter 3 Section D** **148**

**Attachment 7—SAMPLE LETTER REQUESTING INFORMATION ABOUT CIVIL ACTION** **151**

**Attachment 8—REQUEST FOR RETENTION PENDING FOREIGN COURT DISPOSITION** **153**

**Attachment 9—FORMAT FOR CERTIFICATION OF CIVIL COURT DISPOSITION** **154**

**Attachment 10—FORMAT FOR SWORN AFFIDAVIT OF SERVICE BY MAIL** **156**

**Attachment 11—GUIDELINES FOR FACT-FINDING INQUIRIES INTO HOMOSEXUAL CONDUCT** **158**

Attachment 12—FORMAT FOR RECEIPT OF NOTIFICATION UNDER AFI 36-3209 161

Attachment 13—FINAL NOTIFICATION OF TERMINATION ACTION 162

Attachment 14—PRIVACY ACT STATEMENT FOR ENLISTED MEMBERS SUBJECT TO INVOLUNTARY SEPARATION OR DISCHARGE 164

Attachment 15—FORMAT FOR NOTIFYING GUARDSMAN/RESERVIsTS OF THEIR ELIGIBILITY FOR RETIRED PAY AT AGE 60 (OVER 20) 165

Attachment 16—FORMAT FOR NOTIFYING GUARDSMAN/RESERVISTS OF THEIR ELIGIBILITY FOR RETIRED PAY AT AGE 60 (15-20 YEARS) 167

Attachment 17—MINIMUM POINTS REQUIRED TO ESTABLISH A PARTIAL RETIREMENT YEAR AS SATISFACTORY FEDERAL SERVICE 169

Attachment 18—RETIREMENT OPTIONS OR ENTITLEMENTS FOR AN ACTIVE DUTY RETIREMENT 170

Attachment 19—SAMPLE LETTER OF VOLUNTARY EXTENSION OF ENLISTMENT 174

Attachment 20—PRIVACY ACT STATEMENT FOR OFFICERS SUBJECT TO INVOLUNTARY SEPARATION OR DISCHARGE 175

Attachment 21—FORMAT FOR LETTER OF TENDER OF RESIGNATION IN LIEU OF A BOARD 176

## Chapter 1

## ADMINISTRATIVE SEPARATION OF ANG AND AIR FORCE RESERVE MEMBERS NOT ON EXTENDED ACTIVE DUTY (EAD)

*Section 1A—General Instructions*

**1.1. General Instructions.** Membership in the ANG or United States Air Force Reserve (USAFR) is not an individual's inherent right. Membership is a privilege that confers an obligation to serve in the active military service during mobilization or emergency, or at such time as national security may require. Members not qualified or not able to properly fulfill their obligation to serve may be separated or discharged from the ANG or USAFR. Individuals discharged for any reason outlined in this instruction cease to be members of the ANG or USAFR. Upon discharge, except for immediate reenlistment, members will be notified of the purpose and authority of the Discharge Review Board. The member's failure to receive or to understand this information does not invalidate member's discharge or the characterization of service received.

**1.2. Applicability and Scope.** This instruction applies to all officer and enlisted members not serving on EAD or active duty with the Regular Air Force. **Chapter 5** applies to the Retired Reserve not receiving retired pay. It does not apply to personnel who receive a military retirement under Title 10 U.S.C., Section 12731, 8911, 8914, or members entitled by law to disability retired pay based on military status. Recalled retired members (who are not receiving pay) are subject to this instruction if they are removed from retired status and returned to an active status.

1.2.1. Former Members. Previous policy allowed Air Force Reserve members who chose discharge instead of transfer to the Retired Reserve to be reappointed or reenlisted for the purpose of transfer to the Retired Reserve anytime prior to age 60. These members became eligible for partial use of some benefits prior to age 60, and upon attainment of age 60, they were eligible for full benefits whether they were reaffiliated or not. This criterion has changed. Members who are discharged today, instead of retired, will not be allowed to reaffiliate and will only be entitled to retired pay and medical care at age 60. These former members and their eligible family members will be issued the DD Form 1173, **Uniform Service Identification and Privilege Card,** on the member's 60th birthday. All members who are eligible for transfer to the Retired Reserve and choose discharge must be formally counseled concerning this policy and its effects on their benefits.

**1.3. Explanation of References, Abbreviations, Acronyms, and Terms.** The terms in AFM 11-1, *Air Force Glossary of Standardized Terms,* AFI 36-2115, *Assignments Within the Reserve Components,* and attachment 1 of this instruction apply throughout this instruction unless the text indicates otherwise. (When in conflict, attachment 1 takes precedence.) The acronym for the Air Force Personnel Center is AFPC. The Air Force Personnel Council is referred to as the Secretary of the Air Force (SAF) or as the Air Force Personnel Council (no acronym).

**1.4. Authority for Discharge.** Refer to **Table 2.1.** and **Table 3.1.** for separation or discharge authority. The SAF or designated representative may authorize or approve waivers of, or exceptions to, this instruction. Neither members nor unit commanders may use this provision to appeal decisions made under this instruction.

1.4.1. (ANG Only) The authority to separate ANG assigned members from state status rest with the State Adjutant General. Discharge authority for Air Force enlistments or appointments rests with SAF, and are delegated, in certain circumstances, to the State Adjutant General for members of the ANG. The Adjutant General (TAG) may further delegate the authority to separate enlisted members from the Reserve of the Air Force with an entry level separation or an Honorable or Under Honorable Conditions (General) discharge to a commander in the federally recognized grade of Colonel or above, but not lower than a group commander.

1.4.2. HQ Air Reserve Personnel Center (ARPC)/Separations Branch (DPAD) sends a copy of the discharge orders for chaplains or chaplain candidates to Headquarters, United States Air Force, Chief of Chaplains (HQ USAF/HC), Bolling AFB DC 20332.

1.4.3. HQ ARPC/DPAD sends a copy of discharge orders for medical service officers to the Medical Service Officer Management Division, AFPC/DPAM, Randolph AFB TX 78150-6001.

1.4.4. Issuing Discharge Certificates:

1.4.4.1. The ANG issues the NGB 438, **Honorable Discharge from the Armed Forces of the United States of America-Air National Guard**; NGB 438a, **Honorable Discharge from the Federally Recognized Air National Guard of the United States of America**; or the NGB 439, **General Discharge Under Honorable Conditions from the Armed Forces of the United States of America-Air National Guard**; 439a, **General Discharge from the Federally Recognized Air National Guard of the United States of America**, according to these instructions to those Air Force individuals who are enlisted or appointed into the ANG and are subsequently discharged from the ANG and as a reserve of the Air Force because of no further military obligation.

1.4.4.2. ARPC issues the DD Form 256, **Honorable Discharge from the Armed Forces of the United States of America-United States Air Force**, for those individuals who are in reserve status at the time of discharge. This includes individuals who were in the ANG and transferred back to the Reserves.

**1.5. Authority for Discharges and Notice of Discharge.**

1.5.1. Issue orders according to AFI 37-128, *Administrative Orders (PA)*, to effect separation or discharge, entry-level separation, or release from the custody and control of the Air Force. List this AFI as the authority for separation or discharge.

1.5.2. Orders directing separation or discharge become effective at 2400 on the date specified if the member receives actual or constructive notice on or before the effective date specified in the orders. If a member intentionally avoids receipt of the notice or if the delivery cannot be made through normal postal channels, the effective date specified in the orders will be considered to be the date official notification was received. A member continues to be a member until the discharge becomes effective.

1.5.3. Members discharged under this instruction receive Honorable, General, or Under Other Than Honorable Conditions (UOTHC) discharges. AFI 36-3202, *Separations Documents*, and ANGI 36-3201, *Separations Documents*, explain how to prepare discharge certificates.. Members receiving an entry-level separation, release from the custody and control of the Air Force, or dropped from the rolls of the Air Force, receive no discharge certificate, and their orders will not characterize their service.

1.5.4. Send the member copies of the order, other separation documents according to AFI 36-3202, information on the purpose and authority of the Discharge Review Board and the Air Force Board for Correction of Military Records (AFBCMR), unless provided earlier in the separation process. If applicable, send a copy of the report of any administrative discharge board proceedings involved.

**1.6. Disposition of Cases Pending.** Process cases to completion according to the directives in effect at the time the processing starts. Apply this rule to the implementation of this instruction and subsequent changes to it. For voluntary discharges, processing starts on the date the appropriate office receives an application for discharge from an enlisted member or a tender of resignation (TOR) from an officer. For involuntary discharges involving an officer or an enlisted member, the processing starts on the date that the member acknowledges the receipt of the letter of notification. Discharge processing also starts 7-calendar days after the Letter of Notification is mailed to the current address listed with the member's unit or in the personnel data system (PDS) for those members who fail or decline to respond within 15-calendar days (30 days, if the commander or discharge authority knows the member is in civilian confinement).

**1.7. Disposition of Correspondence .** Keep approved separation case files permanently in the member's Master Personnel Record (MPerR) (according to AFI 36-2608, *Military Personnel Records System*, and AFM 37-139, *Records Disposition Schedule*. Return a disapproved application for voluntary separation to the member with an explanation for its disapproval. Return a disapproved recommendation for involuntary separation to the unit commander.

**1.8. Guidelines for Separation and Service Characterization . Attachment 2** provides guidance for determining the type of separation and service characterization warranted.

**1.9. Type of Separation and Their Effects on the Individual and Their Benefits.**

1.9.1. Discharges with service characterization of Honorable or Under Honorable Conditions (General) are usually treated the same concerning benefits administered by the Veterans Administration or other Federal and state agencies. As a rule, either discharge entitles the veteran to full rights and benefits.

1.9.2. Discharge UOTHC may deprive a veteran of benefits based on military service. The agency that administers the benefits makes a determination in each case.

1.9.3. Concerning Air Force administrative matters, such as an enlistment not covered by this instruction and requiring a prior service characterization as Honorable or General, an entry level separation will be treated as the required characterization. This provision does not apply to administrative matters that expressly require different treatment of an entry level separation.

**1.10. Access to Sensitive Compartmented Information (SCI).** AFI 31-501, *Personnel Security Program Management,* requires special processing in cases involving members who have, or once had, access to SCI or other special access programs established under DoD Regulation 5200.1-R/AFI 31-401, *Managing the Information Security Program.* Persons debriefed from SCI access for less than 1 year are included in this requirement. Commanders should comply with AFI 31-501 procedures applicable to a member considered for discharge before initiating action under this instruction.

**1.11. Reports Requiring Special Handling.**

1.11.1. Handle reports furnished through Air Force Office of Special Investigation (AFOSI) channels according to instructions in AFI 71-101, *Criminal Investigations, Counterintelligence, and Protective Service Matters*.

1.11.2. Comply with the procedures in AFI 41-115, *Authorized Health Care and Health Care Benefits in the Military Health Services Systems (MHSS)*, in handling or releasing reports of medical examinations and physical or psychiatric evaluation.

1.11.3. Hold Defense Investigative Service reports that contain unfavorable information in the member's special security file as required by AFI 31-501.

1.11.4. Refer to AFI 31-501 for guidance on protecting and safeguarding classified information that may become part of discharge proceedings.

1.11.5. Handle reports furnished through the Inspector General (IG) channels according to the instructions in AFI 90-301, *Inspector General Complaints*.

**1.12. Aliens Seeking Naturalization.** Before accepting an alien member's application for voluntary discharge, unit commanders must ensure that aliens who want to qualify for naturalization, based on their military service, are counseled on the requirements of AFP 211-28, *Naturalization and Citizenship*, including the need to serve at least 3 years. For more information, see AFP 211-28.

**1.13. Retention To Qualify for Retired Pay.** In accordance with (IAW) Title 10 U.S.C., Sections 12646 (officer) and 1176(b) (enlisted), a Reserve member in an active status who is selected for involuntary discharge (other than physical disability; for cause; or, for commissioned officers, for age), or whose term of enlistment expires and is denied reenlistment (other than for physical disability or for cause), and who is credited with at least 18, but less than 20, years of service under Section 12732 on the date otherwise prescribed for his discharge or transfer from an active status, may not be discharged or transferred from an active status without his or her consent before the earlier of the following dates:

1.13.1. The date on which he is entitled to be credited with 20 years of service computed under 10 U.S.C., Section 12732.

1.13.2. The second (in the case of a 19 year member) or third (in the case of an 18 year member) anniversary of the date on which he would otherwise be discharged or transferred from an active status.

**1.14. Entrance or Service in an Armed Force of a Foreign Country.** Nationals of the United States (US) (by birth or naturalization) may lose their nationality by entering or serving in the armed forces of a foreign country without specific written authorization from the Secretary of State and the Secretary of Defense, Title 10 U.S.C., Section 1060, *Military Service of Retired Members with newly Democratic Nations: Consent of Congress*, and AFI 36-2913, *Request for Approval of Foreign Government Employment of Air Force Members*. Loss of nationality is a reason for discharge under paragraphs 2.19 or 3.13.9.

1.14.1. Officers who wish to enter the armed forces of a foreign country submit their written requests through channels.

1.14.1.1. The commander advises the officer in writing of the provisions of the Title 8 U.S.C., Section 1481, *Immigration and Nationality Act of 1952*, concerning possible loss of nationality. The officer must acknowledge receipt of the advice before the request is processed further.

1.14.1.2. When the officer still wants to apply for written authorization, the commander submits through command channels the application directly to Chief, Foreign Operations, Passport Office, Department of State, Washington DC 20524, with a brief summary of the officer's service attached.

1.14.1.3. The Department of State coordinates their actions with DoD.

1.14.2. A commander who receives information concerning an officer who enters or serves in the armed forces of a foreign country, without written authorization, refers the information, through command channels for review and determination of appropriate action.

**1.15. Policy Concerning Homosexuality** . The Congress has established the policy that a member of the armed forces who engages in homosexual conduct will be separated. Homosexual conduct includes a homosexual act, a statement that the member is homosexual or bisexual (or words to that effect), or a homosexual marriage or attempted marriage. A homosexual act is (a) any bodily contact, actively undertaken or passively permitted, between members of the same sex for the purpose of satisfying sexual desires, and (b) any bodily contact which a reasonable person would understand to demonstrate a propensity or intent to engage in an act described in (a). A homosexual statement is grounds for discharge not because it reflects the members sexual orientation, but because it establishes a rebuttable presumption that the member has a propensity or intends to engage in homosexual acts. Sexual orientation is considered a private matter and is not a bar to continued service unless manifested by homosexual conduct. A member will not be separated if certain specific findings are made regarding the members propensity or intent to engage in homosexual acts. (See **2.20.** and **3.20.**) The Congress has made the following findings in support of this policy:

1.15.1. Section 8 of Article 1 of the Constitution of the US commits exclusively to the Congress the power to raise and support armies, provide and maintain a navy, and make rules for the government and regulations of the land and naval forces.

1.15.2. There is no constitutional right to serve in the armed forces.

1.15.3. Pursuant to the powers conferred by Section 8 of Article 1 of the Constitution of the US, it lies within the discretion of the Congress to establish qualifications for and conditions of service in the armed forces.

1.15.4. The primary purpose of the armed forces is to prepare for and to prevail in combat should the need arise.

1.15.5. The conduct of military operations requires members of the armed forces to make extraordinary sacrifices, including the ultimate sacrifice, in order to provide for the common defense.

1.15.6. Success in combat requires military units that are characterized by high morale, good order and discipline, and unit cohesion.

1.15.7. One of the most critical elements in combat capability is unit cohesion, that is, the bonds of trust among individual service members that make the combat effectiveness of a military unit greater than the sum of the combat effectiveness of the individual unit members.

1.15.8. Military life is fundamentally different from civilian life in that:

- The extraordinary responsibilities of the armed forces, the unique conditions of military service, and the critical role of unit cohesion, require that the military community, while subject to civilian control, exist as a specialized society.
- The military society is characterized by its own laws, rules, customs, and traditions, including numerous restrictions on personal behavior, that would not be acceptable in civilian society.

1.15.9. The standards of conduct for members of the armed forces regulate a member's life for 24 hours each day beginning at the moment the member enters military status and not ending until that person is discharged or otherwise separated from the armed forces.

1.15.10. Those standards of conduct, including the Uniform Code of Military Justice (UCMJ) or State military code, apply to a member of the armed forces at all times that the member has a military status, whether the member is on base or off base, and whether the member is on duty or off duty.

1.15.11. The pervasive application of the standards of conduct is necessary because members of the armed forces must be ready at all times for worldwide deployment to a combat environment.

1.15.12. The worldwide deployment of US military forces, the international responsibilities of the US, and the potential for involvement of the armed forces in actual combat routinely make it necessary for members of the armed forces involuntarily to accept living conditions and working conditions that are often spartan, primitive, and characterized by forced intimacy with little or no privacy.

1.15.13. The prohibition against homosexual conduct is a long-standing element of military law that continues to be necessary in the unique circumstances of military service.

1.15.14. The armed forces must maintain personnel policies that exclude persons whose presence in the armed forces would create an unacceptable risk to the armed forces' high standards of morale, good order and discipline, and unit cohesion that are the essence of military capability.

1.15.15. The presence in the armed forces of persons who demonstrate a propensity or intent to engage in homosexual acts would create an unacceptable risk to the high standards of morale, good order and discipline, and unit cohesion that are the essence of military capability.

**1.16. Drug Abuse.** Drug abuse is incompatible with military service and members who abuse drugs one or more times are subject to discharge for misconduct.

1.16.1. Drug abuse, for purposes of this instruction, is the illegal, wrongful, improper use, possession, sale, or transfer, of any drug. This also includes the introduction of an illegal drug on to a military installation. This includes improper use of prescription medication. The term drug includes any controlled substance in schedules I, II, III, IV, and V of 21 U.S.C., Section 812. It also includes anabolic or androgenic steroids, and any intoxicating substance, other than alcohol, that is inhaled, injected, consumed, or introduced into the body in any manner for purposes of altering mood or function.

1.16.2. The presence in the military environment of persons who engage in drug abuse seriously impairs accomplishing the military mission. Members who abuse drugs adversely affect the ability of the Air Force to:

- Maintain discipline, good order, and morale.
- Foster mutual trust and confidence among members.
- Facilitate assignments and worldwide deployment.
- Recruit and retain members.

- Maintain public acceptability of military service.
- Prevent breaches of security.

1.16.3. Evidence obtained through urinalysis or evidence furnished by the member in connection with initial entry in rehabilitation and treatment may be used to establish a basis for discharge.

1.16.4. Evidence obtained through commander directed urinalysis may be used to establish a basis for discharge, but may not be used on the issue of characterization.

**1.17. Physical Disqualification.** The traditional discharge board proceedings are not used when processing physical disqualification cases. Refer to Chapter 4, paragraph **4.14.3.5.** for further processing procedures.

***Section 1B—Initiating Separation or Discharge Actions***

**1.18. Recoupment of Educational Assistance, Special Pay, or Bonuses.** The Air Force normally requires recoupment of all or a portion of advanced education assistance, special pay, or bonuses received when a member fails to complete the educational requirements or separates before completing the period of active duty or reserve service the member agreed to serve. The authority for recoupment is 10 U.S.C. 2005 for advanced educational assistance, various sections of Title 37 U.S. C., for special pay and bonuses, and the contract or agreement the member signed.

1.18.1. Advanced educational assistance includes such programs as:

- Service academy.
- Armed Forces Health Profession Scholarship Program.
- Uniformed Services University of the Health Sciences.
- ROTC college scholarship program.
- Tuition assistance.
- Minuteman education program.
- Air Force Institute of Technology.

It does not include technical training, workshops, and short-term training programs.

1.18.2. The recoupment in all cases of advanced educational assistance and in most cases of special pay or bonuses will be an amount that bears the same ratio to the total amount or cost provided the member as the unserved portion of active duty or reserve service bears to the total period of active duty or reserve service the member agreed to serve. In some cases of special pay or bonuses, the entire amount of special pay or bonus may be recouped.

1.18.3. Basis for Recoupment. In most cases, recoupment may be effected if the officer separates voluntarily or is separated involuntarily for misconduct. Some statutes permit or require recoupment without regard to the reason for separation. Advanced educational assistance may also be recouped if the member fails to comply with any other term or condition of the agreement (for example, failure to commence a period of active service due to physical disqualification). For officers, an approved resignation is a voluntary separation.

1.18.4. Dispute of Advanced Educational Assistance Debt. When a member who is subject to recoupment of advanced educational assistance disputes that debt, the discharge authority will appoint

an officer or civilian employee to investigate the facts of the case in order to determine the validity of the debt. If the member's separation case is heard by a discharge board, the board will conduct this inquiry. The investigating officer or board will provide findings and recommendations to the discharge authority, who will forward the report of inquiry of his or her recommendations to SAF for decision. If the basis for recoupment is misconduct, the investigating officer or board must provide an assessment as to whether the behavior that resulted in the member's separation qualifies as misconduct under Title 10 U.S.C., Section 2005(a)(3).

1.18.5. Special Rules for Recoupment in Homosexual Conduct Cases. Where the statute or agreement authorizing recoupment requires the separation to be voluntary or for misconduct, the following applies:

1.18.5.1. Recoupment is permissible when the member voluntarily separates (including resignation). This includes cases where the homosexual act, statement, or marriage or attempted marriage was made for the purpose of seeking separation.

1.18.5.2. Recoupment is permissible when an UOTHC discharge is authorized for the homosexual conduct (see A2.5.4.2.3), whether or not the member is discharged UOTHC, or the homosexual conduct is punishable under the UCMJ (provisions governing sexual conduct), whether or not the member is punished under the UCMJ.

1.18.5.3. The discharge board, or discharge authority if the member waives the board, must make specific written findings as to whether the member is subject to recoupment for one or more of the reasons in **1.18.5.1.** or 1.18.5.2, and a specific written recommendation as to whether recoupment should be effected.

**1.19. Member Identified as Missing.**

1.19.1. A member who is officially classified as missing, is handled initially as a casualty issue in lieu of discharge action. AFI 36-3002, *Casualty Services*, outlines the procedures to be followed in processing cases classified as missing. AFI 36-2115 explains how to reassign them to ARPC.

1.19.2. If the members Expiration Term of Service/Expiration Term Obligation (ETS/ETO) expires prior to a death determination, the member should be discharged unless some other directive requires retention.

1.19.3. Once the SAF, local coroner's office, or a state court has officially declared the missing member as deceased, treat the case as any other casualty as outlined in AFI 36-3002 and publish a death IAW paragraph **1.23.**.

**1.20. Cases Involving Mandatory Separation or Discharge.** In cases involving mandatory separation or discharge where notification procedures and an administrative discharge board are not required (such as ETS for enlisted personnel or Mandatory Separation Dates (MSDs) for officers), the separation or discharge authority will publish orders and issue separation documents IAW **1.5.**

**1.21. Involuntary Separation or Discharge.** In cases involving separation or discharge where notification procedures or an administrative discharge board are required, use the following procedures.

**1.22. Unit Commander's (or Equivalent) Responsibilities.** The unit commander will:

1.22.1. Examine and evaluate any information received that indicates a member should be considered for separation or discharge. The case must include evidence of notification IAW Chapter 4 of this AFI. For Individual Mobilization Augmentees (IMAs), the case must include evidence of notification according to AFI 36-2115.

1.22.2. Consult with HQ ARPC, Director of Personnel Programs Management (DP), HQ AFRC, Director of Personnel (DP), or for ANG members, your state headquarters, as appropriate.

1.22.3. Bear in mind that you should usually take action under the first of these categories if a situation warrants discharge under both:

- Misconduct or moral or professional dereliction.
- Substandard performance of duty.

1.22.4. Consider personnel for discharge under multiple categories at the same time; although you must give separate findings for each reason for discharge.

1.22.5. Prepare a recommendation in the format prescribed in attachment 3 (Officer) or 6 (Enlisted).

1.22.6. Ensure that investigations properly and completely develop, substantiate, and document all facts.

1.22.7. A unit commander who receives information that a service member has engaged in homosexual conduct will follow the guidance in attachment 11 to determine whether an inquiry is warranted, and if so, the type and extent of inquiry to be conducted. If the commander determines a basis for discharge exists (see 2.30 and 3.20), he or she must initiate administrative discharge action (unless the conduct warrants trial by court-martial).

**1.23. Discharge Authority's Responsibilities.**

1.23.1. Review the case ensuring it properly substantiates all facts and determine appropriate action warranted.

1.23.2. If discharge action is not warranted, notify the member and close the case.

1.23.3. When involuntary administrative discharge action is warranted, refer to **Chapter 4.**

- When an officer tenders a resignation in lieu of board action, suspend processing and refer to **Chapter 2, Section 2E.**
- When member applies for retirement and the retirement is accepted, notify the member and close the case.

**1.24. Death.** Regardless of duty status at the time of death, the discharge authority will publish a special order announcing the death of the member.

**1.25. Board of Officers** . AFI 51-602, *Board of Officers*, may be used by ANG, AFRC, or ARPC.

## Chapter 3

## ADMINISTRATIVE SEPARATION OR DISCHARGE OF ANG OR USAFR ENLISTED MEMBERS

### *Section 3A—General Information*

**3.1. General Instructions For Required Separations.** Discharge of enlisted personnel at expiration of enlistment, or to reenlist, and discharge due to incompatible status does not require individual application or initiation of action by the commander. Any enlisted case that involves lengthy service will be forwarded to the Air Force Personnel Council for action. *NOTE*: If there is a conflict between table 3.1 and a referenced paragraph, the paragraph supersedes the table. See attachment 1 for a detailed explanation of column F.

**Table 3.1. Voluntary and Involuntary Discharge or Separation of Enlisted Personnel (Administrative Discharge Boards).**

| R | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| U L E | **If the reason for separation is** | **under paragraph (see note 1)** | **Notification procedures (Chapter 4, Section B is required)** | **Board Entitlement (see para 4.10)** | **ANG Separation Authority** | **Discharge Authority is** | **Type of separation authorized is** | **SAF Approval** |
| 1 | Expiration of enlistment | 3.12.1. | No | No | TAG | Commander having custody of FPRGp | Honorable | No |
| 2 | Immediate reenlistment | 3.12.2. | No | No | TAG | Commander having custody of FPRGp | Honorable | No |
| 3 | Incompatible status or change of military affiliation | 3.12.3. | No | No | TAG | Commander having custody of FPRGp | Honorable | No |
| 4 | Applying for Conditional Release | 3.12.4. | No | No | TAG | TAG or Commander having custody of FPRGp | Honorable | No |
| 5 | Transfer to the USAF Reserve Retired List (ANG only) | 3.12.6. | No | No | TAG | TAG | Honorable | No |
| 6 | Religious vows | 3.12.7. | No | No | TAG | TAG or discharge authority | Honorable | No |
| 7 | Resignation for own convenience | 3.12.8. | No | No | TAG | TAG or discharge authority | Honorable | No |

| R | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| U L E | If the reason for separation is | under paragraph (see note 1) | Notification procedures (Chapter 4, Section B is required) | Board Entitlement (see para 4.10) | ANG Separation Authority | Discharge Authority is | Type of separation authorized is | SAF Approval |
| 8 | Early release to further education or training (ANG only) | 3.12.9. | No | No | TAG | TAG | Honorable | No |
| 9 | Early release to accept public office (ANG only) | 3.12.10. | No | No | TAG | TAG | Honorable | No |
| 10 | Dependency or hardship | 3.12.11. | No | No | TAG | TAG or Commander having custody of FPRGp | Honorable | No |
| 11 | Pregnancy or childbirth | 3.12.12. | No | No | TAG | TAG or Commander having custody of FPRGp | Honorable | No |
| 12 | Conscientious objector | 3.12.13. | No | No | NGB/DPP | TAG or discharge authority | Honorable | No |
| 13 | Sole surviving son or daughter | 3.12.14. | No | No | TAG | TAG or Commander having custody of FPRGp | Honorable | No |
| 14 | Insufficient retainability for mobilization or ineligibility for worldwide deployment | 3.12.15. | No | No | TAG | TAG or discharge authority | Honorable | No |
| 15 | Discharge for the Good of the Service | 3.12.16. | No | No | TAG | TAG or discharge authority | Honorable, General, or UOTHC | No |
| 16 | Miscellaneous reasons | 3.12.17. | No | No | TAG | TAG or Commander having custody of FPRGp | Honorable or Entry level | No |
| 17 | Selective retention (ANG only) | 3.13.1. | No | No | TAG | TAG | Honorable | No |
| 18 | Unsatisfactory participation | 3.13.2. | Yes | Yes | TAG | TAG or discharge authority | Honorable, General or UOTHC | No |
| 19 | Parenthood | 3.13.3. | Yes | Yes | TAG | TAG or discharge authority | Honorable | No |

| R | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| U L E | If the reason for separation is | under paragraph (see note 1) | Notification procedures (Chapter 4, Section B is required) | Board Entitlement (see para 4.10) | ANG Separation Authority | Discharge Authority is | Type of separation authorized is | SAF Approval |
| 20 | Conditions that interfere with military service | 3.13.4. | Yes | Yes | TAG | TAG or discharge authority | Honorable | No |
| 21 | Failure to reply to official correspondence | 3.13.5. | Yes | Yes | TAG | TAG or discharge authority | Honorable | No |
| 22 | Inability to locate | 3.13.6. | Yes | Yes | TAG | TAG or discharge authority | Honorable | No |
| 23 | Entrance or service in an Armed Force of a foreign country | 3.13.7. | Yes | Yes | TAG | TAG or discharge authority | Honorable | Yes |
| 24 | Accepting civil employment with a foreign government | 3.13.8. | Yes | Yes | N/A | TAG or discharge authority | Honorable | Yes |
| 25 | Loss of nationality | 3.13.9. | Yes | Yes | TAG | TAG or discharge authority | Honorable | Yes |
| 26 | Disenrollment from AFROTC | 3.13.10. | No | No | N/A | ARPC commander (See AFI 36-2011) | Honorable | No |
| 27 | Deactivation of a unit | 3.13.11. | Yes | No | TAG | TAG | Honorable orentry level | No |
| 28 | Provisions of state law (ANG only) | 3.13.12. | No | No | TAG | TAG | Honorable | No |
| 29 | Failure to comply with requirements for a medical examination | 3.13.14. | Yes | Yes | TAG | TAG or discharge authority | Honorable, General or UOTHC | No |
| 30 | Physical disqualification | 3.14.(see note 3) | Yes | Yes | N/A | TAG or discharge authority | Honorable or entry level | No |
| 31 | Minority, enlisted under age 17 | 3.15. | No | No | TAG | TAG or discharge authority.AETC/RS for DEP member | Release from the custody and control of the Air Force | No |
| 32 | Minority, enlisted at age 17 | 3.15.1. | No | No | TAG | TAG or discharge authority | Entry Level | No |

| R | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| U L E | If the reason for separation is | under paragraph (see note 1) | Notification procedures (Chapter 4, Section B is required) | Board Entitlement (see para 4.10) | ANG Separation Authority | Discharge Authority is | Type of separation authorized is | SAF Approval |
| 33 | Erroneous enlistment | 3.15.2. | Yes | Yes | TAG | TAG or discharge authority | Honorable, Entry Level or Release from the Custody and Control of the Air Force | No |
| 34 | Defective enlistment agreements | 3.15.3. | No | No | TAG | TAG or discharge authority | Honorable, Entry Level or Release from the Custody and Control of the Air Force | No |
| 35 | Fraudulent entry | 3.15.4. | Yes | Yes | TAG | TAG or discharge authority | Honorable, General, UOTC, Entry Level or Release from the Custody and Control of the Air Force | No |
| 36 | Entry level performance conduct | 3.16. (see note 2) | Yes | No | TAG | TAG or discharge authority for DEP members, AETC/RS | Entry Level | No |
| 37 | Excess or overgrade assigned members (ANG only) | 3.17. | Yes | No | TAG | TAG | Honorable or General | No |
| 38 | Substandard (unsatisfactory) performance | 3.18. | Yes | Yes | TAG | TAG or discharge authority | Honorable, or General only | No |
| 39 | Drug or alcohol abuse rehabilitation failure | 3.19. | Yes | Yes | TAG | TAG or discharge authority | Honorable, or General | No |
| 40 | Homosexual conduct | 3.20. (see A2.5.4.2) | Yes | Yes | TAG | TAG or discharge authority | Honorable, General or UOTHC | No |
| 41 | Minor disciplinary infractions | 3.21.2 | Yes | Yes | TAG | TAG or discharge authority | Honorable, General or UOTHC | No |

| R | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| U L E | If the reason for separation is | under paragraph (see note 1) | Notification procedures (Chapter 4, Section B is required) | Board Entitlement (see para 4.10) | ANG Separation Authority | Discharge Authority is | Type of separation authorized is | SAF Approval |
| 42 | Pattern of misconduct | 3.21.2 | Yes | Yes | TAG | TAG or discharge authority | Honorable, General or UOTHC | No |
| 43 | Commission of serious offense | 3.21.3 | Yes | Yes | TAG | TAG or discharge authority | Honorable, General or UOTHC | No |
| 44 | Sexual Deviation (See rule 40) | 3.21.3.1 | Yes | Yes | TAG | TAG or discharge authority | Honorable, General or UOTHC | No |
| 45 | Drug abuse | 3.21.3.2. | Yes | Yes | TAG | TAG or discharge authority | Honorable, General or UOTHC | No |
| 46 | Misrepresentation | 3.21.3.3. | Yes | Yes | TAG | TAG or discharge authority | Honorable, General or UOTHC | No |
| 47 | Other serious offenses | 3.21.3.4. | Yes | Yes | TAG | TAG or discharge authority | Honorable, General or UOTHC | No |
| 48 | Civilian conviction | 3.21.4. | Yes | Yes | TAG | TAG or discharge authority | Honorable, General or UOTHC | No |
| 49 | Discharge in the interest of national security | 3.22. | Yes | Yes | TAG | TAG or discharge authority | Honorable, General or UOTHC | No |
| 50 | Secretarial plenary authority | 3.23. | Yes | Yes | TAG | TAG or discharge authority | Honorable or Entry Level | Yes |

NOTES:

1. Air Force Personnel Council review is required for members with lengthy service (paragraph 3.3.1).

2. AETC/RS approval authority may be delegated in writing to the recruiting squadron commander. The discharge authority for the overseas organization accepting enlistment in the Regular Air Force approves separation for members enlisted in the Delayed Enlistment Program (DEP) overseas. Does not apply to ANG.

3. Physical disqualification board procedures listed in paragraph 4.14.3.5 of this AFI apply to HQ ARPC personnel only.

*Section 3B—Preprocessing Considerations*

**3.2. Initiation of Action.** Refer to Sections B, C, and D of this chapter for preprocessing considerations.

3.2.1. Initial required documentation for voluntary separation. Members who want to leave the Air Force before their ETS must ask for separation or discharge in writing. Each paragraph authorizing separation or discharge tells what is required to show a basis for separation or discharge.

3.2.2. Unit assigned member. Except in cases based on physical disqualification, paragraph 3.14, the unit commander initiates separation action by preparing a letter recommending separation (attachment 6) and forwards it to the convening authority (for ANG), or through the wing commander to HQ AFRC/DPML (for AFRC) together with supporting documents and a review for legal sufficiency prepared by the local staff judge advocate. The convening authority (for ANG) or HQ AFRC/DPML (for AFRC) will:

3.2.2.1. Return all cases which do not support action under this chapter.

3.2.2.2. If separation or discharge processing is appropriate, process according to this chapter and Chapter 4. For cases based on physical disqualification, Director of Medical Services, ANGRC/SG, or HQ AFRC/DPML will initiate involuntary separation or discharge action without a commander's report and notify the respondent's unit commander of the separation or discharge action.

3.2.3. Members not assigned to units. When unit commanders receive information indicating that a member under their jurisdiction should be considered for separation or discharge, they will forward the information through channels with all supporting documents to HQ ARPC/DPAD. ***NOTE:*** For IMAs, the case must include evidence of notification according to AFI 36-2115. HQ ARPC/DPAD will:

- Return cases which do not support action under this chapter.
- If not currently assigned to HQ ARPC, request reassignment action IAW AFI 36-2115.
- If separation processing is appropriate, process according to this chapter and **Chapter 4.**

3.2.4. ANG ONLY. Enlisted cases for members with lengthy service or cases which involve a characterization of other than honorable conditions, ANGRC/MPPAS, must be notified when initiated to ensure processing time goals are met as outlined in paragraph 4.7.

**3.3. Enlisted Sanctuary.** Reserve members in an active status who are selected to be involuntarily separated (other than for physical disability or for cause), or whose term of enlistment expires and who are denied reenlistment (other than for physical disability or for cause), and who on the date on which the member is to be discharged or transferred from an active status are entitled to be credited with at least 18, but less than 20 years of service computed under Title 10 U.S.C., Section 12731, may not be discharged, denied reenlistment, or transferred from an active status without the member's consent. (See paragraph 1.13 for specific time frames for retention.)

3.3.1. Probation of Member With Lengthy Service. A member with lengthy service is one who, at the time the discharge action is initiated, has completed 18, but less than 20, years of satisfactory Federal service creditable toward retired pay according to 10 U.S.C., Section 12731 or active military service creditable toward retired pay under 10 U.S.C., Section 8914. These members receive special consideration for retention on probation, to acquire minimum retired pay eligibility. If the member is approved for an involuntary discharge, for any reason except physical disqualification, the discharge

is not executed until the case is reviewed by the SAF. The appropriate commander will send the original discharge case file to the Air Force Personnel Council, and include a memorandum approving the discharge with a recommendation on probation.

**3.4. Discharge Obtained by Fraud.** Federal civilian courts (according to 18 U.S.C., Section 1001) may prosecute a person who obtains a discharge from the military service by misrepresentation, concealment, or fraud. The issuing authority may revoke the discharge and return the offender to military control using this paragraph as the authority. The decision to revoke a discharge is a matter for administrative determination based on consideration of all the facts of the case. Take no revocation action unless approved by the discharge authority.

**3.5. Serious Misconduct While Separation Is Pending.** The unit commander reports serious misconduct by the member to the discharge authority at once. This includes misconduct that occurs at any time after the member applies, or is recommended, for separation or discharge. The discharge authority may withdraw approval or withhold execution of a voluntary or involuntary discharge or entry level separation. The discharge authority then takes other action according to the facts of the case.

**3.6. Extension of Enlistment When Separation for Cause Is Pending.** An enlistment may be involuntarily, administratively extended for the purpose of allowing sufficient time for processing or conclusion of a trial or investigation for a violation of the UCMJ or the state military code. Do not involuntarily retain a member beyond ETS for the processing of an administrative discharge action.

**3.7. Extension of Enlistment When Separation for Cause or Physical Disqualification Is Pending. (HQ Air Force Reserve Only)**

3.7.1. If member's ETS will not afford sufficient time to complete involuntary administrative discharge action, the commander will:

- Provide the member the opportunity to voluntarily extend the enlistment for the time needed to complete the case. They may request an extension of the enlistment under AFI 36-2612, *USAFR Reenlistment and Retention Program.*
- Tell the member that, if separation takes place on ETS while the involuntary discharge is pending, the member will not be eligible to reenlist.
- Allow the member time to consult military legal counsel before deciding whether to extend the enlistment.

3.7.2. If the member has a remaining MSO, forward the complete case file including all evidence and proof of all administrative steps taken, to HQ ARPC/DPAD when the member is transferred to the Personnel Accounting Symbol ( PAS ) code S7 with a letter of explanation on action taken or pending. HQ ARPC/DPAD will review the case with the Judge Advocate office for possible administrative discharge action.

3.7.3. Documentation evidencing notification to the member (attachment 20) of opportunity to voluntarily extend enlistment with member's election and AF Form 1411, **Extension or Cancellation of Entensions of Enlistment in the Regular Air Force/Air Force Reserve,** if applicable, must be included in the discharge case file.

3.7.4. Separate on ETS, the member who declines to extend.

**3.8. Choosing a Course of Action.**

3.8.1. Involuntary administrative discharge is not a substitute for disciplinary action. If violations of the UCMJ or state military code are involved, unit commanders must consult the staff judge advocate for advice. If administrative discharge is the best course of action, consult with the servicing personnel office. They can help the commander ensure that action starts under the correct section of this chapter.

3.8.2. For limitations on using certain information in administrative discharge action, see paragraph 3.10.

3.8.3. Members who have been recommended for administrative discharge for cause do not have a right to be tried by court-martial instead. They may not ask for discharge processing according to a specific provision of this chapter.

3.8.4. Table 3.1, column D, indicates board entitlement based on reason for separation. Paragraph 4.10 provides board eligibility requirements. Process other cases by notification procedures according to Chapter 4, paragraph 4.9.

**3.9. Determining the Basis of the Action.**

3.9.1. As a rule, the acts or conditions on which a recommendation for discharge is based will have occurred or existed in the current enlistment. However, the acts or conditions on which the discharge recommendation is based may have occurred or existed:

- Prior to entry if the reason for discharge is fraudulent or erroneous enlistment.
- During any previous enlistment, if the reason for discharge was fraudulent enlistment, homosexual conduct, or in the interest of national security.
- During the enlistment immediately preceding the current term of service, if the member reenlisted immediately followed discharge from the previous enlistment (no break in service), and the facts or circumstances pertaining to the acts or conditions were not known by the unit commander until after the member reenlisted. ***NOTE:*** See attachment 2 about service characterization.

3.9.2. Once unit commander pursues involuntary administrative discharge, they must look carefully at all the facts to be sure they recommend discharge for the right reason. In some cases, it may be preferable to cite two or more reasons as the basis for the discharge recommendation. If one reason cited in the letter of notification entitles the member to a board hearing, the entire matter will be processed according to Chapter 4, paragraph **4.10**.. For special instructions applicable to cases based on more than one reason, see paragraph **4.4**..

**3.10. Limitations on Separation Action.** A member may not be discharged administratively based on conduct that has been the subject of:

3.10.1. Judicial proceedings, military or civilian, resulting in acquittal or action having the effect thereof unless:

- Such action is based on a judicial determination not applicable to the guilt or innocence of the respondent.
- The judicial proceeding was conducted in a state or foreign court and the discharge is approved by the SAF.

3.10.2. A prior board hearing in which the board entered an approved finding that the evidence did not sustain the factual allegations concerning the conduct. *EXCEPTION:* A rehearing in a case involving fraud or collusion.

3.10.3. Administrative discharge processing which results in retention, except when:

- The new proceeding is based, in whole or in part, on subsequent conduct or performance.
- There is new or newly discovered evidence that was not reasonably available at the time of the prior proceeding.
- The conduct is the subject of a new hearing ordered on the basis of fraud or collusion in the prior hearing.

3.10.4. A waiver that was approved by the discharge authority who had the option to discharge for civil court conviction or defective enlistment.

**3.11. Enlisted Personnel in Temporary Duty (TDY) Status.**

3.11.1. ANG members in a title 32 status will be returned to the home unit for disposition.

3.11.2. Discharge authority for non-participating (S7) and IMA reservists remains with the Commander, ARPC.

3.11.3. The appropriate technical training center will separate or discharge members on EAD or Initial Active Duty Training (IADT), according to AFI 36-3208, *Administrative Separation of Airmen*. Copies of orders will be furnished to the losing Military Personnel Flight (MPF).

3.11.4. If violations of the UCMJ or state military code are involved, commanders must consult the staff judge advocate for advice. If it seems that administrative separation or discharge is the best course of action, the unit commander will consult MPF personnel to terminate the member's active duty status and ensure that action starts under the correct section of this chapter.

*Section 3C—Voluntary Separations*

**3.12. Basis for Separation.** The characterization of separation for members applying for separation or discharge for convenience of the government is honorable unless an entry level separation is authorized. A member may apply under this section for the following reasons:

3.12.1. Expiration of Enlistment. Members are discharged at the expiration of an enlistment or completion of their MSO, whichever is later. If a member is not selected for reenlistment see Section D, paragraph 3.13.14.

3.12.2. Immediate Reenlistment. Members who request and are accepted for reenlistment IAW criteria established in AFI 36-2612 and ANGI 36-2002, *Enlistment and Reenlistment in the Air National Guard and as a Reserve of the Air Force*, are discharged before expiration of term of service. The effective date of the discharge is the day before reenlistment.

3.12.3. Incompatible Status or Change of Military Affiliation. Members who accept appointments as commissioned officers in any component of the Air Force or enlist in the Regular Air Force are separated or discharged from the service. ANG members are required to remain in the ANG for a period equal to twice the time spent on their IADT tour basic military training (BMT) and technical training

school or home station (on-the-job training) prior to being permitted to enlist in a regular component. This requirement can be waived by the State Adjutant General.

3.12.3.1. The Military Entrance Processing Station (MEPS) effects separation or discharge of Reserve members in the DEP, who accepts and enlists in the Regular Air Force.

3.12.3.2. Members who enlist or accept appointment in another armed force or uniformed service (including the PHS) are discharged.

3.12.3.3. ANG members who voluntarily decide to change their military affiliation are separated or discharged. These members will be separated from the ANG and concurrently from the Reserve of the Air Force.

3.12.3.3.1. The separation or discharge will not be effected until notification is received from the gaining component that the enlistment was accomplished. The effective date of discharge will be the day prior to the date of enlistment in the new component.

3.12.3.3.2. ANG members who enlist in the Reserve in order to be voluntarily recalled to active duty under the provisions of AFI 36-2002, *Regular Air Force and Special Category Accessions*, will be separated from the ANG and concurrently transferred to the Reserve.

3.12.3.3.3. When ANG members enroll and are accepted into Reserve Officer Training Course (ROTC) or in an advanced course (third or fourth year) of the Army, Navy, Air Force ROTC, they must separate from the ANG and concurrently be discharged as a Reserve of the Air Force. Accomplish ANG member separation or discharge in the manner prescribed in Section C, Chapter 3 of this instruction.

3.12.3.3.4. Members in the basic course (first and second year) of the Army, Navy, or Air Force ROTC who are receiving awarded college scholarships granted under Title 10 U.S.C., Section 2107 must belong to the Reserve component of the Armed Forces that extended the grant.

3.12.3.3.5. Members may apply for appointment as a commissioned or warrant officer or for enlistment in another service without jeopardizing their status provided they are not in the Retired Reserve or on EAD orders or ADT, and they qualify and obtain a conditional release according to AFI 36-2004. ANG member's separation or discharge will be accomplished in the manner prescribed in paragraph 3.12, Section C, Chapter 3 of this instruction.

3.12.3.3.6. HQ ARPC, upon receipt of documentary evidence from the gaining service that a member has enlisted, been inducted or accepted an appointment, will discharge the member from the Air Force Reserve effective the day before the date of entry into the gaining service. HQ ARPC will furnish copies of the orders published to the member and the gaining service.

3.12.3.4. Removal From Unit. This paragraph applies to ANG only when members change their place of residence. When members are located outside a reasonable commuting distance of their present unit and not within a reasonable commuting distance of another ANG or Reserve unit, the member may request to be separated or discharged under paragraph 3.12.3. Upon approval, members with an MSO will be separated from the ANG and concurrently transferred to HQ ARPC.

3.12.3.5. Incompatible Occupation (ANG Only). When an incompatible occupation is of a permanent nature, the request for separation/discharge must be supported by a signed affidavit from the individual, if self-employed, or from the employer or a designated representative, explaining

in detail how the individual's occupation is incompatible with or severely interferes with the member's performance of ANG duties. The member must have made every reasonable effort to satisfy their ANG responsibilities and duties.

3.12.4. Applying for Conditional Release:

3.12.4.1. A member who desires to transfer to a Reserve component of another uniformed service must obtain a statement from the uniformed service concerned outlining the professional or technical background required for the position, when applicable, and evidence that:

- The member will be enrolled in an officer training program of the gaining uniformed service; or
- The gaining uniformed service has a specific Ready Reserve vacancy for which the member is qualified within a reasonable distance of the member's domicile or place of business.

3.12.4.2. The member applies for a conditional release through channels to the separation or discharge authority listed in table **Table 3.1.**. The member's request must include:

3.12.4.2.1. Necessary information required to process application.

3.12.4.2.2. A statement from the member that:

- Indicates whether the member has applied for a Ready Reserve unit or Individual Reserve Program position, if the member is not already assigned to one of these positions.
- If transfer is approved, the member will accept assignment to the Ready Reserve position with the gaining uniformed service.
- The member consents to the transfer (required only if the gaining uniformed service initiates the request).

3.12.5. Approval and Disapproval Actions:

3.12.5.1. When the separation or discharge authority listed in table 3.1 grants a conditional release to an eligible applicant, they:

3.12.5.1.1. Send the conditional release to the appropriate uniformed service with a request that a copy of the appointment or enlistment order be provided within 15-calendar days of appointment or enlistment.

3.12.5.1.2. On receiving orders, separate or discharge the member with an effective date of discharge the day before appointment or enlistment in the gaining uniformed service.

3.12.5.1.3. When the separation or discharge authority disapproves a request for transfer, return the request to the applicant with an explanation of the applicant's ineligibility.

3.12.5.2. Members will use DD Form 368, when seeking transfer to any reserve or regular component, with the exception of those requesting transfer to the Air Force Reserve. In this case an AF Form 1288, should be used.

3.12.6. Transfer to the USAF Reserve Retired List. Transfer to the USAF Reserve Retired List is not automatic. The member must apply by completing an AF Form 131 (ANG Only). The separation or discharge order (unit produced) will contain the following statement, "Member has applied for transfer to the USAF Reserve Retired List." A copy of the separation or discharge order and the AF Form

131 will be sent to the Retirement Branch, HQ ARPC/DPAR and to ANG State Headquarters for ANG personnel. HQ ARPC upon acceptance of the AF Form 131, will effect the placement on the Retired Reserve List.

3.12.7. Religious Vows. Members who are taking final vows of a religious order which requires discharge from the military service must submit evidence to support the request. Effect the discharge upon notification that the member has taken the final vows. Separate the individual from the ANG and concurrently discharge as a Reserve of the Air Force.

3.12.8. Resignation For Own Convenience. A member who is not eligible for separation or discharge under any other criteria in this instruction may apply for separation or discharge under this paragraph. This does not apply to first term enlisted personnel.

3.12.9. Early Release to Further Education or Training (ANG only). ANG members who submit a request for separation or discharge under this paragraph will have supporting documentation or justification that must conclusively establish incompatibility for the individual to remain in the ANG.

- When an extended course of formal education and or training does not permit an individual to perform their normal ANG duties, an appropriate official of the college, university, or other institution must submit a letter explaining how the member's service in the ANG prevents them from satisfactorily furthering their education or training. Make every effort to have the individual affiliated with another unit, if applicable.
- Upon approval by the discharge authority, either discharge the member from the ANG and as a Reserve of the Air Force or, if possessing an MSO, separate from the ANG and transfer to HQ ARPC.

3.12.10. Early Release To Accept Public Office (ANG only). This paragraph does not apply to ANG members serving on their first enlistment, or members that have a service commitment based upon formal training or other education wholly or partly at the expense of the government. ANG members may be separated or discharged to accept public office only under circumstances as authorized below.

- Election as a partisan or nonpartisan candidate to any civil office.
- Appointment to a civil office requiring full-time service.

3.12.11. Dependency or Hardship. Members may be separated on presentation of conclusive evidence of genuine dependency or undue hardship. Genuine dependency or undue hardship does not necessarily exist solely because of altered present or expected income, or because the member is separated from their family, or other inconveniences normally incident to military service. Separate and concurrently discharge as a Reserve of the Air Force ANG members if subject to separation or discharge under this paragraph. Separation or discharge under this paragraph is authorized and may be directed when it is determined that:

- Genuine dependency or undue hardship exists.
- The dependency or hardship is not temporary.
- Conditions have arisen or have been aggravated to an excessive degree since current enlistment began.
- The member has made every reasonable effort to remedy the situation.
- Separation or discharge of members will eliminate or materially alleviate the condition and there are no other means of alleviation reasonably available.

3.12.11.1. Required documentation for dependency or hardship separations. Evidence required to support an application for dependency or hardship separation or discharge normally is in the form of written statements and must substantiate the conditions as stated in paragraph 3.12.11. Supporting evidence must be included with each request. The original of the statements must accompany the application.

- If dependency or hardship is the result of the death of someone in the member's family occurring since their current enlistment began, a certificate or other proof of death is required. If dependency or hardship is the result of a disability of someone in the member's family occurring since their current enlistment began, a physician's statement must tell what the disability is and when it occurred.
- List the names, ages, occupations, locations, and monthly incomes of the family members, and tell why they cannot provide the necessary care or support that must be furnished. Evidence of prospective civilian employment is required if the hardship is basically financial, and must show that the member will be able to exceed military pay if separated.

3.12.11.2. On receipt of an application for separation or discharge under this paragraph, the discharge authority:

- Carefully examines the basis for the application.
- Obtains any additional information believed necessary to determine the validity of the request.
- Determines whether the evidence justifies separation or discharge.
- Expedites the separation if discharge is approved.
- If separation or discharge is disapproved, returns the case file through channels with instructions that the member be advised of the decision and counseled by a responsible individual concerning the procedures used and specific reasons for disapproval. Advise the member of any alternative actions available and that if conditions change sufficiently to warrant submission of a new application, member must submit new or additional evidence to support the application.

3.12.11.3. Other factors:

- Indebtedness to the government or to a person does not preclude separation or discharge when the member is otherwise eligible.
- A member under charges, under investigation that may result in the preferring of charges, or in confinement is not eligible for separation or discharge under this paragraph until termination of such status.
- A member against whom administrative separation or discharge action has been initiated prior to submission of an application for hardship separation or discharge, normally is not eligible for separation or discharge under this paragraph until the final disposition of the administrative proceedings.
- Do not disapprove or delay separation or discharge according to this paragraph because the member's services are needed in the organization.
- An application for separation or discharge may show that a member had dependents who were not acknowledged at the time of enlistment. If so, consider the possibility of separa-

tion or discharge for erroneous or fraudulent enlistment. The error or fraud may be waived to permit separation or discharge under this paragraph.

3.12.12. Pregnancy or Childbirth. Female members may find pregnancy and expectation of motherhood incompatible with continued military service. Therefore, those who become pregnant while in the military service may ask for separation or discharge. Members who were pregnant at the time of enlistment are not eligible for separation or discharge under this paragraph. They were not physically qualified for entry into military service IAW AFI 48-123 and may be subject to separation or discharge for erroneous or fraudulent enlistment.

- Required documentation for pregnancy or childbirth. Request for separation or discharge for pregnancy by an AF Form 422, confirming the pregnancy. It must be signed by the examining physician or midwife. Any other document such as a letter from a physician providing the same information, may be substituted for the AF Form 422. The member must ask for discharge before the expected date of delivery. The discharge authority approves the application unless other administrative action (for example, involuntary separation or discharge) should be taken, or disapproval is deemed appropriate because the member's services are essential to the accomplishment of the mission of the unit. In some cases, pregnancy may be terminated before an approved separation or discharge is effective. If the pregnancy is terminated by childbirth, the approved separation or discharge will be effected as soon as possible. If terminated other than by childbirth, the member will not be separated for pregnancy.

3.12.13. Conscientious Objector. Members may be separated or discharged due to conscientious objection. Process applications for such separation or discharge according to AFI 36-3204. If approved, separation or discharge is effective under this paragraph. For discharge authority refer to table 3.1.

3.12.14. Sole Surviving Son or Daughter. A sole surviving son or daughter is the only remaining son or daughter in a family where a parent, or one or more sons or daughters:

- Was killed in action or died in line of duty while serving in the Armed Forces. Death in the line of duty may have been due to wounds, accident, or disease.
- Is in a captured or missing-in-action status.
- Is permanently 100 percent disabled, physically or mentally, as determined by the Veterans Administration or one of the military departments, or is hospitalized on a continuing basis and is not gainfully employed due to such disability. NOTE: Members may acquire and obtain sole surviving son or daughter status even if there are no other living family members. It does not depend on the existence of a family unit. A sole surviving son may have living sisters and a sole surviving daughter may have living brothers.

3.12.14.1. Members who become a sole surviving son or daughter after enlistment will be separated promptly, on request, unless they have waived the right to separation or discharge either by action described below or in writing, or asked for separation or discharge during time of war or national emergency.

3.12.14.2. Members who meet the criteria for sole surviving son or daughter are considered to have waived the right to be separated under this provision if, after they are advised of the policy, they reenlist or extend their enlistment.

3.12.15. Insufficient Retainability For Mobilization Or Ineligibility For Worldwide Deployment. Members who request exemption from mobilization according to AFI 10-402, *Mobilization Planning*, because of insufficient retainability must at the same time apply for discharge. The application for discharge is processed with the request for exemption. If discharge is approved, it is effected according to this paragraph. Separate ANG members when the following conditions exist or occur:

3.12.15.1. The failure to reenlist or extend an enlistment to meet the minimum active duty military service requirements as specified in the mobilization instructions for an ANG unit will result in separation or discharge of the member. If the member possesses an MSO of 120 or more days, separation from the ANG and transfer to the HQ ARPC is appropriate. If the member has less than 120 days remaining on an unexpired MSO, separation and concurrent discharge as a Reserve of the Air Force will be effected.

3.12.15.2. Separate or discharge an ANG member who is not qualified or eligible for worldwide deployment. The commander initiates action under this authority upon determination that such conditions exist. Discharge members who fail to apply for transfer to the Retired Reserve, if eligible, under this authority if:

- The reason is medical and the medical examination and/or other documents as required certify the member as medically disqualified for worldwide duty and that member is not qualified for disability separation, discharge, or retirement. Process disability cases IAW AFI 36-3212.
- Other documented reasons prevent worldwide deployment.

*NOTE:*
Initiation of discharge action under the above authorities ceases upon alert for mobilization or recall to active duty.

3.12.16. Discharge for the Good of the Service. Members whose conduct renders them triable by court-martial may request voluntary discharge for the good of the service.

3.12.17. Miscellaneous Reasons. Members who do not qualify for separation or discharge for another reason may request separation or discharge under this paragraph. Evaluate each application on its own merit; however, in determining whether a request for separation or discharge will be approved, the needs of the service are paramount and will be the controlling consideration.

### *Section 3D—Involuntary Separations*

**3.13. Reasons for Separation.** A member may be separated for convenience of the government for the following reasons. Prior to involuntary separation or discharge under this section, the notification procedure in Chapter 4, Section B, of this instruction will be used.

3.13.1. Selective Retention. This paragraph applies to the ANG only. Member was non-selected for retention under ANGI 36-2606, *Selective Retention of Air National Guard Officers and Enlisted Personnel.*

3.13.2. Unsatisfactory Participation.

3.13.2.1. Do not use these reasons if a member is in entry level status. Members of the selected Reserve <u>who have not fulfilled</u> their statutory military service obligation under Title 10 U.S.C., Section 651, and whose participation has not been satisfactory may be:

- Discharged for unsatisfactory participation when the commander concerned has determined that the individual has no potential for useful service under conditions of full mobilization. Member may be discharged when the member has accumulated nine or more unexcused absences from UTA within a 12-month period. Service characterization will be determined by using the criteria in attachment two. ***NOTE***: Members may be discharged if they fail to report to the ANG unit of assignment within 90 days after the date of release from active Federal service. See AFM 36-8001, for all participation requirements.
- Palace Chase obligors should be processed IAW AFI 36-3205.

3.13.2.2. Do not use this reason if a member is in entry level status. Members of the selected Reserve <u>who have fulfilled</u> their statutory military service obligation under Title 10 U.S.C., Section 651 or who did not incur such obligation, and whose participation has not been satisfactory IAW AFI 36-8001 may be:

- Discharged for unsatisfactory participation when the commander concerned has determined that the individual has no potential for useful service under conditions of full mobilization. Member may be discharged when the member has accumulated nine or more unexcused absences from UTA within a 12 month period. Service characterization will be determined by using the criteria in **Attachment 2**. See AFM 36-8001, for all participation requirements. ***NOTE***: Members may be discharged if they fail to report to the ANG unit of assignment within 90 days after the date of release from active Federal service.

3.13.3. Parenthood. Members are subject to involuntary separation or discharge for inability to satisfactorily perform their prescribed duties, repetitive absenteeism, or non-availability for worldwide assignment or deployment as a result of parenthood.

- For Air Force policy concerning dependent care responsibilities, see AFI 36-2908, *Family Care Plan*.
- Before initiating separation or discharge action in these cases, the unit commander must counsel the member concerning deficiencies and voluntary actions that may help resolve the problem, and give the member an opportunity to overcome the deficiencies. The case file should contain a record of counseling and an explanation of the actions taken to help the member meet both parental responsibilities and Air Force standards.

3.13.4. Conditions That Interfere With Military Service (see table 3.1). Members may be separated or discharged based on one of the physical or mental conditions listed below when the condition is not disqualifying under AFI 48-123, but interferes with assignment or duty performance. The existence of a condition that is a basis for separation or discharge under this provision does not bar separation or discharge for any other reason authorized in this instruction. Separation or discharge under this provision is not appropriate if the member's record would support discharge for another reason, such as, misconduct or unsatisfactory performance. A recommendation for discharge must be supported by documents confirming the existence of the condition and showing the condition is not severe enough to medically disqualify the member for worldwide duty. Except for enuresis or sleepwalking, the adverse affect on assignment or duty performance must be explained.

3.13.4.1. ANG members may be separated or discharged when it is determined that they are medically unqualified for further military service under the following conditions:

- Conditions not incurred in a duty status as determined by a line of duty investigation per AFI 36-2910, *Line of Duty (Misconduct) Determination* or ANGI 36-2910, *Line of Duty and Misconduct Determination*. Separate from the ANG and concurrently discharge as a Reserve of the Air Force ANG members found to be "Medically Disqualified for Worldwide Duty," medically disqualified for active military service or for active military service with a waiver, whose medical documentation has been certified by ANGRC/SG. Separate from the ANG and transfer to HQ ARPC eligible ANG members who request transfer to the Retired Reserve per Chapter 5 of this instruction.
- Service-connected disability. Do not discharge ANG members being processed for service-connected disabilities until notified by the Chief, National Guard Bureau, for final disposition.

3.13.4.2. A report of evaluation by a psychiatrist or a psychologist must support a recommendation for discharge for character and behavior disorders:

- Confirming the diagnosis of a disorder listed in the current *DSM of Mental Disorders*.
- Describing the effect of the disorder on the member's conduct or performance of duty.
- Finding that the disorder is so severe, the member's ability to function in the military environment is significantly impaired.

3.13.4.3. The following may be a basis for discharge under this provision:

- Enuresis, if there is no underlying pathology.
- Sleepwalking.
- Dyslexia.
- Severe nightmares.
- Stammering or stuttering, of such a degree that the member is normally unable to communicate adequately.
- Incapacitating fear of flying confirmed by a psychiatric evaluation.
- Air sickness.
- Claustrophobia.

3.13.4.4. Character and behavior disorders (see table 3.1).

- Personality disorders.
- Conduct disorders.
- Adjustment disorders.
- Disorders of impulse control.
- Psycho-sexual disorders, excluding homosexual conduct and psycho-sexual dysfunction.

3.13.5. Failure To Reply to Official Correspondence. Members who do not reply to official correspondence may be discharged. When correspondence requiring a reply is sent and no reply is received within 30 days, the unit commander or ARPC personnel will:

- Verify the last permanent mailing address. After verification, mail the correspondence or a follow-up, by certified mail, return receipt requested, and by first-class mail to the verified address.
- Comply with paragraph 3.13.6 if postal authorities return the correspondence because the member cannot be located,
- Prepare a detailed report outlining attempts to notify the member if the member does not reply to correspondence within 30 days of date of mailing. The report includes a recommendation for retention, separation, or discharge and copies of unanswered correspondence and signed postal receipts.

3.13.6. Inability To Locate. Members who cannot be located will be discharged. When postal authorities send and return mail as undeliverable, the unit commander or ARPC personnel will:

- Request verification of last permanent mailing address from the postmaster. If an address correction is received, update the record and re-mail correspondence.
- Take other action if the verification from the postmaster does not result in obtaining the current address. Contact local civil authorities or other persons who may be of assistance in locating the member.
- Send a detailed report to the discharge authority including correspondence returned and outlining actions taken to locate the member if unable to locate the member.
- Terminate action to separate the member if the member is located at any time prior to separation or discharge.

3.13.7. Entrance or Service in an Armed Force of a Foreign Country. Citizens of the US (by birth or naturalization) may lose their nationality by entering or serving in an armed force of a foreign country without specific written authorization for such entry or service from the Secretary of State and the Secretary of Defense. Loss of nationality is a reason for discharge under paragraph 3.13.9. Procedures for obtaining authorization and reporting lack of authorization are detailed below:

- Members who wish to enter an armed force of a foreign country submit their request through channels. The commander will advise the member in writing of the provisions of Title 8 U.S.C., Section 1481, *Immigration and Nationality Act of 1952*, as amended, concerning possible loss of nationality. The member will acknowledge receipt of the advice before the application is processed further. A member who still desires to apply submits a written application through command channels to Chief, Foreign Operations, Passport Office, Department of State, Washington DC 20524 with a brief summary of member's service attached. Additional information and authorities for members to enter armed forces of certain foreign countries are in Title 10 U.S.C., Section 1060 and AFI 36-2913.
- If a commander receives information concerning a member who enters or serves in an armed force of a foreign country without having obtained permission, they will refer the information through command channels for review and determination of appropriate action.

3.13.8. Accepting Civil Employment With a Foreign Government. Members who accept civil employment with a foreign government or a concern which is controlled in whole or in part by a foreign government may be discharged if prior written approval of the SAF and the Secretary of State was not obtained or when employment is continued after the SAF or the Secretary of State has

revoked prior written approval. Forward cases through command channels. Discharge ANG members concurrently from the ANG and as a Reserve of the Air Force.

3.13.9. Loss of Nationality. Members who are citizens of the US (by birth or naturalization) and lose such nationality for any reason outlined in the Immigration and Nationality Act, as amended (Title 8 U.S.C., Section 1481, 66 Statute 166), or any other provision of law, may be discharged. Forward recommendations for discharge or retention under this paragraph through command channels to SAF. If retention is not warranted, discharge ANG members concurrently from the ANG and as a Reserve of the Air Force.

3.13.10. Disenrollment from AFROTC. This paragraph does not apply to the ANG. Process according to AFI 36-2011, *Air Force Reserve Officer Training Corps*. Cite this paragraph as the authority, if the discharge authority directs discharge.

3.13.11. Deactivation of a Unit. If a unit is deactivated and there are no other unit vacancies within the area to which the member may be assigned and the member does not join a unit outside that area, the member will be separated from the Reserve or ANG unit.. If the member is assigned to the ANG, they will be concurrently transferred to HQ ARPC if they have a remaining MSO or some other contractual obligation.

3.13.12. (ANG Only) Provisions of State Law. When authorized by state law.

3.13.13. Failure To Comply with Requirements for a Medical Examination. Discharge enlisted personnel who have no MSO and meet any of the following criteria and the unit commander or ARPC personnel have made a reasonable effort to contact them:

3.13.13.1. They fail to complete a periodic physical, as required by AFI 48-123, within 90 days after the date due.

3.13.13.2. They fail to obtain a physical directed by a competent authority on the specified date.

3.13.14. When a member is not selected for reenlistment the member will be discharged upon his ETS/MSO, whichever is later

**3.14. Physical Disqualification.** Discharge a member who is unfit to perform the duties of the member's office, grade, or rank because of disease or injury. The convening or discharge authority is authorized to finalize cases processed under this section. Physical disqualification notification and board procedures listed in paragraph 4.14.3.5, of this AFI apply to HQ ARPC personnel only. The characterization of service will be honorable. Discharge members under this paragraph when they meet all of these criteria:

3.14.1. The appropriate surgeon certifies the report of medical examination and other documentation as required by AFI 48-123 that they are unfit.

3.14.2. They fail to apply for transfer to the Retired Reserve.

3.14.3. They are not qualified for disability separation or retirement under the provisions of AFI 36-3212.

3.14.4. The member is ineligible for transfer to a different AFSC or position in which the member would be fit for duty, or such transfer is considered inappropriate.

3.14.5. The member has been considered and rejected for an assignment limitation code.

3.14.6. The discharge authority finds, IAW applicable DoD and Air Force standards, that the member's physical disqualifying condition makes them unfit for duty.

3.14.7. Prior to the execution of a discharge for physical disqualification for a non-duty related impairment or condition the member shall be afforded the opportunity to enter the DES for a determination of fitness pursuant to DoDD 1332.18 and implementing regulatory issuances.

**3.15. Minority, Erroneous, Defective and Fraudulent Entry.**

3.15.1. Minority, Enlisted under Age 17. A person under age 17 is barred by law from enlistment and will be separated (released from custody and control of the Air Force) as soon as practicable. No discharge certificate or other evidence of service will be issued as the enlistment did not exist as a matter of law.

3.15.1.1. There must be evidence satisfactory to the discharge authority that the member was under 18 years of age when the separation or discharge is initiated, and the parent or guardian must submit their request for the member's separation within 90 days after the member's enlistment.

3.15.2. Erroneous Enlistment. A member may be discharged based on an erroneous enlistment, reenlistment, or extension of enlistment. An enlistment, reenlistment, or extension is erroneous if it should not have been accepted by the Air Force, but does not involve fraud. An erroneous enlistment, reenlistment, or extension exists if:

- It would not have occurred had the relevant facts been known by the Air Force, or had appropriate directives been followed.
- It was not the result of fraudulent conduct on the part of the member.
- The defect is unchanged in material respects.

3.15.2.1. If the unit commander recommends that the member be retained in the Air Force, the initiation of separation processing is not required if the defect is no longer present, or the defect is waiverable and a waiver is obtained from the discharge authority. Defects constituting a void enlistment are not waiverable (see attachment 2).

3.15.2.2. If the commander recommends the member be retained in the ANG, the initiation of separation processing is not required in the following circumstances:

- The defect is no longer present.
- The defect is waiverable and a waiver is obtained from the State Adjutant General or Manpower, Personnel and Training, ANGRC/MP, as appropriate.
- The defect consists of failure to meet physical standards for enlistment and the member is medically qualified for worldwide duty. NOTE: Administrative discharge of members. The administrative process to notify members must be followed; however, members are not entitled to an administrative discharge board.

3.15.3. Defective Enlistment Agreements. A member may be discharged based on a defective enlistment, reenlistment, or extension of enlistment. A defective enlistment agreement exists if:

- As a result of a material misrepresentation by recruiting personnel, upon which the member reasonably relied, the member was induced to enlist with a commitment for which the member was not qualified.

- The member received a written enlistment commitment from recruiting personnel for which the member was qualified, but which cannot be fulfilled by the Air Force or ANG.
- The enlistment was involuntary as defined in the UCMJ or state military code.
- The existence of a defective enlistment agreement does not bar appropriate disciplinary action, or other separation or discharge proceedings, regardless of when the defect is raised.

3.15.3.1. Separation or discharge for defective enlistment agreement is appropriate only if the member did not knowingly participate in the creation of the defective agreement and once the member discovers the defect, notifies the appropriate authorities within 30 days of discovery, or should reasonably have known of the defect, and the member requests separation or discharge instead of other authorized corrective actions.

3.15.3.2. Separation or discharge under this provision is not a continuing entitlement. Members may apply for discharge within 30 days after notification of an assignment, reassignment, classification, reclassification, or other action that violates their assignment before the Air Force has met its obligations. If they fail to do so, they waive entitlement of separation under this provision.

3.15.3.3. A request for separation or discharge under this provision must be supported by copies of the documents that show the enlistment agreement(s) and correspondence showing the alleged failure of the Air Force or ANG, as appropriate, to meet the terms of the enlistment agreement that have not been changed by supplements to it.

3.15.4. Fraudulent Entry. A member may be discharged, on the basis of a fraudulent enlistment or period of military service through any deliberate material misrepresentation, omission, or concealment which might have resulted in rejection, if known at the time of enlistment or entry into a period of service. Do not separate members for fraudulent entry because they misrepresented at the time of enlistment, their minority, or consent of parent or guardian.

3.15.4.1. The Discharge Authority. The discharge authority may approve a waiver of the fraud and retain the member. Defects constituting a void enlistment are not waiverable (see attachment 2).

3.15.4.2. Separation for Other Reasons. Separation or discharge of a member for other reasons is permissible in certain cases in which there are extenuating factors. Not all cases of fraudulent enlistment fall into a like category and, accordingly, do not require like disposition. It will be found that some members, although meriting a waiver, cannot be retained in the service for various reasons. The fact that separation or discharge must be effected should not preclude waiver of the fraud and separation or discharge on another basis, if the member's enlistment motives and military record justify such action. Approval of separation or discharge for another reason constitutes waiver of the fraud.

3.15.4.3. Waivers. The discharge authority may waive separation or discharge for fraudulent enlistment when the reason is evident that the member is a good risk, and retention will serve the best interest of the Air Force, provided the enlistment is not void, or a constructive enlistment has occurred. In determining whether to grant a waiver, give full consideration to evidence of rehabilitation, satisfactory performance of duties since enlistment, and any extenuating circumstances. If the unit commander recommends retaining the member, separation or discharge processing is not required if the defect is no longer present, or the defect is waiverable and a waiver is obtained from the discharge authority.

3.15.4.3.1. Waiver of The Fraudulent Enlistment. If the discharge authority authorizes waiver of the fraudulent enlistment, file a copy of the waiver permanently in the member's field personnel record. After waiver, do not take further action with respect to the fraudulent enlistment. A waiver serves to validate an enlistment although it was fraudulent at inception.

3.15.4.4. Waiver of Fraudulent Enlistment For Concealment of Prior Service. A waiver of fraudulent enlistment for concealment of prior service may be granted a member when it is considered that their retention is in the best interest of the service.

3.15.4.4.1. Causes for Separation or Discharge. Members will not be subject to separation or discharge for fraudulent enlistment due to concealment of prior service where:

- The prior service consists of an unterminated enlistment in a Reserve component of one of the other Armed Forces, provided that the person has not received orders from the service concerned, prior to enlistment in the Air Force Reserve, to report for active military service or to report for medical examination in preparation for their entry on active duty.
- The prior service concealed was not the last period of service and the last period of service was disclosed, the last period of service was honorable, and the individual served in this last enlistment for a minimum of 2 years.
- The prior service was terminated under conditions which, if made known to the recruiting authorities upon enlistment would not preclude enlistment under instructions in effect at time of enlistment.

3.15.4.4.2. Recommended Waiver, Separation, or Discharge. When the unit commander recommends a waiver of separation or discharge, and retention of the member is appropriate, or considers separation or discharge more appropriate for a reason which does not permit discharge UOTHC, the unit commander forwards the recommendation in the form of a detailed and documented report through channels to the discharge authority. If the discharge authority does not concur in the recommended waiver and believes that consideration should be given to the separation or discharge of the member for fraudulent enlistment, process the case under Chapter 4, Section B, for fraudulent enlistment.

3.15.4.5. Concealed Acts. As a rule, do not grant waivers to members who conceal acts involving moral turpitude, whether or not such acts have been the subject of civil convictions, regardless of the maximum punishment imposed for the particular offense. If the material misrepresentation involves preservice homosexual conduct, process the case under this section.

3.15.4.6. Constructive Waiver for Fraudulent Entry or Erroneous Enlistment. If a commander has the facts of the case indicating possible fraud or error and fails to act, the member may become the recipient of a constructive waiver. Failure to exercise the option to discharge when the facts are known tends to show intent to retain the member. The mere passage of time, standing alone, is not sufficient for a constructive waiver. There must be other acts in conjunction with the passage of time which reflect the intent to retain the member, such as promotion or reassignment. The determination as to whether or not there is a constructive waiver must be made by the commander having the express waiver authority, not by a discharge board or other authority although they may make recommendations. Where discharge action has been initiated, the passing of time is immaterial to the issue of whether a constructive waiver has resulted.

3.15.4.7. Concealment Of Civil Court Records. Members are subject to separation or discharge for fraudulent enlistment if, upon enlistment, they concealed a civil court conviction of:

- An offense for which a punitive discharge would be authorized for the same or a closely related offense under the UCMJ.
- An offense for which the sentence imposed by the civil court included confinement for 6 months or more, without regard to suspension or probation; or if an offense involved moral turpitude.

3.15.4.8. Concealment of Prior Service. Separate or discharge for fraudulent enlistment under either of the following circumstances:

- Members who, upon enlistment, concealed a record of prior service in an armed force of the US which would have made them ineligible for enlistment under directives in effect at the time of enlistment.
- Members who willfully concealed any facts, circumstances, or conditions regarding prior service which would have made them ineligible for enlistment.

3.15.4.9. Concealment of Alienage and Aliens Erroneously Enlisted. Discharge members who fraudulently enlisted by willfully misrepresenting that they were a US citizens. However, an alien who claimed US citizenship at time of enlistment in the honest belief that they were a citizen, or who did not misrepresent their nationality, but were erroneously accepted for enlistment contrary to current instructions, will not be separated for fraudulent enlistment. In cases of this type, the member may be separated because of erroneous enlistment or retained in the service.

3.15.4.9.1. The appropriate authority reports cases of concealment of alienage and aliens erroneously enlisted to the Immigration and Naturalization Service (INS) under procedures of AFI 36-3202. If the unit commander recommends a waiver of separation or discharge, take no further action until the INS completes its action. An alien not deported or interned by INS could continue to serve in the Air Force, with an approved waiver. If INS does not want custody of the member, the appropriate authority proceeds with separation or discharge or waiver action, notifying INS of the discharge if required under AFI 36-3202. Report cases which also involve inability to locate the member to the State Department under AFI 36-3202.

3.15.4.10. Other Fraudulent Enlistments. Except as provided in paragraphs 3.15.4.10.1 and 3.15.4.10.3, a member may be discharged for fraudulent enlistment, although the specific fraud committed upon enlistment is not mentioned in this section if, upon request by the recruiting authorities for pertinent information, or otherwise (including a request to fill out forms), a member deliberately misrepresented, omitted, or concealed any material fact, circumstance, or condition which, if known at the time, might have resulted in rejection.

3.15.4.10.1. A waiver of such fraudulent enlistment may be granted when the action is considered to be in the best interest of the service.

3.15.4.10.2. The unit commander determines whether to process for discharge a member subject to separation or discharge under this section or to request a waiver. If the unit commander recommends processing the case as a fraudulent enlistment, the unit commander prepares the commander's report (attachment 6) and refers the documented case through channels to the discharge authority. The unit commander states whether the member has been promised or led, by implication or representation, to believe that the discharge to be issued would be better

than the worst authorized. Final action by the official authorized to direct the execution of an approved discharge for fraudulent entry constitutes the Air Force administrative determination of the existence of a fraudulent enlistment. The option to discharge for fraud administratively does not preclude action under the UCMJ or state military code based on the fraudulent entry or other violations.

**3.16. Entry Level Performance and Conduct.** Separate a member while in entry level status (defined in attachment 1) when it is determined that the member is unqualified for further military service by reason of unsatisfactory performance or conduct (or both), as evidenced by inability, lack of reasonable effort, failure to adapt to the military environment, or minor disciplinary infractions. Eligibility for discharge under this section does not preclude separation or discharge for another reason when the separation or discharge is authorized and warranted by the circumstances of the case. When separation or discharge of a member in entry level status is warranted by unsatisfactory performance or minor disciplinary infractions (or both), the member normally should be separated under this section. A member may be separated under this section only when the separation or discharge processing starts while the member is in entry level status. Members enlisted in the DEP may be involuntarily separated under this provision if they become disqualified for enlistment in the Regular Air Force for any reason, or refuse or fail to enlist in the Regular Air Force, or enter active duty at the time and place designated. The character of separation or discharge will be entry level separation or discharge. The notification procedures of Chapter 4, Section B shall be used. The unit commander will prepare a letter to the discharge authority to include the information in attachment 6. Do not initiate separation or discharge processing until the member receives formal counseling concerning deficiencies. Counseling requirements are important with respect to this reason for separation or discharge. Because military service is a calling different from any civilian occupation, do not separate a member when this is the sole reason, unless there have been efforts at rehabilitation. Unsatisfactory entry level performance or conduct may be shown in a number of ways including, but not limited to:

- Lack of aptitude for military service.
- Failure to adapt to the military environment.
- Failure to report for scheduled IADT within 365 days of enlistment. NOTE: If the member fails to report for scheduled IADT within 365 days of enlistment, do to no fault of their own, it will be reflected as a voluntary separation and not involuntary.
- Failure to make satisfactory progress in a required training program.
- Reluctance to make the effort necessary to meet Air Force standards of conduct and duty performance.
- Lack of self discipline.
- Minor disciplinary infractions.

**3.17. Excess or Overgrade Assigned Members.** This paragraph applies to the ANG only. Members who become excess or overgrade to a unit's organizational requirement as defined in ANGI 36-2101, *Assignments Within the Air National Guard*, may be separated or discharged under this authority. Retainability requirements of ANGI 36-2101 must be adhered to.

**3.18. Substandard (Unsatisfactory) Performance.** Process members who fail to meet Air Force standards of performance or conduct for discharge as prescribed. If a member's discharge is contemplated

because of acts not related to causes listed in this section, or may warrant consideration of separation or discharge for misconduct, do not discharge the member for substandard performance, but process under another section. Unit commanders will continuously screen personnel for early identification of substandard performance and recommend discharge action when appropriate. A member may be discharged when it is determined that the member is unqualified for further military service due to substandard performance. This reason shall not be used if the member is in entry level status. Service will be characterized as Honorable, unless the military record warrants characterization as Under Honorable Conditions (General) under guidance in attachment 2. The fact that the member is being discharged for substandard performance does not, in itself, warrant characterization as General. The notification procedures shall be used unless the member is otherwise board entitled (refer to 4.10.). Discharge processing may not be initiated until the member has been counseled formally concerning deficiencies and has been afforded an opportunity to overcome those deficiencies. Counseling requirements are of particular importance with respect to this reason for discharge. Because military service is a calling different from any civilian occupation, a member should not be discharged when substandard performance is the sole reason, unless there have been efforts at rehabilitation. One or more of the following may be used as the basis for discharge under this paragraph:

3.18.1. Substandard Duty Performance:

- Failure to perform assigned duties properly.
- A progressively downward trend in performance ratings.
- Failure to demonstrate the qualities of leadership required by the member's grade.

3.18.2. Standards. Failure to maintain standards of dress and personal appearance (other than weight and fitness) or military deportment see AFI 36-2903, *Dress and Personal Appearance of Personnel.*

3.18.3. On-the-Job Training (OJT). Failure to progress in OJT.

3.18.4. Personal Finances. Irresponsibility in the management of personal finances.

3.18.5. Unsanitary Habits. Unsanitary habits such as:

- Repeated infection of venereal disease.
- Persistent refusal to bathe, and similar refusals to observe personal hygiene.

3.18.6. Job Skill Proficiency. Failure to attain or maintain required job skill proficiency, either by associated inaptitude or non-application.

3.18.7. Readiness. Performance which does not contribute to unit readiness and mission accomplishment, as specifically evidenced by below average performance, or specific demonstrated incapacity to meet performance standards.

3.18.8. Body Fat Standards. Members may be discharged who exceed the body fat standards of AFI 40-502, *The Weight Management Program,* when such is not due to physical or organic disease causes beyond their control.

3.18.9. Fitness. Failure to meet minimum fitness standards. Members who fail to meet minimum standards of fitness for reasons not amounting to disability may be discharged IAW AFI 40-501, *The Air Force Fitness Program.*

3.18.10. School Requirement. Failure to complete a mandatory technical school requirement which was a condition of enlistment or assignment action. A member who fails to complete or is eliminated

from training will be discharged from the state ANG and as a Reserve of the Air Force. If the member has at least a 3-skill level in an AFSC authorized on the UMD, use command discretion to assign member to this authorization.

**3.19. Drug or Alcohol Abuse Rehabilitation Failure.** Members who are in a program for personal alcohol or drug abuse may be discharged for failure through inability or refusal to participate in, cooperate in, or successfully complete such a program in the following circumstances:

- There is a lack of potential for continued military service.
- Long-term treatment is determined necessary and the member is transferred to, or receiving treatment in a civilian medical facility.

3.19.1. Nothing in this provision precludes separation or discharge of a member who has been referred to such a program under any other provision of this instruction in appropriate cases.

3.19.2. Advise members before referral to a civilian rehabilitation program, that any incurred expenses will be their responsibility without obligation to the ANG, AFRC, or ARPC.

3.19.3. If an Administrative Discharge Board is requested, the Board will review the evidence, make a finding of either alcohol or drug abuse rehabilitation failure and determine the characterization of service, which should either be Honorable or Under Honorable Conditions (General), except when guidelines require an entry level separation or discharge. Nothing in this section precludes separation or discharge of a member referred to a treatment program under any other section of this instruction when appropriate. Report alcohol abuse failures separately from drug abuse failures. When separation or discharge is considered appropriate due to evidence of alcohol abuse, the unit commander:

- Reviews the action taken according to AFI 36-2701 or ANGR 30-2 and ensures that every effort has been made to rehabilitate the member. Recommends whether to separate the member for drug or alcohol abuse failure, or for another reason (for example, illegal activity in connection with drugs may be a basis for discharge for misconduct, deteriorating duty performance associated with alcohol abuse may warrant separation or discharge for substandard performance).
- Prepares a letter to the discharge authority to include:
- A history of the member's drug or alcohol abuse, including details of how the abuse was determined, following guidance of AFI 36-2701 or ANGR 30-2.
- A summary of the rehabilitation efforts with a complete explanation of how criteria for this basis for separation or discharge are met.
- A resume of the military record.

**3.20. Homosexual Conduct.**

3.20.1. A member shall be discharged under this section if one or more of the following approved findings is made.

3.20.1.1. The member has engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts, unless there are approved further findings that:

- Such conduct is a departure from the member's usual and customary behavior;
- Such conduct, under all the circumstances, is unlikely to recur;

- Such conduct was not accomplished by use of force, coercion, or intimidation;
- Under the particular circumstances of the case, the member's continued presence in the armed forces is consistent with the interests of the armed forces in proper discipline, good order, and morale; and
- The member does not have a propensity or intent to engage in homosexual acts.

3.20.1.2. The member has made a statement that he or she is a homosexual or bisexual, or words to that effect, unless there is a further approved finding that the member has demonstrated he or she is not a person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in, homosexual acts. A statement by a service member that he or she is a homosexual or bisexual, or words to that effect, creates a rebuttable presumption that he or she engages in, attempts to engage in, has a propensity to engage in, or intends to engage in, homosexual acts. The service member shall be informed of this presumption and given the opportunity to rebut it by presenting evidence demonstrating that he or she does not engage in, attempt to engage in, have a propensity to engage in, or intend to engage in, homosexual acts. Propensity to engage in homosexual acts means more than an abstract preference or desire to engage in homosexual acts; it means a likelihood that a person engages in or will engage in homosexual acts. In determining whether a member has successfully rebutted the presumption, the following may be considered:

- Whether the member has engaged in homosexual acts;
- The member's credibility;
- Testimony from others about the member's past conduct, character, and credibility;
- The nature and circumstances of the member's statement; and
- Any other evidence relevant to whether the member is likely to engage in homosexual acts.

***NOTE:***

This list is not exhaustive; any other relevant evidence may also be considered.

3.20.1.3. The member has married or attempted to marry a person known to be of the same biological sex (as evidenced by the external anatomy of the persons involved).

3.20.2. A member being discharged for homosexual conduct is entitled to a board hearing. See Chapter 4 for procedures and paragraph 4.17.5 for special instructions.

3.20.3. A commander is not required to initiate discharge proceedings, a board is not required to recommend discharge, and a discharge authority is not required to approve a discharge for homosexual conduct if the commander, board, or discharge authority determines, by a preponderance of the evidence, that:

- The member engaged in or attempted to engage in homosexual acts, made statements, or married or attempted to marry a person known to be of the same biological sex for the purpose of avoiding or terminating military service, and
- Separation of the member would not be in the best interest of the armed forces.

3.20.4. See A2.5.4.2 for guidelines on characterization of service.

3.20.5. Following a board hearing, the discharge authority will process the case under para 4.22. If the member waives the board, the discharge authority will make appropriate findings and take final action or forward the case as applicable. If the member waives the board and the discharge authority recommends a characterization of service less favorable than that recommended by the initiating commander, the discharge authority must include in the case file a statement of the reasons for the less favorable characterization.

3.20.6. Preprocessing counseling and rehabilitation and retention of members with lengthy service to qualify for retired pay are not applicable in cases involving homosexual conduct.

3.20.7. Nothing in this instruction:

- Limits the authority of the SAF to take appropriate action to ensure compliance with the provisions of this section.
- Precludes retention of a member for a limited period of time in the interest of national security as authorized by SAF.
- Authorizes a member to seek Secretarial review.
- Precludes discharge, in appropriate circumstances, for another reason set forth in this instruction.
- Precludes administrative disciplinary action (e.g., a letter of reprimand), nonjudicial punishment, or court-martial if circumstances warrant.

3.20.8. See para 1.18 regarding recoupment of advanced educational assistance, special pay, or bonuses. A member shall be discharged under this section if one or more of the following approved findings is made.

**3.21. Misconduct.** A member may be separated for misconduct by reason of one or more of the reasons listed in this section. Characterization of service normally shall be UOTHC, but characterization as Under Honorable Conditions (General) may be warranted. For respondents who have completed entry-level status, do not authorize characterization of service as Honorable unless the member's record is otherwise so meritorious that any other characterization clearly would be inappropriate, and the separation or discharge is approved by the discharge authority. For members in entry-level status, if characterization of service as UOTHC is not warranted, describe the separation or discharge as an entry-level separation or discharge. Explanation of limitations on using evidence of drug abuse in characterizing service are explained in **Attachment 2**. The notification procedures of Chapter 4, Section B, apply. However, use the Administrative Discharge Board procedures of Chapter 4, Section D, if recommending the member for a discharge UOTHC in the letter of notification, or if the basis for discharge is homosexual conduct, or if the member has a total of 6 or more years of active and reserve military service, or if the member is a noncommissioned officer (does not apply to ANG). Do not initiate separation or discharge processing for a pattern of misconduct or minor disciplinary infractions until the member receives formal counseling concerning deficiencies and is afforded an opportunity to overcome those deficiencies. Include counseling and results in the case file. Counseling is not appropriate if the sole basis of separation or discharge is a serious offense or civilian conviction, or a similar juvenile adjudication.

3.21.1. Minor Disciplinary Infractions. A pattern of misconduct consisting solely of minor disciplinary infractions. The infraction contemplated under this section may involve failure to comply with non-punitive instructions or minor offenses under the UCMJ or state military code. If this is the sole

reason for separation or discharge of a member in entry-level status, process the action under Entry Level Performance and Conduct per paragraph 3.16.

3.21.2. A Pattern of Misconduct. A pattern of misconduct consisting wholly, or in part, of misconduct more serious than that considered under Substandard Performance. Cite specific patterns of misconduct in separation or discharge cases. Use paragraph 4.4 when using more than one reason. The pattern may consist of:

3.21.2.1. Discreditable involvement with military or civil authorities. Acts for which the member was or might have been punished under the UCMJ or state military code may be part of the pattern. The lack of UCMJ or state military code jurisdiction over the offense is irrelevant. Civil offenses, which in themselves are not a basis for discharge for civil conviction, may be cited to show the pattern of misconduct.

3.21.2.2. Conduct prejudicial to good order and discipline. This includes conduct of a nature which tends to disrupt order, discipline, or morale within the military community. Normally, this category of misconduct involves causing dissent, disruption, and degradation of mission effectiveness. It also includes conduct of a nature which tends to bring discredit on the service in the view of the civilian community.

3.21.2.3. Failure to support dependents. An established pattern showing failure to contribute adequate support to dependents or failure to comply with orders, decrees, or judgments of a civil court concerning support of dependents.

3.21.2.4. Failure to meet financial obligations. An established pattern showing failure to pay just debts. This includes dishonorable failure to make timely payments on the Government American Express Travel Card. Dishonor is presumed when the member fails to make any payments for a period of 120 or more consecutive days, or when the member fails to keep any promise for payment specifically made on any debt. The member may rebut the presumption through the introduction of competent and relevant evidence.

3.21.3. Commission of Serious Offense. Discharge under this section is authorized if the specific circumstances of the offense warrant separation or discharge and a punitive discharge would be authorized for the same or a closely related offense under the UCMJ or state military code. Offenses serious enough to warrant consideration under this section include, but are not limited to the following:

3.21.3.1. Sexual Deviation. Members are subject to discharge for misconduct based on an act, or acts, of sexual deviation (see paragraph 3.20 for homosexual conduct) including, but not limited to:

- A lewd or lascivious act.
- Indecent exposure.
- Indecent act with, or assault upon a child under 16.
- Transvestitism or other aberrant sexual behavior.
- Any other indecent act or offense.

3.21.3.2. Drug Abuse. Process members for discharge for misconduct based on drug abuse. Since drug abuse is not compatible with Air Force standards, it's essential that careful consider-

ation be given when deciding whether to rehabilitate or retain members who are verified drug abusers in the Air Force.

3.21.3.2.1. Commanders must act promptly when they have information indicating a member is subject to discharge for drug abuse. They evaluate the specific circumstances of the offense, the member's records, and the member's potential for future service and take action IAW paragraphs 3.21.3.2.2 and 3.21.3.2.3.

3.21.3.2.2. If the commander determines discharge action is warranted, discharge action must be initiated promptly. However, there is no time limit for initiating discharge action, and failure to do so does not at anytime constitute a constructive waiver. Discharge action is waived only if a waiver is expressly approved.

3.21.3.2.3. HQ AFRC only. If the commander determines a waiver of discharge is appropriate, a request for waiver must be processed promptly. See paragraph 4.3.3 for waiver processing procedures.

3.21.3.3. Misrepresentation. Misrepresentation or omission of material fact in an official written or oral statement or document.

3.21.3.4. Other Serious Offenses. If the offense that makes the member subject to discharge under this section is not described in 3.21 through 3.21.3.3, cite this subparagraph as the basis of the action.

3.21.4. Civilian Conviction. Conviction by civil authorities, or action taken which is tantamount to a finding of guilty, including similar adjudications in juvenile proceedings, when the specific circumstances of the offense warrant discharge and:

- A punitive discharge would be authorized for the same or a closely related offense under the UCMJ or the sentence by civilian authorities includes confinement for 6 months or more, without regard to suspension or probation.
- The offense involved moral turpitude.

3.21.4.1. Action "tantamount to a finding of guilty" may occur where, notwithstanding the absence of a specific finding of guilty, the court proceeds in a manner that is inconsistent with any reasonable hypothesis other than assumed guilt. The most common example of this exists where under statutory authority a court or other agency of the judicial or legal system (to include a state or county prosecuting attorney in some instances) without specific "finding of guilty", and with the consent of the individual, proceeds to subject the individual to some form of deprivation or restraint of the person's theretofore unfettered liberty for a period of time as a condition to some ultimate official act of grace, forgiveness, or dismissal of charges; for example, successful probation in return for a clean record; deferred adjudication or some other form of pretrial intervention. Where there has been no action taken which is tantamount to a finding of guilty; or where action taken which is either tantamount to a finding of guilty, or an adjudication of guilty has been set aside under Federal or state laws, the unit commander may consider the member for discharge for substandard performance under paragraph 3.18, for a different misconduct basis under this section, or by direction of the SAF, under paragraph 3.23, if otherwise appropriate.

3.21.4.2. Prompt action by unit commanders is particularly important in cases of civilian conviction.

3.21.5. Appeal of Civil Conviction. Separation or discharge processing may be initiated whether or not a member has filed an appeal of a civilian conviction, or has stated an intention to do so. Withhold execution of an approved discharge pending outcome of the appeal or until the time for appeal has passed, but upon request of the member or upon direction of the SAF, the member may be separated prior to final action on the appeal.

3.21.5.1. If the appeal results in the conviction being set aside, do not discharge the member for civilian conviction. If the discharge authority considers discharge warranted without awaiting outcome of an appeal, forward the case to Air Force Personnel Council for decision of the SAF. In each case referred, an analysis of the situation should be furnished. The analysis should include:

- A complete review of the circumstances.
- A statement whether it is the conviction or the sentence that is under appeal.
- An indication whether or not the appeal is frivolous or unlikely of reversal.
- The estimated date action on the appeal will be finalized.
- A considered judgment by those in the best position to assess the validity of the appeal.
- Any other cogent reasons why the case should be treated in an exceptional fashion prior to completion of the appellate processes.

3.21.5.2. The respondent may request execution of the approved discharge while the appeal is pending. Make the request in writing and tell how discharge will benefit the respondent. It must show that it was made with the advice and assistance of legal counsel. The discharge authority asks the staff judge advocate to comment on the validity of the reasons given to assess the possibility that the conviction will be overturned on appeal. Normally, the request is approved if:

- There is an indication the respondent will benefit.
- The conviction is expected to withstand the appeal.
- No other circumstances exist requiring the return to military control of a member who is in civil confinement.

3.21.6. Constructive Waiver of Civilian Conviction. A commander must act promptly when the commander has information indicating a member is subject to discharge based on civilian conviction. The commander should evaluate the specific circumstances of the offense, how it occurred, the action of the civilian authority, the member's record, and the member's potential for future service. The commander shall coordinate with and obtain a legal opinion from the servicing legal office to determine the appropriate disposition of all cases. If the commander determines that discharge action is warranted, discharge action should be initiated promptly. If the commander determines that retention is appropriate, the commander will promptly submit a waiver request to the discharge authority for approval. If the discharge authority fails to act promptly, the member may become the recipient of a constructive waiver. Failure to exercise the option to discharge when the facts are known tends to show intent to retain the member. The mere passage of time, standing alone, is not sufficient for a constructive waiver. There must be other acts in conjunction with the passage of time which reflects the intent to retain the member, such as promotion or reassignment. The determination as to whether or not there is a constructive waiver must be made by the discharge authority having the express waiver authority, not by a discharge board or other authority, although they may make recommendations. Where discharge action has been initiated, the passing of time is immaterial to the issue of whether a constructive waiver has resulted.

3.21.7. Waiver Consideration. Cases often arise which warrant waiver consideration. In determining whether to recommend a waiver, give full consideration to the gravity of the specific offense involved, the circumstances relating there to, and matters in extenuation. Commanders should also review the military record of the member for the period prior to commission of the offense (and the member's potential for rehabilitation if the reason for discharge action is a pattern of misconduct or minor disciplinary infractions). In cases of civilian conviction, the commander determines what disposition was appropriate had the offense occurred and been resolved entirely within the Air Force community. If the penalty assessed is less than discharge, commanders may recommend a waiver.

**3.22. Discharge in the Interest of National Security.** A member whose retention is clearly inconsistent with the interest of national security may be discharged. Discharge action according to this paragraph is not initiated until all actions required by AFI 31-501 are completed.

3.22.1. When the member is unable to obtain the level of clearance for an assignment or projected duty assignment the characterization of service will be Honorable, Under Honorable Conditions (General), or UOTHC under the guidelines provided in attachment 2. If the member is in entry level status, describe the separation or discharge as an entry-level separation or discharge. Appropriate authorities must review and ensure members recommended for discharge under this section are processed entitled to a hearing by an administrative discharge board (Chapter 4, Section B). Counseling and rehabilitation procedures do not apply.

3.22.2. The unit commander:

- Prepares the commander's report (attachment 6).
- Sends the documented case, through channels, to the appropriate authority. The transmittal letter states whether the member has been promised or led, by implication or representation, to believe that the discharge to be issued would be better than the worst type authorized, and includes evidence of the action required.

**3.23. Secretarial Plenary Authority.** Without regard to any limitations on separations or discharges in this instruction or DoD Directive 1332.14, *Enlisted Administrative Separations*, the SAF may direct the separation of any enlisted member at any time the SAF determines that such separation is in the best interests of the Air Force. Authority to make this determination is not delegated. The characterization of service will be Honorable unless an entry level separation is required under guidance in attachment 2. Unit commanders may recommend action under this section. Air Force Personnel Council obtains and announces the decision of the SAF. Commanders recommending action under this section must notify the member of the proposed action and reason for the recommendation, as described in Chapter 4, Section B. Give the member an opportunity to submit a rebuttal with the assistance of military legal counsel, unless such rights were provided under some other provision of this instruction. Procedures for requesting an administrative discharge board hearing do not apply.

**3.24. Secretary of the Air Force (SAF).**

3.24.1. Cases where SAF approval is required prior to discharge must be referred to the Air Force Personnel Council with a legal review attached. These include any case where a characterization of UOTHC is recommended.

3.24.2. Include in the cover correspondence transmitting the documented case file:

- A recommendation that the enlisted member be discharged.
- The recommended characterization of service.
- A recommendation to approve/disapprove lengthy service probation.

3.24.3. The member may not appear before the SAF, nor be represented by counsel unless the SAF determines that the member must be present, with or without counsel, for them to properly evaluate the case.

3.24.4. Follow procedures in paragraph 3.3.1 for enlisted lengthy service cases.

**3.25. Probation and Rehabilitation (P&R).** Enlisted members approved for discharge under this chapter, except for the reasons listed below, shall be considered by the discharge authority for suspension of their discharge for the purposes of receiving P&R. Receipt of P&R may not be a contingency for making a recommendation for discharge, nor be a condition for acceptance of a conditional waiver for discharge. Officers may not be considered for P&R.

3.25.1. Members discharged for the following reasons are not eligible for P&R consideration:

- Fraudulent entry, paragraph 3.15.4.
- Entry level performance and conduct paragraph 3.16.
- Homosexual conduct, paragraph 3.20.
- Drug Abuse, 3.21.3.2.
- Discharge in the interest of national security, paragraph 3.22.

3.25.1.1. When a member is discharged for multiple reasons, and one of the approved reasons for discharge is for one of these listed above, the member is not eligible for P&R.

3.25.2. Criteria for Suspension of Discharge. Consistent with DoD policy, the ANG and the Air Force Reserve should offer enlisted members the opportunity for P&R when it is reasonably possible to do so, for example those members:

- Who have demonstrated a potential to serve satisfactorily.
- Who have the capacity to be rehabilitated for continued military service or completion of the current enlistment.
- Whose retention in the ANG or Air Force Reserve in a probationary status is consistent with the maintenance of good order and discipline.

3.25.3. Action by the Discharge Authority. When P&R is appropriate, the discharge authority:

- Directs the suspension of the execution of the approved discharge contingent on the successful completion of the period of rehabilitation.
- Sets the period of rehabilitation. This should ordinarily be no less than 6 months, but may not exceed 12 months, or the enlisted member's ETS date, whichever is earlier.
- Establishes any and all conditions or terms to be met while the discharge is suspended. These may include, but are limited to, requirements for restitution to victims, drug or alcohol rehabilitation, mental health or, financial counseling, etc. The requirement not to violate the UCMJ, or the criminal laws of the US or the states and territories is presumed.

3.25.4. Vacation of Suspension. During the period of the suspension, if the member engages in conduct which violates any condition or terms required to be met during the suspension period, commits any act that would, if committed while on active duty, would be a violation of the UCMJ, or commits an act(s) or omission(s) that would subject the member to involuntary discharge under this instruction, the discharge authority may consider vacating the suspension and ordering execution of the discharge. Vacation of a suspended discharge does not affect the commander's authority to deal with misconduct in other appropriate ways.

3.25.4.1. The discharge authority initiates the vacation process by written notification to the member in which the member is:

- Told what information has been received that indicates that the vacation of the suspension may be appropriate.
- Given a minimum of 30-calendar days to reply in writing to the discharge authority regarding the matter; and
- Afforded the opportunity to consult military legal counsel, who must be a Judge Advocate, to assist in preparation of a reply.

3.25.4.2. After receiving the member's reply, or upon the passage of 35 days, including 5 days presumed mailing time, after the member's known receipt of notification without reply, whichever comes first, the discharge authority obtains a legal review and vacates the suspension and orders the discharge executed, or continues the member on P&R. The period of suspension for P&R is automatically stayed when the discharge authority initiates the vacation process by notification.

3.25.4.3. Unless the suspension is sooner vacated, the suspension and discharge action are automatically remitted at the end of the probationary period. They may be remitted earlier if the discharge authority determines that the goal of rehabilitating the member has been achieved.

**3.26. Dropping Enlisted Members from the Rolls of the Air Force.**

3.26.1. You may drop from the rolls of the Air Force any enlisted member who has been found guilty by civil authorities of any offense and finally sentenced to confinement in a Federal or state penitentiary or correctional institution or a member who has been sentenced by court martial to confinement for more than 6 months without a punitive discharge.

3.26.2. Under the statutes of some states, sentence to confinement in a county jail may constitute confinement in a correctional institution.

3.26.3. Dropping an enlisted member from the rolls of the Air Force terminates the enlisted member's military status as of 2400 hours on the date specified in the orders.

3.26.4. The appropriate agency (ANGRC, HQ AFRC, HQ ARPC) publishes orders dropping an enlisted member from the rolls of the Air Force. Issue no separation documents.

3.26.5. The Report. The unit or other commander of an enlisted member who meets the criteria of paragraph 3.26.6 forwards a report to the discharge authority. The report must include the following information:

- If the member received a final sentence to confinement due to civilian conviction: Offense or offenses for which convicted.
- Sentence received.

# Chapter 4

## NOTIFICATION PROCEDURES AND ADMINISTRATIVE DISCHARGE BOARDS

*Section 4A—General Information*

**4.1. General Instructions.** Title 10, U.S.C., Section 12683, generally requires the recommendation of a board of officers to discharge involuntarily a non-probationary Reserve officer. Among the exceptions to this general rule are discharge for age or dismissal under Title 10 U.S.C., Section 1161. It also requires the recommendation of a board of officers to discharge any Reserve member for cause UOTHC, unless the discharge is a result of an approved sentence of courts-martial, or the member waives the proceedings and consents to discharge Under Conditions Other Than Honorable. Administrative discharge board and notification requirements in this instruction comply with Title 10 U.S.C., Section 12683, and with additional requirements of DoD and Air Force policy. Use the notification procedures in Section B for involuntary separation cases involving enlisted personnel. Use the notification procedures in Section C for involuntary separation cases involving officers. References in this chapter to the "respondent" means the member involved. References to the "board" or "discharge board" mean the administrative discharge board.

- ANG Officers. ANG officers not on active duty are discharged through the withdrawal of Federal recognition process in Title 32 U.S.C., Section 323. Withdrawal of Federal recognition pursuant to Title 32 U.S.C., Section 323(b) automatically results in discharge from Reserve of the Air Force appointment. Discharge boards convened under this instruction for ANG officers are withdrawal of Federal recognition boards. The guidance in this chapter applies to withdrawal of Federal recognition boards except for paragraphs 4.9 and 4.10 in this instruction. A probationary officer category is not established by Title 32 U.S.C., Section 323(b). All ANG officers have a board entitlement for withdrawal of Federal recognition under Title 32 U.S.C., Section 323(b). A withdrawal of Federal recognition board is a Federal board. At a minimum the recorder, the board members, and the legal advisor shall be ordered to duty in a Title 10 status. Withdrawal of Federal recognition is accomplished by the Chief, of the National Guard Bureau (CNGB), subject to approval of the SAF in cases where Chapter 4 of this instruction requires such approval. When the CNGB withdraws Federal recognition, CNGB shall concurrently discharge the officer from Reserve of the Air Force appointment.

**4.2. Action in Lieu of Administrative Discharge Board.** Paragraphs 4.10 (enlisted) and 4.12 (officers) explain the eligibility for an administrative discharge board. Don't hold an administrative discharge board hearing if:

- The enlisted respondent waives a board hearing by failing to respond to the proposed action after receipt of notification.
- The enlisted respondent submits a conditional or unconditional waiver which is accepted.
- The officer respondent submits an unconditional waiver which is accepted.
- An officer submits a resignation that is approved.
- The respondent applies for, and is approved for transfer to the Retired Reserve.

**4.3. Waiver or Conditional Waiver (Enlisted Cases Only).** A waiver is a specific statement made by a respondent waiving those rights associated with administrative discharge board proceedings. A "conditional waiver" is a statement made by an enlisted respondent waiving those rights associated with administrative discharge board proceedings and contingent on receipt of a characterization of service higher than the worst type authorized. A conditional waiver may only address the characterization of service. ***EXAMPLES:*** In a misconduct case, the worst characterization authorized is UOTHC. The waiver might be contingent on approval of either an Honorable or a General discharge, as requested by the respondent. In a substandard performance case, the worst type characterization is General. The waiver would be contingent on receipt of an Honorable Discharge. Conditional waivers are not accepted from officer respondents.

4.3.1. Submission. The respondent submits the waiver or conditional waiver to the discharge authority through the chain of command. An information copy of the waiver will be provided directly to the discharge authority who should then monitor the progress of the request through the chain of command.

4.3.2. Processing. The discharge authority, under guidance of attachment 2, and this chapter, may:

- Reject the conditional waiver and notify the respondent that he or she may submit either an unconditional waiver or a request for an administrative discharge board hearing or;
- Accept the waiver or conditional waiver and approve the appropriate type of discharge.

***NOTE:***

The respondent may submit a written request for withdrawal to the discharge authority. The request must state the reasons for requesting withdrawal. After review, the discharge authority may or may not accept the requested withdrawal.

4.3.3. Waiver of Discharge for Drug Abuse Cases. A member found subject to discharge for drug abuse under paragraphs 2.30.3 (officers) or 3.21.3.2 (enlisted) of this instruction in Chapters 2 and 3, may warrant consideration for waiver of discharge. In deciding whether a waiver should be recommended, commanders must give full consideration to: the nature of the offense involved, all circumstances surrounding the offense, any matters in extenuation, the member's military record, and the member's potential for future productive service. Consideration must include evaluation of the retention criteria in paragraph 4.14.4.1 of this chapter The commander must determine that the facts and circumstances of a member's case meet the retention criteria in paragraph 4.14.4.1 of this chapter and therefore warrant a recommendation for waiver action. A waiver recommendation must be processed promptly according to paragraph 4.3.3.1 of this chapter.

4.3.3.1. A commander who initiates waiver of discharge action sends a recommendation to the discharge authority. This provides the commander's reasons for recommending the waiver and must include:

- Evidence substantiating the member's drug abuse; completed disciplinary or administrative action taken as a result of the member's drug abuse, e.g., Article 15 actions, letters of reprimand.
- Any available investigation report, military or civilian, of the drug offenses.
- The commander's statement explaining how the member meets each of the seven retention criteria set forth in paragraph 4.14.4.1.

- Rehabilitative action taken in the member's case and results.
- Any other relevant information.

4.3.3.2. The discharge authority may either approve or disapprove the waiver. If it is approved, no further action in the case is required. If it is disapproved, discharge processing must commence at once.

**4.4. Multiple Reasons for Separation.** When the recommendation for separation or discharge is based on more than one reason, the following procedures apply:

4.4.1. If any of the reasons for separation or discharge require an administrative discharge board, process the entire matter under paragraph 4.10 (enlisted) and 4.12 (officers).

4.4.2. If the discharge authority approved more than one reason for separation or discharge, apply the guidance on characterization that provides the greatest latitude to the discharge authority.

4.4.3. When a specific requirement for one reason clearly conflicts with a general requirement for another reason, apply the specific requirement.

4.4.4. If the discharge authority can't resolve a conflict in procedures under the guidelines of 4.4.1 through 4.4.3, use the procedure most favorable to the respondent.

**4.5. Delivery of the Letter of Notification (LON).**

4.5.1. When feasible the LON should be personally delivered to the member. The delivering official obtains a written acknowledgment of receipt of the letter. If the member refuses to acknowledge receipt, the delivering official makes an annotation to that effect on the receipt, including date and approximate time of actual delivery of the LON. The receipt will be placed in the case file.

4.5.2. When personal delivery is not feasible, the LON is sent to the member by registered or certified mail, return receipt requested, to the member's last known address. The LON is also sent by first class mail when attempts to deliver the LON by registered or certified mail are unsuccessful. An equivalent form of notice may be used if such service by US mail is not available for delivery to an address outside the US.

4.5.3. If the postal service returns the letter without indicating a more current address, file the returned envelope with the Affidavit of Service by Mail (**Attachment 10**) in the case file. Also, consider use of procedures for locating the respondent and documenting your efforts at delivery found in paragraphs 2.14 and 3.13.6 (Inability to Locate) of this instruction. If a returned envelope discloses a more current address, remail the LON to the member at that address as set forth in paragraph 4.5.2.

**4.6. Failure or Declination To Respond.** If the respondent fails to acknowledge receipt of the LON, fails to submit a reply within 15 days (30 days if the commander or discharge authority knows the respondent is in civil confinement) after receipt of the LON, or declines to respond about the selection of rights, that failure or declination constitutes a waiver of all rights, including the right to a board hearing, except for officers who must affirmatively waive their right to a board hearing. An appropriate notation is included in the case file. If the member exercises one or more rights, but declines to sign the form letter, afford the member the rights elected; rights not elected are waived. If the member fails to acknowledge receipt of the LON sent by mail, then an affidavit receipt (attachment 10) will be prepared and placed in the case file.

**4.7. Processing Time Goals.** Once the recommendation for separation or discharge is made, it is usually in the best interest of both the respondent and the Air Force to process the cases as expeditiously as possible. Commanders should monitor the effectiveness of separation or discharge programs under their control to ensure that cases are processed without undue delay. ANG only. Officer cases not presented to an administrative discharge board within 60 days of receipt of the convening orders must be reported to ANGRC/MPPAS. Notification will include information explaining the reason(s) for the delay.

*Section 4B—Rights of Enlisted Personnel in Separation Cases*

**4.8. General Instructions.** Notification procedures in paragraphs 4.9 and 4.10 apply in cases of involuntary separation of enlisted personnel. Notify the respondent in writing of matters required in this section. See paragraph 4.5 for LON delivery instructions.

**4.9. LON for Enlisted Personnel, Non-Board Eligible.** When the commander or discharge authority determines that grounds exist to warrant initiation of separation or discharge action against a member who is not entitled to request a board, a LON is sent to the member.

4.9.1. The LON includes notification that the commander or discharge authority is initiating action, with:

4.9.1.1. A statement whether the action could result in separation or discharge and the types of characterization that may be issued.

4.9.1.2. A description of all reasons for such action, to include identification of the appropriate paragraphs of this instruction covering each reason. The statement of reasons is not required to have the legal precision of court-martial specifications; it is sufficient if the reasons are described in such terms that the member is fairly apprised of the factual nature of the reasons.

4.9.1.3. Whether the commander or discharge authority is recommending separation or discharge and the characterization of service being recommended.

4.9.1.4. When there is evidence that respondents have received advanced educational assistance moneys or special pay or bonuses, a statement notifying the respondent that they may be required to repay the US for these moneys under the authority of Title 10 U.S.C., Section 2005.

4.9.1.5. Copies of all supporting documents. See paragraph 1.11 for restrictions on release of certain types of information.

4.9.2. An explanation of the respondent's right to consult with military legal counsel, who must be a Judge Advocate, qualified under Article 27 (b)(1) of the UCMJ. Include the name, organizational address, and telephone number of military counsel in the letter. The respondent may also consult civilian counsel, retained at the member's own expense, or request military counsel of respondent's choice if such counsel is serving in an active status in any branch of the armed forces of the US and is reasonably available according to AFI 51-201, *Military Justice Guide*. Non-lawyer counsel may not represent a respondent before a board unless: the respondent expressly declines appointment of counsel qualified under Article 27(b)(1) of the UCMJ and requests specific non-lawyer counsel; or the separation authority assigns the non-lawyer counsel as assistant counsel.

4.9.3. A statement of the respondent's right, at any time, to submit any statements or documents to be considered in the disposition of the case.

4.9.4. An explanation that respondents may waive their rights contained in paragraphs 4.9.2 and 4.9.3, after having the opportunity to consult with counsel. Include a statement that within 15 days (30 days if the commander or discharge authority knows that the respondent is in civilian confinement) after receipt of the LON, the respondent must return an attachment showing decisions on each of the rights in paragraphs 4.9.2 and 4.9.3. The respondent or counsel must sign the attachment.

4.9.5. A statement that the respondent must execute and return within 24 hours after receipt an attached acknowledgment of receipt of the LON and attachments.

4.9.6. A statement that the commander or discharge authority will consider granting an extension of the time to reply if additional time is needed by respondent or counsel. Respondent or counsel must submit a written request for such delay, stating the reasons and how much time is needed. The decision whether to grant the additional time is discretionary with the commander or discharge authority.

4.9.7. A statement that failure to acknowledge receipt or to respond regarding selection of rights within 15 days (30 days if the commander or discharge authority knows that the respondent is in civil confinement) after receipt of the LON constitutes a waiver of all rights, with the result that the case will be processed based on the information available, and without further notice to the respondent.

**4.10. LON for Enlisted Personnel - Board Eligible.** An administrative discharge board must be offered to the respondent if the recommended characterization of service in the letter of notification is UOTHC. Additionally, a respondent who is a noncommissioned officer (does not apply to ANG) or has 6 or more years of satisfactory service for retirement must be offered an administrative discharge board. Further, a discharge board hearing will be offered to the member if the discharge recommended is based upon allegation of homosexual conduct regardless of characterization. All rights listed in this paragraph apply regarding the administrative discharge board hearing of cases involving physical disqualification or inability to locate except the right for the respondent to appear in person, to have counsel appear on respondent's behalf, or to have witnesses appear before the board. When the commander or discharge authority determines that grounds exist to warrant initiation of separation action against a member who is entitled to request a board, a letter of notification (LON) is sent to the member. The LON includes:

4.10.1. Notification that the commander or discharge authority is initiating action, with:

4.10.1.1. A statement whether the action could result in separation or discharge and the types of characterization that may be issued.

4.10.1.2. A description of all reasons for such action, to include identification of the appropriate paragraphs of this instruction covering each reason. The statement of reasons is not required to have the legal precision of court-martial specifications. It is sufficient if the reasons are described in such terms that the member is fairly apprised of the factual nature of the reasons.

4.10.1.3. Whether the commander is recommending separation or discharge and the characterization of service being recommended.

4.10.1.4. When there is evidence that respondents have received advanced educational assistance moneys or special pay or bonuses, a statement notifying the respondents that they may be required to repay the US for these moneys under the authority of Title 10 U.S.C., Section 2005.

4.10.1.5. Copies of all supporting documents. See paragraph **1.11.** for restrictions on release of certain types of information.

4.10.2. An explanation of the respondent's right to consult with legal counsel who must be a Judge Advocate qualified under Article 27 (b)(1) of the UCMJ. Include the name, organizational address, and telephone number of the military legal counsel in the LON. The respondent may also consult civilian counsel, retained at the member's own expense, or request military legal counsel of respondent's choice, if such counsel is serving in an active status or on active duty in any branch of the armed forces of the US and is reasonably available according to AFI 51-201. Non-lawyer counsel may not represent a respondent before a board unless: The respondent expressly declines appointment of counsel qualified under Article 27(b)(1) of the UCMJ and requests specific non-lawyer counsel; or the separation authority assigns the non-lawyer counsel as assistant counsel.

4.10.3. A statement of the respondent's right, at any time, to submit any statements or documents to be considered in disposition of the case. Also, include a statement that requests for or waiver of board hearing does not affect the right to submit such statements or documents at any time.

4.10.4. An explanation that the respondent may waive rights contained in paragraphs 4.10.2 and 4.10.3, as well as the right to an administrative discharge board hearing, after having the opportunity to consult with counsel. Include a statement that within 15 days (30 days if the commander knows that the respondent is in civilian confinement) after receipt of the LON, the respondent must return an attachment showing the decision of the respondent on each of the rights contained in paragraphs 4.10.2 and 4.10.3 and the right to a board hearing.

4.10.5. If the commander or discharge authority knows that the respondent is in civilian confinement, include a statement that the administrative discharge board will proceed in respondent's absence and that the member's counsel may present the case on respondent's behalf.

4.10.6. A statement that the respondent will execute and return within 24 hours after receipt, an attached acknowledgment of receipt of LON and attachments.

4.10.7. A statement that the commander or discharge authority will consider granting an extension of the time to reply if additional time is needed by respondent or counsel. Respondent or counsel must submit a written request for such delay, stating the reasons and how much time is needed. The decision whether to grant the additional time is discretionary with the commander or discharge authority.

4.10.8. A statement that failure to acknowledge receipt or to respond regarding selection of rights, within 15 days (30 days if in civil confinement) after receipt of the LON constitutes a waiver of all rights, with the result that the case will be processed without an administrative discharge board hearing on the information available.

4.10.9. A statement that within 15 days (30 days if the commander or discharge authority knows that the respondent is in civilian confinement) after receipt of the LON, the respondent must return an attachment electing one of the following options:

- Request for a board hearing.
- Waiver of board hearing.
- Application for transfer to the Retired Reserve, in cases in which the respondent is eligible for such transfer.

4.10.10. A statement that a respondent who requests an administrative discharge board hearing must return an attached form indicating the following:

4.10.10.1. Whether the respondent wants to make a personal appearance.

4.10.10.2. Whether the respondent wants representation by the military legal counsel made available.

4.10.10.3. Whether the respondent asked to be represented by military counsel of the respondent's choice. In that case, respondent must identify such counsel by name, grade, organization, and phone number.

4.10.10.4. Whether respondent will be represented by civilian counsel, in which case respondent will identify such counsel by name and address.

4.10.10.5. Names, addresses, and telephone numbers, if known, of any witnesses that the respondent wants to appear before the board, giving a summary of the expected testimony of the witnesses on the issue of separation or characterization, and an explanation why written or recorded testimony of the witnesses could not be presented to the board hearing for a fair determination of the case.

4.10.10.6. A statement that failure to appear at a scheduled administrative discharge board hearing, after the respondent has indicated intention to make a personal appearance at such hearing, will result in the case being heard by the administrative discharge board in the absence of the respondent.

4.10.10.7. A statement that if respondent or counsel needs additional time to prepare for or to attend the board hearing, respondent or counsel may submit a written request for delay stating the reasons and how much time they need. The legal advisor for the board hearing approves or disapproves the requests.

### *Section 4C—Rights of Officers in Separation Cases*

**4.11. LON - Probationary Officer.** A probationary officer is a Reserve officer who has completed fewer than 5 years of service as a commissioned officer in any of the armed forces as determined from total Federal commissioned service date (TFCSD). Use this paragraph when the recommended type of discharge is Honorable or General. When recommending an UOTHC characterization of service, or when the basis for discharge is homosexual conduct, use the notification procedures of paragraph 4.12. When the commander or discharge authority determines that grounds exist to warrant initiation of separation or discharge action against a probationary officer not entitled to a board hearing, a LON is sent to the member. The LON includes:

- A statement whether the action could result in separation or discharge and the types of characterization that may be used.
- A description of all the reasons for such action, to include identification of the appropriate paragraphs of this instruction covering each reason. The statement of reasons is not required to have the legal precision of courts-martial specifications, it is sufficient if the reasons are described in such terms that the member is fairly apprised of the factual nature of the reasons.
- The types of separation and characterization that may be issued.
- Whether the commander is recommending separation or discharge and the characterization of service being recommended.

- When there is evidence that the respondents have received advanced educational assistance moneys or special pay or bonuses, a statement notifying the respondents that they may be required to repay the US for these moneys under the authority of Title 10 U.S.C., Section 2005.
- Copies of all supporting documents, see paragraph **1.11.** for restriction on release of certain types of information.

4.11.1. An explanation of the respondent's right to consult with legal counsel who must be a Judge Advocate qualified under Article 27(b)(1) of the UCMJ. Include the name, address, and telephone number of the military counsel in the letter. The respondent may also consult civilian counsel retained at the member's own expense or request military counsel of respondent's choice if such military counsel is serving in an active status in any branch of the armed forces of the US and is reasonably available according to AFI 51-201. Non-lawyer counsel may not represent a respondent before a board unless: the respondent expressly declines appointment of counsel qualified under Article 27(b)(1) of the UCMJ and requests specific non-lawyer counsel; or the discharge authority assigns the non-lawyer counsel as assistant counsel.

4.11.2. A statement of respondent's right, at any time, to submit any statements or documents to be considered in the disposition of the case.

4.11.3. An explanation that respondent may waive the rights set forth in paragraphs 4.11.1 and 4.11.2 after having the opportunity to consult with counsel. Also, include a statement that, within 15 days (30 days if the commander or discharge authority knows the respondent is in civilian confinement) after receipt of the LON, respondent must return an attachment showing a decision on each of the rights set forth in paragraphs 4.11.1 and 4.11.2. The respondent or counsel must sign the attachment.

4.11.4. A statement that the officer will execute and return within 24 hours of receipt an attached acknowledgment of receipt of the LON and attachments.

4.11.5. A statement that the commander or discharge authority will consider an extension of the time to reply if additional time is needed by respondent or counsel. Respondent or counsel must submit a written request for such delay, stating the reasons and how much time is needed. The decision whether to grant the additional time is discretionary with the discharge authority.

4.11.6. A statement that failure to acknowledge receipt or to respond regarding selection of rights within 15 days (30 if the commander or discharge authority knows the respondent is confined by civil authorities) after receipt of the LON constitutes a waiver of all rights and will result in the case being processed based on the information available, and without further notice to the respondent.

**4.12. LON for Officers - Board Eligible.**

4.12.1. The following officers are eligible for an administrative discharge board hearing:

- A Reserve officer who has completed 5 or more years of service as a commissioned officer in any of the armed forces as determined from the TFCSD.
- A probationary officer when the recommended characterization of service contained in the letter of notification is UOTHC, or when the basis for discharge is homosexual conduct, regardless of the recommended characterization.
- All ANG officers regardless of years of service.

4.12.2. All rights listed in this paragraph apply regarding administrative discharge board hearings of cases involving physical disqualification and inability to locate except the right to appear in person, to have counsel appear on respondent's behalf, or to have witnesses appear before the board. When the commander or discharge authority determines that grounds exist to warrant initiation of separation action against a member, the commander or discharge authority or a designated representative prepares a LON to the officer. The LON includes:

4.12.2.1. Notification that the commander or discharge authority is initiating action, with:

- A statement whether the action could result in separation or discharge and the types of characterization that may be used.
- A description of all reasons for such action, to include identification of the appropriate paragraphs of this instruction covering each reason. The statement of reasons is not required to have the legal precision of courts-martial specifications; it is sufficient if the reasons are described in such terms that the member is fairly apprised of the factual nature of the reasons.
- The types of separation and characterization that may be issued.
- Whether the commander or discharge authority is recommending separation or discharge and the characterization of service being recommended.
- When there is evidence that the respondents have received advanced educational assistance moneys or special pay or bonuses, a statement notifying the respondents that they may be required to repay the US for these moneys under the authority of Title 10 U.S.C., Section 2005.
- Copies of all supporting documents. See paragraph 1.11 for restrictions on release of certain types of information.

4.12.2.2. An explanation of the respondent's right to consult with military legal counsel who must be a Judge Advocate qualified under Article 27(b)(1) of the UCMJ. Include the name, address, and telephone number of military legal counsel in the letter. The respondent also may consult civilian counsel, retained at the member's own expense, or request military legal counsel of respondent's choice if such counsel is serving in active status or on active duty in any branch of the armed forces of the US and is reasonably available according to AFI 51-201. Non-lawyer counsel may not represent a respondent before a board unless, the respondent expressly declines appointment of counsel qualified under Article 27(b)(1) of the UCMJ and requests specific non-lawyer counsel, or the discharge authority assigns the non-lawyer counsel as assistant counsel.

4.12.2.3. A statement of the respondent's right, at any time, to submit any statements or documents to be considered in disposition of the case.

4.12.2.4. An explanation that the respondent may waive the rights set forth in paragraphs 4.12.2.2 and 4.12.2.3 as well as the right to an administrative board hearing, after having the opportunity to consult with counsel. Also, include a statement that within 15 days (30 days if the commander or discharge authority knows the respondent is in civilian confinement) after receipt of the LON, respondent must return an attachment showing a decision on each of the rights set forth in paragraphs 4.12.2.2 and 4.12.2.3. If the member is known to be in civilian confinement, indicate that the administrative discharge board will proceed in the member's absence and that the member's legal counsel may present the case on the member's behalf. The respondent or counsel must sign the attachment. To effectively waive their right to a board hearing the respondents must mark on

the attachment in the appropriate location, or execute a separate written statement, that they desire to waive their right to a discharge board. The respondents **must** also sign the attachment or written statement for their board waiver to be effective.

4.12.2.5. A statement that the member will execute and return within 24 hours of receipt an attached acknowledgment of receipt of the LON and attachments.

4.12.2.6. A statement that the commander or discharge authority will consider granting an extension of the time to reply if additional time is needed by respondent or counsel. Respondent or counsel must submit a written request for such delay, stating the reason and how much time is needed. The decision whether to grant the additional time is discretionary with the commander or discharge authority.

4.12.2.7. A statement that failure to acknowledge receipt or to respond regarding selection or rights within 15 days (30 days if the commander or discharge authority knows the respondent is in civilian confinement) after receipt of the LON constitutes a waiver of the respondent's rights to be personally present and to be represented by counsel of the member's choice at an administrative discharge board hearing. As a result, an administrative discharge board will consider the case in the absence of the respondent.

4.12.2.8. A statement that within 15 days (30 days if the commander or discharge authority knows the respondent is in civilian confinement) after receipt of the LON, the respondent must return an attachment electing certain rights. In addition, a member may apply for transfer to the Retired Reserve, in cases in which the member is eligible for such transfer, or submit a TOR.

4.12.2.9. A statement that the member must return an attached form indicating the following:

- Whether the member wants to make a personal appearance before the board.
- Whether the member wants representation by the military legal counsel made available.
- Whether the member wants to be represented by military counsel of the member's choice, in which case, member must identify such counsel by name, grade, organization, and telephone number.
- Whether member will be represented by civilian counsel, in which case, member will identify such counsel by name, address, and telephone number.
- Names, addresses, and telephone numbers, if known, of any witnesses that the member wants to appear before the board, giving a summary of the expected testimony of the witnesses on the issue of separation or characterization, and an explanation why written or recorded testimony of the witnesses could not be presented to the board hearing for a fair determination of the case.
- A statement that failure to appear at a scheduled administrative discharge board hearing, after the member has indicated intention to make a personal appearance at such hearing, will result in the case being heard by the administrative board in the absence of the member.
- A statement that if respondent or counsel needs additional time to prepare for or to attend the board hearing, respondent or counsel may submit a written request for delay stating the reasons and how much time is needed. The legal advisor for the board hearing approves or disapproves the request.

*Section 4D—Administrative Discharge Boards*

**4.13. Special Provisions.**

4.13.1. Discharge authority will not appoint military counsel to officers being processed for separation or discharge because they are in the ISLRS.

4.13.2. Eligible officer respondents may tender a resignation or apply for transfer to the Retired Reserve at any time before the SAF announces the decision in the officer's case. Eligible enlisted respondents may apply for transfer to the Retired Reserve at any time before the discharge authority approves the findings and recommendations of the board. Subject to the respondent's availability and preference, the respondent may appear at the board hearing, with or without counsel, or be represented by counsel in respondent's absence.

4.13.2.1. If respondent makes such a submission prior to the convening of a board, suspend further board action. If the resignation or transfer is approved, terminate the involuntary separation or discharge. If the resignation or transfer is not approved, convene the board.

4.13.2.2. Once convened, the board continues and completes the hearing unless the resignation or transfer is approved before the board hearings finish.

4.13.3. The military service will not reimburse respondent for expenses incident to the appearance or assistance of civilian counsel. The military service will not reimburse respondent for any expenses incident to making a personal appearance, except that, upon respondent's request, the discharge authority will publish and provide the respondent with invitational travel orders with fund citation to enable the respondent to make a personal appearance before the board. Such orders must direct that military air transportation be used if available and must authorize travel by commercial transportation only when military air transportation is not available. Don't authorize any per diem by such orders.

4.13.4. Respondents as well as the recorder, may conduct an inquiry of voting members of the board and may challenge any of them, but only for cause. The challenging party has the burden of establishing that the member is not able to participate in a fair and impartial hearing.

4.13.5. The respondent may arrange for the presence at the board hearing of any witness whose testimony the respondent considers to be pertinent to the case, or may make written request of the recorder to invite any witness to appear, giving a summary of the expected testimony of the witnesses on the issue of separation or characterization, and an explanation why written or recorded testimony of the witnesses could not be presented to the board hearing for a fair determination of the case. The recorder processes requests for witnesses IAW the provisions of paragraph 4.16. No authority authorizes payment of the expenses of any witness who has not been properly invited by the recorder. The respondent's counsel may question any witness who appears at the board hearing.

4.13.6. At the board hearing, the board advises the respondent of his or her rights under Article 31, UCMJ (for ANG, comparable state statute), and that sworn testimony cannot be compelled, but that the giving of sworn testimony constitutes a waiver of such rights and subjects the respondent to questioning by the recorder and board members. The board also advises the respondent that an unsworn statement may be made orally or in writing by the respondent, respondent's counsel, or both. A respondent who makes an unsworn statement is not subject to questioning by the recorder or board members.

4.13.7. At the board hearing the respondent or respondent's counsel may offer any answer, deposition, sworn or unsworn statement, certificate, affidavit, stipulation, or other exhibit for consideration by the board. The board sees only evidence ruled admissible by the legal advisor. Respondent may also submit a written brief concerning any phase of the case and respondent or counsel may present argument before the board closes for deliberation. A respondent entitled to an administrative discharge board hearing has the rights listed in paragraph 4.12, except all members being processed for discharge on the basis of physical disqualification or inability to locate, may not appear in person, have counsel appear on their behalf, or have witnesses appear before the board. Discharge authorities will not appoint military counsel to officers being processed for separation solely because they are in the ISLRS.

**4.14. Administrative Discharge Boards.** The convening authority will appoint boards of officers as required.

4.14.1. The order states that the board is appointed by authority of the SAF.

4.14.2. The recorder is responsible for notifying board members of the time and place of the board hearing.

4.14.3. Convening authorities must ensure that women and minorities have the opportunity to serve on discharge boards. However, appointment or failure to appoint a member of such group to the board does not provide a basis for challenging the proceeding.

4.14.3.1. The voting membership of the board consists of at least three experienced commissioned officers (or noncommissioned officers at the option of the convening authority) in the rank indicated in paragraph 4.14.3.2. All commissioned voting board members must have at least 3 years of commissioned service. All voting members must be present at all open sessions and during closed session deliberations concerning findings and recommendations.

4.14.3.2. If the respondent is an officer, all voting members must be at least Colonel (06) and senior in grade to the respondent, and at least one of the officers must be a member of the Air Reserve Component. If the respondents are an enlisted member and they wish to have NCOs on the board, they must make this request in writing to the convening authority. Enlisted board members must be in the grade of Master Sergeant (E-7) or above, be senior to the respondent, and at least one voting member must be in the grade of Major (04) or higher, and a majority shall be commissioned officers. Nothing in this paragraph should be construed to give an enlisted respondent the right to have enlisted members appointed to their discharge boards. The senior member shall be the president of the board.

4.14.3.3. The legal advisor is detailed to serve without vote. These also apply:

- In officer cases, the legal advisor must be at least a field grade judge advocate. If the respondent is a judge advocate, the legal advisor must be senior in grade to the respondent.
- In enlisted member's cases, the legal advisor must be a judge advocate.

4.14.3.4. The recorder is detailed to serve without vote. These criteria apply:

- In officer cases, the recorder must be at least a field grade officer, preferably a judge advocate, or a judge advocate of any grade.
- In enlisted member's cases, the recorder must be a commissioned officer, preferably a judge advocate.

4.14.3.5. Standing Physical Disqualification Review Boards (PDRBs) (HQ ARPC Only) PDRBs are convened in physical disqualification cases involving non-duty related impairment or condition. They are convened for the purpose of making findings and recommendations to the discharge authority about a reserve members continued fitness for duty after members have received a medical determination that they are physically disqualified for military duty. This requires consideration of the member's ability to perform in their current position or any other possible assignments. Review of personnel, medical records and any other documents relating to the member's capability to perform assigned military duties should be reviewed in making fitness determinations.

4.14.3.5.1. Composition of PDRBs. For non-unit assigned personnel, the board members must include officers from ARPC/SG and ARPC/JA. For unit assigned personnel, the board members must include officers from AFRC/SG and AFRC/JA. If the respondent is an officer, the members of the PDRB must be in the grade of colonel or above. All PDRB members should be senior to the respondent. Nothing in this paragraph should be read as precluding the convening authority from appointing additional military members to serve as PDRB members, as appropriate.

4.14.3.5.2. Expert Assistance. PDRBs are authorized to independently request technical assistance and advice from personnel or medical experts in making their findings and recommendations; however, any opinions the PDRB considers in making its decision must be documented in writing, and a copy provided to the respondent. The respondent must be given the opportunity to provide a written reply to such opinions to the discharge authority. The discharge authority is authorized to, based upon those replies, approve the findings and recommendations of the PDRB, approve action more favorable to the respondent, or return the case to the PDRB for further consideration of their findings and recommendations in light of the replies.

4.14.3.5.3. Findings and Recommendations. The PDRB will make findings and recommendations concerning the following:

- Whether the appropriate surgeon has made a medical determination of disqualification;
- Whether the reason for disqualification is authorized by AFI 48-123;
- Whether the respondent is fit for duty;
- If the respondent is found not fit for duty, determine if the respondent, because of skills or experience, should receive an assignment limitation code to be allowed to continue to participate;
- Determine if the respondent is eligible for transfer to an AFSC or duty position in which the respondent would be fit for duty;
- If eligible, whether transfer of respondent to another AFSC or duty position is appropriate;
- Whether the disqualifying condition, illness, or injury occurred incident to service;
- Whether, based upon their other findings and recommendations, the respondent should be discharged; and

- If the evidence is provided that the respondent received advanced educational assistance moneys or special pay or bonuses from the Air Force, whether recoupment is authorized under Title 10 U.S.C., Section 2005 and whether the respondent should be required to repay the US all or any of the authorized recoupment amount if the respondent is discharged.

4.14.4. The policy for retention criteria and consideration for drug abuse cases:

4.14.4.1. A member found to have abused drugs will be discharged unless the member meets all seven of the following criteria:

- Drug abuse is a departure from the member's usual and customary behavior, and
- Drug abuse occurred as a result of drug experimentation (a drug experimenter is defined as one who has illegally or improperly used a drug for reasons of curiosity, peer pressure, or other similar reasons), and
- Drug abuse does not involve recurring incidents, other than drug experimentation as defined above, and
- The member does not desire to engage in or intend to engage in drug abuse in the future, and
- Drug abuse under all circumstances is not likely to recur, and
- Under the particular circumstances of the case, the member's continued presence in the Air Force Reserve or ANG is consistent with the interest of the Air Force or ANG in maintaining proper discipline, good order, leadership, and morale (officers and noncommissioned officers have special responsibilities by virtue of their status; fulfill an integral role in maintaining discipline; and therefore, must exhibit high standards of personal integrity, loyalty, dedication, devotion to duty and leadership), and
- Drug abuse did not involve drug distribution. For the purpose of this paragraph, drug distribution means the delivery to the possession of another. Distribution does not occur with the transfer of one or more drugs from one person to another while such persons are engaged in the mutual use of drugs, except that individuals who obtain or arrange for obtaining one or more drugs used by others are involved in distribution. "Delivery" means the actual, constructive, or attempted transfer of one or more drugs, whether or not there exists an agency relationship.

4.14.4.2. The burden of proving that retention is warranted under these limited circumstances rests with the member. Findings based on a preponderance of evidence, regarding the existence of each of the limited circumstances warranting a member's retention are required of the board or the separation authority only if:

- The member clearly and specifically raises such limited circumstances, or
- The board, or in the absence of a board, the separation authority relies upon such circumstances to justify the member's retention.

**4.15. Functions and Duties.**

4.15.1. The functions and duties of an administrative discharge board are purely administrative. The board determines its findings and recommendations in closed session with only voting members present. Voting members must make clear, logical findings of fact, based on the evidence admitted at

the board hearing, and then make recommendations that are appropriate and consistent with such findings and the provisions of this instruction.

4.15.1.1. The board must consider each allegation in the LON, but it is not limited in its findings to the statement of reasons presented. A new allegation should be added to the notification at any time during the board proceedings that it becomes evident that such an addition is appropriate. The recorder, as the government's representative, may make the request and present the proposed format for the additional allegation or the board, on its own motion, may initiate the action and request the recorder to prepare a draft allegation. The respondent is entitled to a reasonable delay to prepare a defense to the new allegation.

4.15.1.2. Ordinarily, the board should make its findings and recommendations on the basis of the matters presented at the board hearing. If the board determines that additional information is essential for proper evaluation of the cases, it directs the recorder to obtain such additional information, unless the legal advisor determines that additional information would not be admissible or appropriate.

4.15.2. The president presides during deliberations on findings and recommendations and announces such findings and recommendations.

4.15.3. The legal advisor ensures the board conducts an orderly, fair, and impartial hearing.

4.15.3.1. The legal advisor:

- Rules on all matters of evidence procedure and challenges, except challenges to the legal advisor.
- Has no authority to dismiss any allegation against a respondent or to terminate the proceedings.
- At the outset of the proceedings and prior to the board's closing to make its findings and recommendations, briefs the voting members, in open session, on their duties and responsibilities.
- Guides the board any time they ask for guidance or it appears appropriate.

4.15.3.2. The legal advisor may convene a session at any time without the voting members present to assist in clarifying issues or to hear argument on challenges to the voting members' objections, motions, or requested instructions that might prejudice an orderly, fair, and impartial hearing or result in undue delay, if conducted in open session.

4.15.3.3. The legal advisor is not a prosecutor and should not behave like one. This rule does not preclude the legal advisor from questioning any witness, including the respondent if the respondent elects to testify.

4.15.3.4. In making rulings, the legal advisor is not bound by the strict rules of evidence. The legal advisor should maintain reasonable bounds of relevancy, materiality, and competency.

4.15.4. The recorder: Prior to the board hearing, the recorder takes the following action:

- Reviews the case file to ensure that the respondent was properly notified, and the statement of reasons was accurate, and all necessary documentation was included.

- Arranges for the attendance at the board hearing of all necessary witnesses IAW procedures specified in this instruction and ensures that the respondent or respondent's counsel knows about all witnesses scheduled or invited to appear at the board hearing.
- Ensures that respondent or respondent's counsel and all board members know about the time and place of the board hearing, including any changes in the schedule.
- A reasonable time in advance of the hearing, gives the respondent or respondent's counsel a copy of any records or other documentary material, not previously furnished that the recorder proposes to offer in evidence at the board hearing. To expedite the board proceedings, the recorder requests of the respondent or respondent's counsel permission to review any documents or exhibits to be introduced on behalf of the respondent.
- Calls to the attention of the legal advisor any matters that might warrant a prehearing conference and attends, along with respondent or respondent's counsel, any such prehearing conference.
- Attempts to bring to the attention of the board and make a matter of record all pertinent information favorable as well as unfavorable to the respondent.
- Makes other necessary preparations for an orderly and proper board hearing.

4.15.4.1. The recorder is not a prosecutor and should not act like one. This rule does not preclude the recorder from ensuring an adequate presentation of the government's case during the board hearing. To this end, the recorder may examine any witnesses called by the respondent, including the respondent, if the respondent chooses to testify, may present rebuttal witnesses or evidence, and may make a final argument on the basis of all evidence submitted at the board hearing.

4.15.4.2. The recorder ensures that a proper record of the proceedings is made.

4.15.5. Challenges. The respondent and the recorder may challenge a voting member or the legal advisor for cause only. The legal advisor shall rule on all challenges except challenges to the legal advisor. The board shall hear evidence on the challenge to the legal advisor and then, in closed session, the president shall announce his or her ruling on the challenge. The president shall then poll the other voting members to see if they object to the president's ruling, and unless a majority of the voting members object, the president's ruling shall be final. The president shall announce the ruling on the challenge to the legal advisor in open session.

**4.16. Attendance of Witnesses.**

4.16.1. Criteria. If the respondent submits a timely request for witnesses to be present at the board hearing, or if the recorder or board wants to hear certain witnesses, the recorder, with the concurrence of the convening authority, invites such witnesses to appear. These criteria apply:

4.16.1.1. The legal advisor, on behalf of the convening authority, may approve production of the witness, if the legal advisor finds that:

- The testimony of a witness is not cumulative.
- The personal appearance of the witness is essential to a fair determination on the issues of separation or characterization.
- Written or recorded testimony will not adequately accomplish the same objective.

- The need for live testimony is substantial, material, and necessary for a proper disposition of the case.
- The significance of the witness' personal appearance, when balanced against the practical difficulties in producing the witness, favors production of the witness. Factors to be considered in this balancing test include, but are not limited to:
- The cost of producing the witness.
- The timeliness of the request for the witness.
- The potential delay in the proceeding that absence of the witness may cause.
- The likelihood of significant interference with military operational deployment, mission accomplishment, or essential training.

4.16.1.2. To enable the legal advisor to make these determinations, the party requesting a particular witness must submit in writing the name, address, and telephone number, if known, of the expected witness, a summary of the expected testimony of the witnesses on the issue of separation or characterization, and an explanation why written or recorded testimony of the witnesses could not be presented to the board hearing for a fair determination of the case.

4.16.1.3. The recorder determines that the witness is reasonably available under guidelines in paragraph 4.16.2.

4.16.2. Availability. Use the procedures and policies in paragraph 115a of the *Manual for Courts-Martial* as a general guide in determining which witnesses to invite to appear. Use Article 49(d), of the UCMJ as a general guide in determining the availability of witnesses. The Government authorizes and encourages the use of depositions or affidavits to obtain testimony of witnesses who are not reasonably available, and the use of stipulations when appropriate.

4.16.3. Civilians and Members of the Armed Forces Not Serving in the Active Military Service. When the appearance of a witness at a board hearing has been approved IAW paragraphs 4.16.1 and 4.16.2, the recorder sends invitational travel orders and a letter to prospective witnesses per Joint Travel Regulation (JTR), paragraph C6000.

4.16.4. Members of the Armed Forces in Active Military Service and Civilian Employees of Federal Agencies. When the appearance of a witness at a board hearing has been approved IAW paragraphs 4.16.1 and 4.16.2, the recorder, on behalf of the board, requests the witness' commander or supervisor to make such person available as a witness. Use military transportation when practical or commercial means if not. AFI 65-601, Volume 1, or the JTR govern travel funding.

4.16.5. Delays in Proceedings Concerning Witnesses. If the legal advisor determines that the board requires a witness' personal testimony, the board may postpone the hearing if necessary to permit the witness to attend. Likewise, the board may postpone the hearing if necessary, to provide the respondent a reasonable opportunity to obtain a written statement from an unavailable witness requested by the respondent, when:

- The legal advisor has determined that the board need not hear personal testimony of the requested witness; or
- The commander of a military witness has determined that military necessity precludes the witness' attendance at the hearing; or

- A civilian witness has declined to attend the hearing. (A Federal employee may not decline to appear as a witness, if directed to do so IAW applicable procedures of the employing agency.)

**4.17. Findings and Recommendations.** The board determines its findings and recommendations in closed session with only voting members present. The board acts on the following matters:

4.17.1. The board determines whether a preponderance of evidence supports each allegation set forth in the notice of proposed separation.

4.17.2. The board then determines whether the findings warrant separation or discharge with respect to the basis for separation or discharge contained in the notice to respondent. If the notice contained more than one reason, the board makes a separate determination for each reason. The board may consult the respondent's entire military record in determining whether retention or discharge is appropriate. In all, but particularly misconduct or homosexual cases where the respondent has received advanced education assistance from the Air Force, the board will make a recommendation to the discharge authority as to whether the moneys expended on behalf of the respondent should be recouped. (HQ ARPC only.)

4.17.3. If separation is recommended, the board will recommend a characterization of service or type of separation defined in attachment 2, IAW guidance in that attachment in the chapter applicable to the case and in this chapter. In enlisted cases, the board can consider the member's military record during the current term of enlistment to determine the appropriate characterization of service.

4.17.4. When an enlisted member is being discharged, the board will also make a recommendation to the discharge authority as to whether an offer of P&R is appropriate in that enlisted member's case, when the enlisted member is eligible for P&R consideration under paragraph 3.25 of this instruction. However, if the board makes a recommendation that the enlisted member should be discharged for any combination of reasons that includes a reason that makes the member ineligible for P&R, the board should make no recommendation about P&R. Officers are not eligible for P&R.

4.17.4.1. Suspension is appropriate only if the circumstances of the case indicate that there is a reasonable likelihood that the member is capable of being rehabilitated. During the period of suspension (also called the "probationary" period), the member has the opportunity to meet appropriate standards of conduct and duty performance.

4.17.4.2. During the period of suspension, if the member engages in any misconduct the commander may vacate the suspended discharge or separation. If the member fails to meet any of the conditions placed on his or her probation, then the discharge authority may also vacate the suspension. Vacation of a suspended discharge or separation does not affect a commander's authority to deal with misconduct in other ways.

4.17.4.2.1. The discharge authority initiates the vacation process by written notification to the member in which the member is:

- Told what information has been received that indicates that vacation of the suspension may be appropriate;
- Given a minimum of 30-calendar days to reply in writing to the discharge authority regarding the matter; and
- Afforded the opportunity to consult military legal counsel, who must be a Judge Advocate, to assist in preparation of a reply.

4.17.4.2.2. After receiving the member's reply, the discharge authority obtains a written legal review and vacates the suspension and orders the discharge or separation executed, or continues the member on probation.

4.17.4.3. Unless the suspension is vacated at an earlier time, it is automatically remitted at the end of the probationary period, and may be remitted at an earlier time if the discharge authority determines that the goal of rehabilitating the member has been achieved.

4.17.5. Special instructions in homosexual conduct cases:

4.17.5.1. In cases involving homosexual conduct, if the board finds that one or more of the circumstances warranting separation per paragraphs 2.30 or 3.20 is supported by the evidence, they recommend separation unless they find retention is warranted under the limited circumstances described in those paragraphs. The burden of proving that those limited circumstances justify retention rests with the member, except in cases where the member's conduct was solely the result of a desire to avoid or terminate military service. Findings regarding the existence of those limited circumstances warranting retention are required only if the member clearly and specifically raises such limited circumstances and if the board or the separation authority relies on such circumstances to justify the member's retention.

4.17.5.2. In cases involving homosexual conduct, if the board finds the evidence does not support, by a preponderance of the evidence, any of the circumstances warranting separation under paragraph 2.31 or 3.20, it recommends retention (unless the case involves another basis for separation of which the member has been duly notified).

4.17.5.3. Nothing in the procedure on homosexual conduct cases:

- Limits the authority of the Air Force Personnel Council to take appropriate action in a case to ensure compliance with the provisions of this instruction.
- Precludes retention of a member for a limited period of time in the interests of national security IAW AFI 31-501 or other pertinent instructions.
- Authorizes a member to seek Air Force Personnel Council review, unless otherwise authorized by instruction.
- Precludes separation for another reason in appropriate circumstances set forth in this instruction.
- Precludes trial by court-martial in appropriate cases.

4.17.5.4. Additional special guidance on homosexual conduct cases is provided in paragraphs 2.31 and 3.20.

**4.18. Reporting of Administrative Discharge Board Proceedings.**

4.18.1. Type of Report:

4.18.1.1. The recorder prepares a verbatim report of the proceedings in any of these instances:

- If the board recommends a discharge UOTHC.
- In enlisted member cases, if the board recommends retention but the convening or discharge authority contemplates further action under paragraph 3.23.

4.18.1.2. In cases where the board recommends an Honorable or General discharge, or recommends retention, the recorder prepares a summarized or verbatim report of the board proceedings, as required by the convening authority.

4.18.1.3. All reports include all supporting exhibits, documents, and other writing admitted or offered into evidence at the board hearing, and a verbatim statement of the board's findings and recommendations. ***EXCEPTION:*** Personnel records, when admitted into evidence, are ordinarily not copied and appended to the record, as they are available to all levels of command for review. In addition, summarized reports contain exhibits e.g., the recommendation for discharge, the notification letter, the convening and amending orders, a summary of testimony, and the discharge authority's action, etc.

4.18.2. Retaining Notes. The reporter or recorder retains all notes and recordings of the hearing until the discharge authority takes final action or longer if a need exists.

4.18.3. Addressing the Report. In cases involving officers processed under Chapter 2, cases involving members with lengthy service as defined in Chapter 3, and as required in tables 2.1 and 3.1, the report will be addressed through command channels to SAF. In all other cases, address the report to the discharge authority.

4.18.4. Authentication:

4.18.4.1. The legal advisor authenticates the report by certifying its accuracy and the fact that a majority of voting members concurred in the findings and recommendations.

4.18.4.2. If the legal advisor is not reasonably available to authenticate the report, the board president and the recorder authenticate the report and state in writing the reason for the substitution.

4.18.4.3. If the board president is not reasonably available to authenticate the report, a voting member authenticates in the president's absence, stating in writing, the reason for the substitution.

4.18.5. Number of Copies. Prepare the report in an original and three copies for officer cases, and an original and two copies for enlisted members cases. Mark one of the copies "For Respondent" and be sure it contains no records withheld IAW security or medical directives.

***NOTE:***
Paragraph 4.18 does not apply to physical disqualification cases processed under paragraph 4.14.3.5.

**4.19. Legal Review.** After the report of board proceeding has been prepared and authenticated, the servicing staff judge advocate will review it for legal sufficiency. Append the formal written legal review to the original copy of the report of board proceedings, then forward the report to the discharge authority for review and further action.

**4.20. Directing a New Administrative Discharge Board.**

4.20.1. The discharge authority may set aside the findings and recommendations of a board and direct that a new board be appointed to consider a case only if the discharge authority makes either of these determinations:

- Finds legal prejudice to a substantial right of the respondent.
- Determines that the board arrived at its findings by fraud or collusion.

4.20.2. No member of the new board may have served on a prior board that considered the case.

4.20.3. The successor board may read the record of the proceedings of the earlier board, minus the findings, recommendations, and matters prejudicial to the respondent's rights.

4.20.4. The discharge authority may not approve findings and recommendations less favorable to the respondent than those of the previous board unless the discharge authority also finds fraud or collusion in the previous board proceedings attributable to the respondent or an individual acting on the respondent's behalf.

**4.21. Commander's Actions.** In reviewing cases, directing final action, and recommending action to higher authority, including the SAF, commanders must act IAW the guidelines and requirements of attachment 2, this chapter, and the chapter applying to the case. Record the actions of the commander and include a copy of such records in the case file.

**4.22. Disposition of Chapter 2 Cases.**

4.22.1. When the Board Recommends Retention. The discharge authority advises the respondent in writing when the administrative discharge board's recommendation for retention terminates the action initiated against the member under Chapter 2.

4.22.2. When the Board Recommends Separation. The discharge authority reviews the case and takes one of these actions:

4.22.2.1. Approves and directs execution of the board's recommendations.

4.22.2.2. Forwards the case through command channels to SAF with a recommendation to disapprove the board's recommendations and retain the respondent.

4.22.3. When the Discharge Authority is Not the Final Authority. The discharge authority reviews the case and recommends either of the actions in 4.22.2.1 or 4.22.2.2 to the Air Force Personnel Council or recommends that the Air Force Personnel Council change the characterization of service to a more favorable characterization.

4.22.4. Forwarding Recommendations to the Air Force Personnel Council. Forward the original copy of the board proceedings to HQ USAF/JAG, 1420 Air Force, Pentagon Washington DC 20330-5120 when the situation warrants Air Force Personnel Council action. ANG Board proceedings are sent to ANG/MP, 3500 Fetchet Avenue, Andrews AFB MD 20762-5157 and AFRC board proceedings are sent to HQ USAF/RE prior to their submission to HQ USAF/JAG.

4.22.5. Respondent's Copy of the Board Report. The discharge authority ensures that this copy of the board report is properly prepared and that it contains copies of all documentation not previously furnished the respondent, except those records withheld IAW security or medical directives. The discharge authority sends the copy to the respondent when he or she takes action on the board's recommendation.

- If the board report is not CLASSIFIED, forward the copy to the respondent by certified or registered (or equivalent) mail, return receipt requested.
- If the board report is CLASSIFIED, advise the respondent that access is denied, IAW DoD 5200.1-R and AFI 31-401.

- If the board recommends discharge under Chapter 2, advise the respondent that within 15 days (30 days if member is in civilian confinement) after receipt of the board report the respondent or counsel may submit to HQ USAF/JAG, 1420 Air Force, Pentagon Washington DC 20330-5120, any evidence, brief, or argument not previously furnished that respondent wants the final authority to consider in the final evaluation of the case.
- ANG respondents should send the information to ANG/MP, 3500 Fetchet Avenue, Andrews AFB, MD 20762-5157, for forwarding with the discharge package.

**4.23. Disposition of Chapter 3 Cases.**

4.23.1. When the Board Recommends Retention. The discharge authority reviews the case and approves the board's recommendation for retention. The discharge authority may not direct separation. (***EXCEPTION:*** The discharge authority may initiate action under paragraph 3.23, Secretarial Plenary Authority, if the circumstances of the case warrant such action in the discharge authority's judgment and following the procedures required by that paragraph.)

4.23.2. When Board Recommends Separation. The discharge authority reviews the case and takes one of these actions:

4.23.2.1. Approves the board's recommendations and directs its execution.

4.23.2.2. Approves the board's recommendations for separation but approves a better type of separation or characterization than that recommended by the board, and directs its execution. The discharge authority may not direct a less favorable type of separation or characterization than the type the board recommends.

4.23.2.3. Approves the board's recommendations for separation, with or without approving a better type of separation or characterization than that recommended by the board, but directs the discharge or separation be suspended to afford the member P&R. The boards recommendation for suspension is not binding on the discharge authority.

4.23.2.4. Disapproves the board's recommendations and retains the respondent.

4.23.3. When the Discharge Authority is Not the Final Authority. If the discharge authority is not the final discharge approval or review authority as outlined in tables 2.1 and 3.1, the case with any recommendations are forwarded to the SAF. Cases involving conscientious objectors are sent to AFPC. ANG cases are forward to NGB/DPP.

4.23.4. Forwarding Cases to the SAF. When the circumstances require SAF action, forward the original copy of the board proceedings including any corrections to the Statement of Reasons, through command channels to SAF with a letter of transmittal. The letter must contain the discharge authority's recommendations and the reasons for them.

4.23.5. Respondent Copy of the Board Report. The discharge authority ensures that this copy of the board report is properly prepared and contains copies of all documentation not previously furnished the respondent except those records withheld IAW security or medical directives. Send the copy to the respondent when the discharge authority takes action on the board's recommendations or sends the case to SAF.

**4.24. Reporting Separation for More Than One Reason.** The discharge authority must consider all reasons for discharge, citing in the discharge instrument the most appropriate basis as the primary reason for discharge. The primary reason will be reported in PDS.

**4.25. Dual Processing** . SAF approval is required when a member is subject to involuntary discharge under this AFI and is eligible for disability separation or disability retirement IAW AFI 36-3212. These cases should be closely monitored to ensure a discharge under this AFI is not executed before the AFI 36-3212 case has been completed

## Attachment 1

## GLOSSARY OF REFERENCES, ABBREVIATIONS, ACRONYMS, AND TERMS

*References*

DoD Directive 1332.14, *Enlisted Administrative Separations*, December 21, 1993

DoD Directive 1332.18, *Separation or Retirement for Physical Disability, November 4, 1996*

DoD Regulation 5200.1, *Information Security Program*, June 7, 1982

AFI 10-402, *Mobilization Planning*(formerly AFR 28-5)

AFM 11-1, *Air Force Glossary of Standardized Terms*

AFI 11-402, *Aviation and Parachutist Service, Aeronautical Ratings and Badges* (formerly AFR 60-13)

AFI 31-401, *Managing the Information Security Program* (formerly AFR 205-1)

AFI 31-501, *Personnel Security Program Management* (formerly AFR 205-32)

AFI 34-115, *Air Force Club Program* (formerly AFR 215-11)

AFI 36-2004, *Interservice Transfer of Officers on the Active Duty List to the United States Air Force (USAF)* (formerly AFR 23-11)

AFI 36-2008, *Voluntary Extended Active Duty (EAD) for Air Reserve Commissioned Officers* (formerly AFR 45-26)

AFI 36-2011, *Air Force Reserve Officer Training Corps* (formerly AFR 45-48)

AFI 36-2115, *Assignments within the Reserve Components* (formerly AFR 45-4, AFR 35-41V1)

AFI 36-2608, *Military Personnel Records Systems* (formerly AFR 35-44)

AFI 36-2612, *United States Air Force Reserve (USAFR) Reenlistment and Retention Program* (formerly AFR 35-41, Vol 5)

AFMAN 36-2622, volume 1, *Personnel Data Systems End User's Manual*

AFI 36-2701, *Social Actions Program* (formerly AFP 30-13)

AFI 36-2903, *Dress and Personal Appearance of Air Force Personnel* (formerly AFR 35-10)

AFI 36-2908, *Family Care Plan*(formerly AFR 35-59)

AFI 36-2910, *Line of Duty (Misconduct) Determination* (formerly AFR 35-67)

AFI 36-2913, *Request for Approval of Foreign Government Employment of Air Force Members*

AFI 36-3001, *Issuing and Controlling Identification Cards* (formerly AFR 30-20)

AFI 36-3002, *Casualty Services*

AFPD 36-32, *Military Retirements and Separations*

AFI 36-3202, *Separation Document* (formerly AFR 35-6)

AFI 36-3203, *Service Retirements*(formerly AFR 35-7)

AFI 36-3204, *Procedures of Applying as a Conscientious Objector* (formerly AFR 35-24)

AFI 36-3205, *Applying for the Palace Chase and Palace Front Programs*

AFI 36-3207, *Separating Commissioned Officers* (formerly AFR 36-12)

AFI 36-3208, Administrative *Separation of Airmen* (formerly AFR 39-10)

AFI 36-3209, *Separation Procedures for Air National Guard and Air Force Reserve Members* (formerly AFR 35-41V3)

AFI 36-3212, *Physical Evaluation for Retention, Retirement, and Separations* (formerly AFR 35-4)

AFM 36-8001, *Reserve Personnel Participation and Training Procedures*

AFI 37-128, *Administrative Orders (PA)* (formerly AFR 10-7)

AFI 40-501, *The Air Force Fitness Program* (formerly AFR 35-13)

AFI 40-502, *The Weight Management Program* (formerly AFR 35-11)

AFI 41-115, *Authorized Health Care and Health Care Benefits in the Military Health Services Systems (MHSS)* (formerly AFR 168-2 & AFR 168-2)

AFI 48-123, *Medical Examination and Medical Standards* (formerly AFR 160-43)

AFI 51-201, *Military Justice Guide*

AFI 51-602, *Boards of Officers*(formerly AFR 11-31)

AFI 51-903, *Dissident and Protest Activities* (formerly AFR 11-31)

AFI 71-101, *Criminal Investigations, Counterintelligence, and Protective Service Matters*

AFI 90-301, *Inspector General Complaints* (formerly AFR 20-68, AFR 120-3, AFR 120-4, AFR 123-2, AFR 123-11)

AFP 211-28, *Naturalization and Citizenship*

ANGI 36-2002, *Enlistment and Reenlistment in the Air National Guard and as a Reserve of the Air Force*

ANGI 36-2101, *Assignments within the Air National Guard*

ANGI 36-2606, *Selective Retention of Air National Guard Officers and Enlisted Personnel*

ANGI 36-2910, *Line of Duty and Misconduct Determination*

ANGI 36-3201, *Separations Documents*

ANGR 30-2, *Social Actions NGB Program*

NGR (AF) 35-6, *Selective Retention of Air National Guard Officers and Enlistment Personnel*

***Abbreviations and Acronym***

**ADT**—Active Duty for Training

**AFBCMR**—Air Force Board for Correction of Military Records

**AFPC/DPMARSI**—Air Force Personnel Center, Separation Branch

**AFPC/DPMMUE**—Air Force Personnel Center, Physician Educational Branch

**AFOSI**—Air Force Office of Special Investigation

**AFPC**—Air Force Personnel Center

**AFRC/DPM**—Military Personnel Division

**AFRC/DPML**—Personnel Relocation Branch

**AFSC**—Air Force Specialty Code

**AGR**—Active Guard/Reserve

**ANG**—Air National Guard

**ANGRC/MP**—Manpower, Personnel, and Training

**ANGRC/SG**—Director of Medical Services

**ANGUS**—Air National Guard of the United States

**ARPC/DP**—Air Reserve Personnel Center, Directorate of Personnel

**ARPC/DPAD**—Air Reserve Personnel Center, Discharge Branch

**ARPC/DPAR**—Air Reserve Personnel Center, Retirement Branch

**ART**—Air Reserve Technician

**BMT**—Basic Military Training

**CHAMPUS**—Civilian Health and Medical Program of the Uniformed Services

**CSAF**—Chief of Staff Air Force

**CNGB**—Chief, National Guard Bureau

**CONUS**—Continental United States

**DCIO**—Defense Criminal Investigation Organization

**DEP**—Delayed Enlistment Program

**DES**—Disability Evaluation System

**DoD**—Department of Defense

**DSM**—Diagnostic Statistical Manual of Mental Disorders

**EAD**—Extended Active Duty

**ETO**—Expiration Term Obligation

**ETS**—Expiration Term of Service

**FPRGp**—Field Record Group

**GCM**—General Court Martial Authority

**GCMCA**—General Court Martial Convening Authority

**GSU**—Geographically Separated Units

**HGH**—Highest Grade Held

**HHG**—Household Goods

**HOS**—Home of Selection

**HPSP**—Health Professions Scholarship Program

**HYT**—High Year Tenure

**IADT**—Initial Active Duty Training

**IG**—Inspector General

**IMA**—Individual Mobilization Augmentee

**INS**—Immigration and Naturalization Service

**ISLRS**—Inactive Status List Reserve Section

**JTR**—Joint Travel Regulation

**LON**—Letter of Notification

**MAJCOM**—Major Command

**MEPS**—Military Entrance Processing Station

**MHSS**—Military Health Services Systems

**MPerR**—Master Personnel Record

**MPF**—Military Personnel Flight

**MSD**—Mandatory Separation Date

**MSO**—Military Service Obligation

**MT**—Military Technician

**NAC**—National Agency Check

**NON-EAD**—Non-Extended Active Duty

**NTS**—Nontemporary Storage

**NQP**—Not Qualified for Promotion

**OGD**—Officer Grade Determination

**OJT**—On-the-Job Training

**OPR**—Office of Primary Responsibility

**PDO**—Publication Distribution Office

**PDRB**—Physical Disqualification Review Boards

**PDS**—Personnel Data System

**PHS**—Public Health Service

**RASL**—Reserve Active Status List

**RCSBP**—Reserve Component Survivor Benefit Plan

**RISP**—Reserve Involuntary Separation Pay

**ROPMA**—Reserve Officer Personnel Management Act

**ROTC**—Reserve Officer Training Core

**SAF**—Secretary of the Air Force

**SAF/MC**—Secretary of the Air Force, Mobility Center

**SBP**—Survivors Benefit Plan

**SCI**—Sensitive Compartmented Information

**SPCM**—Special Court Martial Authority

**TAG**—The Adjutant General

**TAG/JA**—Air National Guard, Judge Advocate

**TERA**—Temporary Early Retirement Authority

**TDY**—Temporary Duty

**TFCSD**—Total Federal Commission Service Date

**TMO**—Transportation Management Officer

**TOR**—Tender of Resignation

**UCMJ**—Uniform Code of Military Justice

**UMD**—Unit Manpower Document

**UOTHC**—Under Other Than Honorable Conditions

**USAF/HC**—United States Air Force Command Chaplain

**USAFR**—United States Air Force Reserve

**UTA**—Unit Training Assembly

**VGLI**—Veteran's Group Life Insurance

***Terms***

**Active Status**—Status of all Reserve except those on an inactive status list or in the Retired Reserve. Reservists in an active status may train for points or pay and may be considered for promotion.

**The Adjutant General (TAG)**—The senior military officer of the national guard of a state. TAG is responsible for performing the duties prescribed by the laws of that state and the day-to-day peacetime management and training of the state National Guard (Army and Air).

**Bisexual**—A person who engages in, attempts to engage in, has a propensity to engage in, or intends to engage in homosexual and heterosexual acts.

**Constructive Enlistment**—An enlistment that was void but has been validated when the person:

- Submitted voluntarily to military authority.
- Met the mental competency and minimum age qualifications for enlistment at the time of voluntary submission to military authority.

- Received military pay or allowances.
- Performed military duties.

NOTE: A person who is a deserter from another service must be released from the custody and control of the Air Force without regard to a subsequent constructive enlistment.

**Convening Authority**—For actions involving HQ/AFRC reservists, the Commander is the convening authority. For actions involving HQ/ARPC reservists, the Commander is the convening authority. For actions involving enlisted members of the ANG, this is the Adjutant General, for actions involving ANG officers (colonel and below), this is the Commander, ANGRC.

**Delayed Enlistment Program (DEP)**—A program in which an individual enlists in the USAFR and volunteers to enlist later in the Regular Air Force or enter on EAD for a period of 4 or 6 years. The enlistee is assigned to the ARPC until enlistment in the Regular Air Force or separation.

**Discharge**—The complete termination of any or all enlistments or appointments and any or all other military status resulting in complete severance from all military status.

**Discharge Authority**—An official authorized to take final action with respect to specified types of discharges and entry level separations (tables 2.1 and 3.1 show who is authorized to approve or disapprove the discharge.). This is the Commander Air Force Reserve (AFRC) or limited authority for Vice Commander (AFRC) effecting officer for paragraphs 2.46.1.1, 2.46.1.2, 2.46.1.3, 2.46.1.5, 2.46.1.6, 2.46.1.7, and 2.46.1.8, and all enlisted involuntary administrative discharge action for AFRC unit assigned reservists, Commander, ARPC for all actions involving other reservists, the Adjutant General for separation actions involving ANG enlisted personnel CNGB for involuntary discharge actions involving ANG officer personnel. For separations from ANG only under paragraphs 2.26, 3.13.8, 3.13.9, and 3.13.10 discharge authority is the TAG. The commander who has possession of the field record group may approve all conditional releases.

**Dual Status**—A USAF Reserve commissioned officer serving on active duty as an airman.

**Entry Level Separation**—Discharge from entry level status without service characterization. This is complete severance from all military status gained by the enlistment or induction concerned.

**Entry-Level Status**—The first 180 days of continuous active military service. For members of a Reserve component who have not completed 180 days of continuous active military service and who are not on active duty, entry-level status begins upon enlistment in a Reserve component (including a period of assignment to a delayed entry program). Entry-level status ends 180 days after beginning an initial period of entry-level active duty training. Thus a member may be in entry-level status for more than 180 days after enlistment. For purposes of characterization of service or description of separation, the member's status is determined by the date of notification as to the initiation of separation proceedings.

**Extended Active Duty (EAD)**—A tour of active duty (normally for more than 90 days) performed by a member of the Air Reserve Components. Strength accountability for members on EAD changes from the Air Reserve Components to the active force. ADT and active duty in a service academy or armed forces preparatory school are not creditable as EAD.

**Former Members**—Individuals who completed at least 20 years of creditable service for Reserve retired pay at age 60, but are discharged rather than transferred to the Retired Reserve. They have no military status. These former members are not allowed to reaffiliate and are only entitled to retired pay and medical care at age 60. Former members and their eligible dependents are issued DD Form 1173, on the

former member's 60th birthday. They are not entitled to commissary, exchange, or morale, welfare and recreation (MWR) privileges.

**Health Professions Scholarship Program (AFHPSP)**—Program comprised of personnel appointed as commissioned officers in the Air Force Reserve who are enrolled in AFHPSP while medical school students. It is designed to obtain adequate numbers of commissioned officers on active duty who are qualified in designated health professions. The AFHPSP students are assigned to the 9016th Air Reserve Squadron.

**Homosexual**—A person, regardless of sex, who engages in, desires to engage in, has a propensity to engage in, or intends to engage in homosexual acts.

**Homosexual Act**—(1) Bodily contact, actively undertaken or passively permitted, between members of the same sex for the purpose of satisfying sexual desires; and (2) Any bodily contact that a reasonable person would understand to demonstrate a propensity or intent to engage in an act described in (1) above.

**Homosexual Conduct**—Homosexual act, a statement by the member that demonstrates a propensity or intent to engage in homosexual acts, or a homosexual marriage or attempted marriage.

**Homosexual Marriage**—Homosexual marriage or attempted marriage is when a member has married or attempted to marry a person known to be of the same biological sex.

**Immediate Family Member**—Includes husband, wife, father, mother, son, daughter, and all sisters and brothers.

**Individual Mobilization Augmentee (IMA)**—An individual reservist attending drills who receives training and is preassigned to an active component organization, a Selective Service System, or a Federal Emergency Management Agency billet that must be filled on, or shortly after, mobilization. IMAs train on a part-time basis with these organizations to prepare for mobilization. Inactive duty training for IMAs is decided by component policy and can vary from 0 to 48 drills a year. IMA authorizations are based primarily on the wartime requirement of the Air Force and other DoD agencies.

**Judge Advocate**—An officer of the Judge Advocate General's Corps of the Army or the Navy; an officer of the Air Force or the Marine Corps who is designated as a judge advocate; or an officer of the Coast Guard who is designated as a law specialist.

**Medical Officer**—An officer who is a qualified doctor of medicine or osteopathy and who is designated according to Title 10 U.S.C., Section 8067.

**Medical Service Officer**—An officer of the Medical Corps (MC), Nurse Corps (MC), Dental Corps (DC), Biomedical Science Corps (BSC), or Medical Service Corps (MSC).

**Members of the Family**—Includes the spouse, children, father, mother, brothers, sisters, any person who has stood in place of a parent to the member before entry into the service with a parent's rights, duties, and responsibilities, and the same members of the family of the member's spouse.

**Military Record**—An individual's overall performance while a member of a military service, including personal conduct and performance of duty.

**Military Service Obligation (MSO)**—The period of time that a member must serve in a regular and/or reserve component of the armed forces as required by the Military Selective Act of 1967 or Title 10 U.S.C., Section 651, as amended.

**Nonprobationary Officer**—A USAF Reserve officer who has completed 5 or more years of service as a

commissioned officer in any of the armed forces as determined from total Federal commissioned service date (TFCSD), **and all ANG officers**.

**Offenses Involving Moral Turpitude**—For the purpose of this instruction, offenses involving moral turpitude include, but are not limited to acts of sexual perversion or drug addiction, drug use, and drug supplier as defined in AFPD 36-27, *Social Actions*. Also included are burglary, forgery, housebreaking, larceny, and robbery. Sexual perversion includes, but is not limited to: (1) lewd and lascivious acts, (2) sodomy, (3) indecent exposure, (4) indecent acts with or assault upon a child, or (5) other indecent acts or offenses.

**Prior Enlistment or Period of Service**—Service in any component of the armed forces, including the Coast Guard, which culminates in the award of a discharge certificate or report attesting to the type and character of service rendered during that period.

**Probationary Officer**—A Reserve officer (other than ANG) who has completed less than 5 years of service as a commissioned officer in any of the armed forces as determined from TFCSD.

**Procedural Matters**—Those matters with which the administrative discharge board convened IAW Chapter 4 is concerned (other than the ultimate findings and recommendations). The term includes, but is not limited to, motions for continuances, securing of witnesses or production of documentary evidence, challenges, the admissibility of evidence, and other interlocutory matters, which, had they been involved in a trial by court-martial, would be ruled upon by a military judge.

**Propensity**—Propensity to engage in homosexual acts means more than an abstract preference or desire to engage in homosexual acts; it indicates a likelihood that a person engages in or will engage in homosexual acts.

**Reserve Active Status List (RASL)**—A list of all Reserve of the Air Force officers in an active status, not on the Active Duty List (ADL), and in the order of seniority of the grade in which they are serving. Officers serving in the same grade are carried in the order of their rank in that grade. The RASL for the Air Force shall include officers in the ANG and Air Force Reserve. Except as otherwise provided by law, an officer must be on the RASL to be eligible for consideration for selection for promotion, continuation, or early removal as a member of the Reserve of the Air Force.

**Recommended List for Promotion**—A list of officers recommended by a selection board for promotion to their next higher grade.

**Reserve Member**—An enlisted member of the USAFR.

**Reserve Officer**—An officer member of one of the Reserve components. The term "Reserve" with respect to appointment, grade, or office, means appointment, grade, or office held as a Reserve of the armed forces.

**Respondent**—A member who has received official notification that action has been initiated against him or her under Chapter 2 or 3.

**Satisfactory Service for Retirement**—All active Federal service before 1 Jul 49 is considered satisfactory for retirement purposes. After 1 Jul 49, each 1-year period beginning on the member's retention/retirement date in which a member has been credited with at least 50 points.

**Separation**—A general term that includes discharge, release from active duty, release from custody and control of the Armed Forces, transfer to a Reserve component, or discharge from the ANG only with concurrent transfer to the USAFR.

**Service**—That period of time from date of enlistment or appointment to a conditional release or discharge from any military component.

**Sexual Orientation**—An abstract sexual preference for persons of a particular sex, as distinct from a propensity or intent to engage in sexual acts.

**Statement that a Member is a Homosexual or Bisexual or Words to that Effect**—Language or behavior that a reasonable person would believe was intended to convey the statement that a person engages in, attempts to engage in, or has a propensity or intent to engage in homosexual acts (see paragraph 2.31.2 and 3.20.3).

**Substandard Performance**—This is the same as unsatisfactory performance listed in DoD 1332.14.

**Termination of Active Status**—Includes transfer to the ISLRS, the Retired Reserve, discharge, vacation or termination of appointment, dropped from the rolls of the Air Force, entry level separation, or release from the custody and control of the Air Force.

**Unit Commander**—This is normally the commander of the unit to which the member is assigned. For IMA, this may be the official in charge of the training unit. This could be the unit commander, special program manager, or the MAJCOM Reserve Affairs Officer, or for members not assigned to a participating Reserve position, the Commander, ARPC. For actions involving personnel in the Delayed Enlistment Program, this is the recruiting squadron commander.

Attachment 2

## GUIDELINES FOR SEPARATION AND SERVICE CHARACTERIZATION

### A2.1. General Considerations About Service Characterization

A2.1.1. Base the characterization of service on the quality of the member's service as reflected in the military record, including personal conduct, performance of duty, and the reason for discharge. Determine the quality of service according to standards of acceptable personal conduct and performance of duty. Follow the standards found in the *Uniform Code of Military Justice (UCMJ)*, Air Force directives, state military code, and the time-honored customs and traditions of military service.

A2.1.2. As a rule, base service characterization on a pattern of behavior rather than on an isolated incident. Evaluate the frequency and seriousness of disciplinary infractions. If a military record contains derogatory data, consider the total service in the current enlistment or period of service. Give due consideration to the member's age, length of service, grade, aptitude, physical and mental condition, and the standards of acceptable conduct and performance of duty. There are circumstances, however, in which the conduct or performance of duty reflected by a single incident, particularly in a misconduct case, may provide the basis for the service characterization.

A2.1.3. Consider conduct in the civilian community even if it is not subject to UCMJ jurisdiction or state military code in characterizing service. Conduct in the civilian community that brings discredit on the USAF, ANG, or AFRC; or conduct prejudicial to good order and discipline, adversely affects the quality of a member's service. The burden of proof to the contrary rests with the respondent (that is, the member being considered for separation). See specific restrictions for members not on active duty or ADT in paragraphs A2.2.2 and A2.2.3.

**A2.2.** Types of Service Characterization:

A2.2.1. Honorable. The Honorable characterization is appropriate when the quality of the member's service generally has met USAF standards of acceptable conduct and performance of duty. It may also be appropriate when a member's service is otherwise so meritorious that any other characterization would be inappropriate.

A2.2.2. Under Honorable Conditions (General). If a member's service has been honest and faithful, but significant negative aspects of conduct or performance of duty outweigh positive aspects of the member's military record. ***NOTE:*** Use conduct in the civilian community of a member who is not on active duty or ADT to characterize service as General only if the conduct has an adverse impact on the effectiveness of the Air Force, including military morale and efficiency.

A2.2.3. UOTHC. A member's service may be characterized as UOTHC only if the member is given an opportunity for a hearing by an administrative discharge board or requests discharge in lieu of trial by court martial. However, conduct in the civilian community of a member not on active duty or ADT may be used to characterize service as UOTHC only if the conduct directly affects the performance of military duties. Examples of conduct that directly affects the performance of military duties include but, are not limited to the following:

- Missing muster or screening;
- Missing a UTA, IADT, OR ADT;

- Offenses which involve either a military member or a DoD agency as a victim.

Characterization of service as UOTHC may be appropriate when the reason for separation is based on one or more acts or omissions that constitute a significant departure from the conduct expected. Examples of this type conduct are:

- The use of force or violence to produce serious bodily injury or death;
- Abuse of a special position of trust;
- Disregard by a superior of customary superior-subordinate relationships;
- Acts or omissions that endanger the security of the US;.
- Acts or omissions that endanger the health and welfare of other members of the Air Force; or
- Deliberate acts or omissions that seriously endanger the health and safety of other persons.

**A2.3.** Other Separations with No Service Characterization:

A2.3.1. Dropped From the Rolls of the Air Force. An officer or enlisted member may be dropped from the rolls of the Air Force when authorized by this instruction. (HQ USAF takes final action on all cases).

A2.3.2. Entry Level Separation. A separation based on an action that starts while the enlisted member is in entry-level status.

A2.3.3. Release From Custody and Control of The Air Force (By Reason of Void Enlistment). When a member does not require characterization or an entry level separation, describe the separation as an order of release from custody and control of the Air Force.

**A2.4.** Period Considered in Characterizing Service. Determine characterization of service solely on the member's military record in the period of service that is ending.

A2.4.1. Prior service activities, including records of conviction by court-martial, records of absence without leave, or commission of other offenses for which punishment was not imposed shall not be considered on the issue of characterization. To the extent that such matters are considered on the issue of retention or discharge, the record of proceedings may reflect express direction that such information shall not be considered on the issue of characterization.

A2.4.2. Preservice activities may not be considered on the issue of characterization except as follows: in a proceeding concerning fraudulent entry into military service, evidence of preservice misrepresentations about matters that would have precluded, postponed, or otherwise affected the member's eligibility for enlistment may be considered on the issue of service characterization.

**A2.5.** Limitations on Service Characterization:

A2.5.1. In some cases you may not consider evidence used to show that a basis for discharge exists, when you are deciding how to characterize the member's service. Consult a staff judge advocate for help in deciding how to use such evidence. If the discharge authority directs the issuance of a General or UOTHC discharge, the instrument that directs discharge must show how other circumstances of the member's military record warrant such a characterization.

A2.5.2. On the issue of characterization, don't consider conduct that has been the subject of judicial proceedings resulting in an acquittal, or other action having the same effect.

***EXCEPTIONS:***

- When such action is based on judicial determination about matters other than the guilt or innocence of the respondent.
- When a judicial proceeding was conducted in a state or foreign court, refer it to the Office of the Air Force Personnel Council for final decision.

A2.5.3. You may not discharge a member UOTHC if the sole basis for discharge is a serious offense that resulted in conviction by a court-martial if court-martial did not impose a punitive discharge. ***EXCEPTION:*** The Air Force Personnel Council may approve such a discharge.

A2.5.4. Additional limitations that apply to service characterizations:

A2.5.4.1. Drug Abuse. Under the provisions of AFI 36-2701, governing self-identification or treatment for drug abuse, don't consider the following items when deciding on the issue of characterization:

- A member's voluntary self-identification for treatment for drug abuse.
- The evidence the member voluntarily provides in connection with the self-identification.

A2.5.4.1.1. The results of mandatory urinalysis testing for controlled substances may not be used if the testing was conducted during a command directed examination or referral of a specified member for a valid medical purpose according to the Manual for Court-Martial Rules of Evidence 312(f), when there is a reasonable suspicion of drug abuse or during an examination of a specified member in conjunction with the member's participation in a drug treatment and rehabilitation program.

***NOTES:***

A command-directed examination as described in AFI 36-2701is one conducted to determine:

- A member's competence for duty.
- The need for counseling, or other medical treatment.

A2.5.4.1.2. Exceptions:

- The evidence discussed in subparagraphs A2.5.4.1 and A2.5.4.1.1 to impeach or rebut evidence of drug abuse (or non-abuse) if the member first introduced the subject.
- Independently derived evidence, including the results of mandatory urinalysis testing not specifically excluded from consideration, when you are deciding the issue of service characterization.

A2.5.4.2. Homosexual Conduct. A discharge UOTHC may be issued, only if it is found that during the current term of service the member attempted, solicited, or committed a homosexual act:

- By using force, coercion, or intimidation.
- With a person under 16 years of age.
- With a subordinate in circumstances that violate customary military superior-subordinate relationships.
- Openly in public view.
- For compensation.

- Aboard a military vessel or aircraft.
- In another location subject to military control under aggravating circumstances, noted in the findings, that have an adverse impact on discipline, good order, or morale comparable to the impact of such activity aboard a vessel or aircraft.

# EXHIBIT 46

## UTAH CODE OF MILITARY JUSTICE

### Title 39, Chapter 6

### (Sections 1-3, 13-14 & 16)

# Utah Code of Military Justice
# Title 39, Chapter 6
**(excerpts)**

**39-6-1. Short title.**

This chapter is known and may be cited as the "Utah Code of Military Justice," and may also be cited as the "UCMJ."

**39-6-2. Definitions.**

As used in this chapter:

(1) "Accuser" means a person who:

(a) signs and swears to charges;

(b) directs that charges nominally be signed and sworn to by another; or

(c) any other person who has an interest other than an official interest in the prosecution of the accused.

(2) "Commanding officer" means both a commissioned officer and a warrant officer designated as a commander.

(3) "Commissioned officer" includes a commissioned warrant officer.

(4) "Convening authority" means the governor or the adjutant general.

(5) "Duty status other than state active duty" means any other type of duty, and includes going to and returning from the duty.

(6) "Enlisted member" means a person in an enlisted grade.

(7) "Grade" means a step or degree in a graduated scale of office or military rank, established and designated as a grade by law or regulation.

(8) "Legal officer" means any commissioned officer of the organized National Guard of the state designated to perform legal duties for a command.

(9) "Major command" or "MACOM" means a major subdivision of the Utah National Guard.

(10) "May" is permissive, and in context grants or denies permission or authority.

(11) "Military" means any or all of the armed forces of the United States.

(12) "Military court" means a court-martial, a court of inquiry, or a provost court.

(13) "Military judge" means a qualified staff judge advocate officer of a military court detailed under Section 39-6-20.

(14) "National Guard" means the Utah Army and Air National Guard, including part-time and full-time active guard and reserve (AGR), and includes the Utah unorganized militia when called to active duty by the governor of the state.

(15) "Officer" means commissioned or warrant officer.

(16) "Rank" means the order of precedence among members of the armed forces.

(17) "Shall" is imperative.

(18) "State active duty" means full-time duty in the active military service of the state under an order of the governor, issued pursuant to his authority, and includes going to and returning from the duty.

(19) "State staff judge advocate" or "SSJA" means the commissioned officer responsible for supervising the administration of the military justice in the National Guard, and qualified and designated as judge advocate general corps officer.

(20) "Superior commissioned officer" means a commissioned officer superior to another in rank or command.

(21) "UCMJ" means Title 39, Chapter 6, Utah Code of Military Justice.

**39-6-3. Persons subject to chapter.**

(1) The following persons are subject to this chapter:

(a) all members of the National Guard, including full-time members serving under Title 32, United States Code;

(b) all other persons lawfully ordered to duty in or with the National Guard or the unorganized militia, from the dates they are required by the terms of the order or other directive;

(2) (a) If there is a military activation by the federal government, all activated persons who would otherwise be under the jurisdiction of this chapter are subject to concurrent jurisdiction under federal and state law.

(b) Persons under this subsection may be tried for offenses occurring during activation and after release from federal service, while within the period of an applicable statute of limitations.

**39-6-4 thru – 12.** (*omitted*).

**39-6-13.** Limits on nonjudicial punishment.

(1) Regulations prescribed by the governor, and additional regulations prescribed by the adjutant general of Utah may place limitations on authority concerning nonjudicial punishment under this chapter, regarding:

(a) imposing punishment of any type or amount;

(b) the categories of commanding officers who have the authority; and

(c) the applicability of this section to an accused who demands trial by a military court.

(2) (a) Except when a member is attached to or embarked on a vessel, punishment may not be imposed under this section on any person subject to this chapter if the person has, before the imposition of the punishment, demanded trial by military court in lieu of the punishment.

(b) Regulations may be made regarding suspension of punishments authorized under this chapter.

**39-6-14. Disciplinary punishment — Without court intervention — Limits and forms of punishment.**

(1) Under Section 39-6-13, any commanding officer and the adjutant general of Utah may, in addition to or in lieu of admonition or reprimand, impose one or more of the disciplinary punishments under this section for minor offenses without the intervention of a military court.

(2) Disciplinary punishment imposed by the governor, the adjutant general, a full colonel command officer of the National Guard, or the commanding general of a designated military unit upon officers of his command may be:

(a) a fine or forfeiture of not more than one-half of one month's pay per month for three months, or $200, whichever is greater;

(b) restriction to specific limited areas, with or without suspension from duty, for not more than 60 consecutive days; or

(c) detention of not more than one-half of one month's pay per month for three months, or $200, whichever is greater.

(3) Punishment upon other military personnel of his command may be:

(a) fine or forfeiture of not more than one-half of one month's pay per month for two months, or $200, whichever is greater;

(b) reduction of one or more pay grades, if the grade from which demoted is within the promotion authority of the officer imposing the reduction;

(c) extra duties, including fatigue or other duties, for not more than 60 consecutive days;

(d) restriction to specific limited areas, with or without suspension from duty, for not more than 60 consecutive days; or

(e) detention of not more than one-half of one month's pay per month for two months, or $200, whichever is greater.

(4) Punishment imposed by an officer of the grade of major or lieutenant colonel may be:

(a) fine or forfeiture of not more than one-half of one month's pay per month for two months, or $150, whichever is greater;

(b) reduction of no more than two pay grades, if the grade from which demoted is within the promotion authority of the officer imposing the reduction, but the pay of an enlisted member in a pay grade above E-4 may not be reduced more than two pay grades;

(c) extra duties, including fatigue or other duties, for not more than 45 consecutive days;

(d) restriction to specific limited areas, with or without suspension of duty, for not more than 45 consecutive days; or

(e) detention of not more than one-half of one month's pay per month for two months, or $150, whichever is greater.

(5) Punishment imposed by an officer of the grade of captain or lieutenant may be:

(a) fine or forfeiture of not more than one-half of one month's pay for one month, or $50, whichever is greater;

(b) extra duties, including fatigue or other duties, for not more than 30 consecutive days;

(c) restriction to certain specified limits, with or without suspension from duty, for not more than 30 consecutive days; or

(d) reduction of one pay grade, if the grade from which demoted is within the promotion authority of the officer imposing the reduction.

(6) (a) Detention of pay may be for a stated period of no more than one year. However, if the offender's term of service expires earlier, the detention terminates on expiration.

(b) Forfeiture of pay may not be combined with detention of pay, without an apportionment.

(7) (a) No two or more of the punishments of arrest in quarters, correctional custody, extra duties, or restriction to specific areas may be imposed in combination and for the maximum amount of time designated for each punishment.

(b) When any of these punishments are combined to be imposed consecutively, there shall be an apportionment of the time each punishment is imposed.

(8) (a) In this section "correctional custody" means the physical restraint of a person during duty or on-duty hours and may include extra duties, fatigue duties, or hard labor.

(b) When practicable, correctional custody may not be served in immediate association with persons awaiting trial or held in confinement pursuant to a trial by military or civilian court.

(9) An officer in charge may impose upon enlisted members assigned to the unit of which he is in charge punishments authorized under Subsection (4), as the governor or adjutant general specifically prescribes by rule.

(10) (a) The officer who imposes the punishment authorized in Subsection (2), (3), or (4), or his successor in command may at any time suspend by probation all or any part of the amount of the unexecuted punishment imposed. He may also suspend by probation a reduction in grade or a forfeiture imposed under those subsections, whether or not executed.

(b) He may at any time remit or mitigate any part or amount of the unexecuted punishment imposed; and may set aside in whole or in part the punishment, whether executed or unexecuted, and restore all rights, privileges, and property affected.

(c) He may also mitigate reduction in grade to forfeiture or detention of pay.

(d) When making any of the following mitigations, the mitigated punishment may not be for a greater period than the original punishment:

(i) arrest in quarters to restriction;

(ii) correctional custody or confinement on extra duties to restriction; or

(iii) extra duties to restriction.

(e) When mitigating forfeiture of pay to detention of pay, the amount of the detention may not be greater than the amount of the original forfeiture of pay.

(f) When mitigating a reduction in grade to forfeiture or detention of pay, the amount of the forfeiture or detention may not be greater than the amount that could have been imposed initially under this section by the officer who imposed the punishment that was mitigated.

(11) (a) A person punished under this section may appeal to the next superior authority under procedures provided by regulation.

(b) The appeal shall be promptly forwarded and acted upon, but the appellant may, during the course of the appeal, be required to submit to the imposed punishment.

(c) The superior authority may exercise the same power regarding the punishment imposed as may be exercised under Subsection (10) by the officer who imposed the punishment.

(12) Before acting on an appeal from any punishment imposed under Subsection (1), (2), or (3), or from the following punishments, the acting authority shall refer the case to a staff judge advocate of the Utah Army National Guard or the Utah Air National Guard, or a designated legal officer of the Utah National Guard for consideration and advice:

(a) arrest in quarters for more than seven days;

(b) correctional custody for more than seven days;

(c) forfeiture of more than seven days' pay;

(d) reduction of one or more pay grades from the fourth or a higher pay grade;

(e) extra duties for more than 14 days;

(f) restriction for more than 14 days; or

(g) detention of more than 14 days' pay.

(13) (a) The imposition and enforcement of a disciplinary punishment under this section for any act or omission is not a bar to trial by a criminal court for a serious crime or offense that is part of or a similar criminal episode arising out of the same act or omission, and not appropriately punishable under this section.

(b) However, the fact that a disciplinary punishment has been enforced may be shown by the accused at trial. If the defendant is found guilty, the punishment shall be considered in determining the measure of punishment to be imposed.

(14) The governor or the adjutant general may by rule prescribe the form of records to be kept of proceedings under this section and categories of those proceedings to be in writing.

(15) The punishments imposed under this section, except fines and forfeiture of pay, may not extend beyond the termination of the duty status of the punished individual.

**39-6-15. Military court — Composition.** (*omitted*).

**39-6-16. Military court — Jurisdiction.**

(1) (a) Subject to Subsections (2) and (3), a military court in this state has jurisdiction to try persons subject to this chapter for any offense punishable by this chapter.

(b) The military court may, under limitations the governor may prescribe, and under applicable state and federal regulations governing punishment, impose any punishment not prohibited by this chapter or state law, including the issuance of a bad conduct discharge, when the court is in session to consider a penalty.

(2) Each major command component of the National Guard has military court jurisdiction over all persons subject to this chapter. The exercise of this jurisdiction by one command component over members of another shall be in accordance with regulations prescribed by the governor.

(3) Members of the Utah National Guard or the unorganized militia in federal service are subject to the federal Uniform Code of Military Justice and all federal and state laws pertaining to them, until released back to state control.

**39-6-17 thru – 114.** (*omitted*).

# EXHIBIT 47

## AIR NATIONAL GUARD INSTRUCTION 36-2503

ANGI 36-2503 - EXHIBIT 47

*BY ORDER OF THE CHIEF,*
*NATIONAL GUARD BUREAU*

*ANG INSTRUCTION 36-2503*
*29 DECEMBER 1995*

*Personnel*

# *ADMINISTRATIVE DEMOTION OF AIRMEN*

This instruction provides guidelines and establishes policy for administrative demotion of Air National Guard enlisted members. This instruction implements AFPD 36-25, *Military Promotion and Demotion*. This instruction is affected by the Privacy Act of 1974, and each form required by this instruction contains a Privacy Act statement incorporated into the body of the document.

151st Camsq.
1 0 MASTER FILE
RECEIVED
JAN 3 0 1996

## *SUMMARY OF CHANGES*

This is the first publication of ANGI 36-2503 and it rescinds National Guard Regulation (Air Force) 39-30, 15 September 1992. Major changes include the reformat from the NGR (AF) format to the current Air National Guard Instruction. Change of the word personal "hearing" to personal "interview." Deletion of any policy or instruction not pertinent to the topic, "Administrative Demotion." Clarifies notification memorandums utilized for various reasons for demotion.

## *Section A--General Instruction*

**1. Glossary of References, Abbreviations, Accronyms, and Addresses.** See attachment 1.

**2. Demotions.** This instruction applies to all ANG enlisted members in the grades E-2 through E-9. All demotions under its provisions are administrative. It will not be used in lieu of disciplinary actions punishable under the appropriate state military code or the Uniform Code of Military Justice (UCMJ) when applicable.

2.1. An enlisted member separated from the service before demotion action is completed cannot be demoted after separation. An administrative demotion action cannot be initiated unless the reason for the action occurred during the current enlistment (including extensions). *EXCEPTION:* The facts and circumstances were not known by the commander until after reenlistment. If the commander has sufficient reason to initiate demotion action, all military records may be used in deciding whether or not the member should be demoted.

2.2. When appropriate, airmen should be given an opportunity to overcome their deficiencies before demotion action is initiated. Commanders should maintain supporting documentation of all rehabilitation and probationary actions. Suspended demotions are not authorized under this regulation. Once demoted, that action reflects the member's appropriate grade and may not be suspended conditioned on future conduct.

**3. Who Can Demote.** The unit commander may recommend the demotion of an enlisted ANG member under his command.

3.1. The authority to demote enlisted ANG members as Reserves of the Air Force is vested in The Adjutant General (TAG) of the State according to the policies and procedures stated herein. The TAG will exercise demotion authority for enlisted members serving in the ranks of master sergeant (MSgt), senior master sergeant (SMSgt), and chief master sergeant (CMSgt). Demotion authority for enlisted ANG members serving in the ranks of TSgt and below may be further delegated to the Wing/Group/Base commander or the commander of a geographically separated unit.

3.2. The authority to demote enlisted members serving on extended active duty (Title 10 USC 12310) with the National Guard Bureau will be the Director, Air National Guard, with the concurrence of the appropriate State adjutant general.

3.3. An ANG enlisted member reduced by court martial or non judicial punishment under the State Military Code or Uniformed Code of Military Justice (UCMJ) may be demoted to the same grade as a Reserve of the Air Force in the Air National Guard of the United States (ANGUS).

3.4. Other than demotion under paragraphs 4.1., 4.2. and 4.4., to authorize demotion of an enlisted ANG member, the demotion authority must be convinced by a preponderance of the evidence that such action is warranted. The demotion authority may consider all matters in the file which, in their judgment, have probative value and need not be influenced by the possibility that some of those

Supersedes NGR(AF) 39-30, 15 September 1992
OPR: ANGRC/MPPS (MSgt Merry)

Certified by: NGB/CF (Col J. M. Bryan)
Pages: 11/Distribution: F

matters may not be admissible in a judicial proceeding.

***Section B--Reasons for Demotion***

**4. Specific Authorities:**

4.1. Failure to Complete Training:

4.1.1. Promotions under paragraph 2.3.1. of ANGI 36-2502, *Promotion of Airmen, Air National Guard.* Enlisted ANG members attending the Flight Screening Program (FSP), the ANG Academy of Military Science (AMS), or the Air Force Reserve Officer Training Course (AFROTC), who fail to complete such training for any reason will be demoted to the last grade previously held.

4.1.2. Airmen promoted under paragraph 2.4., ANGI 36-2502, *Promotion of Airmen, Air National Guard*, must qualify for the new Air Force Specialty Code (AFSC) within the time limits specified by the commander or be demoted to the last grade satisfactorily held.

4.1.3. Airmen promoted to grade E-3 while on initial active duty for training (IADT) must qualify for the AFSC within the time limits specified or be demoted to the last grade satisfactorily held.

4.2. Failure to Attain Grade/Skill Relationship:

4.2.1. An airman enlisted without a skill level to support the grade/skill relationship must qualify for the award of the AFSC to support the grade in which enlisted within the time limits specified by the commander or be demoted to the highest grade supported by the skill level awarded at time of enlistment.

4.2.2. Reclassification to a lower skill level. If an airman had an awarded Air Force Specialty (AFS) at a skill level which is appropriate for the grade but the skill level is reduced under AFI 36-2101, *Classifying Military Personnel (Officers and Airmen)*, for substandard performance in the possessed AFS, the member will be demoted to the highest grade the reduced skill level supports. The demotion orders will be effective the same day the skill level is reduced.

4.3. Failure to Fulfill Noncommissioned Officer (NCO) Responsibilities. An airman may be demoted if he or she fails to fulfill NCO responsibilities prescribed in AFPAM 36-2618 (formerly AFR 39-6M, *The Enlisted Force Structure*, paragraphs 6 and/or 7).

4.4. Failure to Attain and Maintain Weight/Body Fat Measurement (BFM) Standards. An airman may be demoted if, after entry into the weight management program, he or she fails to attain or maintain weight/BFM as prescribed in NGR (AF) 35-11, *Air National Guard Weight Management Program.* After an airman has been demoted one grade, the unit commander should consider initiating separation action IAW AFI 36-3209, *Separation Procedures for Air National Guard and Air Force Reserve Members* as prescribed in NGR (AF) 35-11. ***EXCEPTION:*** An exception may be made if the airman presents convincing medical evidence that he or she is unable to maintain weight/BFM standards due to physical or organic causes beyond the member's control.

4.5. Failure to Maintain Proper Physical Condition. An airman may be demoted if he or she fails to demonstrate the ability to attain physical standards as prescribed by AFI 40-502, *The Weight Management Program.*

4.6. Unsatisfactory Participation. (Note: For demotion purposes only, unsatisfactory participation is defined as having six or more unexcused absences from scheduled unit training assembly [UTA] periods [4 hours per UTA period] in any continuous 12-month period.) After six unexcused absences, the commander may send the airman a certified memorandum (see attachment 2), return receipt requested, stressing the seriousness of the situation and advising that demotion action is being initiated. The demotion will be effected as soon as practicable after the airman has been given the opportunity to exercise his or her rights as defined in the memorandum advising of the intent to demote. After the ninth unexcused absence, the commander may request the adjutant general consider the involuntary separation of the member from the ANG of that state with concurrent discharge as a Reserve of the Air Force, IAW AFI 36-3209, *Separation Procedures for Air National Guard and Air Force Reserve Members.* Pending demotion actions will be completed before the separation of the airman.

4.7. Voluntary Change of Assignment. A voluntary change of assignment to a UMD position which has a lower grade authorization than that currently held by the airman will result in demotion to the lower UMD grade. Demotions IAW this paragraph are effected by the publication of demotion orders by appropriate authority. The procedures prescribed in paragraphs 10 and 11 are not applicable. Orders effecting voluntary demotions will contain the phrase "without prejudice."

4.7.1. Acceptance of a military duty tour against a Support Personnel Manning Document (SPMD) position with a lower grade authorization than that currently held by the member will require demotion to the maximum grade authorized by the SPMD position. This also applies to airmen promoted

under the provisions of the Deserving Airman Program.

4.7.2. ANGI 36-2101, *Assignments Within the Air National Guard*, restricts full-time personnel to a maximum four-year tour as a first sergeant. They must then be reassigned to a military position which is compatible with their SPMD assignment. When such a reassignment, (either prior to or at the completion of the four-year maximum tour) results in a demotion, that demotion will be considered voluntary. The demotion order will cite this paragraph as the authority for the demotion. If such reassignment is based on substandard performance, demotion would then be effected under the appropriate paragraph of this instruction.

4.7.3. Demotion to a lower grade resulting from a voluntary change of assignment. An airman must acknowledge in writing that the lower military grade (state specific grade) is accepted. The demotion will not preclude subsequent promotion under ANGI 36-2502, *Promotion of Airmen, Air National Guard.*

4.8. Active Guard Reserve (AGR) Priority Placement Program Position Declination. IAW ANGI 36-101, *The Active Guard/Reserve (AGR) Program*, an overgrade full-time military duty member who declines a position offered under the priority placement program must be reduced in grade to that authorized by his or her SPMD position. Orders effecting this reduction will contain the statement "without prejudice." DOR will be computed IAW paragraph 9, this instruction.

4.9. Expiration of ANGI 36-2101, *Assignments Within the Air National Guard-Overgrade Status.* When an authorized period of overgrade assignment expires and no other assignment option is feasible, the airman must be reduced in grade to the maximum authorized by ANGI 36-2101, or the UMD position to which assigned. Orders effecting this reduction will contain the statement "without prejudice". DOR will be computed IAW paragraph 8, this instruction.

*Section C--Demotion Process*

Table 1.1.

Notification and Date of Rank Adjustment Requirements

| Rule | If the demotion is to be effected under paragraph | The airman's commander must formally advise the airman of the recommendation to demote IAW paragraph 5, this instruction. | and if effected the airman's DOR is the date of the order | and if effected the airman's DOR is adjusted IAW paragraph 8.2. this instruction. |
|---|---|---|---|---|
| 1 | 4.1. | No | | X |
| 2 | 4.2. | No | | X |
| 3 | 4.3. | Yes | X | |
| 4 | 4.4. | Yes | X | |
| 5 | 4.5. | Yes | X | |
| 6 | 4.6. | Requirement may vary with State Code | X | |
| 7 | 4.7. | No | | X |
| 8 | 4.8. | No | | X |
| 9 | 4.9. | No | | X |

**5. Notifying Airman of Impending Action** (see table 1.1.). After consulting with the servicing Staff Judge Advocate (SJA) the immediate commander will inform the airman in writing to the airman's last known address, either by personal delivery (with written receipt acknowledged) or by certified mail (return receipt requested), of the intent to recommend demotion, or to demote if the unit commander is also the demotion authority. If the airman does not acknowledge receipt within the specified time or if the memorandum is returned as undeliverable, the unit commander may proceed to process the demotion action. The memorandum will contain (see attachment 3) the following information:

5.1. Specific reasons for the proposed action and applicable paragraphs of this instruction.

5.2. A complete summary of the supporting facts.

5.3. Instructions that the airman will acknowledge (in writing) the notification memorandum within five calendar days' of receipt by certified mail or immediately upon receipt if personally delivered by

the commander or his designated representative. (See attachment 4).
5.4. Instructions that the airman will either concur or nonconcur, in writing, with the proposed action no later than the end-of-day roll call following the second UTA (4-hour period) after acknowledgment of the memorandum.
5.5. An explanation that the airman may consult with counsel before electing to concur or nonconcur with a recommendation for demotion. Counsel will be provided by the SJA, appointed by the airman's immediate commander, and identified by name in the initial notification memorandum. Counsel may also assist in preparing a written response by the individual if the member so elects. Expenses incurred in connection with the appearance or assistance of civilian counsel on behalf of the airman are the responsibility of the airman and will not be paid by the military. Airmen being considered for demotion will be offered representation by counsel who is either:
5.5.1. A military lawyer (within the meaning of article 27(b)(1) of the UCMJ or designated Judge Advocate (JA) under Title 10 USC 8067(g), different from the military counsel advising the commander, if available; or
5.5.2. If a military lawyer is not available, a disinterested officer from the unit other than the airman's unit. This officer must, in the commander's judgment, possess the knowledge and judgment necessary to provide comprehensive and accurate advice to the airman on the procedures and alternate courses of action available. If possible, the officer should be well versed in personnel matters.
5.6. If the airman nonconcurs with the proposed demotion action then he must decide whether or not to submit documentation on his or her behalf. If the decision is to submit documentation, it must be received within 20 calendar days after the date the airman responds indicating his or her decision to nonconcur with the demotion action.
5.7. An explanation that the airman may request a personal interview with the immediate commander. If the airman chooses to make an oral presentation, counsel may be present during the interview.
5.8. An explanation that a lack of response will be construed as concurrence by the individual. Failure to respond will be construed as a waiver to both the right to appear before the airman's immediate commander and representation by counsel.
5.9. An explanation that the airman, if eligible, may request resignation or retirement IAW AFI 36-3209, *Separation Procedures for Air National Guard and Air Force Reserve Members* in lieu of demotion at any time before publication of demotion orders. Obligors or airmen who have incurred service commitments are not eligible to resign or retire.

**Table 2.1.**
**Commander's Action Upon Receipt of Airman's Reply**

| Rule | If commander determines airman should | and commander is the demotion authority | then commander |
|---|---|---|---|
| 1 | not be demoted | yes | notifies the airman in writing of decision, thus closing the case. |
| 2 | | no | indorses case through channels to the demotion authority. |
| 3 | be demoted | yes | acts IAW paragraph 6. |
| 4 | | no | indorses correspondence through channels to the demotion authority recommending lower grade that commander believes appropriate for the airman's skill and abilities. |

**6. Action by the Immediate Commander After Receipt of Airman's Reply or if the Airman Fails to Respond to the Notification of Intent to Demote. (See table 2.1.).**
6.1. If the airman concurs with the demotion action or fails to respond to the notification of intent to demote, and if the immediate commander is the demotion authority, the commander will obtain a legal review of the case file from the servicing SJA.
6.1.1. If it is determined that the case file is legally sufficient for demotion the immediate commander will proceed with the demotion action.
6.1.2. If the immediate commander is not the demotion authority, forward the package and

demotion recommendation through channels to the appropriate demotion authority.

6.2. If the airman nonconcurs with the demotion action and submits matters on his or her behalf, or requests a personal interview, or both, the immediate commander will consider all matters presented by the airman.

6.2.1. An immediate commander who is also the demotion authority will consider each and all of the matters presented and then:

6.2.1.1. Terminate the demotion action; or

6.2.1.2. Request SJA review for legal sufficiency prior to effecting the demotion. If the SJA determines there is legal sufficiency to support a finding for demotion, the immediate commander may proceed with the demotion action. If the case lacks legal sufficiency, it will be terminated and the airman advised in writing by certified mail or by personal delivery.

6.2.2. An immediate commander who is not the demotion authority will consider each and all of the matters presented and then:

6.2.2.1. Terminate the demotion action, or

6.2.2.2. Prepare a written summary of that personal interview (if any), include that summary in the case file, and forward the case file to the demotion authority with an appropriate recommendation. The immediate commander will immediately notify the airman in writing by certified mail or by personal delivery of the decision to continue processing the demotion action or to terminate it.

**7. Action by the Demotion Authority Who is Not the Airman's Immediate Commander:**

7.1. The demotion authority will obtain a legal review from the servicing SJA before rendering a final decision on the immediate commander's demotion recommendation.

7.2. The demotion authority will notify the airman's servicing Military Personnel Flight (MPF) in writing of the decision to concur or nonconcur with the immediate commander's demotion recommendation. The MPF will then notify the airman of the decision by indorsement through the airman's immediate commander.

**8. Determining Date of Rank (DOR):**

8.1. The DOR will be the effective date of the demotion order for airmen demoted under the provisions of paragraph 4.3., 4.4., 4.5., and 4.6.

8.2. The DOR for airmen demoted under provisions of paragraph 4.1., 4.2., 4.7., 4.8., and 4.9. will be the DOR of the former grade to which the airman is reduced (adjusted by any breaks in service). If demotion is to a grade not previously held by the airman, the DOR will be the date the member last began active service (could be initial entry on IADT).

**9. Announcing and Revoking Demotions:**

9.1. Demotions are announced in special orders published by the appropriate headquarters in accordance with ANGI 37-101, *Air National Guard Administrative Orders*. The effective date for the demotion is the date specified by the demotion authority.

9.2. Demotion orders may be revoked only with the approval of the State adjutant general when it has been determined that the order was published without the proper authority. Revocation orders are published in accordance with ANGI 37-101.

9.3 Instructions regarding voluntary demotions are found in paragraph 4.7.

**10. Notifying the Airman of an Approved Demotion Action.** The demotion authority (who is not the airman's immediate commander) will notify the airman's immediate commander in writing through the MPF of the decision to effect the demotion. The airman's commander will then notify the airman in writing by certified mail or personal delivery of the decision. A copy of the demotion order will be included with the notification. If the immediate commander is not available, the next higher commander in the chain of command (up to and including the demotion authority) will notify the airman.

**Table 3.1.**

**Grades to Which Airmen May be Demoted**

| Rule | If airman is | then demotion will be to a grade no lower than |
|---|---|---|
| 1 | E-4 or higher | E-2 (See Note) |
| 2 | E-3 | E-1 |

**NOTE:**

A reduction of three or more grades should be used only in an extraordinary unique case when there appears to be no reasonable hope that the airman will again exhibit the proficiency, leadership, or fitness previously possessed.

**11. Grades to Which Airman May be Reduced** (see table 3.1.). An airman reduced to the grade of E-4 is reduced to the rank of Senior Airman.

DONALD W. SHEPPERD
Major General, USAF
Director, Air National Guard

OFFICIAL

DEBORAH GILMORE
Chief
Administrative Services

5 Attachments
1. Glossary of References, Abbreviations, Acronyms and Addresses
2. Sample Memorandum: Notification of Intention to Demote (#1)
3. Sample Memorandum: Notification of Intention to Demote (#2)
4. Sample Indorsement of Airman's Reply
5. Privacy Act Statement

## GLOSSARY OF REFERENCES, ABBREVIATIONS ACRONYMS, AND ADDRESSES

*References*

AFPD 36-25, *Military Promotion and Demotion*
AFI 36-2101, *Classifying Military Personnel (Officer and Airmen)*
AFI 36-3209, *Separation Procedures for Air National Guard and Air Force Reserve Members*
AFPAM 36-2618, *The Enlisted Force Structure* (formerly AFR 39-6M)
AFI 40-502, *The Weight Management Program*
ANGI 36-101, *The Active Guard/Reserve (AGR) Program*
ANGI 36-2502, *Promotion of Airmen, Air National Guard*
ANGI 36-2101, *Assignments Within the Air National Guard*
ANGI 37-101, *Air National Guard Administrative Orders*
NGR(AF) 35-11, *Air National Guard Weight Management Program*
Title 10 United State Code
Title 32 United State Code
Title 44 United State Code
Uniform Code of Military Justice Article 27(b)(1)

| *Abbreviations or Acronyms* | *Definition* |
|---|---|
| AFROTC | Air Force Officer Training Course |
| AFS | Air Force Specialty |
| AFSC | Air Force Specialty Code |
| AMS | Academy of Military Science |
| ANG | Air National Guard |
| ANGUS | Air National Guard of the United States |
| BFM | Body Fat Measurement |
| CC | Commander |
| CMSgt | Chief Master Sergeant (E-9) |
| DOR | Date of Rank |
| IADT | Initial Active Duty for Training |
| IAW | In Accordance With |
| JA | Judge Advocate |
| MPF | Military Personnel Flight (or CBPO) |
| MSgt | Master Sergeant (E-7) |
| NCO | Noncommissioned Officer |
| SJA | Staff Judge Advocate |
| SMSgt | Senior Master Sergeant (E-8) |
| SPMD | Support Personnel Manning Document |
| TAG | The Adjutant General |
| TSgt | Technical Sergeant (E-6) |
| UCMJ | Uniformed Code of Military Justice |
| UMD | Unit Manning Document |
| UTA | Unit Training Assembly |

*Addresses*

ANG/MPP
3500 FETCHET AVE.
ANDREWS AFB, MD 20762-5157

This attachment applies to the following reasons for demotion, paragraphs 4.1., 4.2., 4.6., 4.7., 4.8., and 4.9.

(SAMPLE NOTIFICATION MEMORANDUM)

Appropriate Letterhead

MEMORANDUM FOR (Individual Concerned)

FROM: CC/(Unit Designation)
Unit Address

SUBJECT: Notification of Intention to Demote

1. You are hereby advised that under the provisions of ANGI 36-2503, paragraph ____, I intend to recommend to the Commander (Organization and Station of demoting authority) that you be demoted to the grade of _____ (or) I intend to demote you to the grade of ______.

2. The specific reason for this proposed action follows.

3. Documents that support this action are available for your review should you desire.

4. I direct that upon receipt of this memorandum you acknowledge such receipt on the attached prepared indorsement within 5 calendar days. I will also interpret any failure to meet this suspense date as concurrence with my demotion recommendation. You must also decide whether you concur or nonconcur with the proposed demotion. When you have made your decision, initial the appropriate paragraph on the enclosed indorsement accordingly. You may defer making a decision to concur or nonconcur until the next scheduled UTA on _______________ when you may consult with legal counsel as is your right. However, if you seek counsel, your decision to concur or nonconcur must be received by me no later than the end-of-day roll call following the second UTA (4 hour period) on __________.

5. Upon receipt of your acknowledgment or expiration of your suspense to respond this demotion action will continue until complete. Time frame for completion is within 30 calendar days from receipt or suspense expiration date.

Unit Commander
Signature Block

2 Attachments:
1. Receipt Indorsement
2. Privacy Act Statement

This attachment applies to the following reasons for demotion paragraphs 4.3., 4.4., and 4.5. only.
(SAMPLE NOTIFICATION MEMORANDUM)
Appropriate Letterhead

MEMORANDUM FOR (Individual Concerned)

FROM: CC/(Unit Designation)
Unit Address

SUBJECT: Notification of Intention to Demote

1. You are hereby advised that under the provisions of ANGI 36-2503, paragraph ____, I intend to recommend to the Commander (Organization and Station of demoting authority) that you be demoted to the grade of _____ (or) I intend to demote you to the grade of ______.

2. The specific reason for this proposed action follows:

3. Documents that support this action are available for your review should you desire.

4. I direct that upon receipt of this memorandum you acknowledge such receipt on the attached prepared indorsement within 5 calendar days. I will also interpret any failure to meet this suspense date as concurrence with my demotion recommendation. You must also decide whether you concur or nonconcur with the proposed demotion. When you have made your decision, initial the appropriate paragraph on the enclosed indorsement accordingly. You may defer making a decision to concur or nonconcur until the next scheduled UTA on ____________ when you may consult with legal counsel as is your right. However, if you seek counsel, your decision to concur or nonconcur must be received by me no later than the end-of-day roll call following the second UTA (4 hour period) on __________.

5. If you concur with the proposed demotion, you will be notified in writing of the demotion authority's decision. If there is no response from you, I am authorized to process your case as if you had concurred. If you nonconcur with the proposed demotion, you may present statements in your own behalf. Written statements to support your position will be submitted within 20 calendar days after you respond indicating your decision. If you desire to present oral statements, your request to do so will accompany the nonconccurrence, and a personal interview with me will be scheduled. You may seek military or civilian legal counsel (civilian counsel will be at your own expense) in preparing your oral or written presentation, and counsel may be present during the personal interview. If travel to the personal interview is required, all costs of your civilian counsel will be at your own expense.

6. (Use one of the following if applicable.) (You are eligible to resign under the provisions of AFI 36-3209, Separation Procedures for Air National Guard and Air Force Reserve Members, in lieu of demotion action and may do so at any time before publication of a demotion order.) Or (You are eligible to retire under the provisions of AFI 36-3203, Service Retirements, in lieu of demotion action and may do so at any time before the publication of a demotion order.)

Unit Commander
Signature Block

2 Attachments:
1. Receipt Indorsement
2. Privacy Act Statement

(SAMPLE INDORSEMENT OF AIRMAN'S REPLY)

1st Ind

(Individual concerned)

TO: CC/Unit Designation

1. The paragraph I have initialed below signifies my intent in this matter.

2. Receipt acknowledged; I concur with the proposed demotion action.

3. Receipt acknowledged. I intend to exercise my right to legal counsel at the next scheduled UTA on __________. My decision to concur/nonconcur with this demotion action will then be delivered to your office no later than the end-of-day roll call on Saturday. If I decide to nonconcur with the demotion action, in my written response I will advise you whether or not I will provide documentation on my behalf. I further understand that such documentation must be submitted to you within 20 days after the next UTA or it will not be considered. If I fail to return this indorsement within 5 calendar days, you may interpret such failure to respond as concurrence with the demotion action.

Airman's
Signature Block

(PRIVACY ACT STATEMENT)

AUTHORITY: 10 USC 8012, Privacy Act Statement, and 44 USC 3010.

PRINCIPLE PURPOSE: To provide you the opportunity to submit information on your behalf or show cause why your demotion is inappropriate.

ROUTINE USE: Information submitted by you will become part of the case file and be used by the demotion authority in the resolution of your case. This information will also be provided to your counselor or interview officer, as appropriate, and reviewed by authorized personnel who have a need to know for official use. A case file of the demotion action (if demotion is approved) will be filed in your Master Personnel Records Group.

DISCLOSURE OF PERSONAL INFORMATION IS VOLUNTARY: Failure to provide information precludes the demotion authority from considering the same on your behalf.

# EXHIBIT 48

## SPECIAL ORDER AW-76

## Promotion of Castagno to E-6

STATE OF UTAH, MILITARY DEPARTMENT
HEADQUARTERS UT NG - OTAG
765 NORTH 2200 WEST
SALT LAKE CITY, UTAH 84116-2999

Personnel Data-Privacy Act of 1974 (5 USC 552a)

SPECIAL ORDER
AW - 76

30 NOV 00

SSG MICHAEL R CASTAGNO, 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, 130 ENGR INST SQ, 765 NORTH 2200 WEST, SALT LAKE CITY, UTAH 84116-2999 is promoted in the UTANG and as a Reserve of the Air Force to the grade of TSG (E-6) effective 02 DEC 00, with the DOR of: 02 DEC 00. Promotion Type: Standard. Authority: ANGI 36-2502.

BY ORDER OF THE GOVERNOR

S/OFFICIAL/S/

MITCHELL J. CATOE, COL, UTANG
CHIEF OF STAFF FOR AIR

DISTRIBUTION: A

SO AW - 76

# EXHIBIT 49

## AC-0009R Wage Rate Schedule

## WG-10

AC-0009R

DoD Civilian Personnel Management Service (AW)
Arlington, Virginia 22209-5144

Issue Date: 10 May 2005

SUBJECT: Federal Wage System Regular and Special Production Facilitating Wage Rate Schedules for the Phoenix, Arizona (RUS) Wage Area

TO: Commanding Officers of Military Departments and DoD Component Installations in the Area

The schedules shown below have been established under authority of DoD Directive 5120.39, dated April 24,1980, subject to the limitations contained in CPM 2004-33, dated 30 December 2004. Rates are established as required by 5 USC 5343(d), if applicable in accordance with the provisions of 5 CFR Part 532 to all employees whose offical duty station is located within the geographic boundary of the wage area definition shown on the reverse side.

| WG WL-WS | WG - RATES | | | | | WL- RATES | | | | | | WS-WD-WN RATES | | | | | WD-WN Pay |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Grade | 1 | 2 | 3 | | | 1 | 2 | 3 | | | | 1 | 2 | 3 | | 5 | Level |
| 1 | 769 | 802 | 8.34 | 866 | 8.98 | 8.46 | 8.82 | 9.17 | 9.53 | 9.88 | | 14.00 | 14.57 | 15.16 | 15.75 | 16.33 | |
| 2 | 9.17 | 956 | 9.95 | 10.32 | 10.70 | 10.09 | 10.52 | 10.93 | 1135 | 1177 | | 15.48 | 1612 | 16.76 | 1741 | 18.05 | |
| 3 | 10.68 | 11.11 | 11.54 | 11.99 | 12.44 | 11.73 | 12.21 | 12.70 | 13.18 | 13.67 | | 16.96 | 17.67 | 18.37 | 19.09 | 19.79 | 1 |
| 4 | 12.15 | 12.64 | 13.15 | 13.66 | 14.16 | 13.36 | 13.91 | 14.47 | 15.03 | 15.59 | | 18.45 | 19.21 | 19.99 | 20.75 | 21.52 | 2 |
| 5 | 13.61 | 14.18 | 14.75 | 15.32 | 15.89 | 14.98 | 15.60 | 16.22 | 16.85 | 17.47 | | 19.92 | 20.75 | 21.58 | 22.41 | 23.24 | 3 |
| 6 | 15.09 | 15.73 | 16.36 | 16.98 | 17.61 | 16.62 | 17.30 | 17.99 | 18.68 | 19.38 | | 21.40 | 22.30 | 23.19 | 24.07 | 24.98 | 4 |
| 7 | 16.59 | 17.27 | 17.96 | 18.65 | 19.35 | 18.24 | 19.00 | 19.76 | 20.52 | 21.28 | | 22.89 | 23.84 | 24.80 | 25.75 | 26.71 | 5 1 |
| 8 | 18.07 | 18.82 | 19.57 | 20.32 | 21.07 | 19.87 | 20.70 | 21.62 | 22.35 | 23.18 | | 24.36 | 25.39 | 26.40 | 27.41 | 28.43 | 6 2 |
| 9 | 19.55 | 20.36 | 21.17 | 21.99 | 22.80 | 21.51 | 22.40 | 23.29 | 24.19 | 25.09 | | 25.85 | 26.92 | 28.00 | 29.08 | 30.16 | 7 3 |
| 10 | 21.02 | 21.89 | 22.76 | 23.64 | 24.53 | 23.12 | 24.07 | 25.04 | 26.01 | 26.96 | | 27.32 | 28.45 | 29.59 | 30.72 | 3186 | 84 |
| 11 | 22.10 | 23.02 | 23.94 | 24.88 | 25.78 | 24.31 | 25.32 | 26.34 | 27.35 | 28.36 | | 27.87 | 29.03 | 3019 | 31.34 | 32.52 | 9 6 |
| 12 | 23.19 | 24.18 | 25.11 | 26.13 | 27.06 | 25.50 | 26.65 | 27.69 | 28.69 | 29.75 | | 28.57 | 29.76 | 30.95 | 32.14 | 33.34 | 10 |
| 13 | 24.20 | 25.17 | 26.19 | 27.20 | 28.23 | 26.63 | 27.73 | 28.80 | 29.91 | 31.06 | | 6 | | | | | |
| 14 | 25.16 | 26.22 | 27.29 | 28.30 | 29.36 | 27.71 | 28.87 | 29.97 | 31.19 | 32.33 | | 29.45 | 30.67 | 31.89 | 33.13 | 34.35 | 11 |
| 15 | 26.16 | 27.26 | 28.36 | 29.42 | 30.57 | 28.80 | 29.97 | 31.19 | 32.38 | 33.62 | | 7 | | | | | |
| | | | | | | | | | | | | 30.48 | 31.75 | 33.01 | 34.29 | 35.56 | 8 |
| | | | | | | | | | | | | 31.69 | 33.00 | 34.32 | 35.64 | 36.96 | 9 |
| | | | | | | | | | | | WS-16 | 33.04 | 34.41 | 35.78 | 37.16 | 38.54 | |
| | | | | | | | | | | | WS-17 | 34.57 | 36.00 | 37.45 | 38.88 | 40.33 | |
| | | | | | | | | | | | WS-18 | 36.25 | 37.77 | 39.27 | 40.79 | 42.29 | |
| | | | | | | | | | | | WS-19 | 37.38 | 38.94 | 40.50 | 42.06 | 43.61 | |

R. CRAIG JERABEK
Chief
Wage and Salary Division

Order Date: 1 March 2005 Effective Date: 15 May 2004 Supersedes Schedule Issued 11 May 2004

# EXHIBIT 50

## Statement of Ronald J. Menke

I Ronald J Menke, Want to have my Military records corrected.
The process that the Utah Air National Guard (Utang) used for a minor disciplinary offense under Title 10 U.S.C. orders. What the Utang did was to deny do process under the U.C.M.J.
Friday March 15,1996
While on Active duty in Pisa Italy, attached to the U.S.A.F. base Aviano, Italy. I went to the briefing; we were told if detained by Italians that there was two interpreters, call #6357575 one would be available to help us. Received work assignments, was not on duty until Monday. Went to hotel Continental checked in. My room was the unit's hospitality room. Drank beer supplied by the unit, Mike Castangno and I was hungry, we decided to go find someplace to eat. I went downstairs Mike was talking to Italian named Enrico, I went with them to the parking lot. In the parking lot there was broken statue of Venus, in a moment indiscrimination, we thought it would be fun to place it in hospitality room, Went to dinner on the return to the hotel Enrico slide into a barrier on a curve. He jumped out and ran, did not see him again. We thought that our hotel was just down the road started walking towards it looking for a phone. The Carabinieri (Italian police) stopped and detain us, we could not understand each other, and I handed them the number supplied to us. They call the number for an interpreter. Military Police from Camp Darby showed up but with no interpreter. After about an hour the Italians released us to the MP's. The MP's took us separately to Camp Darby questioned us, wrote a report, read us our UCMJ article 31 rights. Then I told them I wanted an Area Defense council. At that they stopped the questioning and was released to the First Sergeant. 05:30 The First Sergeant took us back to the hotel, he relieved me of my military identification and was confine to quarters. at 10:00 hrs. I was removed by the First Sergeant from quarters and was confined to a small room. On Sunday about 12:00 hrs. Chaplain Young came to the room to check on me. I told him that I had not eaten since Friday, he took Mike and myself down to the buffet to eat. Then took us to the local Catholic Church for mass. At 17:00hrs Sgt. Naylor came to the room and said the First Sgt. was letting him come get me for dinner, he handed my military identification said he could drive to Camp Darby for cigarettes. Picked up hydrogen peroxide for cuts. Monday March 18, 07:00hrs. Sgt. Naylor came to the room said get ready for work, handed back my military identification. I meet him at the buffet room. Arrived at Pisa Air Base. Received my assignments for the day. At 16:00 I finally talked to the First Sergeant, asked him what was going on with me. He said he still did not know. Again I asked for an ADC. March 19, 09:00 hr. I was contacted by Major Burbidge on the flightline he said to come in when possible to have flight surgeon look at my injures. finally had my hand and knee treated for infection. March 20, 14:30hrs. I was contacted by the First Sgt. He said that the Carabinieri wanted to talk to Mike and I. The First Sgt. drove us to Camp Darby to pickup an interpreter, Jag office drove us to Marina Di Pisa Carabinieri office. Was asked my name, rank, birth date, and place of birth. My current address then had me sign the form that the interpreter said it basically said that I could be tried in absentia. All correspondence would be send to my current address. (As of today I have not received any correspondence) March 21, 14:30hrs. The First Sgt. handed me a form (AR 27-50) he told me to sign it. I refused to sign without talking with an ADC. I was then given an ADC Capt. Pahl in Incirlick AB Turkey Dsn # 67669086962 after talking To Capt. Pahl he said for me not to sign form at this time and he wanted to talk to Mike. The First Sgt. said Mike was gone for the day. Capt. Pahl later told me that if I

signed (AR 27-50) and returned to home station that Utang would have to returned us to **Title 10 orders** that I would be still be subject to the UCMJ. Col. Hill (Utang Base Commander) came to talk, I questioned him why I could not finish my orders here. He said that if I stayed I could be a Court- Martial, he said that I needed to sign the form that it was an informality to release us to The United States. After that I sign the (AR 27-50).
March 23, returned to the United States.
April 1, received a statement from Rodmund G. Brown from Pisa said owner not concerned about the statue.
April 13 At a unit training assembly (UTA) I received a memorandum from Capt. Erickson subject: Intention to demote Relying on an Air National Guard Instruction (ANGI) 36-2503 paragraph 4.3. Failure to Fulfill Noncommissioned Officer (NCO) Responsibilities. An airman may be demoted if he or she fails to fulfill NCO responsibilities prescribed in AFPAM 36-2618 (formerly APR 39-6M, *The Enlisted Force Structure,* paragraphs 6 and/or 7).
(ANGI) 36-2503 paragraph 2. Demotions. This instruction applies to all ANG enlisted members in the grades E-2 through E-9. All demotions under its provisions are administrative. **It will not be used' in lieu of disciplinary actions punishable under the appropriate state military code or the Uniform Code of Military Justice (UCMJ) when applicable.**
April 13, Legal counsel Lt Col.Cook (Utah State HQ. Legal Officer and Defense Counsel) was Assigned to Mike and I, again we requested for separate an Area Defense counsel. was informed that there was one defense counsel and one Staff Judge Advocate Lt Col. Tadje At the Utang.
May 04, Met with Legal counsel Lt Col.Cook
June01 Received a memorandum, Decision to Demote. In accordance with (IAW) ANGI 36-2503, I concur with the recommendation to demote TSgt Menke, to the grade of Airman First Class (E-3), for failure to fulfill Non-Commissioned Officer (NCO) responsibilities. A Commander's report is provided.
**Under Article 138 of the UCMJ, "any member of the armed forces who believes himself (or herself) wronged by his (or her) commanding officer" may request redress. If such redress is refused, a complaint may be made and a superior officer must "examine into the complaint."**
**Article 138 of the Uniform Code of Military Justice (UCMJ) gives every member of the Armed Forces the right to complain that he or she was wronged by his or her commanding officer. The right even extends to those subject to the UCMJ on inactive duty for training.**
June12 Mike and I went to Col. Thomas O. Plant (The office of the Inspector General For the Utah National Guard)
July 29 Col. Thomas O. Plant wrote: A thorough inquiry was conducted into the procedures associated with an administration demotion (reduction) under the provisions of ANG Instruction 36-2503, Administrative Demotion of Airmen, dated 29 December 1995. A legal review by the State Judge Advocate, Utah National Guard, on 22 July 1996, has determined that the actions of the command were proper and in accordance with existing regulatory guidance.
Airmen and soldiers who are members of the Utah National Guard are subject to **Title 39-6,** Utah Code Annotated, which is the Utah Code of Military Justice. **When ordered to Title 10 Active Duty service overseas, a National Guard airman or soldier is subject to the Uniform Code of Military Justice, as found in the United States**

**Codes,** as well as host nation laws. Air National Guard members are also subject to Air National Guard Instructions as issued by the National Guard Bureau. A similar situation exists for members of the Army National Guard.

*Off-base offenses.* Commanding officers and officers in charge may dispose of minor disciplinary infractions (which occur on or off-base) at NJP. Unless the off-base offense is one previously adjudicated by civilian authorities, there is no limit on the authority of military authorities to resolve such offenses at NJP.

*Cases previously tried in civil courts.* Military regulations permit the use of NJP to punish an accused for an offense for which he has been tried by a domestic or foreign civilian court, or whose case has been diverted out of the regular criminal process for a probationary period, or whose case has been adjudicated by juvenile court authorities, if authority is obtained from the officer exercising general court-martial jurisdiction (In the Air Force, such permission can only be granted by the Secretary of the Air Force).

**Right of the accused to demand trial by court-martial.** Except in the case of a person attached to or embarked in a vessel, an accused may demand trial by court-martial in lieu of NJP. The key time factor in determining whether or not a person has the right to demand trial is the time of the imposition of the NJP and not the time of the commission of the offense.

*Reduction in grade.* In the Navy and Marine Corps, regulations limit reduction in grade to one grade only. In the Army and Air Force, personnel in grades of E-5 and above can only be reduced by one grade, but personnel in grades of E-4 and below may be reduced to the lowest enlisted grade.

*Restriction.* Restriction also is a form of moral restraint. Its severity depends upon the breadth of the limits as well as the duration of the restriction. If restriction limits are drawn too tightly, there is a real danger that they may amount to either confinement or arrest in quarters, which in the former case cannot be imposed as NJP and in the latter case is not an authorized punishment for enlisted persons. As a practical matter, restriction means that an accused will be restricted to the limits of the base except where the use of recreational facilities might be further restricted. Restriction and arrest are normally imposed by a written order detailing the limits thereof and usually require the accused to log in at certain specified times during the restraint. Navy regulations, provide that an officer placed in the status of arrest or restriction shall not be confined to his room unless the safety or the discipline of the ship requires such action.

# EXHIBIT 51

## RECOUPMENT OF PAY AND PREMIUMS

**May 14, 2001**

DEFENSE FINANCE AND ACCOUNTING SERVICE
DENVER CENTER
6760 E IRVINGTON PL
DENVER CO 80279-7500

RONALD J MENKE
612 NAVAJO STREET
SALT LAKE CTY UT 84104-2612

May 14, 2001
Account No. 528641477

The Defense Finance and Accounting Service is the Department of Defense (DoD) collection agency for individual debts owed to DoD. The organization maintaining your military pay account has advised us that you are indebted to DoD as a result of overpayments before your recent separation. The account statement explains the reason for the debt. If you have already paid the debt or believe the debt is invalid, contact us immediately as we want to work with you to resolve this matter. Call us toll free at 1-800-962-0648, Monday through Friday, 7:00 a.m. to 4:00 p.m., MT. You may also mail your explanation and relevant supporting documents, including your account number, to DFAS-PODC/DE, 6760 E. Irvington Place, Denver CO 80279-7500. Do not send payments to Denver.

In order to avoid interest, administrative charges, and penalties, as authorized under the Debt Collection Act of 1982 and the Debt Collection Improvement Act of 1996, you must make full payment of this debt within 30 days of this notice. We have included instructions for mailing payments on the account statement. Send your payment, along with the bottom portion of your account statement, to ensure proper credit to your account. We encourage prompt payment since we must charge interest at the current Treasury Department tax and loan account rate and an administrative charge to cover our delinquent debt processing costs on any amount not paid within 30 days. If you do not pay your debt within 60 days, we may report the debt to credit bureaus and refer it to a commercial collection agency. We will also assess a penalty charge of 6% per annum on any portion of the debt's principal delinquent for more than 90 days.

If you are financially unable to make full payment, you may make monthly installment payments. The minimum acceptable amount is the "PAYMENT DUE" amount on your statement; we must receive it within 30 days. We will charge interest on the unpaid balance. In certain instances, the law provides for partial or full waiver of debts which result from erroneous payments. You may request an application for waiver. Please note that submission of a waiver application does not guarantee forgiveness of your debt or suspend collection action.

Again, we want to work with you to resolve this matter as quickly as possible. Please contact us immediately if you have any questions.

CUSTOMER SERVICE BRANCH
Directorate of Debt and
Claims Management

Enclosures

11

ACCOUNT STATEMENT
PERSONAL DATA-PRIVACY ACT OF 1974 P.L. 93-579

Send Inquiries to:

DFAS-PODC/DE
6760 E IRVINGTON PL
DENVER CO 80279-7500
1-800-962-0648

BILLING DATE: 05/14/01

PAYMENT IS DUE HERE BY: 06/14/01
https://www.dfas.mil/s-feedback/debtfeedback.htm
ACCOUNT NO: 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

RONALD J MENKE
612 NAVAJO STREET
SALT LAKE CTY UT 84104-2612

MAKE CHECK PAYABLE TO: DFAS-DE

| | | | |
|---|---|---|---|
| PREVIOUS BALANCE | 0.00 | INTEREST RATE | 5.000% |
| LESS: PMTS RECD | 0.00 | MONTHLY PMT | 50.00 |
| CURRENT MO INT CHG | 0.00 | PAST DUE AMT | 0.00 |
| CURRENT MO ADMIN/PEN | 0.00 | PAYMENT DUE | 50.00 |
| ADJUST (+ OR -) | 333.97 | | |
| NEW ACCOUNT BALANCE | 333.97 | | |

DEBT REASON(S) OR REMARK(S)

3 RSG YOUR DEBT OF $237.97 IS TO RECOUP THE PERIOD OF 00/06/19 TO 00/06/20 DUE TO NON-PERFORMANCE. A REVIEW OF YOUR MASTER PAY ACCOUNT SHOWS THAT YOU WERE PAID FOR THESE PERIODS, AND YOUR UNIT LATER REPORTED THAT THIS PERIOD WAS NOT PERFORMED. IF YOU HAVE OFFICIAL CERTIFICATION OF PERFORMANCE OF THIS PERIOD, FORWARD IT TO THIS OFFICE FOR REVIEW.

* * DEBT REASONS EXPLANATIONS CONTINUE ON ANOTHER PAGE * *

Return bottom part with payment, payable to DFAS-DE, or return for credit authorization.
Mail to: DFAS-DE P.O. BOX 955417 ST LOUIS, MO 63195-5417

RONALD J MENKE
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 AMT DUE 50.00
Payment enclosed
or authorized $_______

ADDRESS CORRECTION

PHONE: (____) ________

CREDIT CARD AUTHORIZATION

VISA [ ] MC [ ]
EXPIRATION DATE __/___
CARD NUMBER

SIGNATURE_____________

DFAS-DE
P.O. BOX 955417
ST LOUIS, MO 63195-5417

DEDFAS05100152864147700333978YDXX05100152864147700000033397

ACCOUNT STATEMENT CONTINUATION PAGE 1

DEBTOR NAME RONALD J MENKE ACCOUNT NO. 528641477

DEBT REASON(S) OR REMARKS(S)

3 RSK YOUR DEBT OF $96.00 IS FOR COLLECTION OF SERVICEMEN'S GROUP LIFE INSURANCE PREMIUMS FOR THE PERIOD OF 00/08 TO 01/01. YOU WERE NOT ATTENDING DRILLS AND PREMIUMS WERE BEING MADE ON YOUR BEHALF AT THE RATE YOU ELECTED. THIS DEBT IS BASED ON YOUR DATE OF SEPARATION (DOS), 01/01/09. IF THIS DOS IS INCORRECT OR YOU PREVIOUSLY SUBMITTED DOCUMENTATION TO HAVE THE INSURANCE STOPPED, YOU SHOULD FORWARD IT TO THIS OFFICE FOR REVIEW.

# EXHIBIT 52

## AFFIDAVIT OF ATTORNEYS FEES & COSTS

Scott H. York, Bar No. 8120
QUINTANA & YORK, PC
3341 South 700 East
Salt Lake City, Utah 84106
(801) 363-7726 Telephone
(801) 521-4625 Facsimile
shyork@owlservices.net

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**MILITARY RECORDS CORRECTION BOARD**

| | |
|---|---|
| Ronald J. Menke,<br><br>Petitioner,<br><br>v.<br><br>THE UNITED STATES<br><br>Defendant | **AFFIDAVIT OF ATTORNEY'S FEES & COST**<br><br>No. 2:04-cv-00472 DB<br><br>Judge Dee Bensen<br>District of Utah |

STATE OF UTAH )
:ss
COUNTY OF SALT LAKE )

Scott York states and avers oath as follows:

1. That he is an attorney licensed to practice law within the State of Utah (Bar No. 8120).

2. That he is the attorney for Ronald J. Menke in the above-entitled matter.

3. That he is familiar with the fees customarily charged in Salt Lake City and in the State of Utah generally for such legal services as was rendered by him in the above-entitled matter.

4. That attorney's fees in this matter are calculated at an hourly rate of $200.00; which is a reasonable fee for such legal services as were rendered and are in line with the fees customarily

charged in Salt Lake City and in the State of Utah generally for such legal services as were rendered by him in the above-entitled action.

5. That after a review of the time records maintained in his office and after considering each of the elements to be considered pursuant to **Rule 1.5, Revised Rules of Professional Conduct of the Utah State Bar,** the provisions of which are incorporated herein by reference, a reasonable attorney's fee for services performed in this matter by said attorney is $200.00 per hour.

DATED this 15th day of December, 2006.

**Quintana & York, P.C.**

Scott H. York
QUINTANA & YORK, P.C.
3341 South 700 East
Salt Lake City, Utah 84106
(801) 363-7726 Telephone
(801) 521-4625 Facsimile
shyork@owlservices.net

Attorney for Petitioner
Ronald J. Menke

**BREAK – DOWN OF ATTORNEY'S FEES AND COSTS:**

| DATE | TIME | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 12/31/2002 | | Statement Charge of opening file | $466.25 |
| 1/1/2003 | | Opening Balance; work performed | $2,766.25 |
| 12/1/2004 | | Work Performed on Case; 8/15/2003 – 12/16/2004 | $12,689.82 |
| 12/1/2005 | | Work Performed on Case; 4/28/2005 – 10/15/2005 | $20,700.00 |
| 4/1/2006 | | Work Performed on Case; 2/4/2006 – 2/8/2006 | $1,900.00 |
| 10/25/2006 | | Work on Petition/file | $4,410.00 |
| | | **TOTAL** | **$42,932.32** |

---

TOTAL ATTORNEY'S FEES $42,932.32

---

**COSTS:**

| | | |
|---|---|---|
| 8/16/2006 | Filing Fee | $250.00 |
| | Services of Process | $0.00 |
| | **TOTAL** | $250.00 |
| | **TOTAL ATTORNEY'S FEES:** | $42,932.32 |
| | **PLUS COSTS:** | $250.00 |
| | **TOTAL ATTORNEY'S FEES & COSTS:** | **$43,182.32** |